## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION TAXES AND FEES, AND (B) AUTHORIZING BANKS TO RECEIVE, PROCESS, AND HONOR CHECKS ISSUED AND ELECTRONIC PAYMENT REQUESTS RELATED THERETO

Sports Authority Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move this Court (this "Motion") for entry of interim and final orders, substantially in the forms annexed hereto as Exhibit A and Exhibit B, respectively, pursuant to sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003, 6004(a), and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing the Debtors to remit and pay (i) sales, use, value-added, property, franchise, and income taxes (collectively, the "Taxes") and (ii) business license, permit, and other similar fees or charges (collectively, the "Fees"); (b) authorizing the banks and other financial institutions at which the Debtors hold accounts (collectively, the "Banks") to receive, process, and honor checks issued and electronic payment

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

requests made related to the foregoing; and (iii) granting related relief.  In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Jeremy Aguilar in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day Declaration"), which was filed concurrently herewith.  In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of the Bankruptcy Code, Bankruptcy Rules 6003, 6004(a), and 6004(h), and Local Rule 9013-1(m).

## BACKGROUND

**A.     General Background**

2.     On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.     Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases (collectively, the "Chapter 11 Cases") pursuant to

Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

4.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in the First Day Declaration.

**B.      The Debtors' Tax Obligations**

5.      The Debtors conduct business in 40 U.S. states and Puerto Rico and receive royalty payments from trademark license agreements in foreign jurisdictions, including Austria and Canada.  In the ordinary course of business, the Debtors (a) incur and/or collect Taxes; (b) incur Fees in connection with obtaining licenses and permits necessary to operate their businesses; and (c) remit such Taxes and Fees to various taxing, licensing, and other governmental authorities (collectively, the "Taxing Authorities").  The Taxes and Fees may, from time to time, be the subject of an audit (each an "Audit")[2] by the applicable Taxing Authority, and the amounts estimated as due or already paid by the Debtors may be subject to upward or downward adjustment based upon the amount that the applicable Taxing Authority ultimately claims is due following an Audit.[3]  The Debtors regularly pay the Taxes and Fees in a timely manner on a monthly, quarterly, or annual basis, in each case as required by applicable laws and regulations, and none of the Taxes or Fees the Debtors are seeking authority to pay pursuant to this Motion are past-due or "catch up" Taxes or Fees.  The Debtors do not hold any funds specifically earmarked for the payment of taxes in a segregated account.

---

[2]      References to Taxes herein shall be construed to include Audit amounts, unless the context requires otherwise.

[3]      Nothing contained herein or in the order approving this Motion constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit.  The Debtors expressly reserve all rights with respect to any Audit.  Furthermore, the Debtors reserve the right to contest the amount, if any, claimed to be due as a result of any Audit.

### (i)      Sales Taxes

6.      The Debtors collect or incur sales, use, value-added (VAT) and miscellaneous similar taxes (collectively, the "Sales Taxes") in connection with the operation of their business. The Debtors conduct business in 40 U.S. states and Puerto Rico and remit Sales Taxes in all states and municipalities that impose such obligations.  Based on their large volume of sales, the Debtors are generally required to remit Sales Taxes to the Taxing Authorities on a monthly basis, and remit use taxes in Puerto Rico as products are imported.  During the 2015 calendar year, the Debtors paid approximately $169.7 million in the aggregate in Sales Taxes, with a monthly average of approximately $14.1 million, although this amount varies based on sales throughout the year.  While the Debtors are timely with respect to Sales Taxes, they estimate that, as of the Petition Date, approximately $16.9 million on account of such Taxes has accrued and is unpaid.

