## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO (I) CONTINUE TO SELL CONSIGNED GOODS IN THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND (II) GRANT ADMINISTRATIVE EXPENSE PRIORITY TO CONSIGNMENT VENDORS FOR CONSIGNED GOODS DELIVERED POSTPETITION; AND (B) GRANT REPLACEMENT LIENS TO CONSIGNMENT VENDORS WITH PERFECTED SECURITY INTERESTS IN CONSIGNED GOODS AND/OR REMIT THE CONSIGNMENT SALE PRICE ARISING FROM SALE OF CONSIGNED GOODS TO PUTATIVE CONSIGNMENT VENDORS**

Sports Authority Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move this Court (this "Motion") for entry of an interim order (the "Interim Order") and a final order (the "Final Order"), substantially in the forms annexed hereto as Exhibit A and Exhibit B, respectively, pursuant to sections 105, 363, 503, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing the Debtors to (i) continue to sell inventory delivered to the Debtors on consignment (the "Consigned Goods") by various vendors (the "Consignment Vendors") in the ordinary course of business, free and clear of all liens, claims and encumbrances, and (ii) grant administrative expense priority under section 503(b) of the

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

Bankruptcy Code to Consignment Vendors for all undisputed obligations arising from Consigned

Goods delivered to the Debtors after the Petition Date (as defined below); and (b) grant

replacement liens to Consignment Vendors who have valid, enforceable, non-avoidable and

perfected lien on any Consigned Goods that are sold and/or remit the Consignment Sale Price (as

defined below) to putative Consignment Vendors with the consent of the Debtors' secured

lenders that might otherwise have a lien on the Consigned Goods.

In support of this Motion, the Debtors rely upon and incorporate by reference the

*Declaration of Jeremy Aguilar in Support of the Debtors' Chapter 11 Petitions and Requests for*

*First Day Relief* (the "First Day Declaration"), which was filed with the Court concurrently

herewith.  In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and

157, and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), the Debtors consent to the entry of a final order by the Court in connection with this

Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory and legal predicates for the relief requested herein are sections 105, 363,

503, 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 6004.

## BACKGROUND

**A.    General Background**

2.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.      Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases (collectively, the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

4.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in the First Day Declaration.

**B.    Consigned Goods; Consignment Vendors**

5.      A substantial portion of the Debtors' business involves the sale of Consigned Goods that are delivered to the Debtors by approximately 170 Consignment Vendors and sold in the Debtors' retail stores and online.  The Debtors estimate that, as of the Petition Date, the Debtors possess approximately 8.5 million units of Consigned Goods with an invoice cost to the Debtors of approximately $84.8 million in the aggregate.  The Debtors store, maintain, and insure the Consigned Goods at the Debtors' sole expense.

6.      The Debtors' relationships with their Consignment Vendors allow the Debtors to receive and resell a wide range of popular goods in their stores without the need to commit working capital up front to cover the cost of selling such inventory and the constraints that such commitment would otherwise impose on the Debtors.  Consigned Goods include, without

limitation, (a) active wear and outerwear for men, women, and children; (b) seasonal accessories; (c) recreational gear for a variety of outdoor activities, including camping, water sports, fishing, and hunting; (d) gear for team sports including baseball, soccer, football, and basketball; (e) gear for indoor exercise and fitness activities; (f) golf gear and apparel; and (g) select footwear, socks, insoles, and accessories.  The Debtors rely on their ability to provide a wide selection of goods to meet their customers' needs and drive customer traffic, and they would be unable to do this without the Consigned Goods.  For these reasons, the Debtors' relationships with the Consignment Vendors are invaluable.

7.      In the ordinary course of business, the Debtors and each Consignment Vendor enter into an agreement, a countersigned "pay by scan" vendor deal sheet summary, or another similar arrangement (each, a "Consignment Agreement" and collectively, the "Consignment Agreements"), which, along with the Uniform Commercial Code (the "U.C.C."), governs the Debtors' respective relationship with such Consignment Vendor.  The agreed-upon invoice price that the Debtors owe to the Consignment Vendors on account of all Consigned Goods is collectively referred to herein as the "Consignment Sale Price."  Pursuant to the terms of each Consignment Agreement, upon the sale of any Consigned Goods, the Debtors remit the applicable Consignment Sale Price per item sold to the applicable Consignment Vendors in the ordinary course of business in accordance with the applicable Consignment Agreements.  Any proceeds from the sale of any Consigned Goods that exceed the applicable Consignment Sale Price constitute the Debtors' gross profits (collectively, the "Consignment Proceeds").  During fiscal year 2015 which ended January 30, 2016, the sale of Consigned Goods resulted in total revenues of approximately $244 million and generated approximately $128 million in Consignment Proceeds for the Debtors.

