## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-_____ (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO PAY, IN THE ORDINARY COURSE OF BUSINESS, CLAIMS FOR GOODS ORDERED PREPETITION AND DELIVERED POSTPETITION; (B) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF SHIPPERS, LIEN CLAIMANTS, AND IMPORT CLAIMANTS; AND (C) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Sports Authority Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move this Court (this "Motion") for entry of interim and final orders (collective, the "Orders"), substantially in the forms annexed hereto as Exhibit A and Exhibit B, respectively, pursuant to sections 105, 363, 364, 503, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing, but not requiring, the Debtors to pay, in the ordinary course of business, (i) claims for goods ordered prepetition that are to be delivered postpetition; (ii) certain prepetition claims of shippers and lien claimants; and (iii) certain prepetition import obligations; and (b) authorizing banks and other financial institutions  at which the Debtors hold accounts (collectively, the "Banks") to receive,

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

process, honor, and pay checks or electronic transfers used by the Debtors to pay the foregoing

and to rely on the representations of the Debtors as to which checks are issued and authorized to

be paid in accordance with this Motion.  In support of the Motion, the Debtors rely upon and

incorporate by reference the *Declaration of Jeremy Aguilar in Support of the Debtors' Chapter*

*11 Petitions and Requests for First Day Relief* (the "First Day Declaration"), which was filed

concurrently herewith.  In further support of this Motion, the Debtors respectfully represent as

follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334(b), and the *Amended Standing Order of Reference* from the United States District Court for

the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final

order by the Court in connection with this Motion to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.  Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory and legal predicates for the relief requested herein are sections 105,

363, 364, 503, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and

Local Rule 9013-1(m).

## BACKGROUND

**A.    General Background**

3.    On the date hereof (the "Petition Date"), each of the Debtors commenced a

voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108

of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

4. Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases (collectively, the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

5. Information regarding the Debtors' history, business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in the First Day Declaration.

**B. The Debtors' Outstanding Orders**

6. Prior to the Petition Date, and in the ordinary course of business, the Debtors ordered a variety of goods for which delivery will not occur until on or after the Petition Date (the "Outstanding Orders").

7. Suppliers of the Outstanding Orders (the "Outstanding Order Suppliers") are typically not paid in advance, but rather invoice the Debtors for shipping and storing services previously rendered, providing the Debtors with viable trade terms and, consequently, liquidity. As a result of the commencement of the Chapter 11 Cases, the Outstanding Order Suppliers may be concerned that goods ordered prior to the Petition Date pursuant to the Outstanding Orders, which are slated to be delivered to the Debtors on or after the Petition Date, will render such suppliers general unsecured creditors of the Debtors' estates with respect to their claims in connection with delivering such goods.  Based on such concerns, suppliers may refuse to ship or transport such goods (or recall shipments) with respect to the Outstanding Orders unless the Debtors either undertake the burdensome and protracted process of issuing substitute purchase orders postpetition, or obtain the relief reflected in the Orders attached hereto: (a) granting all

01:18375377.1

undisputed obligations of the Debtors arising from the acceptance of goods subject to Outstanding Orders administrative expense priority under section 503(b) of the Bankruptcy Code and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business. Accordingly, the Debtors seek this authority to avoid the costs, delays, and damage to the Debtors' business that would result from any such disruptions.

**C.      The Debtors' Shippers, Lien Claimants, and Import Claimants**

8.      The Debtors currently operate more than 450 sporting goods stores in 40 states and Puerto Rico.  The Debtors have developed a complex supply chain and distribution network that includes shipping and warehousing merchandise for delivery to the Debtors' stores and e-commerce customers.  Approximately 94% of the Debtors' inventory is received and processed by five regional distribution centers (the "<u>DCs</u>")[2], with the balance of goods being sent directly to stores by vendors.

**(i)      The Debtors' Shippers**

9.      The Debtors depend on the services of, among others, shippers, truckers, expediters, customs brokers, consolidators, and other carriers (collectively, the "<u>Shippers</u>") to ensure the timely shipping and delivery of merchandise in the ordinary course of the Debtors' business.  Inventory flowing through the DCs is shipped by vendors to one of the DCs for processing, and is then sent on to stores, with each store receiving shipments at least weekly. Some domestic suppliers of goods require the Debtors to pay for the cost of shipping the materials to the Debtors' facilities.  The Debtors also rely on Shippers in the ordinary course of business to transport goods between the Debtors' stores, and to return goods, merchandise, and products from the Debtors' customers and/or to the Debtors' vendors.

---

[2]      The Debtors anticipate that they will close two of the DCs during the course of these Chapter 11 Cases.

10.     With respect to foreign suppliers, such vendors typically provide shipping to a local overseas port as part of the purchase price, but the Debtors are frequently responsible for the cost of shipping the goods from the local port to their facilities and certain customs duties, detention and demurrage fees, tariffs and excise and related taxes, and other similar charges. The Debtors primarily rely on a single vendor, Yusen Logistics, to take possession of and consolidate vendor products in a warehouse in Hong Kong and to bring such goods through customs.

11.     In total, the Debtors use approximately 51 Shippers to move products to and from the DCs, warehouses, and retail stores. On average, the Debtors pay approximately $65,800,000 to the Shippers annually for delivery and/or distribution of goods. The Debtors estimate that, as of the Petition Date, the outstanding prepetition invoices of the Shippers (inbound and outbound) are approximately $2,200,000 (the "Shipping Charges").

12.     In some cases, the vendor that delivered goods to a Shipper in a foreign jurisdiction may have the ability to assert a claim against such Shipper based on the Debtors' non-payment of the foreign vendor's claim. In that case, the applicable Shipper may have an indemnification claim (a "Shipper Indemnification Claim") against the Debtors equal to the amount of any judgment entered against such Shipper. Because the Shippers with Shipper Indemnification Claims may have possession of goods belonging to the Debtors that have a value that is greater than the amount of the applicable Shipper Indemnification Claim, the Debtors request authority to pay up to $2 million in Shipper Indemnification Claims pursuant to the final order.

