**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors. | (Joint Administration Requested) |
| | Hearing Date: **March 29, 2016 at 1:00 p.m. (ET)**<br>Objection Deadline: **March 16, 2016 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR AN ORDER, PURSUANT TO SECTION 365(d)(4) OF THE BANKRUPTCY CODE, EXTENDING THE DEADLINE BY WHICH THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY UNDER WHICH <u>ANY OF THE DEBTORS ARE LESSEES</u>**

Sports Authority Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>") hereby move this Court (this "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Proposed Order</u>"), pursuant to section 365(d)(4) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), granting the Debtors a ninety (90) day extension, through and including September 28, 2016, of the statutory deadline by which the Debtors must assume or reject each of the leases, subleases and other agreements under which any Debtor is a lessee and that may be considered unexpired leases of non-residential real property under applicable law (collectively, the "<u>Real Property Leases</u>"). In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

01:18370513.1

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicate for the relief requested herein is section 365(d)(4) of the Bankruptcy Code.

**BACKGROUND**

**A.    General Background**

2.      On March 2, 2016 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.  No trustee, examiner, or official committee of unsecured creditors has been appointed in these chapter 11 cases (the "Chapter 11 Cases").

3.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Jeremy Aguilar in Support of the*

*Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "<u>First Day Declaration</u>"), which was filed on the Petition Date.

**B.    Background Regarding DIP Financing**

4.    On the date hereof, the Debtors filed the *Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364; (II) Granting Liens and Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C. §§ 364 and 507; (III) Authorizing the Use of Cash Collateral and Providing Adequate Protection to Prepetition Secured Parties and Modifying the Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2* (the "<u>DIP Motion</u>"), pursuant to which, among other things, the Debtors seek authority to enter into the DIP Credit Agreement with the DIP Agent and DIP Lenders (as such terms are defined in the DIP Motion). As more fully described in the DIP Motion, the DIP Credit Agreement, and the financing contemplated thereby, is conditioned on certain case milestones, including the filing of this Motion on the Petition Date and entry of an order approving the relief requested herein by April 1, 2016.

**C.    The Debtors' Restructuring and Sale Strategy**

5.    As part of their overall restructuring strategy, and as further detailed in the First Day Declaration and motions filed in connection therewith, the Debtors have initiated multiple sales' processes pursuant to which the Debtors seek to maximize value for their retail locations, underlying leasehold interests and related assets. Specifically, the Debtors are conducting store closing sales (the "<u>Store Closing Sales</u>") at certain designated retail locations (collectively, the "<u>Closing Stores</u>") and, simultaneously therewith, marketing their leasehold interests in their remaining retail stores (the "<u>Open Stores</u>"), together with related assets, to third party purchasers

and soliciting interest therein. Both prior to and in connection with the termination of the Store Closing Sales, the Debtors and their advisors intend to thoroughly review the Real Property Leases that govern the Debtors' occupancy of the Closing Stores, and make an informed decision regarding the potential value that may be realized from assignment thereof. In the event that the Debtors determine that there is a robust market for any or all of Closing Store leases, the Debtors intend to solicit offers for assignment and explore all commercially reasonable options. As part of that process, the Debtors and their advisors expect that they will need maximum flexibility—and time—to make fully-informed decisions whether to reject or assign applicable Real Property Leases once the Store Closings Sales have terminated.

6.    Furthermore, as detailed in the First Day Declaration, the Debtors are currently soliciting interest in, and responding to due diligence requests with respect to, the Open Stores and all related assets, including the Real Property Leases implicated thereby. To provide maximum assurances to all interested parties and encourage participation in the bidding process, the Debtors believe that it is important at the outset of these cases to signal to the open market that they will have sufficient time to assign their Real Property Leases under any sale scenario. Accordingly, to augment the sale processes described herein, the Debtors seek to extend the deadline by which they must elect to assume or reject the Real Property Leases.

## **RELIEF REQUESTED**

7.    Pursuant to section 365(d)(4) of the Bankruptcy Code, a debtor has an initial 120-day period following the filing of a bankruptcy petition in which to elect to assume or reject unexpired leases of non-residential real property under which the debtor is a lessee. *See* 11 U.S.C. § 365(d)(4). Section 365(d)(4)(B) of the Bankruptcy Code provides, however, that, upon on a motion by the debtor, the Court may extend the initial 120-day deadline by 90 days "for

01:18370513.1

4

cause." *See* 11 U.S.C. § 365(d)(4)(B). Any subsequent extensions of the deadline to assume or reject unexpired leases of non-residential real property under which the debtor is a lessee may only be granted with the prior written consent of the affected lessors. *See* 11 U.S.C. § 365(d)(4)(B)(ii). Under section 365(d)(4) of the Bankruptcy Code, if the debtor fails to assume or reject an unexpired lease of non-residential real property under which the debtor is a lessee prior to the applicable deadline, such lease will automatically be deemed rejected. *See* 11 U.S.C. § 365(d)(4)(A).

