<u>**EXHIBIT A**</u>

**BID PROCEDURES ORDER**

01:18384380.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*, | Case No. 16-10527 (MFW) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. ____** |

**ORDER (A) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) SCHEDULING AN AUCTION FOR AND HEARING TO APPROVE SALE OF ASSETS, (C) APPROVING NOTICE OF RESPECTIVE DATE, TIME AND PLACE FOR AUCTION AND FOR HEARING ON APPROVAL OF SALE, (D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (E) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (F) GRANTING RELATED RELIEF**

Upon the *Debtors' Motion, Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, Fed. R. Bankr. P. 2002, 6003, 6004, 6006, 9007, 9008 and 9014 and Del. Bankr. L.R. 2002-1, 6004-1 and 9006-1, for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction for and Hearing to Approve Sale of Assets, (C) Approving Notice of Respective Date, Time and Place for Auction and for Hearing on Approval of Sale, (D) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (E) Approving Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II) an Order Authorizing and Approving (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Related Relief* (the

"Motion")[1] for entry of an order authorizing or approving, among other things, (a) the bid procedures (in the form attached hereto as Exhibit 1, the "Bid Procedures") in connection with the sale or disposition (the "Sale") of substantially all of the assets of the Debtors (as described further in the Motion, the "Assets"), (b) the notice of the Auction and Sale and hearing thereon (in the form attached hereto as Exhibit 2, the "Notice of Auction and Sale Hearing"), (c) the notice of the procedures (the "Assignment Procedures"), as set forth below, for the assumption and assignment of certain of the Debtors' executory contracts or unexpired leases (the "Contracts") and (d) the notice of the potential assumption and assignment of the Contracts (in the form attached hereto as Exhibit 3, the "Potential Assumption and Assignment Notice"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given except as set forth herein with respect to the Auction, the Sale Hearing and the potential assumption and assignment of the Contracts; and a reasonable opportunity to object to or be heard regarding the relief provided herein has been afforded to parties-in-interest pursuant to Bankruptcy Rule 6004(a); and the Court having considered the First Day Declaration; and upon the record of the hearing and all of the proceedings had before the Court; and the Court having

---

[1]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

01:18384384.1

found that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and the Court having found that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[2]

A.      The Bid Procedures attached hereto as <u>Exhibit 1</u>, are fair, reasonable and appropriate, and are designed to maximize the value to be achieved from the Sale.

B.      The Bid Procedures comply with the requirements of Local Rule 6004-1(c).

C.      The Assignment Procedures provided for herein are fair, reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code.

D.      The Debtors have articulated good and sufficient business reasons for this Court to approve (i) the Bid Procedures, including the scheduling of a bid deadline, auction and sale hearing with respect to the proposed Sale; and (ii) the establishment of procedures to assume and assign the Contracts and fix the Cure Costs (as defined below) to be paid pursuant to section 365 of the Bankruptcy Code.

E.      The Notice of Auction and Sale Hearing, and the Debtors' proposed publication of the Notice of Auction and Sale Hearing, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale, the Bid Procedures and the Assignment Procedures to be employed in connection therewith, including, without limitation: (i) the date, time and place of the Auction (if one is held); (ii) the Bid Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time

---

[2]  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

and place of the Sale Hearing; (iv) reasonably specific identification of the Assets; and (v) representations describing the Sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the proceeds of the Sale; and no other or further notice of the Sale shall be required.

F.      The Potential Assumption and Assignment Notice is appropriate and reasonably calculated to provide each non-debtor party to any Contracts, (such parties, collectively, the "Non-Debtor Counterparties") with proper notice of the Assignment Procedures.  The inclusion of any Contract on a Potential Assumption and Assignment Notice does not constitute an admission that a particular Contract is an executory contract or unexpired lease of property or require or guarantee that such Contracts will be assumed and assigned and all rights of the Debtors with respect thereto are reserved.

G.      No further notice beyond that described in the foregoing paragraphs is required in connection with the Sale.

H.      The entry of this order (the "Bid Procedures Order") is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth herein.

2.      All objections to the Motion or the relief provided herein, as they pertain to the entry of this Bid Procedures Order, that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

01:18384384.1

4

## The Bid Procedures

3.      The Bid Procedures are incorporated herein and approved, and shall apply with respect to the Sale.  The Debtors are authorized to take all actions reasonable and necessary or appropriate to implement the Bid Procedures.

4.      The Debtors are authorized to conduct the Bidding Process (as defined in the Bid Procedures) in accordance with the Bid Procedures and the terms hereof, and without the necessity of complying with any state or local bulk transfer laws or requirements applicable to the Debtors.

5.      Potential Bidders or Qualified Bidders (other than any Stalking Horse Bidder), shall not be allowed any break-up, termination or similar fee with respect to the Assets. Moreover, all Potential Bidders, Qualified Bidders, and the Stalking Horse Bidder (excluding any Bid Protections (as defined in the Bid Procedures) approved by the Bankruptcy Court) waive any right to seek a claim for substantial contribution pursuant to section 503 of the Bankruptcy Code or the payment of any broker fees or costs.

## Assignment Procedures

6.      The following Assignment Procedures shall govern the assumption and assignment of the Contracts in connection with the Sale, and any objections related thereto:

   a.  On or before April 4, 2016, the Debtors shall file with this Court and serve on each Non-Debtor Counterparty to each of the Contracts the Potential Assumption and Assignment Notice.  In the event that the Debtors identify any Non-Debtor Counterparties which were not served with the Potential Assumption and Assignment Notice, the Debtors may subsequently serve such Non-Debtor Counterparty with a Potential Assumption and Assignment Notice, and the following procedures will nevertheless apply to such Non-Debtor Counterparty; provided, however, that the Cure Cost/Assignment Objection Deadline (defined below) with respect to such Non-Debtor Counterparty shall be 4:00 p.m. (prevailing Eastern Time) on the date that is the later of April 19, 2016 or fourteen (14) days following service of the Potential Assumption and Assignment Notice.

b.  The Potential Assumption and Assignment Notice served on each Non-Debtor Counterparty shall (i) identify each Contract; (ii) list the proposed calculation of the cure amounts that the Debtors believe must be paid to cure all defaults outstanding under the Contract as of such date (the "Cure Costs"); (iii) include a statement that assumption and assignment of such Contract is not required or guaranteed; and (iv) inform such Non-Debtor Counterparty of the requirement to file any Cure Cost/Assignment Objections (defined below) by the Cure Cost/Assignment Objection Deadline (defined below).  Service of a Potential Assumption and Assignment Notice does not constitute an admission that a particular Contract is an executory contract or unexpired lease of property, or confirm that the Debtors are required to assume and/or assign such Contract.

