## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x

In re                                              :        **Chapter 11**
                                                   :
**The Sports Authority, Inc. , et al.,**[1]        :        **Case No. 16-10527 (MFW)**
                                                   :
Debtors.                                           :        **Jointly Administered**
                                                   :
                                                   :        Ref. Docket No. 16

----------------------------------------------------------- x

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO POST-PETITION LENDERS PURSUANT TO 11 U.S.C. §§ 364 AND 507; (III) AUTHORIZING THE USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364; AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND (C) AND LOCAL RULE 4001-2

Upon the motion (the "*Motion*")[2] of The Sports Authority, Inc., on behalf of itself and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "*Debtors*"), pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*") and in accordance with Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure (the "*Local Rules*") of the United States Bankruptcy Court for the District of Delaware (this "*Court*"), in these chapter 11 cases (the "*Chapter 11 Cases*"), for entry of an interim order (this "*Interim Order*"), granting the following

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2]  Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Financing Agreements (as defined below).

relief on an interim basis until the date that a Final Order (as defined below) has been entered (the "***Interim Period***"):

**(I)     Interim DIP Financing**

(A)     Authorizing the Debtors to obtain up to $275,000,000 in post-petition financing (the "***DIP Facility***") during the Interim Period pursuant to (and in accordance with the terms of) that certain *Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement* (as may be amended, modified, or supplemented, the "***DIP Credit Agreement***"), substantially in the form as filed with the Court,[3] by and among The Sports Authority, Inc. and TSA Stores, Inc., as borrowers, Slap Shot Holdings Corp., and TSA Gift Card, Inc., as guarantors (and, upon entry of the Final Order, Sports Authority Holdings, Inc., TSA Ponce, Inc., and TSA Caribe, Inc., as guarantors), Bank of America, N. A., as Administrative Agent and Collateral Agent (the "***DIP Agent***"), Wells Fargo Bank, National Association, as FILO Agent, and each Revolving Lender and each FILO Lender party thereto (collectively, the "***DIP Lenders***"), which may be used for the following in accordance with and as limited by the Approved Budget (as defined below) (subject to permitted variances) and subject to Paragraph 51 hereof (where applicable):

(i)     to pay fees, costs, and expenses as provided in the DIP Financing Agreements (as defined below), including amounts incurred in connection with the preparation, negotiation, execution, and delivery of the DIP Credit Agreement and the other DIP Financing Agreements;

(ii)     for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors;

(iii)     for making adequate protection payments and other payments as provided in this Interim Order;

(iv)     to fund the Prepetition Indemnity Account (as defined below);

(v)     for payment of the outstanding prepetition "Revolving Loans" constituting Prepetition ABL Debt in the manner set forth in

---

[3] Notwithstanding anything to the contrary in the DIP Credit Agreement, the guarantees of Sports Authority Holdings, Inc., TSA Ponce, Inc., and TSA Caribe, Inc. shall only become effective upon entry of the Final Order.

Paragraph 6 hereof (the "***Interim Roll-Up***");

(vi)    upon entry of a Final Order (as defined below), for the payment in full of all outstanding prepetition amounts under the Prepetition ABL Credit Agreement (as defined below) (the "***Final Roll-Up***"); and

(vii)    upon either (x) a DIP Maturity Event, so long as all Prepetition ABL Debt and all DIP Obligations have been paid in full in cash, or (y) after the occurrence of a DIP Order Event of Default (as defined below) as provided in Paragraph 37 below, to fund the Carve Out Account (as defined below).

(B)    Approval of the DIP Credit Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Agent and/or the DIP Lenders, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("***UCC***") financing statements, and all other related agreements, documents, notes, certificates, and instruments executed, delivered, and/or ratified by the Debtors which comprised certain of the Prepetition ABL Financing Documents (as defined below) hereunder which in connection therewith or related thereto (collectively, as may be amended, modified, or supplemented and in effect from time to time, the "***DIP Financing Agreements***");

(C)    Approval of the Interim Roll-Up;

(D)    Granting the DIP Agent for the benefit of the DIP Lenders the following Liens (as defined in section 101(37) of the Bankruptcy Code) (the "***DIP Liens***") and claims:

(i)    first priority priming, valid, perfected, and enforceable Liens (as defined below), subject only to the Carve Out (as defined below) and the Permitted Prior Liens (as defined below), upon the ABL Priority Collateral (as defined below), as provided in and as contemplated by this Interim Order and the DIP Financing Agreements;

(ii)    a first-priority senior lien on the Debtors' unencumbered assets, including (upon entry of the Final Order) all assets of Sports Authority Holdings, Inc., TSA Ponce, Inc. and TSA Caribe, Inc. (such assets the "***New Loan Party Assets***"), but excluding leasehold interests of the Debtors ("***Leases***") and actions arising under chapter 5 of the Bankruptcy Code; provided, however, (A) the DIP Liens shall include, upon entry of the Interim Order, first-priority senior liens on the proceeds of Leases (the "***Lease Proceeds***"), and (B) the DIP Liens shall include, upon entry of the Final Order, first-priority

senior liens on Specified Bankruptcy Recoveries;

(iii)    in accordance with the Prepetition Intercreditor Agreement (as defined below), second priority priming, valid, perfected, and enforceable Liens junior only to the Liens granted to the Prepetition Term Loan Agent (as defined below) for the benefit of the Prepetition Term Loan Lenders (as defined below) upon the Term Priority Collateral (as defined below), subject only to the Carve Out and the Permitted Prior Liens (as defined below), as provided in and as contemplated by this Interim Order and the DIP Financing Agreements; and

(iv)    allowed superpriority administrative claim status in respect of all obligations under the DIP Financing Agreements (collectively, the "***DIP Obligations***"), subject to the Carve Out as provided herein;

**(II)**    **Interim Use of Cash Collateral** – Authorizing the Debtors' use of "cash collateral," as such term is defined in section 363 of the Bankruptcy Code ("***Cash Collateral***") during the Interim Period, in which the Prepetition ABL Agent (as defined below) and the Prepetition Term Loan Agent (as defined below) have an interest;

**(III)**   **Adequate Protection** – Granting certain adequate protection, including, among other things, Adequate Protection Liens and Adequate Protection Superpriority Claims (each as defined below) and certain other adequate protection as described in this Interim Order, to (A) Bank of America, N. A., as Administrative Agent and as Collateral Agent (the "***Prepetition ABL Agent***") under that certain Second Amended and Restated Credit Agreement dated May 17, 2012 (as amended and in effect, the "***Prepetition ABL Credit Agreement***") by and among certain of the Debtors that comprised the "Loan Parties" thereunder, the Prepetition ABL Agent, Wells Fargo Bank, National Association, as FILO Agent (the "***FILO Agent***"), each Revolving Lender and each FILO Lender party thereto (the "***Prepetition ABL Lenders***"), and (B) Wilmington Savings Fund Society, FSB, as Administrative and Collateral Agent (the "***Prepetition Term Loan Agent***" and, together with the FILO Agent and the Prepetition ABL Agent, the "***Prepetition Agents***") for the benefit of the Term Lenders (the "***Prepetition Term Loan Lenders***" and, together with the Prepetition ABL Lenders, the "***Prepetition Secured Lenders***") under that certain Amended and Restated Credit Agreement dated as of November 16, 2010 (as amended and in effect, the "***Prepetition Term Loan Credit Agreement***") by and among certain of the Debtors that comprised the "Loan Parties" thereunder, the Prepetition Term Loan Agent, and the Prepetition Term Loan Lenders, in each case, to the extent of any diminution in the value of the Prepetition Agents' respective interests in the Prepetition Collateral (as defined below), having the priority set forth in this Interim Order, as adequate protection for the granting of the DIP Liens to the DIP Agent, the use of Cash Collateral, subordination to the Carve Out, and for the imposition of the automatic stay;

(IV)    **Modifying the Automatic Stay** – Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order;

(V)    **Waiving Any Applicable Stay** – Waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Interim Order; and

(VI)    **Final Hearing** – Scheduling a final hearing (the "***Final Hearing***") to consider entry of an order (the "***Final Order***") granting the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing.

and upon the *Declaration of Jeremy Aguilar in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "***First Day Declaration***") and the *Declaration of Bernard Douton in Support of Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364; (II) Granting Liens and Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C. §§ 364 and 507; (III) Authorizing the Use of Cash Collateral and Providing Adequate Protection to Prepetition Secured Parties and Modifying the Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2* (the "***Douton Declaration***"), each of which was filed contemporaneously with the Motion; and this Court having reviewed the Motion and held a hearing with respect to the Motion (the "***Interim Hearing***"); and upon the Motion, the First Day Declaration, the Douton Declaration, and the record of the Interim Hearing and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

## I.    Procedural Findings of Fact

A.    **Petition Date.**  On March 2, 2016 (the "*Petition Date*"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

B.    **Jurisdiction and Venue.**  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.    **Committee Formation.**  No official committee (a "*Committee*") of unsecured creditors, equity interest holders, or other parties-in-interest has been appointed in the Chapter 11 Cases.

D.    **Notice.**  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, to certain parties-in-interest, including: (i) the Office of the United States Trustee; (ii) those creditors holding the 50 largest unsecured claims against the Debtors' estates, on a consolidated basis; (iii) counsel to the Prepetition ABL Agent and the DIP Agent; (iv) counsel to the FILO Agent, (v) counsel to the Prepetition Term Loan Agent; (vi) the holders of Mezzanine Notes (as defined in the Motion) and the counsel to certain holders of Mezzanine Notes, and (vii) all other secured creditors of record.  Under the circumstances, such notice of the Interim Hearing

and the relief requested in the Motion is due, proper and sufficient notice, complies with Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2 and no other or further notice need be given.

## II.     Debtors' Acknowledgements and Agreements

E.     Without prejudice to the rights of parties-in-interest as set forth in Paragraphs 26 - 28 below, each of the Debtors admits, stipulates, acknowledges, and agrees that (collectively, Paragraphs E (1) through E (7) hereof shall be referred to herein as the "***Debtors' Stipulations***"):

(1)     Prepetition ABL Financing Documents.  Prior to the commencement of the Chapter 11 Cases, Slap Shot Holdings, Corp., The Sports Authority, Inc., TSA Stores, Inc., and TSA Gift Card, Inc. (collectively, the "***Prepetition Loan Party Debtors***") were parties to (A) the Prepetition ABL Credit Agreement, (B) that certain Guaranty dated May 3, 2006, (C) that certain Security Agreement dated May 3, 2006, (D) that certain Intellectual Property Security Agreement dated May 3, 2006, and (E) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Prepetition ABL Agent or Prepetition ABL Lenders, including, without limitation, the Prepetition Intercreditor Agreement, control agreements, mortgages, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as amended, modified or supplemented and in effect, collectively, the "***Prepetition ABL Financing Documents***").