### (ii)      Franchise and Income Taxes

7.      The Debtors pay income and franchise taxes to certain Taxing Authorities to operate their business in the applicable taxing jurisdictions.  The Debtors generally pay federal income taxes, Puerto Rico income taxes, U.S. state income taxes, net worth, and/or franchise taxes in most U.S. states (collectively, the "Income/Franchise Taxes").  The Debtors generally make timely payments on a quarterly basis to cover their estimated Income Taxes/Franchise Taxes.  In 2015 the Debtors remitted approximately $1.0 million on account of Income/Franchise Taxes.  The Debtors estimate that they will owe approximately $950,000 in Income/Franchise Taxes in 2016, with a monthly average of $79,200.  However, the Debtors' tax liabilities are not always proportionate throughout the year and the actual amount owed may be more or less than the forecasted amount.  Although the Debtors are timely with respect to Income/Franchise Taxes, they estimate that, as of the Petition Date, approximately $438,000 on account of such Taxes has accrued and is unpaid.

### (iii)   Real Property Taxes

8.     The Debtors are subject to real property taxes (collectively, the "Real Property Taxes") in certain jurisdictions in the following states:  Michigan and New Jersey.  To avoid the imposition of statutory liens on their real property, the Debtors pay their Real Property Taxes as they come due in the ordinary course of business.  In 2015 the Debtors paid a total of $155,700 in Real Property Taxes.  The Debtors project that they will owe approximately $171,300 in Real Property Taxes in 2016, with a monthly average of approximately $14,000.  Although the Debtors are timely with respect to Real Property Taxes, they estimate that, as of the Petition Date, approximately $13,700 on account of such Taxes has accrued and is unpaid.

### (iv)   Personal Property Taxes

9.     The Debtors are subject to personal property taxes (collectively, the "Personal Property Taxes") in Puerto Rico and the following U.S. states:  Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Indiana, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, Montana, Nebraska, New Mexico, Oregon, South Carolina, Texas, Tennessee, Utah, Virginia, Washington, Wisconsin, Wyoming.  To avoid the imposition of statutory liens on their personal property, the Debtors pay their Personal Property Taxes as they come due in the ordinary course of business.  In 2015 the Debtors paid approximately $5.2 million in Personal Property Taxes.  The Debtors project that they will owe approximately $5.3 million in Personal Property Taxes in 2016, with a monthly average of approximately $443,000.  Although the Debtors are timely with respect to Personal Property Taxes, they estimate that, as of the Petition Date, approximately $5.2 million on account of such Taxes has accrued and is unpaid.

### (v)    Other Taxes

10.    Ohio imposes the Commercial Activity Tax (the "Ohio CAT") on businesses with Ohio taxable gross receipts of $150,000 or more per calendar year for the privilege of doing business in Ohio.  Businesses, such as the Debtors, with taxable gross receipts in excess of $1 million are required to make quarterly payments.  In 2015, the Debtors remitted a total of $33,000 on account of the Ohio CAT.[4]  The Debtors estimate that they will owe approximately $29,000 in 2016 and will need to make quarterly payments of approximately $7,200 each in February, May, August and November on account of the Ohio CAT.  Although the Debtors are timely with respect to the Ohio CAT, they estimate that, as of the Petition Date, approximately $3,600 on account of the Ohio CAT has accrued and is unpaid.

11.    Washington imposes a business and occupation (B&O) tax that is calculated on the gross income from activities with no deductions from the B&O tax for labor, materials, taxes, or other costs of doing business.  In 2015, the Debtors remitted a total of $515,000 on account of B&O taxes and the Debtors estimate that they will owe approximately $515,000 in 2016.

12.    Nevada imposes an annual commerce tax on the Nevada gross revenue of each business entity engaged in business in Nevada if a business's Nevada gross revenue in a taxable fiscal year exceeds $4 million.  The commerce tax is calculated from July 1st through June 30th each year and for the 2015-2016 year the Debtors will owe approximately $24,400 in 2016, due in August.

13.    In Puerto Rico the Debtors pay municipal license taxes, a volume of business tax imposed on the gross receipts of the Debtors' business conducted in a municipality.  In 2015, the

---

[4]    One of the three stores located in Ohio has closed, which will reduce the CAT payable in 2016.

Debtors remitted a total of $105,900 on account of license taxes and the Debtors estimate that they will owe approximately $114,800 in 2016.