8.      The Debtors depend upon the continued availability of Consigned Goods so that they can continue to offer the fullest range of retail sporting goods to their customers at a time when customer retention is particularly critical to the success of the Debtors' value maximization efforts.  The Debtors have an immediate need, especially at the outset of these Chapter 11 Cases, to continue to sell the Consigned Goods in the ordinary course of business to prevent disruption to the Debtors' business and to preserve the value of the Debtors' going concern for the benefit of the estates and all stakeholders.  Without the ability to sell Consigned Goods, the Debtors would experience significant loss in sales volume, disrupting the Debtors' business and jeopardizing their efforts to maximize value.  Therefore, the Debtors request authorization to continue to sell Consigned Goods in the ordinary course of business and in accordance with the Debtors' prepetition practices and procedures, as modified herein.

9.      It is equally critical that Consignment Vendors continue to deliver Consigned Goods to the Debtors upon request during the postpetition period to replenish the Debtors' inventory and enable the Debtors to continuously offer the fullest range of goods to their customers.  To that end, the Debtors request authorization to negotiate acceptable terms with certain Consignment Vendors whereby such Consignment Vendors will deliver Consigned Goods to the Debtors during the postpetition period.  In exchange for the postpetition delivery of Consigned Goods, the Debtors seek the Court's authorization to grant to applicable Consignment Vendors administrative expense priority status under section 503(b) of the Bankruptcy Code for all undisputed obligations arising from the delivery of Consigned Goods to the Debtors during the postpetition period.

## C.      The Debtors' Proposed Replacement Liens and/or Payment of Consignment Claims

10.     The Debtors acknowledge that some Consignment Vendors may have security interests or liens in certain Consigned Goods that were delivered to the Debtors prior to the

01:18375370.1

5

Petition Date, while other Consignment Vendors may either have security interests that are not valid, enforceable, non-avoidable and perfected, or have no security interests in any Consigned Goods.  The Debtors propose to grant to each applicable Consignment Vendor a replacement lien on the proceeds of the applicable Consigned Goods, up to the amount of the applicable Consignment Sale Price (such replacement lien, a "Consignment Replacement Lien"), which would have the same validity and priority as the liens that existed and were held by the applicable Consignment Vendor on such Consigned Goods immediately prior to the sale of such Consigned Goods in the Debtors' stores, and which would be subject to any claims and defenses the Debtors or other parties may have with respect to such liens.[2]

11.    To preserve the status quo, the Debtors propose to deposit and set aside on a weekly basis all Consignment Proceeds into a segregated account, which will constitute the "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral") of the Debtors' secured lenders that may have liens on Consigned Goods and proceeds arising from any sale thereof (collectively, the "Secured Lenders").[3]

---

[2]    Pursuant to Local Rule 4001-2(a)(i)(G), the Debtors must  highlight proposed adequate protection provisions that would prime any secured lien without the consent of the applicable lien holder.  Here, the Debtors do not seek to prime any other liens. Instead, the Debtors seek replacement liens on the applicable Consignment Proceeds for Consignment Vendors that hold valid, enforceable, non-avoidable and perfected lien on Consigned Goods, with such liens having the same validity and priority such liens enjoyed before the sale of the applicable Consigned Goods, and subject to applicable defenses thereto.

[3]    As used in this Motion, the "Secured Lenders" are (a) Bank of America, N.A., as agent under that certain Second Amended and Restated Credit Agreement, dated as of May 17, 2012 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "ABL Credit Agreement") by and among The Sports Authority, Inc. and TSA Stores, Inc., as borrowers, Slap Shot Holdings Corp. and TSA Gift Card, Inc., as guarantors, Bank of America, N.A., as administrative agent, and the lenders party thereto, which provides up to $650 million in aggregate loans in the form of an asset-based revolving credit facility and matures on May 17, 2017; (b) Wells Fargo Bank, National Association, as FILO Agent under that certain Second Amendment to the ABL Credit Agreement by and among The Sports Authority, Inc. and TSA Stores, Inc. as borrowers, Slap Shot Holdings Corp. and TSA Gift Card, Inc., as guarantors, Bank of America, N.A. as administrative agent, Wells Fargo Bank, National Association, as FILO agent (the "FILO Agent"), the lenders under the ABL Credit Agreement, and the additional lenders party thereto, which provided for the addition to the ABL Credit Agreement of a $95 million first-in, last-out term loan tranche; (c) Wilmington Savings Fund Society, FSB, as agent under that certain Amended and Restated Credit Agreement, dated as of November 16, 2010, by and among The Sports Authority, Inc., as borrower, Slap Shot Holdings Corp., TSA Stores, Inc., and