**(ii)     The Debtors' Lien Claimants**

13.     The Debtors transact with a number of third parties, including but not limited to the Shippers, that could potentially assert liens against the Debtors and their property for

amounts the Debtors owe to those third parties (the "Lien Claimants,"[3] and together with the Shippers, the "Possessory Claimants").  Delays in the payment of Distribution Charges with respect to goods that are in the possession of the Possessory Claimants as of the Petition Date will in many cases result in the assertion, under applicable law, of possessory liens upon the Debtors' property in possession of such parties.

14.    To avoid undue delay and to facilitate the continued operation of the Debtors' business, the Debtors seek immediate authority to pay and discharge, on a case-by-case basis and in their sole discretion, the claims of all Lien Claimants that have given or could give rise to a lien against the Debtors, regardless of whether such Lien Claimants have already perfected their interests.  The Debtors estimate that, as of the Petition Date, the outstanding prepetition invoices of the Lien Claimants are approximately $1,287,000 (the "Lien Claims").

(iii)    **The Debtors' Import Charges**

15.    In the ordinary course of their businesses, the Debtors receive a variety of goods, products, and related materials (collectively, the "Imported Goods") from a number of foreign countries.  Timely receipt of the Imported Goods is critical to the Debtors' business operations.

16.    In connection with the importing of goods, the Debtors may be required to pay certain import charges (the "Import Charges" and, collectively with the Shipping Charges and Lien Claims, the "Distribution Charges"), including but not limited to customs duties, detention and demurrage fees, tariffs, excise taxes, and other similar obligations.  The Debtors pay

---

[3]    The "Lien Claimants" do not include the Consignment Vendors, as such term is defined and used in *Debtors' Motion for Interim and Final Orders (A) Authorizing the Debtors to (I) Continue to Sell Consigned Goods in the Ordinary Course of Business Free and Clear of All Liens, Claims and Encumbrances and (II) Grant Administrative Expense Priority to Consignment Vendors For Consigned Goods Delivered Postpetition; (B) Approving Consignment Claims Procedures; (C) Granting Adequate Protection to Consignment Vendors with Perfected Security Interests in Consigned Goods in Accordance with the Consignment Claims Procedures; (D) Establishing Consignment Claims Bar Date; and (E) Approving the Consignment Claims Bar Date Notice*, filed concurrently herewith.

approximately $5,600,000 annually in Import Charges.  The estimated outstanding prepetition Import Charges for goods currently in transit is approximately $760,000.

17.    To comply with customs requirements implicated by the receipt of certain inventory and other goods, the Debtors must post and maintain bonds to cover Import Charges (collectively, the "Bonds").  Prior to the Petition Date, and as described further in the *Debtors' Motion for Entry of (A) an Order (I) Authorizing Debtors to Honor and Continue Certain Customer Programs and Customer Obligations in the Ordinary Course of Business, and (II) Approving Agreement by and Between the Debtors and Zurich American Insurance Company Relating to Prepetition Bonds, on an Interim Basis, and (B) a Supplemental Order Approving Bonding Agreement on Final Basis and Granting Related Relief* (the "Customer Programs Motion"), filed concurrently herewith, Zurich American Insurance Company ("Zurich") made certain bonding capacity available to the Debtors under and pursuant to a General Agreement of Indemnity, dated November 14, 2006 (the "Bonding Program"), as supplemented by an Agreement to Provide Surety Capacity as a Financial Accommodation, dated as February 18, 2016 (the "Bonding Agreement").  As detailed in the Bonding Agreement, as consideration for the extension of significant replacement bonding capacity, Zurich required delivery of a letter of credit to back the Bonds, and any draw on the Bonds would allow Zurich to draw on the letter of credit.  In the Customer Programs Motion, the Debtors seek approval of the Bonding Agreement on an interim basis and a finding that the collateral received by Zurich in consideration for extending new bonding capacity does not give rise to a preferential transfer under section 547 of the Bankruptcy Code.

18.    The Debtors seek authority to pay any and all necessary and appropriate Import Charges incurred on account of prepetition transactions.  Payment of the Import Charges is

critical to ensure the uninterrupted flow of Imported Goods.  Absent such payment, parties to whom Import Charges are owed (the "Import Claimants") may interfere with the transportation of such goods.  If the flow of Imported Goods were to be interrupted, the Debtors would be deprived of the products necessary to draw customers to their stores, and in some instances, complete orders already placed by their customers.  The value of these products is far greater to the Debtors (both in terms of revenues and the maintenance of customer goodwill) than the aggregate amount of incurred, but unpaid, Import Charges.

**D.      The Debtors' Need to Pay the Distribution Charges**

19.      Prior to the commencement of these Chapter 11 Cases, in consultation with their advisors, the Debtors spent a significant amount of time reviewing and analyzing their books and records, consulting operations management, reviewing contracts and service agreements, and analyzing applicable laws, regulations, and historical practice to identify certain critical business relationships and service suppliers—the loss of which could materially harm the Debtors' business.  Based upon this review, the Debtors have concluded that having the authority to pay the Distribution Charges requested herein is necessary to ensure that the Debtors will be able to continue to perform their customer commitments and keep their distribution and supply chain intact.  With respect to these Distribution Charges, the Debtors and their advisors determined that the value of the goods, products, and related materials in possession of the Possessory Claimants was significantly greater than the prepetition Distribution Charges owed to such Possessory Claimants.