8. Pursuant to section 365(d)(4) of the Bankruptcy Code, the Debtors initially have until June 30, 2016, to assume or reject the Real Property Leases (the "Assumption/Rejection Period").

9. By this Motion, the Debtors request entry of the Proposed Order, extending the Assumption/Rejection Period by ninety (90) days, through and including September 28, 2016, pursuant to section 365(d)(4) of the Bankruptcy Code. Such an extension would be without prejudice to the Debtors' rights, pursuant to section 365(d)(4)(B)(ii) of the Bankruptcy Code, to request a further extension of the Assumption/Rejection Period with the consent of an affected lessor(s).

**BASIS FOR RELIEF**

10. The Debtors submit that ample cause exists to extend the Assumption/Rejection Period as requested herein. On the Petition Date, the Debtors were parties to approximately 460 Real Property Leases, each of which holds potential value to the estates and, by extension, all interested parties. As highlighted above, as a condition to lending, the DIP Lenders required that the Debtors obtain an order, no later than April 1, 2016, extending the Assumption/Rejection Period through and including a date that is not less than 210 days from the Petition Date.

01:18370513.1

5

Accordingly, to meet their obligations under the DIP Credit Agreement and to ensure that the Debtors have sufficient time to determine whether each Real Property Lease should ultimately be assumed or rejected, the Debtors seek the instant relief at the outset of these Chapter 11 Cases. The requested extension of the Assumption/Rejection Period is consistent with the rehabilitative goals of the Bankruptcy Code and will not unduly prejudice any of the lessors under the Real Property Leases (collectively, the "Lessors") for the reasons described below.

11. In the months preceding the commencement of these Chapter 11 Cases, the Debtors' management and professional advisors devoted a significant amount of time and effort towards ensuring a smooth transition of the Debtors' operations into chapter 11 and maximizing the value of the Debtors' estates for the benefit of all stakeholders. In conjunction therewith, the Debtors and their advisors explored all reasonable restructuring alternatives and, ultimately, upon consultation with their largest constituents, elected to implement the sales initiatives described above. Once this decision was reached, the Debtors and their advisors devoted substantial time to securing postpetition financing, negotiating with their largest suppliers and vendors, marketing available assets, and outlining their overall restructuring strategy. Moreover, the Debtors and their advisors have spent considerable time preparing for these Chapter 11 Cases and meeting their administrative and fiduciary obligations arising therefrom. Now that the these Chapter 11 Cases are underway, the Debtors and their advisors expect that their resources will be stretched to meet the demands placed on a large retail debtor of its kind, which are further exacerbated by a dual-track sale process that necessitates the full attention of the Debtors' senior management and all retained professionals. Accordingly, the Debtors do not believe that they will have had sufficient time by the expiration of the initial Assumption/Rejection Period to make informed decisions whether to reject or assume the Real Property Leases.

12. The Third Circuit Court of Appeals has recognized that "nothing prevents a bankruptcy court from granting an extension because a particular debtor needs additional time to determine whether the assumption or rejection of particular leases is called for by the plan of reorganization that it is attempting to develop." *In re Channel Home Ctrs., Inc.*, 989 F.2d 682, 689 (3rd Cir. 1993). As the bankruptcy court in one frequently-cited decision observed, there are essentially three factors that are weighed by the courts in determining whether cause exists to extend the deadline to assume or reject unexpired leases of non-residential real property:

(i) whether the leases are an important asset of the estate such that the decision to assume or reject would be central to any plan of reorganization that may be proposed by the debtor;

(ii) whether the case is complex and involves large numbers of leases; and

(iii) whether or not the debtor has had sufficient time to intelligently appraise the value of each lease for purposes of a plan of reorganization.

*In re Wedtech Corp.,* 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987); *accord Channel Home Ctrs.*, 989 F.2d at 689 (noting that "it is permissible for a bankruptcy court to consider a particular debtor's need for more time in order to analyze leases in light of the plan it is formulating").