c.  Objections (a "Cure Cost/Assignment Objection"), if any, to (i) the scheduled Cure Costs, and/or (ii) the proposed assumption, assignment and/or transfer of such Contract (including the transfer of any related rights or benefits thereunder), other than objections that relate specifically to the identity of a Successful Bidder, must (x) be in writing; (y) state with specificity the nature of such objection, including the amount of Cure Costs in dispute and (z) be filed with this Court and properly served on the Notice Parties (as defined below) so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on April 19, 2016 (the "Cure Cost/Assignment Objection Deadline"), subject to the proviso in subparagraph (a) above.

d.  Objections (a "Post-Auction Objection") of any Non-Debtor Counterparty related solely to the identity of and adequate assurance of future performance provided by the Successful Bidder must (x) be in writing; (y) state with specificity the nature of such objection, and (z) be filed with this Court and properly served on the Notice Parties so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on April 25, 2016 (the "Post-Auction Objection Deadline"), subject to the proviso in subparagraph (a) above; provided, however, that in the event that the Debtors obtain a Stalking Horse Bid and provide notice of the identity of the Stalking Horse Bidder in the Potential Assumption and Assignment Notice, any objection of a Non-Debtor Counterparty related to Stalking Horse Bid (including with respect to the identity of and adequate assurance of future performance provided by) the Stalking Horse Bidder must be filed as a Cure Cost/Assignment Objection by the Cure Cost/Assignment Objection Deadline.

e.  Any Non-Debtor Counterparty to a Contract who fails to timely file and properly serve a Cure Cost/Assignment Objection or Post-Auction Objection as provided herein will (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtors and the Debtors shall be entitled to rely solely upon the Cure Costs, and (ii) be deemed to have consented to the assumption, assignment and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the relevant Successful Bidder and shall be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder that any additional amounts are due

or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under such Contract, or that any related right or benefit under such Contract cannot or will not be available to the relevant Successful Bidder.

f.  If a Non-Debtor Counterparty files a Cure Cost/Assignment Objection satisfying the requirements of these Assignment Procedures, the Debtors and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention (the "Resolution Procedures").  If the applicable parties determine that the objection cannot be resolved without judicial intervention in a timely manner, this Court shall make all necessary determinations relating to such Cure Cost/Assignment Objection at a hearing scheduled pursuant to the following Paragraph.

g.  Consideration of unresolved Cure Cost/Assignment Objections and Post-Auction Objections relating to all Contracts, if any, will be held at the Sale Hearing, provided, however, that (i) any Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection and (ii) the Debtors, in consultation with the Consultation Parties, may adjourn a Cure Cost/Assignment objection in their discretion.

h.  A timely filed and properly served Cure Cost/Assignment Objection or Post-Auction Objection will reserve the filing Non-Debtor Counterparty's rights relating to the Contract, but will not be deemed to constitute an objection to the relief generally requested in the Motion with respect to the approval of the Sale.

i.  The Debtors' assumption and/or assignment of a Contract is subject to approval by this Court, consummation of the Sale and receipt of a Confirmation Notice (as defined below).  Absent consummation of the Sale, receipt of a Confirmation Notice and entry of a Sale Order approving the assumption and/or assignment of the Contracts, the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

j.  Within ten (10) days following the assumption and assignment of any Contract to the relevant Successful Bidder, the Debtors shall file with this Court and shall serve each Non-Debtor Counterparty whose Contract the Debtors assumed and/or assigned with a notice of assumption and assignment of such Contract (the "Confirmation Notice").  Any Contract where no Confirmation Notice was served shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

k.  The Debtors' decision to assume and assign the Contracts to the relevant Successful Bidder is subject to this Court's approval and the closing of the Sale. Accordingly, absent this Court's approval and the closing of the Sale, the Contracts shall not be deemed assumed or assumed and assigned, and shall in all

respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these Chapter 11 Cases.

**Notice Procedures**

7.  Service and publication of the Notice of Auction and Sale Hearing are sufficient to provide effective notice to all interested parties of, *inter alia*, the Bid Procedures, the Auction, the Sale Hearing, the Sale and the Assignment Procedures in accordance with Bankruptcy Rules 2002 and 6004, as applicable, and are approved.

8.  On or before two (2) business days after entry of this Bid Procedures Order, the Debtors will cause the Notice of Auction and Sale Hearing to be sent by first-class mail postage prepaid, to the following: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the official committee of unsecured creditors, if one is appointed; (c) Riemer & Braunstein LLP as counsel for Bank of America, N.A., in its capacity as Administrative Agent and Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012; (d) Brown Rudnick LLP as counsel for (A) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (B) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (e) Choate, Hall & Stewart LLP as counsel for Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015; (f) O'Melveny & Meyers LLP as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (g) all holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (h) counsel to the DIP Agent

under the proposed Debtor-in-Possession Credit Agreement; (i) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (j) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (k) all persons known or reasonably believed to have asserted an interest in any of the Assets; (l) the Non-Debtor Counterparties to the Contracts; (m) the Attorneys General in the State(s) where the Assets are located; (n) the Environmental Protection Agency; (o) all state and local environmental agencies in any jurisdiction where the Debtors own or have owned or used real property; and (p) all other known creditors of the Debtors.

9.      In addition to the foregoing, on or before five (5) business days after entry of the Bid Procedures Order, the Debtors shall, subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing once in the national edition of *The New York Times*, and post the Notice of Auction and Sale Hearing and the Bid Procedures Order on the website of the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC.

10.      Within 24 hours following conclusion of the Auction, the Debtors shall file a notice on the Court's docket identifying the Successful Bidder(s) for the Assets (or subset thereof) and any applicable Next-Highest Bidder(s).

11.      The Potential Assumption and Assignment Notice, and the other Assignment Procedures set forth herein, are sufficient to provide effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c) to the Non-Debtor Counterparties to the Contracts of the Debtors' intent to potentially assume and assign some or all of the Contracts and are approved.

01:18384384.1

**Auction and Sale Hearing**

12.     **Stalking Horse Bid Deadline**.  As further described in the Motion, the deadline by which all Stalking Horse Bids must be actually received by the Debtors is April 10, 2016 at 5:00 p.m. prevailing Eastern Time.

13.     **Bid Deadline**. As further described in the Bid Procedures, the deadline for submitting bids for the Assets (the "Bid Deadline") is April 20, 2016 (prevailing Eastern Time). No bid shall be deemed to be a Qualified Bid unless such bid meets the requirements set forth in the Bid Procedures.

14.     **Auction**. The Debtors may sell the Assets by conducting an Auction in accordance with the Bid Procedures.  If at least two Qualified Bids (or one Qualified Bid if there is also a Stalking Horse Bid) are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct an Auction in accordance with the Bid Procedures, which Auction shall take place on April 24, 2016 (prevailing Eastern Time) at the offices of counsel to the Debtors, Gibson, Dunn & Crutcher, 200 Park Ave., New York, New York, 10166, or such later time or such other place as the Debtors shall designate and notify to all Qualified Bidders (as defined in the Bid Procedures) who have submitted Qualified Bids.  If the Debtors receive only a Stalking Horse Bid or one Qualified Bid with regard to any particular Assets (or all of the Assets), (a) the Debtors shall not hold an Auction with respect to such Assets; (b) the Stalking Horse Bid or the Qualified Bid, as applicable, will be the Successful Bid with respect to such Assets; and (c) the Stalking Horse Bidder or the Qualified Bidder, as applicable, will be named the Successful Bidder with respect to such Assets.