(2)     Prepetition Term Loan Financing Documents.  Prior to the commencement of the Chapter 11 Cases, the Prepetition Loan Party Debtors were parties to (A) the Prepetition Term Loan Credit Agreement, (B) that certain Guaranty dated May 3, 2006, (C) that certain Security Agreement dated May 3, 2006, (D) that certain Intellectual Property Security Agreement dated May 3, 2006, and (E) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the Prepetition Term Loan Agent or the Prepetition Term Loan Lenders, including, without limitation, the Prepetition Intercreditor Agreement, control agreements, mortgages, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as amended, modified or supplemented and in effect, collectively,

the "***Prepetition Term Loan Financing Documents***" and, together with the Prepetition ABL Financing Documents, the "***Prepetition Financing Documents***").

(3)     Prepetition ABL Debt Amount.  As of the Petition Date, the Prepetition Loan Party Debtors were liable to the Prepetition ABL Lenders under the Prepetition ABL Financing Documents, on account of "Revolving Loans" in the approximate principal amount of $346 million, on account of FILO Loans in the approximate principal amount of $95,285,000, plus letters of credit in the approximate stated amount of not less than $25.7 million, plus interest accrued and accruing at the default rate, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services secured by the Prepetition ABL Financing Documents (collectively the "***Prepetition ABL Debt***").

(4)     Prepetition Term Loan Debt Amount.  As of the Petition Date, the Prepetition Loan Party Debtors were liable to the Prepetition Term Loan Lenders in the total aggregate principal amount of $276.7 million, plus interest accrued and accruing, costs, expenses, and fees (including attorneys' fees and legal expenses).  All obligations of the Prepetition Loan Party Debtors arising under the Prepetition Term Loan Credit Agreement or any other Prepetition Term Loan Financing Document, including all principal, accrued or hereafter accruing interest, fees, and costs, payable under the Prepetition Term Loan Credit Agreement shall hereinafter be referred to as the "***Prepetition Term Loan Debt***" and, together with the Prepetition ABL Debt, the "***Prepetition Secured Debt***."

(5)     Prepetition Collateral.  To secure the Prepetition Secured Debt, each of the Prepetition Loan Party Debtors granted continuing security interests and Liens (collectively, the "***Prepetition Liens***") to the Prepetition Agents and the Prepetition Secured Lenders upon substantially all of its property, real and personal, including the following (but excluding the "Excluded Collateral" (as defined in the Prepetition Financing Documents)), all as defined in the Prepetition Financing Documents (collectively, the "***Prepetition Collateral***"):

> All: (a) Accounts, (b) Chattel Paper, (c) Commercial Tort Claims (d) Deposit Accounts, (e) Documents, (f) Equipment, (g) Fixtures, (h) General Intangibles (including Payment Intangibles), (i) Goods, (j) Instruments, (k) Inventory, (l) Investment Property, (m) Letter-of-Credit Rights, (n) Software, (o) Supporting Obligations, (p) money, policies and certificates of insurance, deposits, cash, or other property, (q) all books, records, and information relating to any of the foregoing ((a) through (p)) and/or to the operation of any Debtor's business, and all rights of access to such books, records,

and information, and all property in which such books, records, and information are stored, recorded and maintained, (r) all insurance proceeds, refunds, and premium rebates, including, without limitation, proceeds of fire and credit insurance, whether any of such proceeds, refunds, and premium rebates arise out of any of the foregoing ((a) through (q)) or otherwise, (s) all rights of each Debtor under the Acquisition Documents, (t) all rights of each Debtor under the Purchasing Agreement, (u) all liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing ((a) through (t)), including the right of stoppage in transit, and (v) any of the foregoing, whether now owned or now due, or in which any Debtor has an interest, or hereafter acquired, arising, or to become due, or in which any Debtor obtains an interest, and all products, Proceeds, substitutions, and Accessions of or to any of the foregoing.

All Mortgaged Property, including the Land, Improvements, Leases, Rents, Permits, Contracts, Records and Proceeds as set forth in the Mortgages.

Pursuant to that certain Intercreditor Agreement (as amended, supplemented, and confirmed from time to time, and as currently in effect, the "***Prepetition Intercreditor Agreement***") dated as of May 3, 2006, the Prepetition ABL Agent and Prepetition Term Loan Agent have agreed to their respective rights and priorities with respect to the Prepetition Collateral and the DIP Collateral, including that (x) the Prepetition ABL Debt is secured by the first priority Lien upon the "ABL Priority Collateral" (as defined therein) and the Prepetition Term Loan Debt is secured by the first priority Lien on the "Term Priority Collateral" (as defined therein), and (y) the Prepetition ABL Debt is secured by the second priority Lien upon the Term Priority Collateral and the Prepetition Term Loan Debt is secured by the second priority Lien on the ABL Priority Collateral.

(6)     Prepetition Liens. The Prepetition Liens of the Prepetition Agents and the Prepetition Secured Lenders have priority over all other Liens except (x) valid, enforceable, non-avoidable and perfected Liens in existence on the Petition Date that, after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens, and (y) valid, enforceable and non-avoidable Liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens (collectively, the "***Permitted Prior Liens***").

(a)     As of the Petition Date, (i) the Prepetition Liens are valid, binding, enforceable, and perfected first priority Liens, subject only to any Permitted Prior Liens, and are not subject to avoidance,

recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) (a) the Prepetition Secured Debt constitutes legal, valid, and binding obligations of the Prepetition Loan Party Debtors, enforceable in accordance with the terms of the Prepetition Financing Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), (b) no offsets, defenses, or counterclaims to any of the Prepetition Secured Debt exists, and (c) no portion of the Prepetition Secured Debt is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (iii) the Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Agents or any Prepetition Secured Lender with respect to the Prepetition Financing Documents or otherwise, whether arising at law or at equity, including, without limitation, any recharacterization, subordination, disallowance, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code, and (iv) the Prepetition Secured Debt constitutes allowed secured claims.

(b)     On the date that this Interim Order is entered, each of the Debtors has waived, discharged, and released the Prepetition Agents and the Prepetition Secured Lenders, together with their respective successors, assigns, subsidiaries, parents, affiliates, agents, attorneys, officers, directors, and employees (collectively, the "***Released Parties***"), of any right the Debtors may have (i) to challenge or object to any of the Prepetition Secured Debt, (ii) to challenge or object to the Prepetition Liens or any other security for the Prepetition Secured Debt, and (iii) to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising out of, based upon, or related to the Prepetition Financing Documents, or otherwise.

(c)     None of the Debtors possesses and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description against any of the Released Parties, including anything which would in any way affect the validity, enforceability, priority, and non-avoidability of any of the Prepetition Financing Documents or the Prepetition Liens, or any claim of the Prepetition Secured Lenders pursuant to the Prepetition Financing Documents, or otherwise.

(7)     <u>Cash Collateral</u>. The Prepetition Agents have a continuing security interest in and Lien on all or substantially all of the Prepetition Loan Party Debtors' Cash Collateral, including all amounts on deposit in the Prepetition Loan

Party Debtors' banking, checking, or other deposit accounts and all proceeds of the Prepetition Collateral, to secure the Prepetition Secured Debt.

## III.    Findings Regarding the Post-Petition Financing.

F.    **Need for Post-Petition Financing**.  An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of their estates for the benefit of their stakeholders.  The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates and their stakeholders.

G.    **No Credit Available on More Favorable Terms**.  As discussed in the First Day Declaration and the Douton Declaration, the Debtors have been unable to obtain any of the following:

(1)    unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

(2)    credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

(3)    credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or

(4)    credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien,

in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order.  The Debtors are unable to obtain credit from the DIP Lenders without granting to the DIP Lenders the DIP Protections (as defined below).

01:18387851.1

11

H.    **Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens or Prepetition Liens are valid, senior, perfected, or unavoidable.  Moreover, except as provided in Paragraphs 26 – 28 below, nothing shall prejudice the following:

(1)    the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Lenders, the Prepetition Agents, Prepetition Secured Lenders, and any Committee appointed pursuant to section 1102 of the Bankruptcy Code, to challenge the validity, priority, perfection, and extent of any such Permitted Prior Liens, or

(2)    the rights of any Committee appointed pursuant to section 1102 of the Bankruptcy Code or any other party-in-interest to challenge the validity, priority, perfection, and extent of the Prepetition Liens as set forth in this Order.

I.    **Adequate Protection for Prepetition Secured Lenders.**  As a result of the granting of the DIP Liens, subordination to the Carve Out, the use of Cash Collateral authorized herein, and the imposition of the automatic stay, the Prepetition Agents and Prepetition Secured Lenders are entitled to receive adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code to the extent of any diminution in the value of their interests in the Prepetition Collateral (including Cash Collateral) during these Chapter 11 Cases.  As adequate protection, the Prepetition Secured Lenders will receive the Adequate Protection (as defined below) described in Paragraph 18 of this Interim Order.  In exchange for such Adequate Protection, the Prepetition Secured Lenders have agreed to the Debtors' use of Cash Collateral on the terms set forth in this Interim Order and to the imposition of the Carve Out as set forth herein.

J.    **Prepetition Secured Lenders Governed By Prepetition Intercreditor Agreement**.  The Prepetition ABL Agent and Prepetition Term Loan Agent are parties to the Prepetition Intercreditor Agreement.  The Prepetition Intercreditor Agreement is a "subordination

agreement" within the meaning of Section 510(a) of the Bankruptcy Code in the Chapter 11 Cases. The Prepetition Agents and Prepetition Secured Lenders have stipulated that their respective interests in the Prepetition Collateral and the DIP Collateral shall continue to be governed by the Prepetition Intercreditor Agreement (including, without limitation, (a) the Prepetition ABL Agent's and the DIP Agent's rights with respect to the ABL Priority Collateral and (b) the Prepetition Term Loan Agent's rights with respect to the Term Priority Collateral), except as expressly provided by this Interim Order, including as set forth below in Paragraph 10 with respect to Lease Proceeds.

        K.    **Prepetition Agents' and Prepetition Secured Lenders' Consent to Priming**.  The Prepetition Agents and the Prepetition Secured Lenders have consented to the priming of the Prepetition Liens by the DIP Liens to the extent set forth herein.

        L.    **Adequacy of the Approved Budget.**  The Prepetition Agents (including for the avoidance of doubt the Prepetition Term Loan Agent at the direction of the Required Lenders (as defined in the Prepetition Term Loan Credit Agreement)), the DIP Agent, and the Debtors have agreed that the budget, the short form of which is attached hereto as *Exhibit "1"* (as the same may be modified, supplemented, or updated from time to time consistent with the terms of the DIP Credit Agreement, this Interim Order, and upon its entry, the Final Order, the "*Approved Budget*")[4] is adequate, considering all the available assets, to pay the administrative expenses due and accruing during the Interim Period.