14. In certain localities the Debtors pay occupational head taxes, which generally charge a flat fee per employee earning above a certain threshold in a given locality. Generally, the Debtors are responsible for part of the fee and the remainder is withheld from an employee's payroll check.

15. In Austria and Canada, licensees withhold taxes from the royalty payments made to the Debtors for the licensing of the Debtors' trademarks. In 2015, a total of $10,000 was withheld from payments to the Debtors on account of Austria taxes and the Debtors estimate that approximately $10,000 will be withheld in 2016. In 2015, a total of $13,100 was withheld from payments to the Debtors on account of Canada taxes and the Debtors estimate that approximately $11,000 will be withheld in 2016.

**(vi)     Business License and Permit Fees, Annual Report Fees, and Other Similar Taxes and Fees**

16. Finally, the Debtors are required to pay certain Fees, which include (a) business license and permit fees in various jurisdictions, (b) fees and taxes for annual reports, (c) environmental fees in California, and (d) bag fees imposed by localities on the use of non-reusable bags. In 2015 the Debtors remitted approximately $1.3 million on account of Fees. The Debtors estimate that they will owe approximately $1.4 million in Fees in 2016, with a monthly average of approximately $120,200. Although the Debtors are timely with respect to Fees, they estimate that, as of the Petition Date, approximately $298,000 on account of Fees has accrued and is unpaid.

## RELIEF REQUESTED

17.     By this Motion, the Debtors seek entry of interim and final orders authorizing, but not directing, the Debtors to, in the exercise of their reasonable business judgment, pay any Taxes and Fees in the ordinary course of business, without regard to whether such obligations accrued or arose before or after the Petition Date.  For the avoidance of doubt, the Debtors are not seeking authority to make "catch up" payments to the Taxing Authorities by this Motion.

18.     The Debtors also seek entry of interim and final orders authorizing the Banks to receive, process, honor, and pay checks or electronic transfers used by the Debtors to pay the Taxes and Fees, and to rely on the representations of the Debtors as to which checks are issued and authorized to be paid in accordance with this Motion.

## BASIS FOR RELIEF REQUESTED

**A.     Payment of the Taxes and Fees is Warranted Under the Doctrine of Necessity**

19.     The Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity."  *Id.* at 175-76.

20.     The United States Court of Appeals for the Third Circuit recognized the doctrine of necessity in *In re Lehigh & New England Railway. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).

The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

21.    The rationale for the doctrine of necessity—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *see also Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process."); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of

pre-petition debts when necessary for rehabilitation . . ." is appropriate); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately."); 2 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 105.04[5][a] (16th ed. 2013) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

22.     Here, the Debtors' payment of the Taxes and Fees is an exercise of sound business judgment and is necessary to maximize the value of the Debtors' estates for the benefit of their creditors.  The Debtors operate a nationwide business and any disputes that could adversely affect their ability to conduct business in a particular jurisdiction could have wide-ranging and negative effects on the Debtors' operations as a whole and their efforts to efficiently administer their estates and maximize distributions to their creditors.  If the Debtors do not continue paying the Taxes and Fees when they come due on a timely basis, it is very possible that Taxing Authorities, or those parties who ordinarily collect the Taxes and Fees, may interfere with the Debtors' business and the efficient administration of the estates.

23.     Similar relief is routinely granted by courts in this District.  *See, e.g.*, *In re The Standard Register Company*, Case No. 15-10541 (BLS) (Bankr. D. Del. Mar. 13, 2015); *In re Altegrity, Inc.*, Case No. 15-10226 (LSS) (Bankr. D. Del. Feb. 10, 2015); *In re Event Rentals, Inc.*, Case No. 14-10282 (PJW) (Bankr. D. Del. Feb. 18, 2014); *In re Natrol, Inc.*, Case No. 14-11446 (BLS) (Bankr. D. Del. June 23, 2014); *In re ATLS Acquisition, LLC*, Case No. 13-10262

(PJW) (Bankr. D. Del. Feb. 20, 2013); *In re School Specialty, Inc.*, Case No. 13-10125 (KJC)

(Bankr. D. Del. Jan. 30, 2013); *In re THQ Inc.*, Case No. 12-13398 (MFW) (Bankr. D. Del. Dec.