12.     In addition, upon obtaining consent from the Secured Lenders, the Debtors seek authority to remit the Consignment Sale Price to applicable putative Consignment Vendors in the ordinary course.  The Debtors will use reasonable best efforts where appropriate and practicable to condition such payments on the applicable Consignment Vendor's agreement to (a) accept such payment in satisfaction of all or a part of its prepetition claim against the Debtors, and (b) continue to provide goods to the Debtors during these Chapter 11 Cases on terms that are no less favorable to the Debtors than those practices and programs in place during the one-year period immediately preceding the Petition Date (the "Customary Trade Terms").  Moreover, the Debtors' remittance of the Consignment Sale Price to Consignment Vendors pursuant to the Interim Order or the Final Order shall be premised on the assumption that the applicable Consignment Vendor has taken the necessary steps to properly perfect its interest in the applicable Consigned Goods.  In the event that a Consignment Vendor accepts payment pursuant to the Interim Order or the Final Order and it is later determined that such Consignment Vendor did not have a valid, enforceable, non-avoidable and perfected lien on any Consigned Goods, then the Debtors reserve the right to seek to have the payment recharacterized as an improper postpetition transfer on account of a prepetition claim and to seek either to (a) recover such improper Postpetition transfer or (b) have the improper Postpetition transfer applied to any outstanding postpetition balance relating to such Consignment Vendor.[4]

---

TSA Gift Card, Inc. as guarantors, Bank of America, N.A., as administrative agent, and the lenders named therein (the "Term Lenders"), whereby the Term Lenders extended a term loan in the original principal amount of approximately $300 million; (d) Bank of America, N.A. as Administrative Agent and Collateral Agent (in such capacity, the "DIP Agent"), and the revolving lenders parties thereto (the "Revolving DIP Lenders"); and (e) Wells Fargo Bank, National Association as FILO Agent (the "DIP FILO Agent"), and  the FILO lenders parties thereto (the "FILO DIP Lenders").

[4]  Concurrently herewith, the Debtors filed the *Debtors' Motion for Interim and Final Orders Authorizing Debtors to Pay Certain Prepetition Claims of Critical Vendors* (the "Critical Vendor Motion").  The Debtors may alternatively determine that certain Consignment Vendors qualify as "critical vendors" as such term is used in

## RELIEF REQUESTED

13.     The Debtors seek entry of the Interim Order and the Final Order (a) authorizing the Debtors to (i) continue to sell Consigned Goods in the ordinary course of business, free and clear of all liens, claims and encumbrances, and (ii) grant administrative expense priority under section 503(b) of the Bankruptcy Code to Consignment Vendors for all undisputed obligations arising from the delivery of Consigned Goods to the Debtors after the Petition Date; and (b) granting replacement liens to Consignment Vendors that have valid, enforceable, non-avoidable and perfected lien on any Consigned Goods that are sold and/or remitting the Consignment Sale Price to putative Consignment Vendors upon obtaining the appropriate consents from the Debtors' Secured Lenders.

## BASIS FOR RELIEF REQUESTED

**A.    The Continued Sale of Consigned Goods is Authorized Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code**

14.     Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 363(b) permits a debtor to use, sell, or lease, estate property "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1).  Courts have authorized relief under section 363(b) where a debtor demonstrated a sound business justification for such relief.  *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re*

---

the Critical Vendor Motion, and may seek to pay such Consignment Vendors on account of certain  prepetition claims under the Court order granting the relief requested in the Critical Vendor Motion.

*Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1985) ("[T]he debtor must articulate some business justification, other than mere appeasement of major creditors.").

15.    "The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company.'"  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)).  The business judgment rule applies in chapter 11 cases.  *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992) ("Delaware business judgment rule principles have 'vitality by analogy' in Chapter 11."); *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").  Once a debtor has articulated a valid business justification, the court accords great deference to such judgment, even in the context of chapter 11 cases.  *See Integrated Res.,* 147 B.R. at 656; *In re Johns-Manville Corp.,* 60 B.R. at 615-16. The Third Circuit has explained that "under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification" with respect to sales under section 363.  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996).

16.    Here, the Debtors believe that it is in their best interests and the best interests of their estates to continue selling Consigned Goods in the ordinary course of business and in accordance with their prepetition practices and procedures to maximize sales, retain their customer base by offering the widest possible selection of sporting goods, and thereby minimize disruption to their business.  The Debtors further believe that it is critical that they have access to

all proceeds from sales in the ordinary course of business to maintain sufficient liquidity to meet

their working capital needs, augment their restructuring efforts, and preserve the going concern

value of their business for the benefit of all stakeholders.

17.     This court and others have permitted other similarly situated debtors to continue

to sell consigned goods in the ordinary course of their business in several chapter 11 cases

involving retail debtors.  *See, e.g.*, *In re Ultra Stores, Inc.*, Case No. 09-11854 (Bankr. S.D.N.Y.