20.      The Debtors' supply chain and distribution network is vital to their business because customers rely on the Debtors to provide a consistent supply of in-season branded sporting goods and apparel.  A supply disruption would decrease revenues and erode customer goodwill, undermining the Debtors' ability to successfully reorganize.  In addition, delays in

payment of the Distribution Charges with respect to goods that are in the possession of the

Possessory Claimants would likely result in the assertion, under applicable law, of possessory

liens upon the Debtors' property in the possession of such parties.  Thus, to avoid undue delay

and to facilitate the continued operation of the Debtors' business, the Debtors seek immediate

authority to pay, on a case-by-case basis and in their sole discretion, the Distribution Charges to

ensure that the Debtors can continue to send, receive, and store merchandise, including any

merchandise currently in the possession of the Possessory Claimants.

21.     Typically, the Debtors' agreements with the Possessory Claimants set forth

agreed-upon rates for the services provided.  The Possessory Claimants are generally not paid in

advance but rather invoice the Debtors for shipping and storage services previously rendered,

providing the Debtors with viable trade terms and, thus, liquidity.  If the Debtors were required

to switch to alternative vendors, they would incur significant operational disruption and likely

increased costs.

22.     Further, the Debtors propose that, as a condition of accepting payment, a

Possessory Claimant must agree to a set of conditions set forth in the "Relief Requested" section,

*infra,* and the Orders.  Each Possessory Claimant to be paid pursuant to the Orders shall be

provided a copy of the Orders prior to payment, and as a condition of payment, shall agree to be

bound by the terms of the Orders.  If any Possessory Claimant accepts payment and thereafter

does not continue to provide services to the Debtors on Customary Trade Terms, then any

payment of the Distribution Charges made under this Motion to such Possessory Claimant would

be deemed an unauthorized postpetition transfer under section 549 of the Bankruptcy Code and,

therefore, would be avoidable and recoverable by the Debtors in cash upon written request,

subject to a Possessory Claimant's right to contest such treatment and request that the Debtors

schedule a hearing on such matter.  Upon any recovery by the Debtors, the Possessory

Claimant's claim would be reinstated as a prepetition claim in the amount so recovered, less the

Debtors' reasonable costs in recovering such amounts.

## **RELIEF REQUESTED**

23.     By this Motion, the Debtors seek entry of the Orders (a) authorizing, but not

requiring, the Debtors to pay, in the ordinary course of business, (i) claims for goods ordered

prepetition and that are to be delivered postpetition, and (ii) the Distribution Charges in an

aggregate amount not to exceed $6,250,000; and (b) authorizing the Banks to receive, process,

honor, and pay checks or electronic transfers used by the Debtors to pay the Distribution Charges

and to rely on the representations of the Debtors as to which checks are issued and authorized to

be paid in accordance with the relief granted in connection herewith.

24.     The Debtors propose that any payments made to the Possessory Claimants

pursuant to the Orders be subject to the following conditions:

> (a) The Debtors, in their sole discretion, shall determine which parties, if any, are entitled to payment under the Orders;

> (b) If a Possessory Claimant accepts payment under the Orders, such party is deemed to have agreed to (i) release any liens it may have on the Debtors' goods or property; *provided*, *however*, that should such party fail promptly to release such lien and/or interest upon payment by the Debtors, any such lien and/or interest shall be deemed released and expunged, without necessity of further action, and an order on this Motion, together with proof of payment, shall be all that is required to evidence such release and expungement, and (ii) subject to subparagraph (d) below, continue to provide goods or services to the Debtors on Customary Trade Terms during the pendency of the Chapter 11 Cases. "Customary Trade Terms" means (i) the most favorable trade terms and conditions, including credit terms, in effect between the Possessory Claimant and the Debtors during the one-year period preceding the Petition Date[4] or (ii) such

---

[4]   In the event the relationship between the party accepting payment under the Order and the Debtors does not extend to one year preceding the Petition Date, the Customary Trade Terms shall mean the terms that the party generally extends to its customers or such terms as are acceptable to the Debtors in the reasonable exercise of their business judgment.

other trade terms as the Debtors and the Possessory Claimant may mutually agree upon;

(c) Subject to subparagraph (d) below, if a Possessory Claimant accepts payment under the Orders and thereafter does not continue to provide goods or services to the Debtors on the Customary Trade Terms during the pendency of these Chapter 11 Cases, then (i) any payment on a prepetition claim received by such party shall be deemed to be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code and, therefore, recoverable by the Debtors in cash upon written request and (ii) subject to subparagraph (f) below, upon recovery by the Debtors, any such prepetition claim shall be reinstated as if the payment had not been made, less the Debtors' reasonable costs in recovering such amounts;

(d) In the event of the assertion of a possessory lien against the Debtors' property that prevents the Debtors from accessing their property without payment of the prepetition claim giving rise to the lien, the Debtors may, in their absolute discretion, determine to pay the claim without regard to subparagraphs (b)(ii) and (c) above;

(e) Prior to making a payment to a party under the Orders, the Debtors may, in their absolute discretion, settle all or part of the prepetition claims of such party for less than their face amount, without further notice or hearing; in any event, the Debtors may elect to only pay part of a prepetition claim under the authorization requested, leaving the remainder of the claim to be addressed pursuant to the provisions of the Bankruptcy Code; and

(f) If the Debtors seek to recover payments under subparagraph (c) above, nothing shall preclude a party from contesting such treatment by making a written request (a "Request") to the Debtors to schedule a hearing before this Court. If such a Request is made, the hearing on the Request will be the next scheduled hearing date not less than thirty (30) days after the Debtors received the Request, of which hearing the Debtors will provide notice to the requesting party and other interested parties in accordance with the Bankruptcy Code and the orders of this Court.