13. The Debtors submit that the *Wedtech* factors are readily satisfied in these Chapter 11 Cases. First, until the Debtors, in their business judgment, determine otherwise, the Real Property Leases are an important asset of the Debtors' estates, and therefore the decision to assume or reject the Real Property Leases is necessarily of central importance to the Debtors' efforts to maximize the value of their estates for the benefit of all stakeholders. Indeed, the Real Property Leases are implicated by (i) the ultimate conclusion of the Store Closing Sales and potential assignments that may follow once such sales have run their course, and (ii) the simultaneous sale process unfolding with respect to the Open Stores. As a result, the Debtors

must be allowed sufficient time to determine which of the Real Property Leases should be assumed, including additional time to allow the Court-approved auction and sale process for the Open Stores to be completed, as applicable. Absent the relief requested herein, the Debtors may be unable to market and sell the Open Stores on a sale timeline designed to maximize value, which would irreparably harm the Debtors' chapter 11 efforts and the value of their estates.

14. Second, these Chapter 11 Cases are unquestionably large and complex, and therefore have required—and unquestionably will continue to require—the Debtors to devote a significant amount of time, energy and resources to various other tasks. Moreover, the Debtors have operations in 40 states and Puerto Rico, and interested parties should be allowed sufficient time to conduct due diligence on each location without any concern that the Debtor may be forced to make a premature rejection decision upon the expiration of the initial Assumption/Rejection Period.

15. In addition, evaluating each of the Real Property Leases and determining whether they should ultimately be assumed or rejected is itself a substantial and time-consuming task. Given the volume of other tasks required of the Debtors' personnel and professional advisors in connection with these Chapter 11 Cases, the Debtors will have insufficient time to carefully evaluate each of the Real Property Leases by the initial deadline applicable under section 365(d)(4) of the Bankruptcy Code. Although the Debtors have begun their review of certain of the Real Property Leases, an extension of the Assumption/Rejection Period is necessary to allow the Debtors sufficient time to fully evaluate all of the Real Property Leases and to afford the Debtors flexibility in prosecuting these Chapter 11 Cases.

16. Finally, the Debtors are obligated to seek the relief requested herein under the terms of the DIP Credit Agreement, and absent the lending provided thereunder, would not be able to pursue the value-maximizing sales described above.

17. Given the inherent fluidity in these Chapter 11 Cases, circumstances may arise during the pendency of these cases that would cause the Debtors to re-evaluate the need to continue leasing a particular property. In the absence of an extension of the current Assumption/Rejection Period, the Debtors could be forced to prematurely assume Real Property Leases that may later prove to be burdensome, which could give rise to large administrative expense claims against the Debtors' estates and hamper the Debtors' ability to successfully prosecute these Chapter 11 Cases. Alternatively, the Debtors could be forced to prematurely reject certain Real Property Leases that ultimately could have benefited the Debtors' estates. Among other things, the extension requested herein will decrease the risk of such negative outcomes for the Debtors' estates and will therefore benefit all stakeholders.

18. Furthermore, there should be no prejudice to the Lessors as a result of the requested extension of the Assumption/Rejection Period. Pending their election to assume or reject the Real Property Leases, the Debtors will perform their undisputed obligations arising from and after the Petition Date in a timely fashion and as required by the Bankruptcy Code. As a result, the requested extension will afford the Debtors maximum flexibility in seeking to successfully prosecute these Chapter 11 Cases, without prejudicing the rights of the Lessors.

19. Accordingly, the requested extension of the Assumption/Rejection Period should be approved.

## NOTICE

20. The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors; (c) Riemer & Braunstein LLP (attn.: Donald Rothman) as counsel for (i) Bank of America, N.A., in its capacity as Administrative Agent and Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012, and (ii) certain DIP Lenders under the Debtors' proposed postpetition financing facility; (d) Brown Rudnick LLP (attn.: Robert Stark and Bennett Silverberg) as counsel for (i) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (ii) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (e) Choate, Hall & Stewart LLP (attn.: Kevin Simard) as counsel for (i) Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015, and (ii) certain DIP Lenders under the Debtors' proposed postpetition financing facility; (f) O'Melveny & Meyers LLP (attn: John Rapisardi) as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (g) all holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; and (h) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is

necessary.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors request the Court enter the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated:   March 2, 2016
           Wilmington, Delaware

/s/ Andrew L. Magaziner
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kenos@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com