15.     Each Qualified Bidder participating in the Auction will be required to confirm, in writing, that (a) it has not engaged in any collusion with respect to the Bidding Process, (b) its

Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder, and (c) the Potential Bidder agrees to serve as a backup bidder if the Potential Bidder's Qualified Bid is the next highest and best bid after the Successful Bid with respect to the relevant Assets.

16.    **Sale Hearing**. The Sale Hearing shall be held before this Court on April 26, 2016 at 11:30 a.m. (prevailing Eastern Time) before the Honorable Judge Mary Walrath, United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware, at 824 North Market Street, 5th Floor, Courtroom No. [ ], Wilmington, Delaware 19801.  The Debtors shall file a form of Sale Order no later than 14 days before the Sale Hearing.  At the Sale Hearing, the Debtors will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder(s).  The Sale Hearing (or any portion thereof) may be adjourned by this Court or the Debtors from time to time without further notice other than by announcement in open court, on this Court's calendar or through the filing of a notice or other document on this Court's docket.

17.    **Sale Objection Deadline**. The deadline to object to the relief requested in the Motion, including entry of the proposed Sale Order (a "Sale Objection") is April 19, 2016 at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline").  A Sale Objection must be filed with this Court and served in the manner set forth below so *actually received* no later than the Sale Objection Deadline.

18.    **Post-Auction Objection Deadline**.  The deadline to object only to (i) the conduct at the Auction (if held) or (ii) solely with respect to the Non-Debtor Counterparties to the Contracts, to the specific identity of and adequate assurance of future performance provided by the Successful Bidder with respect to the applicable Assumed Contract or Assumed Lease (a

"Post-Auction Objection") is April 25, 2016 at 4:00 p.m. prevailing Eastern Time (the "Post-Auction Objection Deadline").  A Post-Auction Objection must be filed with this Court and served in the manner set forth below so *actually received* no later than the Post-Auction Objection Deadline.

### Objection Procedures

19.    Any party that seeks to object to the relief requested in the Motion pertaining to approval of the Sale shall file a formal written objection that complies with the objection procedures as set forth herein and in the Motion, as applicable.

20.    Objections, if any, must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with this Court and (vi) served on the following parties (the "Notice Parties"): (a) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. and Andrew L. Magaziner, Esq.), and Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, (Attn: Robert A. Klyman, Esq. and Matthew J. Williams, Esq.); (b) counsel to the official committee of unsecured creditors, if one is appointed; (c) the Office of the United States Trustee for the District of Delaware; (d) Riemer & Braunstein LLP as counsel for Bank of America, N.A., in its capacity as Administrative Agent and Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012; (e) Brown Rudnick LLP as counsel for (A) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (B) certain

Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (f) Choate, Hall & Stewart LLP as counsel for Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015; (g) O'Melveny & Meyers LLP as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; and (h) counsel to the DIP Agents under the proposed Debtor-in-Possession Credit Agreement.

21.     Failure to file a Sale Objection on or before the Sale Objection Deadline shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code.

### Other Relief Granted

22.     This Bid Procedures Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code.

23.     Nothing herein shall be deemed to or constitute the assumption, assignment or rejection of any executory contract or unexpired lease.

24.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Bid Procedures Order shall be effective immediately and enforceable upon its entry.

01:18384384.1

25.    This Court shall retain jurisdiction over any matters related to or arising from the

implementation of this Order.

Dated:  Wilmington, Delaware
            _____, 2016


                                        _____
                                        MARY F. WALRATH
                                        UNITED STATES BANKRUPTCY JUDGE

01:18384384.1

# **EXHIBIT 1**

## **Bid Procedures**

(see attached)

## BID PROCEDURES

Set forth below are the bid procedures (the "Bid Procedures") to be used with respect to the sale or disposition (the "Sale") of the Assets (as defined below) of Sports Authority Holdings, Inc., Slap Shot Holdings, Corp., The Sports Authority, Inc., TSA Stores, Inc., TSA Gift Card, Inc., TSA Ponce, Inc., and TSA Caribe, Inc. (collectively, the "Debtors").

**Additional information regarding the Assets can be obtained by contacting Bernard Douton (bernard.douton@rothschild.com, (212) 403-5254) and Mahir Quraishi (Mahir.Quraishi@Rothschild.com, (212) 403-3579) with Rothschild Inc., the Debtors' proposed investment banker.**

## I.   Description of the Assets to be Sold

The Debtors are seeking to sell all or substantially all of their business as a going concern or subsets of the operating business, including but not limited to the inventory, receivables, equipment, intellectual property, unexpired leases, contract rights and other assets related to or necessary to operate the business of selling sporting equipment and related apparel to retail customers in store, online and by catalog, currently operated by the Debtors, but excluding causes of action arising under chapter 5 of the Bankruptcy Code (as defined below) (the "Assets"), in each case free and clear of all liens, claims and encumbrances thereon.

The Sale of the Assets shall be subject to a competitive bidding process as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The Debtors may consider bids for the Assets (or any portion thereof) in a single bid from a single bidder, or in multiple bids from multiple bidders.

## II.   Confidentiality Agreement

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must enter into (unless previously entered into) to the Debtors, on or before the Bid Deadline (as defined below), an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (the "Confidentiality Agreement"). Each person or entity that enters into the Confidentiality Agreement with the Debtors on or before the Bid Deadline is hereinafter referred to as a "Potential Bidder."

After a Potential Bidder enters into the Confidentiality Agreement with the Debtors, the Debtors shall deliver or make available (unless previously delivered or made available) to each Potential Bidder certain designated information (including, if applicable, financial data) with respect to the Assets.

01:18384383.1

## III.        Determination by the Debtors

As appropriate throughout the Bidding Process, the Debtors will consult with (1) Bank of America, N.A., ("BofA") in its capacity as Administrative Agent and Collateral Agent (the "ABL Agent") under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012 (the "ABL Agreement"), (2) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 (the "Term Agent"), (3) Wells Fargo Bank, National Association ("Wells Fargo"), in its capacity as FILO Agent (the "FILO Agent" and, together with the ABL Agent and the Term Agent, the "Prepetition Agents") under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015 (the "FILO Agreement"), (4) BofA in its capacity as Administrative Agent and Collateral Agent (in such capacity, the "DIP ABL Agent") in respect of a senior secured, super-priority asset based revolving credit facility of up to $500 million ($275 million on an interim basis) in aggregate principal amount (the "Revolving DIP Facility") pursuant to the terms of that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement, dated as of March __, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement"), (5) Wells Fargo in its capacity as FILO Agent (the "DIP FILO Agent" and collectively with the DIP ABL Agent, the "DIP Agents") under the DIP Credit Agreement, and (6) the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases, if any (the "Creditors' Committee" and, collectively with the Prepetition Agents and the DIP Agents, the "Consultation Parties") and shall (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence, (b) evaluate bids from Potential Bidders on any or all of the Assets, (c) negotiate any bid made to acquire any or all of the Assets, and (d) make such other determinations as are provided in these Bid Procedures (collectively, the "Bidding Process"). Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any party that is not a Potential Bidder or a Consultation Party.