---

[4] All backup, schedules, and other detail contained in the Approved Budget is incorporated by reference, including accruals for professional monthly fee estimates.

M.    **Conditions Precedent to DIP Lenders' Extension of Financing.**  The

DIP Lenders have indicated a willingness to provide financing to the Debtors in accordance with

the DIP Credit Agreement and the other DIP Financing Agreements, subject to the following:

(1)    the entry of this Interim Order and the Final Order, and

(2)    findings by this Court that such financing is essential to the Debtors'
estates, that the DIP Lenders are good faith financiers, and that the DIP
Lenders' claims, superpriority claims, security interests, and Liens and
other protections granted pursuant to this Interim Order (and the Final
Order) and the DIP Facility will not be affected by any subsequent reversal,
modification, vacation, or amendment of this Interim Order (or the Final
Order) or any other order, as provided in section 364(e) of the Bankruptcy
Code.

N.    **Business Judgment and Good Faith Pursuant to Section 364(e) of the**

**Bankruptcy Code.**  The extension of credit under the DIP Facility, the DIP Credit Agreement, and

the other DIP Financing Agreements, and the fees paid and to be paid thereunder (i) are fair,

reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of

prudent business judgment consistent with their fiduciary duties and (iii) are supported by

reasonably equivalent value and consideration.  The DIP Facility was negotiated in good faith and

at arms' length between the Debtors and the DIP Agent, and the use of the proceeds to be extended

under the DIP Facility will be so extended in good faith, and for valid business purposes and uses,

as a consequence of which the DIP Lenders are entitled to the protections and benefits of section

364(e) of the Bankruptcy Code.

O.    **Relief Essential; Best Interest.**  The relief requested in the Motion (and as

provided in this Interim Order) is necessary, essential and appropriate for the continued operation

of the Debtors' business and the management and preservation of the Debtors' assets during the

Interim Period.  It is in the best interest of the Debtors' estates that the Debtors be allowed to

establish the DIP Facility contemplated by the DIP Credit Agreement and the other DIP Financing

01:18387851.1

Agreements.  The Debtors have demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

         1.      The Motion is granted as set forth herein.

**I.**    **DIP FINANCING.**

        **A.**    **Approval of Entry into the DIP Financing Agreements**.

         2.      The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Financing Agreements and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Agreements.  The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Credit Agreement and all other DIP Financing Agreements as such become due, including, without limitation, the "Revolving Closing Fee", the "FILO Closing Fee", the "Administrative Agent Fee", and the "FILO Agent Fee" (as each of those terms is defined in the DIP Financing Agreements), and, subject to the provisions of Paragraph 51 below, reasonable attorneys', financial advisors', and accountants' fees and disbursements as provided for in the DIP Credit Agreement, which amounts shall not otherwise be subject to approval of this Court.  Upon the entry of this Interim Order, all letters of credit outstanding under the Prepetition ABL Financing Documents shall be deemed to have been issued pursuant to and shall be deemed to be outstanding under the DIP Credit Agreement.  Upon execution and delivery, the DIP Financing Agreements

shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

B.    **Authorization to Borrow**.

3.    In order to enable them to continue to operate their businesses during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, the other DIP Financing Agreements, and the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), the Debtors are hereby authorized under the DIP Facility to borrow an amount up to $275,000,000 in accordance with the terms and conditions of the DIP Credit Agreement.

4.    Following the entry of the Final Order, the Debtors' authority to borrow funds under the DIP Credit Agreement shall be governed by the terms of the Final Order.

C.    **Application of DIP Facility Proceeds**.

5.    The advances under the DIP Facility shall be used in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), solely as follows, and subject to Paragraph 51 hereof (as applicable):

(a)    to pay fees, costs, and expenses as provided in the DIP Financing Agreements, including amounts incurred in connection with the preparation, negotiation, execution, and delivery of the DIP Credit Agreement and the other DIP Financing Agreements;

(b)    for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors;

(c)    for making adequate protection payments and other payments as provided in this Interim Order and upon its entry, the Final Order;

01:18387851.1

16

(d)    to fund the Prepetition Indemnity Account (as defined below);

(e)    upon entry of a Final Order, for the payment of the Final Roll-Up; and

(f)    to fund the Carve Out Account (as defined below).

6.    <u>Interim Roll-Up</u>.  During the Interim Period, all cash, collections, and proceeds of the Prepetition Collateral and DIP Collateral (other than the identifiable proceeds of Term Priority Collateral which shall be remitted to the Term Priority Collateral Account in accordance with Paragraph 11 hereof), including all proceeds realized in connection with the "Closing Sales" (as defined in the *Debtors' Emergency Motion For Interim And Final Orders (A) Authorizing The Debtors To Assume The Closing Store Agreement, (B) Authorizing And Approving Store Closing Sales Free And Clear Of All Liens, Claims And Encumbrances, (C) Authorizing The Implementation Of Customary Employee Bonus Program And Payments To Non-Insiders Thereunder, (D) Approving Dispute Resolution Procedures, and (E) Approving the Debtors' Store Closing Plan*) (other than the identifiable proceeds of Term Priority Collateral which shall be remitted to the Term Priority Collateral Account in accordance with Paragraph 11 hereof), or proceeds realized in connection with the Store Closing Sale (as defined below) (other than the identifiable proceeds of Term Priority Collateral which shall be remitted to the Term Priority Collateral Account in accordance with Paragraph 11 hereof), shall be immediately paid to the Prepetition ABL Agent for application in reduction of the Revolving Loans outstanding under the Prepetition ABL Credit Agreement in accordance with the Prepetition ABL Financing Documents.

7.    <u>Final Roll-Up</u>.  Solely upon entry of the Final Order, and subject to the rights of parties set forth in Paragraphs 26 – 28 below, the Debtors shall use the proceeds of the next advance under the DIP Credit Agreement to satisfy all Prepetition ABL Debt in full in

17

accordance with the terms of the Prepetition ABL Credit Agreement.  The Final Roll-Up will be without prejudice to the rights of any third party, including, without limitation, any Committee, to seek an appropriate remedy from the Court upon a successful Challenge.

      **D.**    **Conditions Precedent**.

      8.    The DIP Lenders shall have no obligation to make any loan or advance under the DIP Credit Agreement during the Interim Period unless the conditions precedent to make such loan under the DIP Credit Agreement have been satisfied in full or waived in accordance with the DIP Credit Agreement.

      **E.**    **The DIP Liens**.

      9.    Subject to the limitations set forth in Paragraphs 10 and 12 below, effective immediately upon the entry of this Interim Order, the DIP Agent is hereby granted the DIP Liens (which Liens are subject to the Permitted Prior Liens and the Carve Out) for the ratable benefit of the DIP Lenders pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, which constitute priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests and Liens senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates, and subject to the Intercreditor Agreement except as otherwise expressly provided in this Interim Order, upon and to all of the following (but excluding the "Excluded Collateral" (as defined in the DIP Credit Agreement)) (collectively, the "***DIP Collateral***"):

    (a) The Collateral, as defined in the DIP Financing Agreements, including:

        all: (a) Accounts, (b) Chattel Paper, (c) Commercial Tort Claims (d) Deposit Accounts, (e) Documents, (f) Equipment, (g) Fixtures, (h) General Intangibles (including Payment Intangibles), (i) Goods, (j) Instruments, (k) Inventory, (l) Investment Property, (m) Letter-of-Credit Rights, (n) Software, (o) Supporting Obligations, (p) money, policies and certificates of insurance, deposits, cash, or other property, (q) all books, records, and information relating to any of the foregoing ((a) through (p)) and/or to the operation of any Debtor's business, and all

rights of access to such books, records, and information, and all property in which such books, records, and information are stored, recorded and maintained, (r) all insurance proceeds, refunds, and premium rebates, including, without limitation, proceeds of fire and credit insurance, whether any of such proceeds, refunds, and premium rebates arise out of any of the foregoing ((a) through (q)) or otherwise, (s) all rights of each Debtor under the Acquisition Documents, (t) all rights of each Debtor under the Purchasing Agreement, (u) all liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing ((a) through (t)), including the right of stoppage in transit, and (v) any of the foregoing, whether now owned or now due, or in which any Debtor has an interest, or hereafter acquired, arising, or to become due, or in which any Debtor obtains an interest, and all products, Proceeds, substitutions, and Accessions of or to any of the foregoing, and all Mortgaged Property, including the Land, Improvements, Rents, Permits, Contracts, Records and Proceeds as set forth in the Mortgages.

(b)    Subject to entry of the Final Order, the Bankruptcy Recoveries (as defined below), but only (A) with respect to Bankruptcy Recoveries arising under section 549 of the Bankruptcy Code, the full amount of any such recovery, and (B) with respect to Bankruptcy Recoveries arising under all other sections of chapter 5 of the Bankruptcy Code, only the amounts necessary to reimburse the DIP Lenders for the amount of the Carve Out, if any, used to finance the pursuit of such recovery (the foregoing Bankruptcy Recoveries in (A) and (B) being referred to collectively as the "***Specified Bankruptcy Recoveries***"); ***provided however for the avoidance of doubt***, the Adequate Protection Superpriority Claim (as defined below) of the Prepetition Agents and the Prepetition Secured Lenders as provided in Paragraph 18(b) below shall be payable out of all Bankruptcy Recoveries. As used herein, "***Bankruptcy Recoveries***" shall mean any recoveries of the Debtors, by settlement or otherwise, in respect of claims and causes of action to which the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under chapter 5 of the Bankruptcy Code.

(c)    The Lease Proceeds, but not the Leases themselves, whether or not so perfected prior to the Petition Date.

10.    Notwithstanding anything to the contrary set forth in this Interim Order, the Final Order, the DIP Financing Agreements or the Prepetition Intercreditor Agreement, (i) the Prepetition ABL Agent and Prepetition Term Loan Agent have agreed that for purposes of the DIP Facility and in this Interim Order (and upon its entry, in the Final Order), the ABL Priority Collateral shall include Lease Proceeds and the Term Priority Collateral shall not include Lease Proceeds, and (ii) the New Loan Party Assets (which, for the avoidance of doubt will secure the DIP Liens only upon entry of the Final Order) and the Lease Proceeds shall secure only the DIP

Obligations, and shall not otherwise constitute "Collateral" as defined under the Prepetition ABL Credit Agreement (or the Prepetition ABL Financing Documents) or the Prepetition Term Loan Agreement (or the Prepetition Term Loan Financing Documents), and the DIP Liens on the New Loan Party Assets (upon entry of the Final Order) and the Lease Proceeds shall not be held by the DIP Agent for the benefit of the Prepetition Agents or the Prepetition Lenders; ***provided***, ***however***, that the Adequate Protection Liens (as defined below) and the Adequate Protection Superpriority Claim shall be secured by and payable out of New Loan Party Assets (upon entry of the Final Order) and the Lease Proceeds.