20, 2012); *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Oct. 31, 2012);

*In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20,

2011); *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (KG) (Bankr. D. Del. Nov.

19, 2010) (Docket No. 54).

**B.      Payment of the Taxes and Fees is Appropriate and Necessary**

24.      The Debtors' payment of Taxes and Fees in the ordinary course of business is

justified because, among other things, (i) certain of the Taxes and Fees are not property of the

estate pursuant to section 541(d) of the Bankruptcy Code and (ii) nonpayment of the Taxes and

Fees could lead to Taxing Authorities pursuing avenues of recourse that would divert estate

resources and cause the Debtors to incur additional fees, penalties, and interest.

**(i)      Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates**

25.      Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty

in which the debtor holds, as of the commencement of the case, only legal title and not an

equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section

only to the extent of the debtors' legal title to such property, but not to the extent of any equitable

interest in such property that the debtor does not hold."  11 U.S.C. § 541(d).

26.      Some of the Taxes and Fees constitute "trust fund" taxes, which the Debtors are

required to collect and/or hold in trust for payment to the Taxing Authorities.  Courts have held

that such taxes are not part of a debtor's estate.  *See, e.g., Begier v. Internal Revenue Serv.*, 496

U.S. 53, 57–60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer

subject to avoidance, because such funds are not the debtor's property); *City of Farrell v. Sharon

Steel Corp.*, 41 F.3d 92, 95 (3rd Cir. 1994) (holding withheld taxes were subject to a trust);

*DuCharmes & Co. v. Mich. (In re DuCharmes & Co.)*, 852 F.2d 194 (6th Cir. 1988) (per curiam) (same); *Shank v. Wash. State Dep't of Revenue (In re Shank)*, 792 F.2d 829, 833 (9th Cir. 1986) (stating that sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 435-36 (2d Cir. 1985) (same); *Rosenow v. Ill. Dep't of Revenue (In re Rosenow)*, 715 F.2d 277, 279-82 (7th Cir. 1983) (same); *W. Surety Co. v. Waite (In re Waite)*, 698 F.2d 1177, 1179 (11th Cir. 1983) (same).  To the extent these "trust fund" Taxes are collected by the Debtors, they are not property of the Debtors' estates under section 541(d).  *See, e.g., In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104-05 (Bankr. E.D. Pa. 1987); *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721-22 (4th Cir. 1998) (stating that funds from various lenders held by closing agent in trust for designated third parties were not property of debtor's estate).  The Debtors, therefore, generally do not have an equitable interest in such funds, and they should be permitted to pay those funds to Taxing Authorities as they become due.

### (ii)    Payment of the Taxes and Fees Will Avoid Unnecessary Costs and Distractions in the Chapter 11 Cases

27.    Any regulatory dispute or delinquency that affects the Debtors' ability to conduct business could have a wide-ranging and adverse effect on the Debtors' operations as a whole. Specifically, the Debtors' failure to pay the Taxes and Fees could adversely affect their business operations because, among other things, (a) Taxing Authorities could audit the Debtors or prevent the Debtors from continuing their businesses, which, even if unsuccessful, would unnecessarily divert the Debtors' attention away from the reorganization process and consume estate resources; (b) Taxing Authorities could attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the estates; and (c) Taxing Authorities could argue that certain directors and officers are subject to personal

liability—even if such a failure to pay such Taxes and Fees was not a result of malfeasance on their parts—which would undoubtedly distract those key individuals from their duties related to the Debtors' restructuring.  Accordingly, the Debtors must continue to pay the Taxes and Fees as they become due to ensure that estate resources are not wasted and their officers and directors remain focused during these Chapter 11 Cases on operating the businesses and implementing a successful restructuring.