Apr. 14, 2009) (interim order), (Bankr. S.D.N.Y. Apr. 28, 2009) (final order); *In re Tweeter*

*Opco, LLC*, Case No. 08-12646 (Bankr. D. Del. Nov. 26, 2008) (interim order), (Bankr. D. Del.

Dec. 1, 2008 (final order); *In re Friedman's Inc.*, Case No. 08-10161 (Bankr. D. Del. Jan. 29,

2008) (interim order), (Bankr. D. Del. Feb. 13, 2008) (final order); *In re Whitehall Jewelers*

*Holdings, Inc.*, Case No. 08-11261 (Bankr. D. Del. June 24, 2008) (interim order), (Bankr. D.

Del. July 18, 2008) (final order); *In re Hancock Fabrics, Inc.*, Case No. 07-10353 (Bankr. D.

Del. Apr. 13, 2007).

18.     Accordingly, the Debtors submit that it essential to their restructuring efforts that

they have continued ability to sell Consigned Goods in the ordinary course of business and that

there is sufficient business justification for such sale authority.

**B.     Pursuant to Section 503(b) of the Bankruptcy Code, the Debtors May Grant**
**        Administrative Expense Priority for Obligations Arising From the Postpetition**
**        Delivery of Consigned Goods**

19.     Pursuant to section 503(b) of the Bankruptcy Code, certain obligations that arise

in connection with the postpetition delivery of goods and services, including goods ordered

prepetition, are entitled to treatment as administrative expense priority claims because they

benefit the estate postpetition.  Accordingly, granting administrative expense priority to

Consignment Vendors that deliver Consigned Goods after the Petition Date for obligations

arising from the delivery of such goods will not provide such Consignment Vendors with any

greater priority than they would otherwise have if the relief requested herein were not granted.

Therefore, the requested relief will not prejudice any other party in interest in these Chapter 11

Cases.  The Debtors' ability to receive Consigned Goods is critical to the Debtors' ability to

continue their operations without substantial disruption and delays.  Therefore, the Debtors

submit that the Court should confirm the administrative expense priority of the obligations

arising from Consigned Goods delivered after the Petition Date to the Debtors upon their request.

This court and others have  granted similar relief to retail debtors.  *See, e.g.*, *In re Northstar*

*Aerospace (USA) Inc.*, Case No. 12-11817 (Bankr. D. Del. June 15, 2012); *In re Ultra Stores,*

*Inc.*, Case No. 09-11854 (Bankr. S.D.N.Y. Apr. 14, 2009) (interim order), (Bankr. S.D.N.Y. Apr.

28, 2009) (final order).

**C.      Sale of Consigned Goods Free and Clear of Liens, Claims and Encumbrances is
          Authorized Under Section 363 of the Bankruptcy Code**

20.      A debtor in possession may sell property under sections 363(b) and 363(f) of the

Bankruptcy Code "free and clear of any interest in such property of an entity other than the

estate" if any one of the following conditions is satisfied:

(1)      applicable non-bankruptcy law permits the sale of such property free and
         clear of such interest;

(2)      such entity consents;

(3)      such interest is a lien and the price at which such property is to be sold is
         greater than the aggregate value of all liens on such property;

(4)      such interest is a bona fide dispute; or

(5)      such entity could be compelled, in a legal or equitable proceeding, to
         accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

21.      Although the term "any interest" is not defined in the Bankruptcy Code, the Third

Circuit has noted the trend in modern cases toward a "broader interpretation which includes other

obligations that may flow from ownership of the property." *Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 258-59 (3d Cir. 2000).  The scope of section 363(f) is not limited to in rem interests in a debtor's assets.  *Id.* (citing *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-82 (4th Cir. 1996)).  A debtor can therefore sell its assets under section 363(f) free and clear of successor liability that otherwise would have arisen under federal statute.  *Id.*

22.     The Debtors request approval to continue to sell Consigned Goods free and clear of any liens, claims and encumbrances in accordance with section 363(f) of the Bankruptcy Code.  The Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f) in connection with any liens, claims and encumbrances a party may assert with respect to any Consigned Goods.  Furthermore, the Debtors propose that any such liens, claims, and encumbrances be transferred and attached to the proceeds of Consigned Goods, up to the amount of the relevant Consignment Sale Price, with the same priority and subject to the same rights, claims, defenses, and objections, if any, of all parties with respect thereto.