## BASIS FOR RELIEF REQUESTED

### A.    The Court Should Confirm that the Outstanding Orders are Administrative Expense Priority Claims

25.    Pursuant to section 503(b) of the Bankruptcy Code, certain obligations that arise in connection with the post-petition delivery of goods and services, including goods ordered prepetition, are entitled to treatment as administrative expense priority claims because they

benefit the estate post-petition.  Accordingly, granting the relief sought herein with respect to the

Outstanding Orders will not provide the suppliers with any greater priority than they would

otherwise have if the relief requested herein were not granted, and will not prejudice any other

party in interest.  Absent such relief, however, the Debtors may be required to expend substantial

time and effort reissuing the Outstanding Orders to provide the suppliers with assurance of such

administrative priority.[5]  The attendant disruption to the continuous and timely flow of

merchandise to the Debtors would lead to customer dissatisfaction, undermining customers'

confidence in the Debtors' ability to conduct business at this critical juncture.  Thus, the Debtors

submit that the Court should confirm the administrative expense priority status of the

Outstanding Orders and authorize the Debtors to pay the Outstanding Orders in the ordinary

course of business.  In addition, even if the Court were uncertain that the Outstanding Orders

would be entitled to administrative expense priority, ample authority (discussed below) exists to

support payment of the Outstanding Orders in the ordinary course of the Debtors' business

because the Debtors' receipt of the Outstanding Orders is critical to the Debtors' ability to

continue their operations without substantial disruption.

**B.      Payment of the Distribution Charges is Appropriate Pursuant to Sections 363 and 364 of the Bankruptcy Code**

26.      Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he

trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  "A bankruptcy court is empowered

pursuant to § 363 of the Bankruptcy Code to authorize a debtor to expend funds in the

bankruptcy court's discretion outside the ordinary course of business."  *In re Ionosphere Clubs,*

---

[5]     The Debtors have the authority to reissue the Outstanding Orders in the ordinary course of business without an order of the Court pursuant to 11 U.S.C. § 363(c).

*Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to authorize a contractor to pay the prepetition claims of some suppliers who were potential lien claimants because the payments were necessary to induce general contractors to release funds owed to the debtors); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15 (Bankr. M.D. Fla. 2005) (recognizing section 363 as a source of authority and allowing payment of the prepetition claims of vendors whose supplies would take four to six weeks to replace).

27.     To obtain such approval under section 363(b), "the debtor must articulate some business justification, other than mere appeasement of major creditors . . . ." *Ionosphere Clubs*, 98 B.R. at 175.  Where a debtor has articulated a valid business justification for a proposed transaction, courts generally apply the business judgment rule in evaluating such transaction. *See Lange v. Schropp (In re Brook Valley VII, Joint Venture)*, 496 F.3d 892, 900 (8th Cir. 2007) ("In general, courts do not second-guess business decisions made in good faith."); *In re ALH Holdings LLC*, 675 F. Supp. 2d 462, 477 (D. Del. 2009) ("[A] court will not disturb the business decisions of loyal and informed directors 'if they can be attributed to any rational business purpose.'") (quoting *Sinclair Oil Corp. v. Levien*, 280 A. 2d 717, 720 (Del. 1971)).  As discussed above, the Debtors have determined, after careful consideration, that the failure to pay the Distribution Charges would likely have a material adverse impact on their business operations and, thus, their efforts to maximize the value of their estates for all stakeholders.

28.     In addition, section 363(c) allows a debtor-in-possession to enter into transactions involving property of the estate *in* the ordinary course of business without an order of the court. *See, e.g.*, *In re James A. Phillips*, 29 B.R. at 395 n.2 ("Insofar as transactions are actually in the

ordinary course, they are authorized automatically by § 363(c)(1) and § 1107(a), and do not

require Bankruptcy Court approval.").

29.     Many of the Possessory Claimants possess goods that the Debtors need to

continue their ongoing business operations.  Absent payment of the applicable Distribution

Charges, the Possessory Claimants may refuse to deliver these necessary goods to the Debtors

and/or may prevent the Debtors from recovering these goods.  The Possessory Claimants may

refuse to deliver goods in their possession to the Debtors because, under applicable state law,

these Possessory Claimants may have a lien on the goods in their possession that secures the

Debtors' obligations to pay for their services.[6]  Thus, the Possessory Claimants may be unwilling

to release the goods in their possession to which they may be entitled to liens, because releasing

possession of the goods may convert their claims against the Debtors from secured to unsecured.

Similarly, the Debtors' failure to pay the Import Charges may prevent the Debtors' goods from

ever reaching their shelves.

30.     The Debtors' inability to pay the Distribution Charges would cause a detrimental

delay in the Debtors' operations and, in the event of a sufficiently substantial supply disruption,

could cause a total shutdown of the Debtors' operations.  Because the Debtors' business depends

upon the timely delivery of in-season branded sporting goods and apparel, avoiding such a

scenario is vital to the Debtors' continuing business operations and the success of these cases.

The Debtors submit that the amount of the Distribution Charges is small relative to the value that

would be lost if the Debtors experienced a substantial disruption in their operations, which would

likely occur if the Distribution Charges are not paid (or if the applicable claimants are not given

---

[6]     For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."  *See* U.C.C. section 7-307(a) (2008).

assurance of the priority status of their claims). In addition, because the Possessory Claimants

may have secured claims against the Debtors' estates, payment of the Possessory Claims is

unlikely to provide the Possessory Claimants with any greater priority than they would otherwise

have if the relief requested herein were not granted. Accordingly, the Debtors' other creditors

will suffer no impairment by payment of the Distribution Charges and will benefit by this

Court's empowering the Debtors to negotiate payment of the Distribution Charges to facilitate a

smooth transition into bankruptcy.