## IV.        Due Diligence

Up to and including the Bid Deadline (as defined below) (such period, the "Diligence Period"), the Debtors shall afford any Potential Bidder, and any Consultation Party, such available due diligence access or additional information as may be reasonably requested by the Potential Bidder or Consultation Party, as applicable, that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances. The Debtors will provide, in an electronic data room to be established for these purposes, a form asset purchase agreement for a sale of substantially all of the Debtors' Assets (the "Form APA"), and will grant each Potential Bidder or Consultation Party, as applicable, access to such data room. The Debtors may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders and/or or Consultation Parties, as applicable. Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined below).

V.      **Bid Deadline**

A Potential Bidder that desires to make a Bid shall deliver copies of its Bid by email to: (a) proposed counsel to the Debtors, (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com) and Andrew L. Magaziner (amagaziner@ycst.com), and (ii) Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, Attn: Robert A. Klyman (rklyman@gibsondunn.com) and Matthew J. Williams (mjwilliams@gibsondunn.com); and (b) proposed investment banker for the Debtors, Rothschild Inc., Attn: Bernard Douton (bernard.douton@rothschild.com) and Mahir Quraishi (Mahir.Quraishi@Rothschild.com) by no later than April 20, 2016 at 5:00 p.m. (prevailing Eastern Time) (the "<u>Bid Deadline</u>").  The Debtors, in turn, shall provide copies of all Bid materials to each Consultation Party so long as such party has not submitted a Bid, as set forth below.

VI.     **Stalking Horse Bidder(s)**

The Debtors may solicit binding "stalking horse bids" for the Assets (any such bid, a "<u>Stalking Horse Bid</u>," and the provider of such bid, a "<u>Stalking Horse Bidder</u>") at any time up to and including April 10, 2016 (the "<u>Stalking Horse Bid Deadline</u>"), which bid(s) shall set the floor for all bids for the relevant Assets at the Auction.  Recognizing a Stalking Horse Bidder's expenditure of time, energy and resources, and that a Stalking Horse Bid provides a floor bid with respect to the relevant Assets, the Debtors may seek Bankruptcy Court authority to provide any Stalking Horse Bidder with customary bid protections (collectively, the "<u>Bid Protections</u>"). In the event that a Stalking Horse Bid is obtained by the Debtors prior to the Stalking Horse Bid Deadline, the Debtors will, following consultation with the Consultation Parties, announce the designation of the Stalking Horse Bidder(s) by filing a notice on the Bankruptcy Court's docket (a "<u>Stalking Horse Bid Notice</u>").  A Stalking Horse Bid Notice shall:

(i)      state the identity of the Stalking Horse Bidder and identify the Assets that are subject to the Stalking Horse Bid;

(ii)     attach an agreement accompanying the Stalking Horse Bid (a "<u>Stalking Horse Agreement</u>") memorializing the proposed transaction by and between the Stalking Horse Bidder and the Debtors for the Assets or a subset thereof;

(iii)    contain a statement setting forth the terms of the Bid Protections, which the Debtors will seek expedited approval of, as applicable (the "<u>Bid Protection Amount</u>"); and

(iv)     contain a statement setting forth the adjusted Minimum Bid (as defined below), which amount shall equal the sum of (A) the value of the Stalking Horse Bid, (B) the Bid Protection Amount, and (C) a reasonable minimum overbid amount to be calculated in the Debtors' sole discretion, following consultation with the Consultation Parties, based on the aggregate price set forth in the Stalking Horse Bid (a "<u>Stalking Horse Overbid</u>").

**VII.**      <u>Bid Requirements</u>

All bids (each hereinafter, a "<u>Bid</u>") must (collectively, the "<u>Bid Requirements</u>"):

(a)      be accompanied by a letter or email, or at the request of the Debtors, a non-binding letter of intent:

         (i)      stating with specificity the Assets (including the specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale;

         (ii)      detailing the following:

             (A)      a duly executed purchase agreement (the "<u>Purchase Agreement</u>");

             (B)      solely in the event that a Stalking Horse Bid Notice has been filed prior to the Bid Deadline with respect to the relevant Assets, a redline of the Purchase Agreement marked to reflect any proposed amendments and modifications to the Stalking Horse Agreement and the applicable schedules and exhibits;

             (C)      solely in the event that the Bid being submitted is for the purchase of all or substantially all of the Debtors' Assets <u>and</u> no Stalking Horse Bid Notice has been filed prior to the Bid Deadline with respect to a sale of all or substantially all of the Debtors' Assets, a redline of the Purchase Agreement marked to reflect any proposed amendments and modifications to the Form APA and the applicable schedules and exhibits; and

         (iii)      agreeing that the Potential Bidder's offer is binding and irrevocable until the earlier of (i) the Closing Date (as defined herein), or (ii) ten (10) days after the Sale Hearing (unless selected as the Next-Highest Bidder (as defined below) in which case such offer will remain open until the Closing Date);

         (iv)      providing for a Closing Date that is consistent with the milestones set forth in the Debtors' post-petition financing agreement and occurs on or by April 28, 2016;

         (v)      offering to pay a price equal to or greater than the Stalking Horse Overbid in the event that a Stalking Horse Bid Notice has been filed prior to the Bid Deadline with respect to the relevant Assets (the "<u>Minimum Bid</u>");

         (vi)      providing that such Bid is not subject to any due diligence or financing contingency; and

(vii)    providing that the Potential Bidder agrees to serve as a backup bidder (the "Next-Highest Bidder") if the Potential Bidder's Qualified Bid (as defined below) is the next highest and best bid after the Successful Bid (as defined below) (the "Next-Highest Bid") with respect to the relevant Assets.

(b)    be accompanied by any reasonable information requested by a consumer privacy ombudsman, if one is appointed pursuant to section 363(b)(1)(B) of the Bankruptcy Code;

(c)    be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information"), including (i) information about the Potential Bidder's financial condition, such as federal tax returns for two years, a current financial statement, or bank account statements, (ii) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact name of the Potential Bidder (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale), and (v) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include.  By submitting a Bid, Potential Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected landlords, contract counterparties, and the Consultation Parties in the event that the Debtors determine such bid to be a Qualified Bid (as defined below); and

(d)    be accompanied by a proposed Letter of Intent sufficient for purposes of any required filing under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "HSR Act") and a statement indicating that the Potential Bidder would cover any filing fees under the HSR Act.