       **F.**      **Term Priority Collateral Account**

       11.     Notwithstanding any other provisions set forth herein, all identifiable proceeds of the Term Priority Collateral derived from the Closing Stores and/or the Store Closing Sales shall be remitted to a deposit account of a Prepetition Loan Party Debtor (the "***Term Priority Collateral Account***") and shall be maintained in the Term Priority Collateral Account until the earlier to occur of (x) the Debtors and the Required Lenders (as defined in the Prepetition Term Loan Credit Agreement) agreeing to the release of such proceeds or (y) this Court ordering the release of such proceeds provided that, prior to such release of such proceeds from the Term Priority Collateral Account, such proceeds may be remitted to the Prepetition ABL Agent and/or the DIP Agent as reimbursement for amounts previously paid to the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders from advances under the DIP Facility or from proceeds of ABL Priority Collateral, in each case, pursuant to Paragraph 18(c)(iii) below.  The Prepetition Liens, Adequate Protection Liens, and DIP Liens shall attach to such proceeds (and shall remain perfected) in the same manner and priority as such liens attached to Term Priority Collateral.

### G.    DIP Lien Priority.

12.    The DIP Liens to be created and granted to the DIP Agent and the DIP Lenders, as provided herein, are:

(a)    created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code,

(b)    other than as set forth in (c) below, first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to the DIP Collateral, and

(c)    subject only to (i) the Carve Out, (ii) the Permitted Prior Liens, and (iii) solely with respect to the Term Priority Collateral, the Liens of the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders.

The DIP Liens shall secure all DIP Obligations and the proceeds of the DIP Collateral shall be applied in the same order and priority set forth in the DIP Credit Agreement, subject to the Prepetition Intercreditor Agreement, the terms of this Interim Order, and upon its entry, the terms of the Final Order.  Other than as set forth in (c) immediately above, the DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each a "*Successor Case*"), and/or upon the dismissal of the Chapter 11 Cases.  The DIP Liens shall not be subject to sections 510(c), 549, 550, or 551 of the Bankruptcy Code.  Solely upon entry of the Final Order, the DIP Liens securing the extensions of credit under the DIP Facility and this Interim Order shall not be subject to an assertion by the Debtors of the "equities of the case" exception of section 552 of the Bankruptcy Code, and shall not be subject to section 506(c) of the Bankruptcy Code.  Except as otherwise expressly set forth herein, including as set forth in Paragraph 10 with respect to Lease Proceeds, (x) the DIP Agent, the DIP Lenders, the Prepetition Agents, and the

Prepetition Secured Lenders shall remain bound by the terms and conditions set forth in the Prepetition Intercreditor Agreement, including, without limitation, with respect to the Prepetition Collateral and the DIP Collateral, (y) nothing contained in this Interim Order shall be deemed to abrogate or limit the respective, rights, claims and obligations of each of the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured Lenders under the Prepetition Intercreditor Agreement, and (z) the Prepetition Intercreditor Agreement shall apply and govern the respective rights, obligations, and priorities of each of the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured Parties in these Chapter 11 Cases. All loans and advances made by the DIP Agent and/or the DIP Lenders pursuant to and under the DIP Facility and all other DIP Obligations outstanding thereunder shall be deemed to be "ABL Obligations" under the Prepetition Intercreditor Agreement.

**H.      Enforceable Obligations**.

13.      The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtors, and shall be enforceable against the Debtors, their estates, and any successors thereto, and their creditors in accordance with their terms.

**I.      Protection of the DIP Lenders and Other Rights.**

14.      From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreements and this Interim Order, in compliance with and as limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

J.      **Superpriority Administrative Claim Status.**

15.     Subject to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "***DIP Superpriority Claim***" and, together with the DIP Liens, collectively, the "***DIP Protections***") with priority in the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, sections 506(c) and 552(b) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment; ***provided, however***, that the DIP Protections shall not attach to any Bankruptcy Recoveries other than the Specified Bankruptcy Recoveries.

16.     Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP Obligations or with any other claims of the DIP Lenders arising hereunder.

II.     <u>Authorization for Use of Cash Collateral</u>

17.     Pursuant to the terms and conditions of this Interim Order (but subject to Paragraph 11 with respect to Cash Collateral deposited into the Term Priority Collateral Account),

the DIP Facility, the DIP Credit Agreement, and the other DIP Financing Agreements, and in accordance with and as may be limited by the Approved Budget (subject to permitted variances), the Debtors are authorized to use Cash Collateral and to use the advances under the DIP Facility during the Interim Period and terminating upon notice being provided by (i) the DIP Agent to the Debtors that a DIP Order Event of Default (as defined below) has occurred and is continuing, or (ii) the Prepetition Term Loan Agent that a Cash Collateral Termination Event (as defined below) has occurred and is continuing, in the manner set forth in Paragraph 34 below.

III.    ADEQUATE PROTECTION FOR PREPETITION SECURED LENDERS.

18.    As adequate protection for the diminution in the value of the interests of the Prepetition Secured Lenders in the Prepetition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, the subordination to the Carve Out, and the Debtors' use of Cash Collateral, and any other diminution in value arising out of the imposition of the automatic stay or the Debtors' use, sale, depreciation, or disposition of the Prepetition Collateral during the pendency of these Chapter 11 Cases, including the disposition of assets as contemplated by the Store Closing Sale Motion (as defined below) (collectively, "***Diminution in Value***"), the Prepetition Secured Lenders shall receive adequate protection as follows (collectively, "***Adequate Protection***"):

(a)    **Adequate Protection Liens**.  Solely to the extent of the Diminution in Value of the interests of the Prepetition Agents and the Prepetition Secured Lenders in the Prepetition Collateral, the Prepetition Secured Lenders shall have, subject to the terms and conditions set forth below, pursuant to sections 361 and 363(e) of the Bankruptcy Code, valid, perfected, and enforceable additional and replacement security interests and Liens in the DIP Collateral (the "***Adequate Protection Liens***") which shall be (i) junior only to the Carve Out, the DIP Liens securing the DIP Facility, and Permitted Prior Liens, and (ii) in all instances, subject to the Prepetition Intercreditor Agreement.

24

(b)    **Adequate Protection Superpriority Claim**. Solely to the extent of the diminution in the value of the interests of the Prepetition Secured Lenders in the Prepetition Collateral, the Prepetition Secured Lenders shall have an allowed superpriority administrative expense claim (the "*Adequate Protection Superpriority Claim*") which shall have priority (except with respect to (i) the Carve Out and (ii) the DIP Superpriority Claim), in the Chapter 11 Cases under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and upon entry of the Final Order, sections 506(c) and 552 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment; *provided, however*, that the Adequate Protection Superpriority Claim shall attach to all Bankruptcy Recoveries only after entry of the Final Order.

Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, subject to entry of the Final Order, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, will be senior to, prior to, or on parity with the Adequate Protection Superpriority Claim.

(c)    **Adequate Protection Payments**.

(i)    Until the repayment in full of the obligations under the Prepetition ABL Credit Agreement (including pursuant to the Final Roll-Up), on the last business day of each month, the Prepetition ABL Agent shall receive, for the benefit of the Prepetition ABL Lenders, payment of all accrued and unpaid interest at the default rate set forth in the Prepetition ABL Credit Agreement, and, subject to the provisions of Paragraph 51 hereto, reimbursement of any costs due to the Prepetition ABL Agent and Prepetition ABL Lenders under the Prepetition ABL Credit Agreement;

(ii)    Subject to the provisions of Paragraph 51 hereof, the Prepetition ABL Agent, the FILO Agent, the Prepetition ABL Lenders, and the Prepetition FILO Lenders shall be reimbursed, on a current basis, for all reasonable and documented out-of-pocket costs and expenses of the financial advisors and outside attorneys engaged by such parties, solely to the extent permitted under the Prepetition ABL Credit Agreement.

(iii)    Subject to the provisions of Paragraph 51 hereof, the Prepetition Term Loan Agent and Prepetition Term Loan Lenders (including without limitation the Prepetition Term Loan Lenders identified on the 2019 Statement to be filed with the Court (such Prepetition Term Loan Lenders, the "*Ad Hoc Group of Prepetition Term Loan Lenders*"), shall receive the current payment of the reasonable documented postpetition out-of-pocket fees, costs and expenses of its financial advisors, appraisers, and attorneys, solely to the extent permitted under the Prepetition Term Loan Credit Agreement; *provided however*, that if the claims of the Prepetition Term Loan Lenders are determined by this Court to have been undersecured as of the Petition Date, then any payments authorized pursuant to this provision shall be reallocated and applied to reduce the outstanding principal balance owed to the Prepetition Term Loan Lenders; *and provided further*, that all amounts paid to the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders through advances under the DIP Facility or from proceeds of ABL Priority Collateral pursuant to this paragraph shall be promptly reimbursed to the Prepetition ABL Agent and/or the DIP Agent, as applicable, (only to the extent the Prepetition ABL Debt and DIP Obligations have not otherwise been paid in full in cash) out of the first proceeds of Term Priority Collateral received by the Debtors upon the sale or disposition of any Term Priority Collateral, including as part of any Store Closing Sale.

(d)    **Adequate Protection With Respect to Store Closing Order**. The sale process to be implemented under Section 363 of the Bankruptcy Code as contemplated by the *Debtors' Emergency Motion for Interim and Final Orders (A) Authorizing the Debtors to Assume Closing Store Agreement; (B) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims and Encumbrances; (C) Authorizing the Implementation of Customary Employee Bonus Program and Payments to Non-Insiders Thereunder; (D) Approving Rejection Procedures; (E) Approving Dispute Resolution Procedures; and (F) Approving the Debtors' Store Closing Plan* (the "*Store Closing Motion*") including the timeline and milestones contained therein, shall not be materially modified without the prior written consent of the Prepetition Agents and the DIP Agent. Upon the disposition of Prepetition Collateral as contemplated in the Store Closing Motion (the "*Store Closing Sale*"), any such Prepetition Collateral shall be sold free and clear of the Prepetition Liens, the Adequate Protection Liens, and the DIP Liens, *provided*, *however*, that such Prepetition Liens, Adequate Protection Liens, and DIP Liens shall attach to the proceeds of any such sale in the same manner and priority as such liens attached to the Prepetition Collateral and proceeds of DIP Collateral, including for the avoidance of doubt, proceeds of Term Priority Collateral, shall be promptly paid at closing on the Store Closing Sale to the DIP Agent for application to the Prepetition

ABL Debt and the DIP Obligations in accordance with the terms of the DIP Credit Agreement (other than identifiable proceeds of Term Priority Collateral which shall be remitted to the Term Priority Collateral Account pursuant to Paragraph 11 hereof), and after payment in full of the DIP Obligations in the event the Final Roll-Up has not occurred to the Prepetition ABL Agent to be applied to the Prepetition ABL Debt in accordance with the Prepetition ABL Credit Agreement (other than identifiable proceeds of Term Priority Collateral which shall be remitted to the Term Priority Collateral Account pursuant to Paragraph 11 hereof).