**C.      Certain of the Taxes and Fees May Constitute Secured or Priority Claims**

28.      The Debtors submit that authorizing the payment of the Taxes and Fees is in the best interests of their creditors and estates because the Taxes and Fees could constitute secured claims or priority claims under Bankruptcy Code section 507(a)(8).  As such, payment of the Taxes and Fees will not prejudice the rights of general unsecured creditors, because the Taxing Authorities will not receive more than they would be entitled to under a chapter 11 plan. Moreover, to the extent that the Taxes and Fees are entitled to priority treatment under section 507(a)(8)(b) of the Bankruptcy Code, the governmental units also may attempt to assess interest and penalties.  *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). Thus, the payment of the Taxes and Fees at this time only affects the timing of the payment for what is likely to be the vast majority of the amounts at issue and, therefore, should not unduly prejudice the rights of other creditors.  Further, the payment of the Taxes and Fees at this time will save the Debtors the potential interest expense, legal expense, and penalties that otherwise might accrue on the Taxes and Fees during these Chapter 11 Cases.

**D.      The Court Should Authorize Applicable Banks to Honor Checks and Electronic Fund Transfers in Accordance with the Motion**

29.     In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize all applicable Banks to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

**E.      Immediate Relief is Justified**

30.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

31.     Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to the Debtors' customers and other third parties.  Unlike Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or

threatened harm to the estate alone.  Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally.  *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate").  Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary junctions.  *See* 9 *Collier on Bankruptcy* ¶ 4001.07[b][3] (discussing source of "irreparable harm" standard under Rule 4001(c)(2)).  Courts will routinely consider third-party interests when granting such relief.  *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

32.    As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without Court authorization to pay the Taxes and Fees and for the related relief requested herein.

33.    Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF STAY

34.    To implement the foregoing, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

35.    To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent that they are deemed applicable.

01:18375183.1

15

## DEBTORS' RESERVATION OF RIGHTS

36.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors; a waiver of the Debtors' rights to dispute any claim; or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any invoice or claim of any Taxing Authority under applicable non-bankruptcy law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

37.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors; (c) Riemer & Braunstein LLP (attn: Donald Rothman) as counsel for (i) Bank of America, N.A., in its capacity as Administrative Agent and Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012, and (ii) certain DIP Lenders under the Debtors' proposed postpetition financing facility; (d) Brown Rudnick LLP (attn.: Robert Stark and Bennett Silverberg) as counsel for (i) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (ii) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (e) Choate, Hall & Stewart LLP (attn.: Kevin Simard) as counsel for (i) Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015, and (ii) certain DIP Lenders

under the Debtors' proposed postpetition financing facility; (f) O'Melveny & Meyers LLP (attn: John Rapisardi) as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (g) all holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (h) the Taxing Authorities; and (i) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:    March 2, 2016
       Wilmington, Delaware

*/s/ Andrew L. Magaziner*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kenos@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**<u>EXHIBIT A</u>**

**PROPOSED INTERIM ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-_____ (___) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ____ |

**INTERIM ORDER (A) AUTHORIZING THE PAYMENT OF CERTAIN
PREPETITION TAXES AND FEES, AND (B) AUTHORIZING BANKS TO
RECEIVE, PROCESS, AND HONOR CHECKS ISSUED AND ELECTRONIC
PAYMENT REQUESTS RELATED THERETO**

Upon the *Debtors' Motion for Entry of Interim and Final Orders (a) Authorizing the Payment of Certain Prepetition Taxes and Fees, and (b) Authorizing Banks to Receive, Process, and Honor Checks Issued and Electronic Payment Requests Related Thereto* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that venue of these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and the Court having determined that it may enter a final order consistent with Article III of the United States

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

Constitution; and upon consideration of the First Day Declaration; and a hearing having been held to consider the relief requested in the Motion; and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      A final hearing (the "Final Hearing") on the Motion shall be held on _____, 2016 at __:__ __.m (prevailing Eastern Time).  Any objections or responses to the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2016 and served on the parties required by Local Rule 2002-1(b).