**D.     Remittance of the Consignment Sale Price to the Consignment Vendors is Warranted Pursuant to Sections 105(a) and 363 of the Bankruptcy Code**

23.     The Court may authorize remittance of the Consignment Sale Price to the applicable Consignment Vendors pursuant to section 363 of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides that a debtor may "after notice and a hearing, use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of that debtor.  *See Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Co. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court determining an application pursuant to section 363(b) must find from the evidence a good business reason to grant such application); *In re*

*Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (standard for determining a section 363(b) motion is whether the debtor has a "good business reason" for the requested relief); *In re James A. Phillips, Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (authorizing a contractor to pay prepetition claims of some suppliers who were potential lien claimants pursuant to section 363 because the payments were necessary for the general contractors to release funds owed to the debtors). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

24.    Numerous courts have also used their section 105(a) equitable powers under the necessity of payment doctrine to authorize payment of a debtor's prepetition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of chapter 11 reorganization, which is to prevent the debtor from going into liquidation and to preserve the going concern value of the Debtors. *See, e.g.*, *In re Lehigh Co. & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) ("[T]he necessity of payment doctrine . . . [permits] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid." (citation omitted)). This doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor," which is consistent with a paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). *See also In re Just For Feet, Inc.*, 242 B.R. 821, 825 (Bankr. D. Del. 1999) (collecting cases); *In re Columbia Gas Sys., Inc.*,

136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'").

25.     Remittance of the Consignment Sale Price to the applicable Consignment Vendors is necessary to ensure that the Debtors can continue to receive goods for resale to their customers and, in turn, preserve and enhance the value of the Debtors' estates.  Selling goods provided by the Consignment Vendors is an essential aspect of the Debtors' business operations. If the Debtors can no longer offer the Consigned Goods, they will suffer severe losses in sales volume and be required to search for substitute vendors, likely requiring the Debtors to forgo existing favorable trade terms to the extent any substitute vendors are viable.

26.     What's more, remittance of the Consignment Sale Price to the applicable Consignment Vendors will not harm any party.  The Debtors will only make such payments (a) with the consent of the Secured Lenders that arguably have a lien on the applicable Consignment Sale Price, and (b) where the Debtors are satisfied that the applicable Consignment Vendor has a valid, enforceable, non-avoidable and perfected lien on Consigned Goods. Accordingly, remittance of the Consignment Sale Price to the applicable Consignment Vendors will not affect the substantive rights of any party; but will enable the Debtors to continue their consignment relationships for the benefit of all parties in interest.

27.     Courts in this District have regularly granted authority similar to the relief requested herein.  *See, e.g.*, *In re Hancock Fabrics, Inc.*, Case No. 16-10296 (Bankr. D. Del. Feb. 3, 2016) (interim order); *In re LodgeNet Interactive Corp.*, Case No. 13-10238 (Bankr. S.D.N.Y. Jan. 29, 2013) (interim order), (Bankr. S.D.N.Y. Feb. 27, 2013) (final order); *In re RoomStore, Inc.*, Case No. 11-37790 (Bankr. E.D. Va. Dec. 14, 2011) (interim order), (Bankr. E.D. Va. Jan.

3, 2012) (final order); *In re Ultra Stores, Inc.*, Case No. 09-11854 (Bankr. S.D.N.Y. Apr. 14, 2009) (interim order), (Bankr. S.D.N.Y. Apr. 28, 2009) (final order).

### E.    Immediate Relief is Justified

28.    Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

29.    Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to the Debtors' customers and other third parties.  Unlike Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to the estate alone.  Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally.  *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate").  Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary junctions.  *See* 9 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 4001.07[b][3] (16th ed.) (discussing source of "irreparable harm" standard under Rule 4001(c)(2)).  Courts will routinely consider third-party interests when granting such relief.  *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

30.     As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm absent the relief requested herein.  Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF STAY

31.     To implement the foregoing, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

32.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed applicable.

## DEBTORS' RESERVATION OF RIGHTS

33.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval, assumption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any invoice or claim, lien or interest in, on account of, or related to any Consigned Goods.

34.     The Debtors do not waive any claims by the filing of the Motion.  The Debtors also reserve the right to file any motion or other pleading respecting any Consigned Goods or Consignment Vendors.