31.     The Debtors' payment of the Distribution Charges to obtain needed merchandise

and ensure delivery of goods belonging to the Debtors is an action within the ordinary course of

the Debtors' business. As such, the Debtors submit that Court approval of the Debtors'

payments is not necessary because of the authority granted to them by section 363(c) of the

Bankruptcy Code. Nonetheless, out of an abundance of caution and to provide assurances to all

interested parties, the Debtors request that the Court grant the relief requested herein and enter an

order authorizing, but not directing, them to pay the Distribution Charges in the ordinary course

of the Debtors' business.

32.     Additionally, where, as here, the relief at issue involves a request impacting the

trade terms between the Debtors and vendors, the relief may, where the appropriate showing has

been made, be approved pursuant to Bankruptcy Code section 364. *See In re UAL Corp.*, Case

No. 02-48191 (Bankr. N.D. Ill. Dec. 11, 2002) (essential trade motion relying upon Bankruptcy

Code section 363 is "completely consistent with the Bankruptcy Code," and payments to critical

trade vendors have further support when debtor seeks "the extension of credit under section 364

on different than usual terms, terms that might include the payment of a prepetition obligation").

**C.     Payment of the Distribution Charges is in Furtherance of the Debtors' Fiduciary Duties Under Sections 1107(a) and 1108 of the Bankruptcy Code.**

33.     The Debtors, operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of chapter 11 debtors in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

34.     Courts have noted that there are instances in which debtors in possession can fulfill their fiduciary duties "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," *id.*, and also when the payment was to "sole suppliers of a given product," *id.* at 498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

35.     Payment of the Distribution Charges meets each element of the *CoServ* court's standard. First, as described above, the Possessory Claimants have possession of certain critical goods, products, and related materials, which the Debtors need to continue operations. Second, the cost of replacing such goods, products, and materials in the Possessory Claimants' would be significantly more than the prepetition claim that the Debtors would have to pay. Additionally,

any disruption in the Debtors' distribution network would significantly disrupt the Debtors'

businesses, which would cost the Debtors' estate a substantial amount in lost revenue.

Accordingly, the harm and economic disadvantage that would stem from the failure to pay any of

the Distribution Charges is grossly disproportionate to the amount of the prepetition claims that

would have to be paid.  And, finally, with respect to each of the Distribution Charges, the

Debtors have determined that, to avoid significant disruption of the Debtors' business operations,

no practical or legal alternative to payment of the Distribution Charges exists.  Therefore, the

Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and

1108 of the Bankruptcy Code through payment of the Distribution Charges.

**D.      Granting this Motion Will Provide the Import Providers No More Than They are Entitled to Receive Under the Bankruptcy Code**

36.      The Import Charges would likely be paid in full under any chapter 11 plan

pursuant to section 507(a)(8) of the Bankruptcy Code, which provides priority status to the

claims of a governmental unit based on a customs duty arising out of the importation of certain

merchandise.  Payment of the Import Charges as proposed in this Motion thus merely accelerates

the distribution that the applicable agencies would receive in any event upon confirmation of a

plan.  Therefore, granting the Motion with respect to the Import Charges would have no

substantial effect on the relative distribution of the estates' assets.

**E.      The Court May Also Authorize Payment of the Distribution Charges Pursuant to Section 105(a) of the Bankruptcy Code and the "Necessity of Payment" Doctrine**

37.      The Debtors' proposed payment of the Distribution Charges should also be

authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity."

38.      Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of [the

Bankruptcy Code]."  11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to

"authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. "Under [section] 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177); *accord In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("To invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is 'critical to the debtor's reorganization.'") (quoting *In re Financial News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991)); *see also In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

39.     In a long line of well-established cases, federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport Ry.*, 106 U.S. 286, 311-12 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268 (2d Cir. 1945), *cert. denied* 325 U.S. 873 (1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Michigan Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279 (S.D.N.Y. 1987), *appeal dismissed*, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition

wages, salaries, expenses, and benefits).

40.     The "doctrine of necessity" functions in chapter 11 as a mechanism by which the

bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims

that do not necessarily fall within a category of claims for which such payment is explicitly

authorized by the Bankruptcy Code.  *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st

Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for

goods and services that are indispensably necessary to the debtors' continued operation); *In re*

*Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("[C]ourts have used their equitable power

under section 105(a) of the Code to authorize the payment of pre-petition claims when such

payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization.").  The

doctrine is frequently invoked early in a chapter 11 proceeding, particularly in connection with

those chapter 11 sections that relate to payment of prepetition claims.  The court in *In re*

*Structurelite Plastics Corp.* recognized that "a bankruptcy court may exercise its equity powers

under section 105(a) to authorize payment of prepetition claims where such payment is necessary

to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at

least proportionately.'"  86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *In re Chateaugay*

*Corp.*, 80 B.R. at 287).  The court further observed that "a per se rule proscribing the payment of

prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative

purposes of the Code."  *Id.* at 932.  The rationale for the doctrine of necessity rule is consistent

with a paramount goal of chapter 11—"facilitating the continued operation and rehabilitation of

the debtor . . . ."  *Ionosphere Clubs*, 98 B.R. at 176.

41.     As stated above, the payment of the Distribution Charges is essential to the

uninterrupted operation of the Debtors' business.  In turn, the maintenance of the Debtors'

business during these Chapter 11 Cases is crucial to the Debtors' ability to maximize value for the benefit of all stakeholders. Accordingly, this Court should exercise its equitable powers to grant the relief requested herein.