A Bid must be accompanied by (a) a deposit in the form of a certified check or wire transfer, payable to the order of the Debtors, in the amount of the greater of (A) $5,000,000 and (B) five percent (5%) of the Bid, which funds will be deposited into an interest bearing escrow account to be identified and established by the Debtors (a "Good Faith Deposit") and (b) written evidence, documented to the Debtors' satisfaction, that demonstrates the Potential Bidder has available cash, a commitment for financing if selected as the Successful Bidder (as defined below) with respect to the relevant Assets (provided, however, that the closing shall not be contingent in any way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (provided that such commitments may have covenants and conditions acceptable to the Debtors).  The Debtors reserve the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in their sole discretion after consulting with the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above.  A Bid received from a Potential Bidder that meets the above requirements, and is otherwise satisfactory to the Debtors, will be considered a "Qualified Bid" and each Potential Bidder that submits a

Qualified Bid will be considered a "Qualified Bidder." The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than 48 hours after such Bids are received. For the avoidance of doubt, any Stalking Horse Agreement will be deemed a Qualified Bid and any Stalking Horse Bidder will be deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bid Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder. The Debtors shall, within two (2) calendar days following the Bid Deadline, inform any Stalking Horse Bidder of the Qualified Bids received and shall provide copies of the Starting Bid (as defined below) at the same time other Qualified Bidders receive such information.

For the avoidance of doubt, the ABL Agent and the FILO Agent will be deemed to be Qualified Bidders, for all purposes and requirements pursuant to the Bid Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder, and any Bid submitted by the ABL Agent or the FILO Agent will be deemed to be a Qualified Bid, for all purposes and requirements pursuant to these Bid Procedures, notwithstanding the requirements that a Bid must satisfy to be a Qualified Bid, including the requirements, among others, to deliver a confidentiality agreement and post a Good Faith Deposit.

A Qualified Bid will be valued by the Debtors based upon any and all factors that the Debtors reasonably deem pertinent in their reasonable business judgment, including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating the transaction(s) with the Qualified Bidder, (c) any excluded assets or executory contracts and leases, and (d) any other factors that the Debtors (in consultation with the Consultation Parties) may reasonably deem relevant.

The Debtors, in their business judgment, and in consultation with the Consultation Parties, reserve the right to reject any Bid (other than any Stalking Horse Bid) if such Bid, among other things:

    (a)    is on terms that are more burdensome or conditional than the terms of the Stalking Horse Agreement, if applicable;

    (b)    requires any indemnification of the Potential Bidder in its Purchase Agreement;

    (c)    is not received by the Bid Deadline;

    (d)    is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets; or

    (e)    does not, in the Debtors' determination (after consultation with the Consultation Parties), include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtors estates or the Auction.

Any Bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid. In the event that any Bid is so rejected, the Debtors shall cause the Good Faith Deposit of such

Potential Bidder (including all accumulated interest thereon) to be refunded to it within five (5) business days after the Bid Deadline.

If the Debtors do not receive any Stalking Horse Bid prior to the Stalking Horse Bid Deadline or Qualified Bids prior to the Bid Deadline with respect to a particular portion of the Assets (or all of the Assets), the Debtors may, in consultation with the Consultation Parties, among other things, (i) extend such Bid Deadline with respect to the subject Assets and postpone the Auction, or (ii) cancel the Auction and terminate the proposed Sale for the subject Assets.

## VIII.   Credit Bidding

In connection with the Sale of all or any of the Assets, the Prepetition Agents holding perfected security interests in such Assets, may seek to credit bid some or all of their claims for their respective collateral (each such bid, a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code. A Credit Bid may be applied only to reduce the cash consideration with respect to those Assets in which the party submitting such Credit Bid holds a security interest. Each Prepetition Agent shall be considered a Qualified Bidder with respect to its right to acquire all or any of the Assets by Credit Bid. Unless otherwise provided herein, all Qualified Bids shall be cash bids.

## IX.   Auction

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders (including any Stalking Horse Bidder) are eligible to participate at the Auction (as defined below). The Consultation Parties shall be permitted to attend the Auction. At least one (1) day prior to the Auction, each Qualified Bidder, other than any Stalking Horse Bidder, must inform the Debtors in writing whether it intends to participate in the Auction. If the Debtors receive only a Stalking Horse Bid or one Qualified Bid with regard to any particular Assets (or all of the Assets), (a) the Debtors shall not hold an Auction with respect to such Assets; (b) the Stalking Horse Bid or the Qualified Bid, as applicable, will be deemed the Successful Bid with respect to such Assets; and (c) the Stalking Horse Bidder or the Qualified Bidder, as applicable, will be named the Successful Bidder with respect to such Assets.

If at least two Qualified Bids (or one Qualified Bid if there is also a Stalking Horse Bid) are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct an auction (the "Auction") with respect to such Assets and shall determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Qualified Bid for the relevant Assets (the "Starting Bid"), which determination will be communicated to Qualified Bidders prior to the commencement of the Auction. The Auction shall take place at [_____] (prevailing Eastern Time) on April 24, 2016 at the offices of counsel to the Debtors, Gibson, Dunn & Crutcher LLP, 200 Park Ave., New York, New York, 10166, or such later time or such other place as the Debtors shall designate and notify to all Qualified Bidders who have submitted Qualified Bids. Professionals and principals for the Debtors, the Stalking Horse Bidder(s) (if any), each Qualified Bidder and the Consultation Parties shall be able to attend and observe the Auction, along with any other parties the Debtors deem appropriate.

Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

Bidding at the Auction for the Assets (or subset thereof) that are subject to Qualified Bids will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid (defined below) is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors reasonably determine, in consultation with the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each Subsequent Bid at the Auction shall provide net value to the estates in an amount to be announced at or prior the Auction ("Incremental Overbid") over the Starting Bid or the Leading Bid (as defined below), as the case may be, as determined by the Debtors in the exercise of their reasonable business judgment and in consultation with the Consultation Parties; provided that: (i) if the Leading Bid was made by a Stalking Horse Bidder, such bid shall be deemed to include the Bid Protection Amount (in the event that any Bid Protections were previously approved by the Bankruptcy Court), and (ii) any Subsequent Bid made by any Stalking Horse Bidder shall only be required to equal the sum of the amount of (w) the Starting Bid or the Leading Bid, as applicable, and (x) the Incremental Overbid, less the Bid Protection Amount (if applicable). After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest or otherwise best offer for the subject Assets (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures as set forth below. Qualified Bidders may pass only once with respect to the subsequent rounds of bidding without forfeiting their standing in the Auction.