The Debtors shall keep the Prepetition Term Loan Agent fully informed of the Debtors' efforts to consummate the Store Closing Sale and any other sales of equity interests and/or assets of the Debtors after the Petition Date, and without limiting the generality of the foregoing, the Debtors shall (A) promptly provide to the Prepetition Term Loan Agent copies of all offers for the purchase of any asset(s) and/or equity interests of any of the Debtors and copies of all bids from liquidators, (B) provide, no less frequently than weekly, status updates on the Debtors' efforts to consummate the Store Closing Sale and/or any other sales, and (C) promptly advise the Prepetition Term Loan Agent of any expressions of interest in any or all of the Debtors' assets and/or equity interests.

In connection with the Store Closing Sale, the Prepetition Agents and Prepetition Secured Lenders may seek to credit bid some or all of their claims for their respective collateral (each a "*Credit Bid*") pursuant to Section 363(k) of the Bankruptcy Code. A Credit Bid may be applied only to reduce the cash consideration with respect to those assets in which the party submitting such Credit Bid holds a security interest. Each of the Prepetition Agents shall be considered a "Qualified Bidder" with respect to its right to acquire all or any of the assets by Credit Bid.

(e)   **Access to Records; Reporting**. In addition to, and without limiting, whatever rights to access the Prepetition Secured Lenders have under the Prepetition Financing Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Prepetition Secured Lenders (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors, and (iv) otherwise to have the full cooperation of the Debtors. In addition, the Debtors shall provide to the Prepetition Secured lenders all of the financial, collateral, and related reporting required under the DIP Financing Agreements as and when provided to the DIP Agent, including without limitation under Sections 6.01, 6.02, 6.03, 6.21, and 6.22(b) of the DIP Credit Agreement.

01:18387851.1

(f)     **Prepetition Indemnity Account.**  Upon entry of this Interim Order, the Debtors shall establish a segregated account in the control of the Prepetition ABL Agent (the "***Prepetition Indemnity Account***"), into which the sum of $250,000.00 of Cash Collateral shall be deposited as security for any reimbursement, indemnification, or similar continuing obligations of the Debtors in favor of the Prepetition ABL Lenders under the Prepetition ABL Financing Documents, including without limitation, the provisions of Section 10.04 of the Prepetition ABL Credit Agreement (the "***Prepetition Indemnity Obligations***").

(i)     The funds in the Prepetition Indemnity Account shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition ABL Agent, the FILO Agent, and the Prepetition ABL Lenders in connection with or responding to (x) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in Paragraph 26 hereof, or (y) any Challenge Proceeding (as defined below) against the Prepetition ABL Agent, the FILO Agent, or the Prepetition ABL Lenders related to the Prepetition ABL Financing Documents, the Prepetition Liens, or the Prepetition ABL Debt, whether in the Chapter 11 Cases or independently in another forum, court, or venue.

(ii)    The Prepetition Indemnity Obligations shall be secured by a first priority lien on the Prepetition Indemnity Account and the funds therein and by a lien on the Prepetition Collateral.

(iii)   The Prepetition ABL Lenders may apply amounts in the Prepetition Indemnity Account against the Prepetition Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, any Committee, or any other parties in interest and without further order of this Court, upon compliance with the provisions of Paragraph 51 below.

(iv)    In addition to the establishment and maintenance of the Prepetition Indemnity Account, until the Challenge Period Termination Date (as defined below) the Prepetition ABL Agent, for itself and on behalf of the Prepetition ABL Lenders, shall retain and maintain the Prepetition ABL Liens as security for any the amount of any Prepetition Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition Indemnity Account; provided, that the Prepetition ABL Lien retention herein shall in all respects remain subject to the terms of the Prepetition Intercreditor Agreement.

(g)    Budget.  The Debtors shall endeavor to consult with and provide prior notice to the Prepetition Term Loan Agent prior to agreeing to any of the following with respect to the Approved Budget and DIP Financing Agreements, as applicable: (a) material changes to the Approved Budget; and (b) extensions of the case and/or sale milestones set forth in the DIP Credit Agreement that would extend the sale closing deadline beyond April 28, 2016 (collectively, the "*Subject Amendments*"); provided, however, that the Debtors shall not incur any liability to the Prepetition Term Loan Agent, the Prepetition Term Loan Lenders or any other Person in consequence of its failure to make any consultation or provide such prior notice with respect to the Subject Amendments pursuant to the provisions hereof.  For the avoidance of doubt, nothing contained in this subsection (g) shall be deemed to limit, restrict, or constitute a waiver of any of the respective rights and remedies of the Debtors, Prepetition Term Loan Agent or Prepetition Term Loan Lenders under the Bankruptcy Code or other applicable law, including, without limitation, any right of the Prepetition Term Loan Agent to file an objection or other appropriate pleading with the Court in the event that it does not agree with any amendment, change, or extension of any of the Subject Amendments to which the Debtors have consented or the Debtors' rights to contest such objection.

19.    Nothing herein shall impair or modify the Prepetition Agents' or the Prepetition Secured Lenders' rights under section 507(b) of the Bankruptcy Code in the event that the Adequate Protection provided to the Prepetition Secured Lenders hereunder is insufficient to compensate for the diminution in value of the interest of the Prepetition Secured Lenders in the Prepetition Collateral during the Chapter 11 Cases or any Successor Case; *provided*, *however*, that (a) nothing herein shall impair the Debtors' or any other party in interest's right to seek to contest any request for additional or different adequate protection, and (b) any section 507(b) claim granted in the Chapter 11 Cases to the Prepetition Secured Lenders shall be junior in right of payment to all DIP Obligations and subject to the Carve Out.

## IV.    POST-PETITION LIEN PERFECTION.

20.    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security

01:18387851.1

29

agreement, notice of Lien or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein.

21.    Notwithstanding the foregoing, the DIP Agent and/or the Prepetition Agents may, in their discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens and other similar instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.

22.    The Debtors shall execute and deliver to the DIP Agent all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens and other similar instruments and documents as the DIP Agent may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens or the Adequate Protection Liens granted pursuant hereto.

23.    The DIP Agent and the Prepetition Agents, in their discretion, may file a photocopy of this Interim Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Interim Order.

24. The DIP Agent shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be have co-equal rights with the Prepetition ABL Agent and succeed to the rights of the Prepetition ABL Agent with respect to all third party notifications in connection with the Prepetition ABL Financing Documents, all prepetition collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtor and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements.

25. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Financing Agreements as necessary to:

(a) permit the Debtors to grant the DIP Liens and the Adequate Protection Liens and to incur all liabilities and obligations to the DIP Lenders under the DIP Financing Agreements, the DIP Facility, and this Interim Order, and

(b) authorize the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured Lenders to retain and apply payments hereunder as provided by the DIP Financing Agreements and this Interim Order.

## V.   RESERVATION OF CERTAIN THIRD-PARTY RIGHTS AND BAR OF CHALLENGES AND CLAIMS.

26. Nothing in this Interim Order or the DIP Credit Agreement or the other DIP Financing Agreements shall prejudice whatever rights any Committee or any other party-in-interest (other than the Debtors) with requisite standing that has been sought and granted by this Court may have to bring an adversary proceeding, cause of action, objection, claim, defense, or other challenge against the Prepetition Agents, the Prepetition Secured Lenders, the

Prepetition Liens or the Prepetition Secured Debt (collectively, a "***Challenge Proceeding***"), including but not limited to any of the following:

     (a)     an objection to or challenge of the Debtors' Stipulations set forth in Paragraphs E (1) through E (7), including (i) the validity, extent, perfection, or priority of the security interests and Liens of the Prepetition Agents and Prepetition Secured Lenders in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Secured Debt, or

     (b)     a suit against the Prepetition Agents or Prepetition Secured Lenders in connection with or related to the Prepetition Secured Debt or the Prepetition Liens, or the actions or inactions of the Prepetition Agents or Prepetition Secured Lenders arising out of or related to the Prepetition Secured Debt or Prepetition Liens;

***provided***, ***however***, that any Committee or any other party-in-interest with requisite standing that has been sought and granted by this Court must commence a Challenge Proceeding asserting such objection or challenge, including, without limitation, any claim against the Prepetition Agents or Prepetition Secured Lenders in the nature of a setoff, counterclaim, or defense to the Prepetition Secured Debt or Prepetition Liens (including but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against the Prepetition Agents or Prepetition Secured Lenders), by the later of (x) for any Committee, sixty (60) days following the appointment of the first official Committee or (y) for any party-in-interest other than an official Committee, seventy-five (75) days following entry of this Interim Order (collectively, (x) and (y) shall be referred to as the "***Challenge Period***" and the date that is the next calendar day after the termination of the Challenge Period, in the event that no Challenge Proceeding has been commenced during the Challenge Period, shall be referred to as the "***Challenge Period Termination Date***"). The Challenge Period Termination Date may occur as to some, but not all, of the Prepetition Agents or Prepetition Secured Lenders, if a Challenge Proceeding is brought against one or more but not all of the Prepetition Agents and Prepetition Secured Lenders. For the

avoidance of doubt, in the event any of the Chapter 11 Cases is converted to a case under Chapter 7 or if a Chapter 11 trustee is appointed prior to expiration of the Challenge Period, then the Challenge Period shall not expire until sixty (60) days after the trustee's appointment. In the event that the Committee or any other party in interest with requisite standing has commenced a Challenge Proceeding prior to the conversion to Chapter 7 or appointment of a Chapter 11 trustee, the trustee shall be entitled to assume the prosecution of any pending Challenge Proceeding. In either event, until the later of the expiration of the Challenge Period without commencement of a Challenge Proceeding or the entry of a final, non-appealable order or judgment on account of any Challenge Proceeding commenced within the Challenge Period, the trustee shall not be bound by the Debtors' Stipulations in this Order.