3.      The Debtors are authorized, but not directed, in the exercise of their reasonable business judgment, to pay and remit to the Taxing Authorities the Taxes or Fees as they come due in the ordinary course of business; *provided, however*, that without prejudice to the Debtors' right to seek additional payments at the Final Hearing or any other time subsequent thereto, the aggregate amount of such payments on account of Taxes and Fees shall not exceed $18 million.

4.      Nothing herein shall impair any right of the Debtors to dispute or object to any taxes asserted as owing to the Taxing Authorities or those parties who ordinarily collect the Taxes and Fees as to amount, liability, classification, or otherwise.

5.      Each of the Banks is authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Order and any other order of this Court.

6.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with any Taxes and Fees that are dishonored or rejected.

7.      Nothing in the Motion or this Order, or the Debtors' payment of any claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity of any claim or Lien against the Debtors or their estates; (b) a waiver of the Debtors' right to dispute any claim or Lien; (c) an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (d) an admission of the priority status of any claim, whether under section 503(b)(9) of the Bankruptcy Code or otherwise; or (e) a modification of the Debtors' rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid to any Authority.

8.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

12.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: March ___, 2016
          Wilmington, Delaware

_____

UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**PROPOSED FINAL ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-_____ (___) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ____ |

**FINAL ORDER (A) AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION
TAXES AND FEES, AND (B) AUTHORIZING BANKS TO RECEIVE, PROCESS,
AND HONOR CHECKS ISSUED AND ELECTRONIC
PAYMENT REQUESTS RELATED THERETO**

Upon the *Debtors' Motion for Entry of Interim and Final Orders (a) Authorizing the
Payment of Certain Prepetition Taxes and Fees, and (b) Authorizing Banks to Receive, Process,
and Honor Checks Issued and Electronic Payment Requests Related Thereto* (the "Motion")[2]
filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and
the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b)
and 157, and the *Amended Standing Order of Reference* from the United States District Court for
the District of Delaware dated as of February 29, 2012; and the Court having found that venue of
these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and
the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and
the Court having found that notice of the Motion has been given as set forth in the Motion and
that such notice is adequate and no other or further notice need be given; and the Court having
determined that it may enter a final order consistent with Article III of the United States

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports
Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA
Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The
headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado
80110.

[2]  All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

Constitution; and upon consideration of the First Day Declaration; and the Court having entered that certain *Interim Order (a) Authorizing the Payment of Certain Prepetition Taxes and Fees, and (b) Authorizing Banks to Receive, Process, and Honor Checks Issued and Electronic Payment Requests Related Thereto* [Docket No. ___] (the "Interim Order"); and a hearing or hearings having been held to consider the relief requested in the Motion; and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein on a final basis.

2.      The Debtors are authorized, but not directed, in the exercise of their reasonable business judgment, to pay and remit to the Taxing Authorities the Taxes or Fees as they come due in the ordinary course of business.

3.      Nothing herein shall impair any right of the Debtors to dispute or object to any taxes asserted as owing to the Taxing Authorities or those parties who ordinarily collect the Taxes and Fees as to amount, liability, classification, or otherwise.

4.      Each of the Banks is authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Order and any other order of this Court.

01:18375183.1

5.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with any Taxes and Fees that are dishonored or rejected.

6.      Nothing in the Motion or this Order, or the Debtors' payment of any claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity of any claim or Lien against the Debtors or their estates; (b) a waiver of the Debtors' right to dispute any claim or Lien; (c) an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (d) an admission of the priority status of any claim, whether under section 503(b)(9) of the Bankruptcy Code or otherwise; or (e) a modification of the Debtors' rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid to any Authority.

7.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

8.      Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

11.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: _____, 2016
          Wilmington, Delaware

                                    _____

                                    UNITED STATES BANKRUPTCY JUDGE