01:18375370.1

## NOTICE

35.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors; (c) Riemer & Braunstein LLP (attn: Donald Rothman) as counsel for (i) Bank of America, N.A., in its capacity as Administrative Agent and Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012, and (ii) certain DIP Lenders under the Debtors' proposed postpetition financing facility; (d) Brown Rudnick LLP (attn: Robert Stark and Bennett Silverberg) as counsel for (i) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (ii) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (e) Choate, Hall & Stewart LLP (attn: Kevin Simard) as counsel for (i) Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015, and (ii) certain DIP Lenders under the Debtors' proposed postpetition financing facility; (f) O'Melveny & Meyers LLP (attn: John Rapisardi) as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (g) all holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (h) the Consignment Vendors; and (i) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

01:18375370.1

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:    March 2, 2016
          Wilmington, Delaware              */s/ Andrew L. Magaziner*
                                            Michael R. Nestor (No. 3526)
                                            Kenneth J. Enos (No. 4544)
                                            Andrew L. Magaziner (No. 5426)
                                            YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                            Rodney Square
                                            1000 North King Street
                                            Wilmington, Delaware 19801
                                            Telephone:  (302) 571-6600
                                            Facsimile:  (302) 571-1253
                                            mnestor@ycst.com
                                            kenos@ycst.com
                                            amagaziner@ycst.com

                                            -and-

                                            Robert A. Klyman (CA No. 142723)
                                            Matthew J. Williams (NY No. 3019106)
                                            Jeremy L. Graves (CO No. 45522)
                                            Sabina Jacobs (CA No. 274829)
                                            GIBSON, DUNN & CRUTCHER LLP
                                            333 South Grand Avenue
                                            Los Angeles, CA 90071-1512
                                            Telephone: (213) 229-7000
                                            Facsimile: (213) 229-7520
                                            rklyman@gibsondunn.com
                                            mjwilliams@gibsondunn.com
                                            jgraves@gibsondunn.com
                                            sjacobs@gibsondunn.com

                                            *Proposed Counsel to the Debtors and
                                            Debtors in Possession*

01:18375370.1

**EXHIBIT A**

**PROPOSED INTERIM ORDER**

01:18375370.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-_____ (___) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ____ |

**INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO (I) CONTINUE TO SELL CONSIGNED GOODS IN THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND (II) GRANT ADMINISTRATIVE EXPENSE PRIORITY TO CONSIGNMENT VENDORS FOR CONSIGNED GOODS DELIVERED POSTPETITION; AND (B) GRANT REPLACEMENT LIENS TO CONSIGNMENT VENDORS WITH PERFECTED SECURITY INTERESTS IN CONSIGNED GOODS AND/OR REMIT THE CONSIGNMENT SALE PRICE ARISING FROM SALE OF CONSIGNED GOODS TO PUTATIVE CONSIGNMENT VENDORS**

Upon the *Debtors' Motion for Interim and Final Orders (a) Authorizing the Debtors to (i) Continue to Sell Consigned Goods in the Ordinary Course of Business Free and Clear of All Liens, Claims and Encumbrances and (ii) Grant Administrative Expense Priority to Consignment Vendors for Consigned Goods Delivered Postpetition; and (b) Grant Replacement Liens to Consignment Vendors with Perfected Security Interests in Consigned Goods and/or Remit the Consignment Sale Price Arising from Sale of Consigned Goods to Putative Consignment Vendors* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2]    All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

the United States District Court for the District of Delaware dated as of February 29, 2012; and

the Court having found that venue of these cases and the Motion in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that it may enter a final

order consistent with Article III of the United States Constitution; and the Court having found

that notice of the Motion has been given as set forth in the Motion and that such notice is

adequate and no other or further notice need be given; and the Court having considered the First

Day Declaration; and upon the record of the hearing and all of the proceedings had before the

Court; and the Court having found that the relief sought in the Motion is in the best interests of

the Debtors, their estates, their creditors and all other parties in interest; and the Court having

found that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED as set forth herein on an interim basis until such time

as the Court conducts a final hearing on this matter (the "Final Hearing").

2.     The Final Hearing shall take place on _____, 2016 at __:__ _.m.

(prevailing Eastern Time).  Any objections or responses to the Motion shall be filed on or before

4:00 p.m. (prevailing Eastern Time) _____, 2016 and served on the parties required

by Local Rule 2002-1(b).

3.     The Debtors are authorized to continue to sell the Consigned Goods received pre-

petition from the Consignment Vendors in the ordinary course of business, free and clear of all

liens, claims and encumbrances.  The Debtors shall set aside all proceeds from the sale of

Consigned Goods into a separate escrow account on a weekly basis.

01:18375370.1

4.      Consignment Vendors are granted, on an interim basis subject to the entry of the Final Order, Consignment Replacement Liens on the proceeds of any Consigned Goods that are sold after the Petition Date up to the Consignment Sale Price, with such Consignment Replacement Liens having the same validity and priority as any lien that existed on the Consigned Goods immediately prior to their sale, subject to any claims and defenses the Debtors or other parties may have had with respect to the applicable liens on the Consigned Goods.

5.      Notwithstanding paragraph 4 herein, upon obtaining consent from the Secured Lenders, the Debtors are hereby authorized, on an interim basis, to remit the Consignment Sale Price to putative Consignment Vendors arising from the sale of Consigned Goods received prepetition.  The Debtors shall use reasonable efforts where appropriate and practicable to condition such payments on the applicable Consignment Vendor's agreement to (a) accept such payment in satisfaction of all or a part of its prepetition claim against the Debtors, and (b) continue to provide goods to the Debtors during these Chapter 11 Cases on Customary Trade Terms.