42. Courts in this District commonly grant the relief requested herein. *See*, *e.g.*, *In re American Apparel, Inc.*, Case No. 15-12055 (BLS) (Oct. 6, 2015); *In re Quiksilver, Inc.*, Case No. 15-11880 (BLS) (Sep. 10, 2015); *In re The Wet Seal, Inc.*, Case No. 15-10081 (CSS) (Bankr. D. Del. Jan. 20, 2015); *In re Eddie Bauer Holdings, Inc.*, Case No. 09-12099 (MFW) (Bankr. D. Del. Jun. 18, 2009); *In re Global Motorsport Group, Inc.*, Case No. 08-10192 (KJC) (Bankr. D. Del. Feb. 1, 2008). The Debtors submit that similar authorization is appropriate in these Chapter 11 Cases.

**F. The Court Should Authorize Applicable Banks to Honor Checks and Electronic Fund Transfers in Accordance with the Motion**

43. In connection with the Distribution Charges, the Debtors respectfully request that the Court (a) authorize all applicable Banks to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with the Orders, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to the Orders (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with the Orders are dishonored or rejected by the Banks.

**G.        Immediate Relief is Justified**

44.        Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

45.        Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to the Debtors' customers and other third parties.  Unlike Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to the estate alone.  Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally.  *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate").  Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary junctions.  *See* 9 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 4001.07[b][3] (16th ed.) (discussing source of "irreparable harm" standard under Rule 4001(c)(2)).  Courts routinely consider third-party interests when granting such relief.  *See, e.g.*, *Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).

46.        As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without Court authorization for the relief requested herein.

47.        Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF STAY

48.     The Debtors also request that the Court waive the stay imposed by Bankruptcy

Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other

than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the

court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the

Debtors seek in this Motion is necessary for the Debtors to operate their business without

interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request

that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent

nature of the relief sought herein justifies immediate relief.

## DEBTORS' RESERVATION OF RIGHTS

49.     Nothing contained herein is intended or should be construed as an admission of

the validity of any claim against the Debtors; a waiver of the Debtors' rights to dispute any

claim; or an approval, assumption, or rejection of any agreement, contract, or lease under section

365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest all

Distribution Charges, and any invoice or claim of any Possessory Claimant under applicable

non-bankruptcy law.  Likewise, if this Court grants the relief sought herein, any payment made

pursuant to the Court's order is not intended to be and should not be construed as an admission

as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim

subsequently.

## NOTICE

50.     The Debtors have provided notice of this Motion to: (a) the Office of the United

States Trustee for the District of Delaware; (b) holders of the 50 largest unsecured claims on a

consolidated basis against the Debtors; (c) Riemer & Braunstein LLP(attn: Donald Rothman) as

counsel for (i) Bank of America, N.A., in its capacity as Administrative Agent and Collateral

01:18375377.1

Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012, and (ii) certain DIP Lenders under the Debtors' proposed postpetition financing facility; (d) Brown Rudnick LLP (attn.: Robert Stark and Bennett Silverberg) as counsel for (i) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (ii) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (e) Choate, Hall & Stewart LLP(attn.: Kevin Simard) as counsel for (i) Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015, and (ii) certain DIP Lenders under the Debtors' proposed postpetition financing facility; (f) O'Melveny & Meyers LLP (attn: John Rapisardi) as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (g) all holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (h) the Banks; and (i) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:    March 2, 2016
          Wilmington, Delaware

    */s/ Andrew L. Magaziner*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kenos@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Proposed Counsel to the Debtors and Debtors in Possession*

01:18375377.1

## EXHIBIT A

## PROPOSED INTERIM ORDER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-_____ (___) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ____ |

**INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO PAY, IN THE ORDINARY COURSE OF BUSINESS, CLAIMS FOR GOODS ORDERED PREPETITION AND DELIVERED POSTPETITION; (B) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF SHIPPERS, LIEN CLAIMANTS, AND IMPORT CLAIMANTS; AND (C) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the Debtors' *Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Pay, in the Ordinary Course of Business, Claims for Goods Ordered Prepetition and Delivered Postpetition; (B) Authorizing the Debtors to Pay Certain Prepetition Claims of Shippers, Lien Claimants, and Import Claimants; and (C) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that venue of these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2]    All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

01:18375377.1

found that due and sufficient notice of the Motion has been given under the particular

circumstances and that no other or further notice of the Motion need be given; and the Court

having determined that it may enter a final order consistent with Article III of the United States

Constitution; and upon consideration of the First Day Declaration; and a hearing having been

held to consider the relief requested in the Motion; and upon the record of the hearing and all of

the proceedings had before the Court; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all

other parties in interest; and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor,

       **IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      A final hearing (the "Final Hearing") on the Motion shall be held on

_____, 2016 at __:__ __.m (prevailing Eastern Time).  Any objections or responses

to the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____,

2016 and served on the parties required by Local Rule 2002-1(b).

3.      All undisputed obligations relating to the Outstanding Orders are granted

administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

4.      The Debtors are authorized, but not directed, to pay all undisputed amounts

relating to Outstanding Orders in the ordinary course of business consistent with the parties'

customary practices in effect prior to the Petition Date.

5.      Subject to paragraph 6 hereof, the Debtors are authorized, but not directed, in

their sole discretion and business judgment, to pay the prepetition amounts owed on account of

Distribution Charges in an aggregate amount not to exceed $6,250,000 for all Distribution

Charges, without prejudice to their ability to seek additional payments at the Final Hearing or

any other time subsequent thereto, with (i) the aggregate amount paid on account of Shipping

Charges not to exceed $2,200,000; (ii) the aggregate amount paid on account of Lien Claims not

to exceed $1,287,000; and (iii) the aggregate amount paid on account of Import Charges not to

exceed $760,000; *provided*, *however*, that any such payment shall not be deemed (a) an

admission by the Debtors of the extent, validity, perfection, or possible avoidance of any related

liens, claims or payments, or (b) a waiver of the Debtors' rights regarding the extent, validity,

perfection, or avoidance of any related liens, claims, or payments.  The Debtors' right to

challenge the extent, validity, perfection, or avoidance of such liens, claims, or payments is

hereby expressly reserved.