The Debtors may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make Subsequent Bids, the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids) for conducting the Auction or otherwise modify these Bid Procedures; provided that such rules (1) are not materially inconsistent with these Bid Procedures, the Bankruptcy Code or any order of the Bankruptcy Court, and (2) are disclosed to each Qualified Bidder during the Auction. The bidding at the Auction shall be transcribed or videotaped and the Debtors shall maintain a transcript of all Bids made and announced at the Auction.

Immediately prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties will, for the Assets (or subset thereof) that were subject to the Auction: (a) determine, consistent with the Bid Procedures, which bid constitutes the highest or otherwise best bid (the "Successful Bid"); and (b) notify all Qualified Bidders at the Auction for the subject Assets, prior to its conclusion, of the name of the maker of the Successful Bid (the "Successful Bidder") with respect to the subject Assets, and the amount and other material terms of the Successful Bid. The Debtors may, in their sole discretion, designate the Next-Highest Bid (and the corresponding Next-Highest Bidder) to close with respect to the subject Assets in the event that the Successful Bidder does not close the Sale. Unless the Bankruptcy Court orders

otherwise upon application by the Debtors, the Debtors shall not consider any Bids or Subsequent Bids submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

Within 24 hours following conclusion of the Auction, the Debtors shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s) for the Assets (or subset thereof) and any applicable Next-Highest Bidders.

All bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale and the construction and enforcement of any Stalking Horse Agreement (if applicable) and all other agreements entered into in connection with any proposed Sale transaction.

## X.        Acceptance of Qualified Bids

The Debtors may reject at any time, before entry of an order of the Bankruptcy Court approving the Sale, any Bid that, in the Debtors' judgment, upon considering any comments of the Consultation Parties, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or (iii) contrary to the best interests of the Debtors and their estates.

The Debtors' presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such Bid. The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing. The Debtors intend to close the Sale(s) on or before April 28, 2016 unless another time or date, or both, are agreed to in writing by the Debtors and the Successful Bidder (the "Closing Date").

## XI.       No Fees for Potential Bidders or Qualified Bidders

Potential Bidders or Qualified Bidders, other than a Stalking Horse Bidder if so approved by the Bankruptcy Court, shall not be allowed any break-up, termination or similar fee. Moreover, all Potential Bidders, Qualified Bidders, and the Stalking Horse Bidder (excluding any Bid Protections approved by the Bankruptcy Court), by participating in the Bidding Process, will be deemed to have waived any right to seek a claim for substantial contribution pursuant to section 503 of the Bankruptcy Code or the payment of any broker fees or cost.

## XII.      Sale Hearing

Each Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of a Stalking Horse Bidder or one Qualified Bidder is received with respect to the Assets (or subset thereof), then the Stalking Horse Bid or the Qualified Bidder, respectively) will be subject to approval by the Bankruptcy Court. The hearing to approve a Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of a Stalking Horse Bidder or one Qualified Bid is received with respect to the Assets (or subset thereof), then the Stalking Horse Bid or the Qualified Bid, respectively) shall take place on April 26, 2016 at 11:30 a.m. (ET)  (prevailing

Eastern Time) (the "Sale Hearing").  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Debtors' chapter 11 cases.

**XIII.**      **Return of Good Faith Deposit**

The Good Faith Deposits of all Potential Bidders shall be held in escrow by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court.  The Good Faith Deposits of all Potential Bidders shall be retained by the Debtors, notwithstanding Bankruptcy Court approval of the Sale(s), until three (3) business days after the earlier of (a) the applicable Closing Date(s), or (b) ten (10) days following the Sale Hearing; provided, however, that the Good Faith Deposit of each Next-Highest Bidder shall be retained until three (3) business days after the applicable Closing Date.  The Debtors shall retain any Good Faith Deposit submitted by each Successful Bidder.  At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided.

If a Successful Bidder (or, if the Sale is to be closed with a Next-Highest Bidder, then the Next-Highest Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement or the Stalking Horse Agreement, as applicable (and as such agreements may be amended or modified at the Auction), the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale is to be closed with the Next-Highest Bidder, then such Next-Highest Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

**XIV.**      **Reservation of Rights and Modifications**

Notwithstanding any of the foregoing, the Debtors and their estates, in consultation with the Consultation Parties, reserve the right to modify these Bid Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bid Procedures; provided, however, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) that submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open, including any credit bid, if the Debtors determine, in their reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection, or determination is (a) likely to have a chilling effect on the potential bidding or (b) otherwise contrary to the goal of maximizing value from the sale process for the Debtors' estates, their creditors, and all other parties in interest.

01:18384383.1

**XV.**       <u>**Next-Highest Bidder**</u>

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale prior to such date as specified in the applicable Purchase Agreement (or such date as may be extended by the Debtors), the Debtors, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for the Assets (or subset thereof), the Next-Highest Bidder will be deemed to be the Successful Bidder for such Assets, and the Debtors will be authorized, but not directed, to close the Sale to the Next-Highest Bidder subject to the terms of the Next-Highest Bid without the need for further order of the Bankruptcy Court and without the need for further notice to any interested parties.

*[The remainder of this page is intentionally left blank.]*

01:18384383.1

## **EXHIBIT 2**

**Notice of Auction and Sale Hearing**

(see attached)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors. | Jointly Administered |
| | **Sale Objection Deadline:**<br>**April 19, 2016 at 4:00 p.m. (ET)** |
| | **Post-Auction Objection Deadline:**<br>**April 25, 2016 at 4:00 p.m. (ET)** |
| | **Hearing Date:**<br>**April 26, 2016 at 11:30 a.m. (ET)** |

## NOTICE OF SALE, BID PROCEDURES, AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    On March 2, 2016, the affiliated debtors and debtors in possession in the above-captioned cases (each a "<u>Debtor</u>," and collectively, the "<u>Debtors</u>") filed with the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") their motion (the "<u>Motion</u>") for the entry of: (a) an order (the "<u>Bid Procedures Order</u>"),[2] (i) scheduling an auction (the "<u>Auction</u>") and hearing (the "<u>Sale Hearing</u>") on approval of the proposed sale or disposition (the "<u>Sale</u>") of substantially all of the assets of the Debtors (the "<u>Assets</u>") or any portion thereof, free and clear of all liens, claims, encumbrances, and other interests, except certain permitted encumbrances as determined by the Debtors and any purchaser of the Assets (collectively, the "<u>Encumbrances and Liabilities</u>"), to the Successful Bidder(s) and authorizing the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "<u>Assigned Contracts</u>") in connection therewith; (ii) authorizing and approving certain proposed bid procedures for the Sale (collectively, the "<u>Bid Procedures</u>"), certain proposed assumption and assignment procedures for the Assigned Contracts (collectively, the "<u>Assignment Procedures</u>"), and the form and manner of notice thereof; and (iii) granting related

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order (including the Bid Procedures). Any summary of the Bid Procedures and the Bid Procedures Order contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

relief; and (b) an order (the "<u>Sale Order</u>"), (i) authorizing and approving the Debtors' entry into an agreement with the Successful Bidder(s) for all or a portion of the Assets; (ii) authorizing and approving the Sale, free and clear of all Encumbrances and Liabilities; (iii) authorizing and approving the assumption and assignment of the Assigned Contacts in connection therewith; and (iv) granting related relief.