27.     Upon the Challenge Period Termination Date with respect to one or more or all of the Prepetition Agents and Prepetition Secured Lenders, as the case may be, any and all such challenges and objections by any party (including, without limitation, any Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party-in-interest) *shall be deemed to be forever waived and barred* with respect to the applicable Prepetition Agent(s) and Prepetition Secured Lender(s), and the Prepetition Secured Debt as to one or more or all of the Prepetition Secured Lenders, as the case may be, shall be deemed to be an allowed secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases and the Debtors' Stipulations as to one or more or all of the Prepetition Secured Lenders, as the case may be, shall be binding on all creditors, interest holders, and parties-in-interest.

28.     To the extent any such Challenge Proceeding is commenced, the Prepetition Secured Lenders, or any of them as the case may be, shall be entitled to include the costs and

expenses, including but not limited to reasonable and documented attorneys' fees and disbursements, incurred in responding to any inquiry, producing documents and/or witnesses in response to formal or informal discovery requests, or otherwise defending the objection or complaint, as part of the Prepetition Secured Debt to the extent permitted pursuant to the relevant Prepetition Financing Documents.  To the extent any such inquiry or discovery is undertaken or any such objection or complaint is filed (or as part of any agreed upon resolution thereof), the Prepetition Agents and the Prepetition Secured Lenders, or any of them as the case may be, shall be entitled to include such costs and expenses, including but not limited to reasonable and documented attorneys' fees incurred in responding to the inquiry or discovery or in defending the objection or complaint, as part of the Prepetition Secured Debt and as part of the Prepetition Indemnity Obligations which shall be reimbursed by the Debtors including (x) each month as provided for in Paragraph 51, below and (y) with respect to the Prepetition ABL Agent and the Prepetition ABL Lenders, out of the Prepetition Indemnity Account, and as one of the Adequate Protection Superpriority Claims, and the Prepetition Indemnity Account shall be maintained until the final resolution of all such objections or claims against the Prepetition ABL Agent and/or the Prepetition ABL Lenders.  The Debtors shall remain liable to the Prepetition Secured Lenders, or any of them as the case may be, for all unpaid Prepetition Indemnity Obligations to the extent that the funds in the Prepetition Indemnity Account are insufficient to satisfy them in full.

## VI.    CARVE OUT AND PAYMENT OF PROFESSIONALS.

29.    Subject to the terms and conditions contained in this Paragraph 29, the DIP Liens, DIP Superpriority Claim, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims are all subordinate to the following (collectively, the "*Carve Out*"):

(a)  allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of this Court and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court;

(b)  all accrued and unpaid fees, disbursements, costs and expenses, allowed at any time by this Court and incurred by professionals retained by the Debtors or a Committee, if any, (the *"Case Professionals"*), through the date of service of a Carve Out Trigger Notice (as defined below), up to and as limited by the respective Approved Budget amounts for each Case Professional or category of Case Professional[5] through the date of service of said Carve Out Trigger Notice (including partial amounts for any Carve Out Trigger Notice given other than at the end of a week, and after giving effect to all carryforwards and carrybacks from prior or subsequent favorable budget variances),[6] less the amount of prepetition retainers received by such Case Professionals and not previously applied to fees and expenses; and

(c)  all accrued and unpaid fees, disbursements, costs and expenses incurred by the Case Professionals from and after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $3,000,000 (the *"Carve Out Cap"*) ($2,750,000 of which shall be allocable to the Debtors' Case Professionals, and $250,000 of which shall be allocable to any Committee Case Professionals) less the amount of prepetition retainers received by such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (b) above. The Carve Out Cap shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Case Professionals made after delivery of the Carve Out Trigger Notice in respect of fees and expenses incurred after delivery of the Carve Out Trigger Notice. For purposes of the foregoing, *"Carve Out Trigger Notice"* shall mean a written notice delivered (i) by the DIP Agent to the Debtors and their counsel, counsel to the Prepetition Term Loan Lenders, the United States Trustee, and lead counsel to any Committee, which notice may be delivered at any time by the DIP Agent following the occurrence and continuance of any DIP Order Event of Default and shall specify that it is a "Carve Out Trigger Notice", or (ii) by the Prepetition Term Loan Agent to the Debtors and their counsel, the United States Trustee, and lead counsel to any Committee, which notice

---

[5] For the avoidance of doubt, whether or not fees or expenses of any Case Professional have been incurred in accordance with the Approved Budget and entitled to the Carve Out shall be governed by the line items set forth in the Professional Monthly Fee Estimates contained in the Debtors' liquidity forecast provided to the DIP Agent.

[6] Accordingly, to the extent that a particular Case Professional is over budget during any measurement period, it shall be entitled to offset such budget overage with any amounts such Case Professional is under budget in prior or subsequent periods prior to the delivery of a Carve Out Trigger Notice.

may be delivered at any time following the occurrence and continuance of a Cash Collateral Termination Event (as defined below).

30.    For the avoidance of doubt, the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, Liens or claims securing the DIP Obligations and/or the Prepetition Secured Debt granted or recognized as valid. Further, the Carve Out shall exclude and neither advances under the DIP Facility nor proceeds of the Prepetition Collateral and the DIP Collateral shall be used to pay any fees and expenses (x) incurred in connection with the assertion or joinder in any Challenge Proceeding or any other claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (A) invalidating, setting aside, avoiding, or subordinating, in whole or in part, (i) the DIP Obligations, (ii) the DIP Lenders' Liens in the DIP Collateral, (iii) the Prepetition Secured Debt, (iv) the Prepetition Agents' and the Prepetition Secured Lenders' Liens in the Prepetition Collateral, or (v) the Adequate Protection Liens or (B) preventing, hindering, or delaying, whether directly or indirectly, the DIP Lenders', the Prepetition Agents', or the Prepetition Secured Lenders' assertion or enforcement of their Liens and security interests, or their efforts to realize upon any DIP Collateral, Prepetition Collateral, the Adequate Protection Liens, or the Prepetition Indemnity Account; *provided, however,* that such exclusion does not encompass any investigative work conducted by the Case Professionals retained by any Committee, but, subject to entry of the Final Order, only up to $50,000.00 of the Carve Out may be used for such investigative work.

31.    Nothing herein, including the inclusion of line items in the Approved Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expenses of the Debtors, of any Committee, or of any other person or shall

affect the right of the DIP Agent, the Prepetition Agents, or the Prepetition Secured Lenders to object to the allowance and payment of such fees and expenses.

## VII.    MATURITY; DIP ORDER EVENTS OF DEFAULT; REMEDIES

### A.    Maturity.

32.    All DIP Obligations shall be due and payable on the date that is the earliest to occur of any of the following (each, a "***DIP Maturity Event***"):

    (a)    June 30, 2016;

    (b)    the closing of a sale of all or substantially all of the working capital assets of the Debtors pursuant to the provisions of section 363 of the Bankruptcy Code; or

    (c)    the effective date of any chapter 11 plan for the Debtors.

33.    Following a DIP Maturity Event, so long as all Prepetition ABL Debt and all DIP Obligations have been paid in full in cash, the Debtors shall be required to transfer from its Cash Collateral account to a segregated account subject to the control of an escrow agent reasonably acceptable to the Debtors and the Prepetition Term Loan Agent (the "***Carve Out Account***"), an amount of Cash Collateral equal (i) to the Carve Out Cap, plus (ii) the then accrued and unpaid fees and expenses of the Case Professionals through the date on which a DIP Maturity Event first occurs, to the extent in compliance with the Approved Budget, which Carve Out Account shall be available only to satisfy obligations benefitting from the Carve Out. All funds on deposit in the Carve Out Account, however funded and from whatever source derived, shall at all times continue to constitute Cash Collateral, subject to the prior payment of all amounts covered by the Carve Out. Once the Carve Out Account has been funded, either by the Debtors as provided in this Paragraph 33 or by the DIP Agent as provided in Paragraph 41 below, none of the Prepetition Agents, the Prepetition Secured Lenders, the DIP Agent, nor the DIP Lenders shall

have any further liability for nor responsibility with respect to the Carve Out, including any application or disbursement of funds in the Carve Out Account.

34.     In the event that (A) all Prepetition ABL Debt and DIP Obligations have been paid in full in cash and (B) the DIP Commitments have irrevocably terminated, the Debtors, in consultation with any Committee, the Prepetition ABL Agent, the FILO Agent, the Prepetition Term Loan Agent, and the Ad Hoc Group of Prepetition Term Loan Lenders shall consult with each other as to the terms and conditions of continued consensual use of Cash Collateral in light of the then present circumstances of these Chapter 11 Cases.  If the Debtors, any Committee, the Prepetition ABL Agent, the FILO Agent, the Prepetition Term Loan Agent, and Prepetition Term Loan Lenders are not able to agree on such terms and conditions, the Prepetition Term Loan Agent shall be entitled to declare that the Debtors' rights to use Cash Collateral on the terms provided in this Interim Order are terminated (a "***Cash Collateral Termination Event***") with such termination to take effect immediately upon delivery of notice (a "***Cash Collateral Termination Notice***") by the Prepetition Term Loan Agent to the Debtors and their counsel, the United States Trustee, and lead counsel to any Committee.  Following the delivery of the Cash Collateral Termination Notice, the Debtors, the Prepetition Term Loan Agent, and any Committee shall be entitled to an emergency hearing before this Court, upon appropriate notice to the Committee, the Prepetition ABL Agent, the FILO Agent, and the DIP Agent, including for the purposes of determining whether the use of Cash Collateral by the Debtors should be granted and on what terms and conditions, even if on a non-consensual basis.  In the event that the Debtors either accept the termination of use of Cash Collateral (by written correspondence to the Prepetition Term Loan Agent) or the Court determines that the Debtors are not permitted to use Cash Collateral, the

delivery of the Cash Collateral Termination Notice shall automatically constitute delivery of a Carve Out Trigger Notice as set forth in Paragraph 29 hereof.

35.      Unless and until the Prepetition ABL Debt and the DIP Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of (i) the Prepetition ABL Debt satisfactory to the Prepetition ABL Agent and the FILO Agent and (ii) the DIP Obligations satisfactory to the DIP Agent, in each case in their sole and exclusive discretion have been made) and all DIP Commitments have been irrevocably terminated, the protections afforded to the Prepetition ABL Agent, the Prepetition ABL Lenders, the DIP Agent, and the DIP Lenders pursuant to this Interim Order and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming any Plan or converting the Chapter 11 Cases into a Successor Case, and the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall continue in the Chapter 11 Cases and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, Adequate Protection Liens, and Adequate Protection Superpriority Claims shall maintain their respective priorities as provided by this Interim Order.