6.      In the event that a Consignment Vendor accepts payment pursuant to this Interim Order and it is later determined that such Consignment Vendor did not have a valid, enforceable, non-avoidable and perfected lien on Consigned Goods, then the Debtors' rights to seek to have the payment recharacterized as an improper postpetition transfer on account of a prepetition claim and to seek either to (a) recover such improper Postpetition transfer or (b) have the improper Postpetition transfer applied to any outstanding postpetition balance relating to such Consignment Vendor are hereby expressly preserved.

7.      The Debtors are authorized to order and receive Consigned Goods from Consignment Vendors during the postpetition period and to grant administrative expense priority

to Consignment Vendors for undisputed obligations arising from the delivery of Consigned

Goods during the postpetition period.  In exchange for the postpetition delivery of such

Consigned Goods, the Debtors are authorized to grant to the applicable Consignment Vendors

administrative expense priority under section 503(b) of the Bankruptcy Code for all undisputed

obligations arising from the delivery of Consigned Goods to the Debtors during the postpetition

period.

8.      Nothing in this Interim Order shall be construed to limit, or in any way affect, the

rights of any party to dispute any claim asserted by a Consignment Vendor on any grounds,

including contesting or disputing the improper perfection or lack of perfection of any purported

security interest with respect to any Consigned Goods, or to assert offsets against or defenses to

such claim, as to amount, liability or otherwise.

9.      This Interim Order is not a determination that any Consignment Vendor is or is

not entitled to adequate protection, that any Consignment Vendor does or does not have a

consignment relationship with the Debtors, or that any Consignment Vendor has or does not

have a valid, enforceable, non-avoidable and perfected lien on any Consigned Goods, all parties

reserving all rights on such issues.

10.     Nothing in this Interim Order shall decrease or increase the rights of any party

with respect to the Consigned Goods, or take away or provide any Consignment Vendor with any

interest in the proceeds of any Consigned Goods that are less than or greater than the interest that

such Consignment Vendor would have absent the entry of this Order, and after giving effect to

any waiver or releases that a Consignment Vendor may have given.

11.     Nothing in the Motion or this Interim Order shall be deemed or construed as:

(a) an admission as to the validity of any claim or lien against the Debtors or their estates; (b) a

waiver of the Debtors' right to dispute any claim or lien; (c) an approval or assumption of any

agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (d) an admission

of the priority status of any claim; or (e) a modification of the Debtors' rights to seek relief under

any section of the Bankruptcy Code on account of any amounts owed or paid to any

Consignment Vendor.

13. To the extent that Bankruptcy Rule 6004(h) is applicable, the terms and

conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

13. The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Interim Order in accordance with the Motion.

14. The Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation of this Interim Order.

Dated: March ___, 2016
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**PROPOSED FINAL ORDER**

01:18375370.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-_____ (___) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket Nos. ____ & ____ |

**FINAL ORDER (A) AUTHORIZING THE DEBTORS TO (I) CONTINUE TO SELL CONSIGNED GOODS IN THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND (II) GRANT ADMINISTRATIVE EXPENSE PRIORITY TO CONSIGNMENT VENDORS FOR CONSIGNED GOODS DELIVERED POSTPETITION; AND (B) GRANT REPLACEMENT LIENS TO CONSIGNMENT VENDORS WITH PERFECTED SECURITY INTERESTS IN CONSIGNED GOODS AND/OR REMIT THE CONSIGNMENT SALE PRICE ARISING FROM SALE OF CONSIGNED GOODS TO PUTATIVE CONSIGNMENT VENDORS**

Upon the *Debtors' Motion for Interim and Final Orders (a) Authorizing the Debtors to (i) Continue to Sell Consigned Goods in the Ordinary Course of Business Free and Clear of All Liens, Claims and Encumbrances and (ii) Grant Administrative Expense Priority to Consignment Vendors for Consigned Goods Delivered Postpetition; and (b) Grant Replacement Liens to Consignment Vendors with Perfected Security Interests in Consigned Goods and/or Remit the Consignment Sale Price Arising from Sale of Consigned Goods to Putative Consignment Vendors* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

01:18375370.1

the United States District Court for the District of Delaware dated as of February 29, 2012; and

the Court having found that venue of these cases and the Motion in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that it may enter a final

order consistent with Article III of the United States Constitution; and the Court having found

that notice of the Motion has been given as set forth in the Motion and that such notice is

adequate and no other or further notice need be given; and the Court having considered the First