   6.  The Debtors are authorized, in their sole discretion, to pay the Possessory

Claimants on the following terms and conditions:

  (a) The Debtors, in their sole discretion, shall determine which parties, if any, are entitled to payment under this Order;

  (b) If a Possessory Claimant accepts payment under this Order, such party is deemed to have agreed to (i) release any liens it may have on the Debtors' goods or property; *provided*, *however*, that should such party fail promptly to release such lien and/or interest upon payment by the Debtors, any such lien and/or interest shall be deemed released and expunged, without necessity of further action, and this Order, together with proof of payment, shall be all that is required to evidence such release and expungement, and (ii) subject to subparagraph (d) below, continue to provide goods or services to the Debtors on Customary Trade Terms during the pendency of the Chapter 11 Cases. "Customary Trade Terms" means (i) the most favorable trade terms and conditions, including credit terms, in effect between the Possessory Claimant and the Debtors during the one-year period preceding the Petition Date[3] or (ii) such other trade terms as the Debtors and the Possessory Claimant may mutually agree upon;

---

[3] In the event the relationship between the party accepting payment under the Order and the Debtors does not extend to one year preceding the Petition Date, the Customary Trade Terms shall mean the terms that the party generally extends to its customers or such terms as are acceptable to the Debtors in the reasonable exercise of their business judgment.

(c) Subject to subparagraph (d) below, if a Possessory Claimant accepts payment under this Order and thereafter does not continue to provide goods or services to the Debtors on the Customary Trade Terms during the pendency of these Chapter 11 Cases, then any payment such Possessory Claimant receives may be deemed a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code and the Debtors may take any and all appropriate steps to cause the Possessory Claimant to repay any payments it received to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding;

(d) In the event of the assertion of a possessory lien against the Debtors' property that prevents the Debtors from accessing their property without payment of the prepetition claim giving rise to the lien, the Debtors may, in their absolute discretion, determine to pay the claim without regard to subparagraphs (b)(ii) and (c) above;

(e) Prior to making a payment to a party under this Order, the Debtors may, in their absolute discretion, settle all or part of the prepetition claims of such party for less than their face amount, without further notice or hearing; in any event, the Debtors may elect to only pay part of a prepetition claim under the authorization requested, leaving the remainder of the claim to be addressed pursuant to the provisions of the Bankruptcy Code; and

(f) If the Debtors seek to recover payments under subparagraph (c) above, nothing shall preclude a party from contesting such treatment by making a written request (a "Request") to the Debtors to schedule a hearing before this Court. If such a Request is made, the hearing on the Request will be the next scheduled hearing date not less than thirty (30) days after the Debtors received the Request, of which hearing the Debtors will provide notice to the requesting party and other interested parties in accordance with the Bankruptcy Code and the orders of this Court.

7. Each of the Banks is authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Order and any other order of this Court.

8. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of payments made in accordance with this Order that are dishonored or rejected.

9. Nothing herein shall change the nature or priority of the underlying claims.

10.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity.

11.     The Debtors' satisfaction of any liens pursuant to this order shall not be deemed to be an admission that such liens are valid liens and the Debtors retain the right to contest the extent, validity, or perfection of such liens or to seek the avoidance of such liens.

12.     Nothing contained in this Order shall be deemed to constitute an assumption or adoption of any executory contract or prepetition or postpetition agreement between the Debtors and the holder of an Outstanding Order, Possessory Claim, or claim relating to a Distribution Charge, or require the Debtors to make any of the payments authorized herein.

13.     The authorization granted hereby to pay the Outstanding Orders and Distribution Charges shall not create any obligation on the part of the Debtors or their officers, directors, attorneys, or agents to pay the Outstanding Orders or Distribution Charges, and none of the foregoing persons shall have any liability on account of any decision by the Debtors not to pay an Outstanding Order or Distribution Charge, and nothing contained in this Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect the Outstanding Orders or Distribution Charges to the extent they are not paid.

14.     Nothing in this Order shall be deemed either a grant of administrative priority expense status to, or authority to pay, any amounts that are disputed by the Debtors.

15.     Nothing contained in this Order shall be construed as a waiver by the Debtors of their rights to contest any claim or invoice of an Outstanding Order Supplier, or the holder of a Possessory Claim under applicable law.

16.     The Debtors shall not pay Shipper Indemnification Claims without further order of the Court.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

18.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

21.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: March ___, 2016
      Wilmington, Delaware

_____

UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT A</u>**

**PROPOSED FINAL ORDER**

01:18375377.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-_____ (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No.** ____ |

**FINAL ORDER (A) AUTHORIZING THE DEBTORS TO PAY, IN THE ORDINARY COURSE OF BUSINESS, CLAIMS FOR GOODS ORDERED PREPETITION AND DELIVERED POSTPETITION; (B) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF SHIPPERS, LIEN CLAIMANTS, AND IMPORT CLAIMANTS; AND (C) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the Debtors' *Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Pay, in the Ordinary Course of Business, Claims for Goods Ordered Prepetition and Delivered Postpetition; (B) Authorizing the Debtors to Pay Certain Prepetition Claims of Shippers, Lien Claimants, and Import Claimants; and (C) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that venue of these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2]    All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

found that due and sufficient notice of the Motion has been given under the particular circumstances and that no other or further notice of the Motion need be given; and the Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and the Court having entered that certain *Interim Order (A) Authorizing the Debtors to Pay, in the Ordinary Course of Business, Claims for Goods Ordered Prepetition and Delivered Postpetition; (B) Authorizing the Debtors to Pay Certain Prepetition Claims of Shippers, Lien Claimants, and Import Claimants; and (C) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* [Docket No. ___] (the "Interim Order"); and a hearing or hearings having been held to consider the relief requested in the Motion; and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein on a final basis.

2.      All undisputed obligations relating to the Outstanding Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

3.      The Debtors are authorized, but not directed, to pay all undisputed amounts relating to Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

4.      Subject to paragraph 6 hereof, the Debtors are authorized, but not directed, in their sole discretion and business judgment, to pay the prepetition amounts owed on account of

Distribution Charges in an aggregate amount not to exceed $6,250,000, without prejudice to their

ability to seek additional relief on an emergency basis, with (i) the aggregate amount paid on

account of Shipping Charges not to exceed $2,200,000; (ii) the aggregate amount paid on

account of Shipper Indemnification Claims not to exceed $2,000,000; (iii) the aggregate amount

paid on account of Lien Claims not to exceed $1,287,000; and (iv) the aggregate amount paid on

account of Import Charges not to exceed $760,000; *provided*, *however*, that any such payment

shall not be deemed (a) an admission by the Debtors of the extent, validity, perfection, or

possible avoidance of any related liens, claims or payments, or (b) a waiver of the Debtors' rights

regarding the extent, validity, perfection, or avoidance of any related liens, claims, or payments.

The Debtors' right to challenge the extent, validity, perfection, or avoidance of such liens,

claims, or payments is hereby expressly reserved.

5.      The Debtors are authorized, in their sole discretion, to pay the Possessory

Claimants on the following terms and conditions:

(a) The Debtors, in their sole discretion, shall determine which parties, if any, are entitled to payment under this Order;

(b) If a Possessory Claimant accepts payment under this Order, such party is deemed to have agreed to (i) release any liens it may have on the Debtors' goods or property; *provided*, *however*, that should such party fail promptly to release such lien and/or interest upon payment by the Debtors, any such lien and/or interest shall be deemed released and expunged, without necessity of further action, and this Order, together with proof of payment, shall be all that is required to evidence such release and expungement, and (ii) subject to subparagraph (d) below, continue to provide goods or services to the Debtors on Customary Trade Terms during the pendency of the Chapter 11 Cases. "Customary Trade Terms" means (i) the most favorable trade terms and conditions, including credit terms, in effect between the Possessory Claimant and the Debtors during the one-year period preceding the Petition Date[3] or (ii) such other trade terms as the Debtors and the Possessory Claimant may mutually agree upon;

---

[3]   In the event the relationship between the party accepting payment under the Order and the Debtors does not extend to one year preceding the Petition Date, the Customary Trade Terms shall mean the terms that the party generally extends to its customers or such terms as are acceptable to the Debtors in the reasonable exercise of their business judgment.

(c) Subject to subparagraph (d) below, if a Possessory Claimant accepts payment under this Order and thereafter does not continue to provide goods or services to the Debtors on the Customary Trade Terms during the pendency of these Chapter 11 Cases, then any payment such Possessory Claimant receives may be deemed a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code and the Debtors may take any and all appropriate steps to cause the Possessory Claimant to repay any payments it received to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding;

(d) In the event of the assertion of a possessory lien against the Debtors' property that prevents the Debtors from accessing their property without payment of the prepetition claim giving rise to the lien, the Debtors may, in their absolute discretion, determine to pay the claim without regard to subparagraphs (b)(ii) and (c) above;

(e) Prior to making a payment to a party under this Order, the Debtors may, in their absolute discretion, settle all or part of the prepetition claims of such party for less than their face amount, without further notice or hearing; in any event, the Debtors may elect to only pay part of a prepetition claim under the authorization requested, leaving the remainder of the claim to be addressed pursuant to the provisions of the Bankruptcy Code; and

(f) If the Debtors seek to recover payments under subparagraph (c) above, nothing shall preclude a party from contesting such treatment by making a written request (a "Request") to the Debtors to schedule a hearing before this Court. If such a Request is made, the hearing on the Request will be the next scheduled hearing date not less than thirty (30) days after the Debtors received the Request, of which hearing the Debtors will provide notice to the requesting party and other interested parties in accordance with the Bankruptcy Code and the orders of this Court.

6.       Each of the Banks is authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Order and any other order of this Court.

7.       The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of payments made in accordance with this Order that are dishonored or rejected.

8.       Nothing herein shall change the nature or priority of the underlying claims.

9.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity.

10.    The Debtors' satisfaction of any liens pursuant to this order shall not be deemed to be an admission that such liens are valid liens and the Debtors retain the right to contest the extent, validity, or perfection of such liens or to seek the avoidance of such liens.

11.    Nothing contained in this Order shall be deemed to constitute an assumption or adoption of any executory contract or prepetition or postpetition agreement between the Debtors and the holder of an Outstanding Order, Possessory Claim, or claim relating to a Distribution Charge, or require the Debtors to make any of the payments authorized herein.

12.    The authorization granted hereby to pay the Outstanding Orders and Distribution Charges shall not create any obligation on the part of the Debtors or their officers, directors, attorneys, or agents to pay the Outstanding Orders or Distribution Charges, and none of the foregoing persons shall have any liability on account of any decision by the Debtors not to pay an Outstanding Order or Distribution Charge, and nothing contained in this Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect the Outstanding Orders or Distribution Charges to the extent they are not paid.

13.    Nothing in this Order shall be deemed either a grant of administrative priority expense status to, or authority to pay, any amounts that are disputed by the Debtors.

14.    Nothing contained in this Order shall be construed as a waiver by the Debtors of their rights to contest any claim or invoice of an Outstanding Order Supplier, or the holder of a Possessory Claim under applicable law.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

16.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

17.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

19.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: _____, 2016
        Wilmington, Delaware

                                        _____

                                        UNITED STATES BANKRUPTCY JUDGE

01:18375377.1