2.      On _____, 2016, the Bankruptcy Court entered the Bid Procedures Order [Docket No. ___].    Pursuant to the Bid Procedures Order, the Debtors have until **April 10, 2016 at 5:00 p.m. (ET)** (the "<u>Stalking Horse Bid Deadline</u>") and obtain a Stalking Horse Bids for the Assets.

3.      Pursuant to the Bid Procedures, a Potential Bidder that desires to make a bid shall deliver an electronic copy of its bid to the parties identified in the Bid Procedures so as to be received on or before **April 20, 2016 at 4:00 p.m. (ET)** (the "<u>Bid Deadline</u>") and otherwise comply with the Bid Procedures. **FAILURE TO ABIDE BY THE BID PROCEDURES MAY RESULT IN A BID TO BE REJECTED.   ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT BERNARD DOUTON AND NEIL AUGUSTINE (NEIL.AUGUSTINE@ROTHSCHILD.COM) WITH ROTHSCHILD INC. (BERNARD.DOUTON@ROTHSCHILD.COM),    THE    DEBTORS'    PROPOSED INVESTMENT BANKER, AT (212) 403-5254.**

4.      Pursuant to the Bid Procedures, in the event that the Debtors receive at least two Qualified Bids (or one Qualified Bid if there is also a Stalking Horse Bid) by the Bid Deadline with regard to any particular Assets, the Debtors will conduct an auction which shall take place on **April 25, 20165 beginning at 10:00 a.m. (ET)** (the "<u>Auction</u>") at the offices of proposed counsel to the Debtors, Gibson, Dunn & Crutcher, 200 Park Ave., New York, New York, 10166, or such later time or such other place as the Debtors shall designate and notify to all Qualified Bidders who have submitted Qualified Bids.  Only Qualified Bidders (including any Stalking Horse Bidder), shall be entitled to participate at the Auction.

5.      If the Debtors do not receive any Stalking Horse Bid prior to the Stalking Horse Bid Deadline or Qualified Bids prior to the Bid Deadline with respect to a particular portion of the Assets (or all of the Assets), the Debtors may, in consultation with the Consultation Parties (i) extend such Bid Deadline with respect to the subject Assets, (ii) cancel the Auction and terminate the proposed Sale for the subject Assets, or (iii) otherwise seek Bankruptcy Court relief.

6.      Each Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of a Stalking Horse Bidder or one Qualified Bidder is received with respect to a particular Asset or grouping of Assets, then the Stalking Horse Bid or the Qualified Bidder, respectively) will be subject to approval by the Bankruptcy Court.  The Sale Hearing shall take place on **April 26, 2016 at 11:30 a.m. (ET)**.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda, stating the adjournment, on the docket of the Debtors' chapter 11 cases.

7.      Any objections to the Sale or the relief requested in connection with the Sale, including objections to entry of the proposed Sale Order (a "Sale Objection"), other than a Post-Auction Objection (as defined below) or a Cure Cost/Assignment Objection (which shall be governed by the Assignment Procedures) must:  (i) be in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, together with proof of service, **on or before 4:00 p.m. (ET) on April 19, 2016** (the "Sale Objection Deadline"); and (vi) be served, so as to be actually received on or before the Sale Objection Deadline, upon (a) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. and Andrew L. Magaziner, Esq.), and Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, (Attn: Robert A. Klyman, Esq. and Matthew J. Williams, Esq.); (b) counsel to the official committee of unsecured creditors, if one is appointed; (c) the Office of the United States Trustee for the District of Delaware; (d) Riemer & Braunstein LLP (attn: David Berman and Marjorie Crider) as counsel for Bank of America, N.A., in its capacity as Administrative Agent and Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012; (e) Brown Rudnick LLP (attn: Robert Stark and Bennett Silverberg) as counsel for (i) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (ii) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (f) Choate, Hall & Stewart LLP (attn: Kevin Simard) as counsel for Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015; (g) O'Melveny & Meyers LLP (attn: John Rapisardi) as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (h) all holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (i) counsel to the DIP Agents under the proposed Debtor-in-Possession Credit Agreement (collectively, the "Notice Parties").

8.      Any objections solely with respect to conduct at the Auction (a "Post-Auction Objection") must:  (i) be in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, together with proof of service, **on or before 4:00 p.m. (ET) on April 25, 2016** (the "Post-Auction Objection Deadline"); and (vi) be served, so as to be actually received on or before the Post-Auction Objection Deadline, upon the Notice Parties.

9.      If a Sale Objection is not filed and served on or before the Sale Objection Deadline or a Post-Auction Objection is not filed and served on or before the Post-Auction Objection Deadline in accordance with the foregoing requirements, the Court may enter the Sale Order without further notice to such party.

01:18384390.1

10.     Copies of the Motion, the Bid Procedures, the Bid Procedures Order, and the Assignment Procedures may be obtained by parties in interest free of charge on the dedicated webpage related to the Debtors' chapter 11 cases maintained by the claims and noticing agent in these cases (http://_____).  Copies of such documents are also available for inspection during regular business hours at the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, and may be viewed for a fee on the internet at the Court's website (http://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

01:18384390.1

Dated: _____, 2016
        Wilmington, Delaware

/s/_____
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4454)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kenos@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

01:18384390.1

5

# **EXHIBIT 3**

## **Potential Assumption and Assignment Notice**

(see attached)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors. | Jointly Administered |
| | **Cure Cost/Assignment Objection Deadline:** **April 19, 2016 at 4:00 pm** |
| | **Post-Auction Objection Deadline:** **April 25, 2016 at 4:00 pm** |
| | **Hearing Date:** **April 26, 2016 at 11:30 a.m. (ET)** |

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
**IN CONNECTION WITH SALE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On March 2, 2016, the affiliated debtors and debtors in possession in the above-captioned cases (each a "Debtor," and collectively, the "Debtors") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") their motion (the "Motion") for the entry of:  (a) an order (the "Bid Procedures Order"),[2] (i) scheduling an auction (the "Auction") and hearing (the "Sale Hearing") on approval of the proposed sale or disposition (the "Sale") of substantially all of the assets of the Debtors (the "Assets") or any portion thereof, free and clear of all liens, claims, encumbrances, and other interests, except certain permitted encumbrances as determined by the Debtors and any purchaser of the Assets (collectively, the "Encumbrances and Liabilities"), to the Successful Bidder(s) and authorizing the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assigned Contracts") in connection therewith; (ii) authorizing and approving certain proposed bid procedures for the Sale (collectively, the "Bid Procedures"), certain proposed assumption and

---

[1]      The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order (including the Bid Procedures).  Any summary of the Assignment Procedures and the Bid Procedures Order contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

assignment procedures for the Assigned Contracts (collectively, the "Assignment Procedures"), and the form and manner of notice thereof; and (iii) granting related relief; and (b) an order (the "Sale Order"), (i) authorizing and approving the Debtors' entry into an agreement with the Successful Bidder(s) for all or a portion of the Assets; (ii) authorizing and approving the Sale, free and clear of all Encumbrances and Liabilities; (iii) authorizing and approving the assumption and assignment of the Assigned Contacts in connection therewith; and (iv) granting related relief.

2.    On _____ _____, 2016, the Bankruptcy Court entered the Bid Procedures Order [Docket No. ____].

3.    The Sale Hearing shall take place on **April 26, 2016 at 11:30 a.m. (ET)**. The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda, stating the adjournment, on the docket of the Debtors' chapter 11 cases.

4.    To facilitate the Sale, the Debtors are potentially seeking to assume and assign certain Contracts (the "Assigned Contracts") to any Successful Bidder, in accordance with the Assignment Procedures provided for in the Bid Procedures Order.  Each of the Debtors' Contracts is identified on Exhibit 1 attached hereto.  The inclusion of any Contract on Exhibit 1 does not constitute an admission that a particular Contract is an executory contract or unexpired lease of property or require or guarantee that such Contract will be assumed and assigned, and all rights of the Debtors with respect thereto are reserved.  The cure amount (each, a "Cure Cost"), if any, that the Debtors believe is required to be paid to the applicable counterparty (each, a "Non-Debtor Counterparty," and collectively, the "Non-Debtor Counterparties") to each of the Contracts under section 365(b)(1)(A) and (B) of the Bankruptcy Code is identified on Exhibit 1 attached hereto.

5.    If a Non-Debtor Counterparty objects to the Cure Costs for its Contract and/or to the proposed assumption, assignment and/or transfer of such Contract (including the transfer of any related rights or benefits thereunder), other than objections that relate specifically to the identity of a Successful Bidder, the Non-Debtor Counterparty must file with the Bankruptcy Court and serve on the Notice Parties (as defined below) a written objection (a "Cure Cost/Assignment Objection").  Any Cure Cost/Assignment Objection shall:  (i) be in writing; (ii) state with specificity the nature of such objection, including the amount of Cure Costs in dispute; and (iii) be filed with the Bankruptcy Court and properly served on the Notice Parties so as to be received no later than **4:00 p.m. (ET) on April 19, 2016** (the "Cure Cost/Assignment Objection Deadline").  The "Notice Parties" are as follows:  (a) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. and Andrew L. Magaziner, Esq.), and Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, (Attn: Robert A. Klyman, Esq. and Matthew J. Williams, Esq.); (b) counsel to the official committee of unsecured creditors, if one is appointed; (c) the Office of the United States Trustee for the District of Delaware; (d) Riemer & Braunstein LLP (attn: David Berman, Esq. and Marjorie Crider, Esq.) as counsel for Bank of America, N.A., in its capacity as Administrative Agent and

Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012; (e) Brown Rudnick LLP (attn.: Robert Stark, Esq. and Bennett Silverberg, Esq.) as counsel for (A) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (B) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (f) Choate, Hall & Stewart LLP (attn.: Kevin Simard, Esq.) as counsel for Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015; (g) O'Melveny & Meyers LLP (attn: John Rapisardi, Esq.) as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; and (h) as counsel to the DIP Agent under the proposed Debtor-in-Possession Credit Agreement.

6.      Objections (a "<u>Post-Auction Objection</u>") of any Non-Debtor Counterparty related solely to the identity of, and adequate assurance of future performance provided by, the Successful Bidder must (i) be in writing; (ii) state with specificity the nature of such objection, and (iii) be filed with the Bankruptcy Court and properly served on the Notice Parties so as to be received no later than **4:00 p.m. (ET) on April 25, 2016** (the "<u>Post-Auction Objection Deadline</u>").

7.      At the Sale Hearing, the Debtors may seek Bankruptcy Court approval of the assumption and assignment to any Successful Bidder of those Contracts that have been selected by the Successful Bidder to be assumed and assigned.  The Debtors and their estates reserve any and all rights with respect to any Contracts that are not ultimately assigned to the Successful Bidder.

8.      Any Non-Debtor Counterparty to a Contract who fails to timely file and properly serve a Cure Cost/Assignment Objection or Post-Auction Objection as provided herein will (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtors and the Debtors shall be entitled to rely solely upon the Cure Costs, and (ii) be deemed to have consented to the assumption, assignment and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the relevant Successful Bidder and shall be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under such Contract, or that any related right or benefit under such Contract cannot or will not be available to the relevant Successful Bidder.

9.      If a Non-Debtor Counterparty files a Cure Cost/Assignment Objection satisfying the requirements of these Assignment Procedures, the Debtors and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Bankruptcy Court intervention (the "<u>Resolution Procedures</u>").  If the applicable parties determine that the objection cannot be resolved without judicial intervention in a timely manner, the Bankruptcy Court shall make all necessary determinations relating to such Cure Cost/Assignment Objection at a hearing scheduled pursuant to the following Paragraph.

10.     Consideration of unresolved Cure Cost/Assignment Objections and Post-Auction Objections relating to all Contracts, if any, will be held at the Sale Hearing, *provided*, *however*, that (i) any Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection and (ii) the Debtors, in consultation with the Consultation Parties, may adjourn a Cure Cost/Assignment objection in their discretion.

11.     A timely filed and properly served Cure Cost/Assignment Objection or Post-Auction Objection will reserve the filing Non-Debtor Counterparty's rights relating to the Contract, but will not be deemed to constitute an objection to the relief generally requested in the Motion with respect to the approval of the Sale.

12.     The Debtors' assumption and/or assignment of a Contract is subject to approval by the Bankruptcy Court, consummation of the Sale and receipt of a Confirmation Notice (as defined below).  Absent consummation of the Sale, receipt of a Confirmation Notice and entry of a Sale Order approving the assumption and/or assignment of the Contracts, the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

13.     Within ten (10) days following the assumption and assignment of any Contract to the relevant Successful Bidder, the Debtors shall file with the Bankruptcy Court and shall serve each Non-Debtor Counterparty whose Contract the Debtors assumed and/or assigned with a notice of assumption and assignment of such Contract (the "Confirmation Notice").  Any Contract where no Confirmation Notice was served shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

14.     Copies of the Motion, the Bid Procedures, the Bid Procedures Order, and the Assignment Procedures may be obtained by parties in interest free of charge on the dedicated webpage related to these chapter 11 cases maintained by the claims and noticing agent in these cases (http://_____).    Copies of such documents are also available for inspection during regular business hours at the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, and may be viewed for a fee on the internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

01:18384389.1

Dated: _____, 2016
        Wilmington, Delaware

*/s/*_____
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4454)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kenos@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

# **EXHIBIT 1**

## **Assigned Contracts**

(attached)