36.      Unless and until the Prepetition Term Loan Debt has been irrevocably repaid in full in cash, the protections afforded to the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders pursuant to this Interim Order and any actions taken pursuant thereto shall survive the entry of any order confirming any Plan or converting the Chapter 11 Cases into a Successor Case, and the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall continue in the Chapter 11 Cases and in any Successor Case, and such Adequate Protection Liens and Adequate Protection Superpriority Claims shall maintain their respective priorities as provided by this Interim Order.

B.    **DIP Order Events of Default.**

37.    All DIP Obligations shall be immediately due and payable and all authority to use the proceeds of the DIP Facility and to use Cash Collateral shall cease on the date that is the earliest to occur of any of the following (each, a "***DIP Order Event of Default***"):

(a)    the occurrence of an Event of Default (as defined in the DIP Credit Agreement) in accordance with the DIP Credit Agreement; or

(b)    the failure of the Debtors to obtain entry of the Final Order on or before April 1, 2016;

C.    **Rights and Remedies Upon DIP Order Event of Default.**

38.    Any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that after the occurrence of any DIP Order Event of Default, upon five (5) days prior written notice (a "***Remedies Notice***") of such occurrence (the "***Remedies Notice Period***"), in each case given to each of (v) the Debtors, (w) counsel to the Debtors, (x) counsel to each of the Prepetition Agents, (y) counsel for any Committee, and (z) the Office of the United States Trustee, the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Financing Agreements.

39.    Upon the service of a Remedies Notice after the occurrence of a DIP Order Event of Default:

(a)    the Debtors shall continue to deliver and cause the delivery of the proceeds of the Prepetition Collateral to the Prepetition ABL Agent and the DIP Collateral to the DIP Agent as provided in this Interim Order and in the DIP Financing Agreements;

(b)    the Prepetition ABL Agent and the DIP Agent shall continue to apply such proceeds in accordance with the provisions of this Interim Order and the DIP Financing Agreements;

(c)    the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the Prepetition ABL Debt, the DIP Obligations, and the Carve Out; and

01:18387851.1

40

(d)    any obligation otherwise imposed on the DIP Lenders to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended, and any loan or advance made thereafter shall be made by the DIP Lenders in their sole and exclusive discretion.

40.    Following the giving of a Remedies Notice by the DIP Agent of the occurrence of a DIP Order Event of Default, the Debtors, the DIP Agent, and any Committee appointed in the Chapter 11 Cases, if any, shall be entitled to an emergency hearing before this Court, including for the purpose of contesting whether a DIP Order Event of Default has occurred. If the Debtors or any such Committee do not contest the occurrence of a DIP Order Event of Default and the right of the DIP Agent and the DIP Lenders to exercise their remedies, or if the Debtors or any such Committee do timely contest the occurrence of a DIP Order Event of Default and unless this Court, after notice and hearing prior to the expiry of the Remedies Notice Period stays the enforcement thereof, the automatic stay, solely as to the DIP Agent and the DIP Lenders, shall automatically terminate at the end of the Remedies Notice Period.

41.    Subject to the provisions of Paragraphs 38, 39, and 40 above, upon the occurrence of a DIP Order Event of Default, the DIP Agent and the DIP Lenders are authorized to exercise their remedies and proceed under or pursuant to the DIP Financing Agreements; except that, (A) with respect to any of the Debtors' leasehold locations, the DIP Agent's and the DIP Lenders' rights shall be limited to such rights (i) as may be ordered by this Court upon motion and notice to the applicable landlord with an opportunity to respond that is reasonable under the circumstances; (ii) to which the applicable landlord agrees in writing with the DIP Agent; or (iii) which the DIP Agent and the DIP Lenders have under applicable non-bankruptcy law, and (B) prior to exercising any such remedies, the DIP Agent shall fund the Carve Out Account as set forth in Paragraph 33 hereof (provided that such Carve Out Account shall be subject to the control of the DIP Agent).

42.     Nothing included herein shall prejudice, impair or otherwise affect the Prepetition Agents or the DIP Agent's rights to seek any other or supplemental relief from the Court in respect of the Debtors, nor the DIP Lenders' rights, as provided herein and in the DIP Credit Agreement, to suspend or terminate the making of loans and granting financial accommodations under the DIP Credit Agreement.

D.     **No Waiver of Remedies**.

43.     The delay in or the failure of the Prepetition Agents or the DIP Agent to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the Prepetition Agents', the Prepetition Secured Lenders', or the DIP Agent's rights and remedies. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly or otherwise impair the rights and remedies of the Prepetition Agents, the Prepetition Secured Lenders, or the DIP Agent under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Agents and the DIP Agent to (i) request conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) subject to section 362 of the Bankruptcy Code exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the Prepetition Agents and the DIP Agent may have.

VIII.    CERTAIN LIMITING PROVISIONS

A.     **Section 506(c) Claims and Waiver.**

44.     Nothing contained in this Interim Order shall be deemed a consent by the Prepetition Agents, the Prepetition Secured Lenders, or the DIP Agent to any charge, Lien,

assessment, or claim against the DIP Collateral, the DIP Liens, the Prepetition Collateral, or the Adequate Protection Liens under section 506(c) of the Bankruptcy Code or otherwise; *provided, however*, that during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

45.     As a further condition of the DIP Facility and any obligation of the DIP Lenders to make credit extensions pursuant to the DIP Financing Agreements, and in consideration of the Prepetition Secured Lenders' consent to the use of their Cash Collateral, upon entry of the Final Order, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Case) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code with respect to the Prepetition Agents, the Prepetition Secured Lenders, the DIP Lenders, the Prepetition Collateral, and the DIP Collateral.

**B.      Proceeds of Subsequent Financing.**

46.     If at any time prior to the irrevocable repayment in full in cash of all Prepetition Secured Debt and DIP Obligations and the termination of the DIP Lenders' obligations to make loans and advances under the DIP Facility, the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(c)(1) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Agreements, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over first, to the Prepetition ABL Agent to be applied in reduction of the Prepetition ABL Debt, second, to the DIP Agent to be applied in reduction of the DIP Obligations, and then to the Prepetition Term Loan Agent to be applied to the Prepetition Term Loan Debt.

01:18387851.1

C.    **Priming of DIP Facility.**

47.    In entering into the DIP Financing Agreements, and consenting to the use of Cash Collateral, and as consideration therefor, each of the Debtors hereby agrees that until such time as all Prepetition ABL Debt and all DIP Obligations have been irrevocably paid in full in cash (or other arrangements for payment of the Prepetition ABL Debt and the DIP Obligations satisfactory to the Prepetition ABL Lenders and the DIP Lenders, as applicable, in their sole and exclusive discretion have been made) and the DIP Financing Agreements have been terminated in accordance with the terms thereof, the Debtors shall not (unless otherwise agreed to by the DIP Agent, DIP Lenders, Prepetition ABL Agent and Prepetition ABL Lenders, in their sole respective discretion) in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Lenders or the Prepetition Liens or Adequate Protection Liens granted to the Prepetition ABL Agent or Prepetition ABL Lenders under this Interim Order by offering a subsequent lender or a party-in-interest a superior or pari passu Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise; ***provided*** that this Paragraph 47 shall not be deemed to amend the Intercreditor Agreement.

48.    In consenting to the use of Cash Collateral and the other provisions hereof, and as consideration therefor, each of the Debtors hereby agrees that until such time as all of the Prepetition Term Loan Debt has been irrevocably paid in full in cash (or other arrangements for payment of such obligations satisfactory to the Prepetition Term Loan Lenders, in their sole and exclusive discretion have been made) and the Prepetition Term Loan Credit Agreement and the Loan Documents (as defined in the Prepetition Term Loan Credit Agreement) have been terminated in accordance with the terms thereof, the Debtors shall not (unless otherwise agreed to by the Prepetition Term Loan Agent and Prepetition Term Loan Lenders, in their sole respective

discretion) in any way prime or seek to prime the security interests and Prepetition Liens of the Prepetition Term Loan Agent or Adequate Protection Liens granted to the Prepetition Term Loan Agent or Prepetition Term Loan Lenders under this Interim Order on the Term Priority Collateral by offering a subsequent lender or a party-in-interest a superior or pari passu Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise (other than as permitted under Paragraph 19 above).

IX.    **OTHER RIGHTS AND OBLIGATIONS**

A.    **Good Faith Under Section 364(e) of the Bankruptcy Code.  No Modification or Stay of this Interim Order.**

49.    Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this or any other court, the DIP Agent and the DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code and, no such appeal, modification, amendment, or vacation shall affect the validity and enforceability of any advances made hereunder or the Liens or priority authorized or created hereby.

50.    Notwithstanding any modification, amendment, or vacation of any or all of the provisions of this Interim Order, any claim or protection granted to the Prepetition Agents, the Prepetition Secured Lenders, or the DIP Lenders hereunder arising prior to the effective date of such modification, amendment, or vacation of any such claim or protection granted to the Prepetition Agents, the Prepetition Secured Lenders, or the DIP Lenders shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Agents, the Prepetition Secured Lenders, and the DIP Lenders shall be entitled to all of the rights, remedies,

privileges, and benefits, including the Adequate Protection and the DIP Protections granted herein, with respect to any such claim, including those found under section 364(e) of the Bankruptcy Code.

**B.      Prepetition Agents', Prepetition Secured Lenders', DIP Agent's, and DIP Lenders' Expenses.**

51.      Subject to Paragraph 18(c) above, as provided in the Prepetition Financing Documents and in the DIP Financing Agreements, all reasonable out-of-pocket costs and expenses of the Prepetition Agents, the Prepetition Secured Lenders (including the Ad Hoc Group of Prepetition Term Loan Lenders), the DIP Agent, and the DIP Lenders, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses, whether or not contained in the Approved Budget and without limitation with respect to the dollar estimates contained in the Approved Budget (provided, however, that such overages shall not weigh against the Debtors in any testing related to compliance with the Approved Budget), will be paid by the Debtors.  Payment of such fees shall not be subject to allowance by this Court; ***provided, however***, the Debtors, the U.S. Trustee or counsel for any Committee may seek a determination by this Court whether such fees and expenses are reasonable in the manner set forth below.  Under no circumstances shall professionals for the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Lenders (including the Ad Hoc Group of Prepetition Term Loan Lenders) be required to comply with the United States Trustee fee guidelines; ***provided, however***, the Debtors shall provide to the Office of the U.S. Trustee and any Committee a copy of any invoices received from the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Lenders (including the Ad Hoc Group of Prepetition Term Loan

Lenders) for professional fees and expenses during the pendency of the Chapter 11 Cases. The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential, or sensitive information). If the Debtors, U.S. Trustee or counsel for any Committee object to the reasonableness of the invoices submitted by the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Lenders (including the Ad Hoc Group of Prepetition Term Loan Lenders), and the parties cannot resolve such objection within 10 days of receipt of such invoices, the Debtors, U.S. Trustee or the Committee, as the case may be, shall file with the Court and serve on the applicable DIP Agent, DIP Lender, Prepetition Agent, or Prepetition Secured Lender an objection (the "**Fee Objection**") limited to the issue of reasonableness of such fees and expenses. The Debtors shall timely pay, and/or the DIP Agent is hereby authorized to make an advance under the DIP Facility to timely pay, the submitted invoices after the expiration of the ten (10) day notice period if no Fee Objection is received in such ten (10) day period. If a Fee Objection is timely received, only the undisputed amount of the invoice shall be paid and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

C.    **Binding Effect**.

52.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Lenders, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors), and any Committee (subject to the provisions of Paragraphs

26 - 28 above), whether in the Chapter 11 Cases, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

    **D.**    **No Third Party Rights**.

        53.    Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary, other than the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured Lenders.

    **E.**    **Prepetition Secured Lenders' and DIP Lenders' Rights Governed By Prepetition Intercreditor Agreement.**

        54.    Notwithstanding anything to the contrary in the Prepetition Intercreditor Agreement, and notwithstanding the provisions of Paragraph 55 below, the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders (i) consent to the grant of claims to and Liens in the DIP Collateral to the DIP Agent, the DIP Lenders, the Prepetition ABL Agent, the FILO Agent, and the Prepetition ABL Lenders, and (ii) consent to the repayment of the Prepetition ABL Debt and the DIP Obligations from ABL Priority Collateral (and, after payment in full in cash of the Prepetition Term Loan Debt, the Term Priority Collateral), but only as expressly provided in, and as limited by, this Interim Order, and (iii) waive any right to require disgorgement of all or any portion of such repayment.   In the event of any inconsistency between the terms and conditions of the Prepetition Intercreditor Agreement and this Interim Order, the provisions of this Interim Order shall govern and control.  The Prepetition Agents and the Prepetition Secured Lenders each consent to the exclusive jurisdiction of this Court to address and resolve any and all issues arising under, and resolve any and all disputes between them arising out of, the Prepetition Intercreditor Agreement to the extent related to this Interim Order.

F. **Reservation of Rights by Prepetition Term Loan Agent and Prepetition Term Loan Lenders.**

55.      Regardless of the actual source of proceeds of repayment of the Prepetition ABL Debt, the DIP Obligations, and/or payment of any administrative expenses in these Chapter 11 Cases, the Prepetition Term Loan Agent and Prepetition Term Loan Lenders each reserves all of their respective rights, claims, defenses, and arguments as to (i) what the proper source of repayment of the Prepetition ABL Debt and the DIP Obligations should have been under applicable law (but not any right to seek disgorgement of any such repayment) under applicable bankruptcy and non-bankruptcy law, and (ii) what the proper source of payment of any administrative expenses in these Chapter 11 Cases should have been. Further, the foregoing shall not in any way diminish or abrogate the Adequate Protection Liens granted in all of the DIP Collateral and Adequate Protection Superpriority Claims granted pursuant to Paragraph 18 hereof, in each case for the benefit of the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders, or, upon entry of the Final Order, the waivers of the Debtors rights to assert section 506(c) or section 552(a) claims against the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders.

G. **No Marshaling**.

56.      Except as provided in Paragraph 55, the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

H. **Section 552(b) of the Bankruptcy Code.**

57.      Upon entry of the Final Order, the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured Lenders shall each be entitled to all of the rights

and benefits of section 552(b) of the Bankruptcy Code and the Debtors shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Lenders with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral or the DIP Collateral.

I.    **Amendments**.

58.    The Debtors and the DIP Agent may amend, modify, supplement, or waive any provision of the DIP Financing Agreements without further approval of this Court, but only after notice to the Prepetition Term Loan Agent, the Prepetition Term Loan Lenders, and any Committee; provided, however that notice of any "material" amendment, modification, supplement, or waiver  shall be filed with this Court and the Prepetition Term Loan Agent, the Prepetition Term Loan Lenders, and any Committee shall have five (5) business days from the date of such filing within which to object in writing to such proposed amendment, modification, supplement, or waiver; provided further, that if the Prepetition Term Loan Agent, or Committee timely objects to any material amendment, modification, supplement, or waiver, then such amendment, modification, supplement, or waiver shall only be permitted pursuant to an order of this Court after notice and a hearing.  For purposes of this Paragraph 58, a "material" amendment shall include, but not be limited to, any amendment, modification, supplement, or waiver that (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the DIP Commitments, (iii) changes the maturity date of the DIP Facility or any DIP Maturity Date, (iv) amends or waives any Event of Default under the DIP Credit Agreement, (v) revises any case or sale milestone set forth in the DIP Credit Agreement, or (vi) otherwise modifies the DIP Financing Agreements in a manner materially less favorable to the Debtors, the

Prepetition Term Loan Agent, or the Prepetition Term Loan Lenders. All amendments, modifications, supplements, or waivers of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtors, the DIP Agent, the Prepetition Agents, and/or the Prepetition Secured Lenders, and, if required, approved by this Court.

J.    **Survival of Interim Order**.

59.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

(a)    confirming any Plan in the Chapter 11 Cases,

(b)    converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code,

(c)    dismissing the Chapter 11 Cases,

(d)    withdrawing of the reference of the Chapter 11 Cases from this Court, or

(e)    providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court.

60.    The terms and provisions of this Interim Order including the DIP Protections granted pursuant to this Interim Order and the DIP Financing Agreements and any protections granted the Prepetition Agents or the Prepetition Secured Lenders shall continue in full force and effect notwithstanding the entry of any order described in Paragraph 49, and such DIP Protections and protections for the Prepetition Secured Lenders shall maintain their priority as provided by this Interim Order until all of the DIP Obligations of the Debtors to the DIP Lenders pursuant to the DIP Financing Agreements and the Prepetition Secured Debt has been irrevocably paid in full in cash and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).

01:18387851.1

**K.**     **Inconsistency**.

61.     In the event of any inconsistency between the terms and conditions of the DIP Credit Agreement, the DIP Financing Agreements, and this Interim Order, the provisions of this Interim Order shall govern and control.

**L.**     **Enforceability**.

62.     This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

**M.**     **Objections Overruled**.

63.     Notwithstanding any reservations of rights made on the record at the Interim Hearing with respect to this Interim Order, all objections to the Motion to the extent not withdrawn or resolved, are hereby overruled.

**N.**     **Waiver of Any Applicable Stay**.

64.     Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

**O.**     **Proofs of Claim.**

65.     The Prepetition ABL Agent, the Prepetition Term Loan Agent, the Prepetition Secured Lenders, the DIP Agent, and the DIP Lenders will not be required to file proofs of claim in the Chapter 11 Cases or in any Successor Case.

**P.**     **Headings.**

66.     The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

**Q.**    **Retention of Jurisdiction.**

67.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**X.**    **FINAL HEARING.**

68.    **The Final Hearing on the Motion shall be held before this Court on March 29, 2016, at 1:00 p.m. (ET).**

69.    The Debtors shall, within three (3) business days of the entry of this Interim Order, serve (A) the U.S. Trustee; (B) Riemer & Braunstein LLP (attn: Donald Rothman) as counsel to (i) the DIP Agent, (ii) the Revolving DIP Lenders, and (iii) the Prepetition ABL Administrative Agent; (C) holders of the 50 largest unsecured claims on a consolidated basis against the Debtors; (D) Brown Rudnick LLP (attn: Robert Stark and Bennett Silverberg) as counsel for (i) the Prepetition Term Loan Agent and (ii) certain Prepetition Term Loan Lenders; (E) Choate, Hall & Stewart LLP (attn: Kevin Simard) as counsel for (i) the FILO Agent and (ii) the FILO DIP Lenders; (F) O'Melveny & Meyers LLP (attn: John Rapisardi) as counsel for certain holders of Mezzanine Notes; (G) all holders of Mezzanine Notes; (H) the Internal Revenue Service; (I) all appropriate state taxing authorities; (J) all landlords, owners, and/or operators of premises at which any of the Debtors' inventory and/or equipment is located; and (K) any other party that files a request for notices with the Court as of the date of such service, a copy of the Interim Order and a notice of the Final Hearing to consider entry of the Final Order.

70.    If no objections to the relief sought in the Motion are filed and served in accordance with this Interim Order, no Final Hearing shall be held, and a separate Final Order may be presented jointly by the Debtors and by the DIP Agent and entered by this Court upon certification of counsel by the Debtors.

01:18387851.1

53

71.    Any party in interest objecting to the relief sought in the Motion shall

submit any such objection in writing and file same with this Court and serve such objection so as to

be received no later than **March 22, 2016 at 4:00 p.m. (ET)** on the following parties:

| *Proposed Counsel for the Debtors* | *Office of the United States Trustee* |
|---|---|
| Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Attn: Robert A. Klyman, Esq. and<br>Matthew J. Williams, Esq.<br>E-mail: rklyman@gibsondunn.com<br>        mjwilliams@gibsondunn.com<br><br>and<br><br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square, 1000 North King Street<br>Wilmington, Delaware 19801<br>Attn: Michael R. Nestor, Esq. and<br>Andrew L. Magaziner, Esq. | Office of the United States Trustee for the District of<br>Delaware<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, Delaware 19801<br>Attn: Hannah McCollum, Esq.<br>Email: Hannah.mccollum@usdoj.gov |
| *Counsel for the DIP Agent*<br>Riemer & Braunstein LLP<br>Three Center Plaza,<br>Boston, Massachusetts 02108<br>Attn: Donald E. Rothman, Esq.<br>E-mail: drothman@riemerlaw.com<br><br>and<br><br>Ashby & Geddes<br>500 Delaware Avenue<br>Wilmington, Delaware 19899<br>Attn: Gregory A. Taylor, Esq.<br>E-mail: gtaylor@ashby-geddes.com | *Counsel for the Prepetition Term Loan Agent*<br>Brown Rudnick LLP<br>Seven Times Square<br>New York, NY 10036<br>Attn: Robert J. Stark and Bennett S. Silverberg<br><br>Brown Rudnick, LLP<br>One Financial Center<br>Boston, MA 02111<br>Attn: Andreas Andromalos, Esq. |
| *Counsel for the FILO Agent*<br>Choate, Hall & Stewart LLP<br>Two International Place<br>Boston Massachusetts 02110<br>Attn: Kevin J. Simard, Esq.<br>Email: ksimard@choate.com<br><br>and | |

01:18387851.1

| Richards, Layton & Finger, PA<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19899<br>Attn: Mark Collins<br>Email: collins@rlf.com | |

Dated: March 3, 2016

Mary F. Walrath
United States Bankruptcy Judge

01:18387851.1