Day Declaration; and hearings having been held to consider the relief requested in the Motion;

and upon the record of the hearings and all of the proceedings had before the Court, including the

hearing held on _____, 2016; and the Court having entered that certain *Interim Order (a)*

*Authorizing the Debtors to (i) Continue to Sell Consigned Goods in the Ordinary Course of*

*Business Free and Clear of All Liens, Claims and Encumbrances and (ii) Grant Administrative*

*Expense Priority to Consignment Vendors for Consigned Goods Delivered Postpetition; and (B)*

*Grant Replacement Liens to Consignment Vendors with Perfected Security Interests in*

*Consigned Goods and/or Remit the Consignment Sale Price Arising from Sale of Consigned*

*Goods to Putative Consignment Vendors* [D.I. ___] on _____, 2016; and upon the record

of the hearing and all of the proceedings had before the Court; and the Court having found that

the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors

and all other parties in interest; and the Court having found that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor,

      **IT IS HEREBY ORDERED THAT:**

    1.    The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized to continue to sell the Consigned Goods received pre-petition from the Consignment Vendors in the ordinary course of business, free and clear of all liens, claims and encumbrances.  The Debtors shall set aside all proceeds from the sale of Consigned Goods into a separate escrow account on a weekly basis.

3.      Consignment Vendors are granted Consignment Replacement Liens on the proceeds of the Consigned Goods that are sold after the Petition Date up to the Consignment Sale Price, with such Consignment Replacement Liens having the same validity and priority as any liens that existed on the Consigned Goods immediately prior to their sale, subject to any claims and defenses the Debtors or other parties may have had with respect to the applicable lien on the Consigned Goods.

4.      Notwithstanding paragraph 3 herein, upon obtaining consent from the Secured Lenders, the Debtors are hereby authorized to remit the Consignment Sale Price to putative Consignment Vendors arising from the sale of Consigned Goods received prepetition.  The Debtors shall use reasonable efforts where appropriate and practicable to condition such payments on the applicable Consignment Vendor's agreement to (a) accept such payment in satisfaction of all or a part of its prepetition claim against the Debtors, and (b) continue to provide goods to the Debtors during these Chapter 11 Cases on Customary Trade Terms.

5.      In the event that a Consignment Vendor accepts payment pursuant to this Interim Order and it is later determined that such Consignment Vendor did not have a valid, enforceable, non-avoidable and perfected lien on any Consigned Goods, then the Debtors' rights to seek to have the payment recharacterized as an improper postpetition transfer on account of a prepetition claim and to seek either to (a) recover such improper Postpetition transfer or (b) have the

01:18375370.1

improper Postpetition transfer applied to any outstanding postpetition balance relating to such Consignment Vendor are hereby expressly preserved.

6.     The Debtors are authorized to order and receive Consigned Goods from Consignment Vendors during the postpetition period and to grant administrative expense priority to Consignment Vendors for undisputed obligations arising from the delivery of Consigned Goods during the postpetition period.  In exchange for the postpetition delivery of such Consigned Goods, the Debtors are authorized to grant to the applicable Consignment Vendors administrative expense priority under section 503(b) of the Bankruptcy Code for all undisputed obligations arising from the delivery of Consigned Goods to the Debtors during the postpetition period.

7.     Nothing in this Final Order shall be construed to limit, or in any way affect, the ability of any party to dispute any claim asserted by a Consignment Vendor on any grounds, including contesting or disputing the improper perfection or lack of perfection of any purported security interest with respect to any Consigned Goods, or to assert offsets against or defenses to such claim, as to amount, liability or otherwise.

8.     This Final Order is not a determination that any Consignment Vendor is or is not entitled to adequate protection, that any Consignment Vendor does or does not have a consignment relationship with the Debtors, or that any Consignment Vendor has or does not have valid, enforceable, non-avoidable and perfected lien on any Consigned Goods, all parties reserving all rights on such issues.

9.     Nothing in this Final Order shall decrease or increase the rights of any party with respect to the Consigned Goods, or take away or provide any Consignment Vendor with any interest in the proceeds of any Consigned Goods that are less than or greater than the interest that

such Consignment Vendor would have absent the entry of this Final Order, and after giving effect to any waiver or releases that a Consignment Vendor may have given.

10.     Nothing in the Motion or this Final Order shall be deemed or construed as:  (a) an admission as to the validity of any claim or lien against the Debtors or their estates; (b) a waiver of the Debtors' right to dispute any claim or lien; (c) an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (d) an admission of the priority status of any claim; or (e) a modification of the Debtors' rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid to any Consignment Vendor.

11.     To the extent that Bankruptcy Rule 6004(h) is applicable, the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

13.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

Dated: _____, 2016
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE