# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 16-10527-MFW <br><br> (Jointly Administered) <br><br> **Hearing Date: April 5, 2016 at 1:00 p.m.** <br><br> **Ref. Docket No. 20, 157, 609, 621, 635, 637, 639, 642 - 646, 648, 653, 654, 656, 657, 661 – 666, 668, 670 – 672, 676, 678, 680, 681, 687, 691, 693, 698, 702, 705, 707, 708, 712, 713, 748, 749, 753, 757, 758, 763, 779, 796, 823, 831, 848, 853, 878, 880** |

## LIMITED OBJECTION AND JOINDER TO OTHER LANDLORD OBJECTIONS OF LEVIN MANAGEMENT CORPORATION AS AGENT FOR IKEA PROPERTIES, INC. TO DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING

Levin Management Corporation, as agent for Ikea Properties, Inc. (the "Landlord"), by and through its counsel, hereby files the following Limited Objection and Joinder to Other Landlord Objections to the above-captioned debtors' (the "Debtors") Motion for Interim and Final Orders Authorizing Debtors to Obtain Post-Petition Secured Financing (the "Motion")[2], and respectfully represents as follows:

## JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2] Capitalized terms shall have the same meaning ascribed to them in the Motion, unless otherwise provided herein.

1

## BACKGROUND

2. On March 2, 2016, each of the above-captioned debtors (the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Court.

3. Upon information and belief, Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Landlord and Debtors are parties to a certain lease dated December 20, 2004 (the "Lease") for retail property located at Routes 4 and 17 in Paramus, N.J. (the "Premises").

5. Debtors are delinquent with rent during the months of February and March 2016, as well as other charges, including reconciliation fees, which became due and owing to Landlord in the sum of **$345,653.91**, plus any additional rent, attorneys' fees, costs and other charges. (See Accounting, Exhibit "A" attached hereto.) In addition, April rent and other charges will become due before the return date of the Motion.

6. Debtors seek to obtain post-petition financing in order to operate outside the ordinary course of business by selling their assets, including Landlord's Lease.

7. Upon information believed, the approved budget does not provide for payment of stub rent owed to landlord for use of its property from March 2, 2016 through March 31, 2016 and also fails to provide for payment of post-petition rent, as the Approved Budget lacks such detail.

8. In addition, Debtor seeks to waive protections set forth in Bankruptcy Code §506(c) and §552(b).

## OBJECTIONS

### A. Joinder

9. Landlord hereby joins in, adopts and incorporates by reference the objections filed by other Landlords to the Motion.

### B. Debtors Should Pay Stub Rent, Immediately

10. Bankruptcy Code §503(b)(1) provides for an allowed administrative expense for "the actual and necessary costs and expenses of preserving the estate ...." 11 U.S.C. §503(b)(1). The Landlords' claims for Stub Rent constitute administrative expenses owed by the Debtors. *See In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010).

11. The Court has discretion to determine when an administrative expense will be paid. *In re Garden Ridge Corp.*, 323 B.R. 136 (Bankr. D. Del. 2005). In determining the timing for payment of an administrative expense, the Court considers:

   (1) prejudice to the Debtor;

   (2) hardship to the claimant; and

   (3) the potential detriment to other creditors. *Id.*

12. Although this Court has held that "an administrative claim under §503(b) need not be paid immediately but can be paid as late as the confirmation date..." *In re DVI, Inc.*, 308 B.R. 703, 708 (Bankr. D. Del. 2004); *see also In re HQ Global Holdings, Inc.*, 282 B.R. 169, 174-175 (Bankr. D. Del. 2002) (holding that any decision on the amount and payment of stub rent must await the debtors' decision on whether to assume or reject the leases), the facts at bar are readily distinguishable.

13. In the *DVI* case, debtors ceased operations within 45 days at their leased locations. In addition, the DVI debtor filed a bankruptcy petition on August 25, 2003, and then filed a motion to reject the lease on September 10, 2003. The Court subsequently granted the motion effective September 30, 2003.

14. Here, operations are continuing. Further, no rejection motion has been filed, but rather a motion to extend the period to assume or reject was filed by the Debtors [Dkt # 67].

15. Like the *HQ* case, numerous landlords have filed pleadings demanding for immediate payment of Stub Rent.

16. Here, Debtors request:

   a.   waivers of rights under sections 506(c) and 552(b) to the DIP Lenders;

   b.   to conduct store closing sales at Landlord's Premises;

   c.   marketing the Lease; and

   d.   Landlord subsidize and involuntarily finance store closing sales, which may continue until June 30, 2016, or longer.

17. The Approved Budget fails to clarify payment of Stub Rent and ongoing rent.

18. As a matter of law, Landlord is entitled to prompt payment of the Stub Rent as adequate protection of their interests in the Leases. "A landlord's right to adequate protection seems to follow clearly from the language of § 363(e) of the Bankruptcy Code …." *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001).

19. Adequate protection may be provided:

> ….on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest ….

See, 11 U.S.C. § 363(e).

20. Debtors will receive a significant cash infusion from the store closing sales, while seeking to defer obligation to pay Stub Rent for a period, which covers more than 20% of the time that the store closing sales are currently schedule and could increase with further requests.

21. It is inequitable to allow Debtors use of the Premises in a manner outside of the ordinary course of business, incurring actual and necessary benefit to the estates, while not paying Stub Rent and/or ongoing rent.

22. Landlord is entitled to adequate protection of its interest in the Lease, and respectfully requests that the Court prohibit use of the Premises subject to the Lease, or condition use upon immediate payment all Stub Rent and well as ongoing rent due and owing.

### C. Waivers of §§506(c) or 552(b) Should Not be Permitted Unless Stub Rent is Paid

23. Here, Debtors seek waivers of their rights under both §§506(c) and 552(b) through the DIP Motion. *See* DIP Motion, ¶¶ 44, 45, 73, 74 and Interim DIP Order, ¶ 12.

24. Section 506(c) of the Bankruptcy Code allows a debtor to "…recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim …." See, 11 U.S.C. §506(c).

25. Section 506(c) ensures costs associated with the liquidation of a secured lender's collateral are not paid from unsecured recoveries. *See Precision Steel Shearing, Inc. v. Fremont Financial Corp. (In re Visual Industries, Inc.)*, 57 F.3d 321, 325 (3d. Cir. 1995) ("§ 506(c) is designed to prevent a windfall to the secured creditor at the expense of the claimant."). See also, *Kivitz v. CIT Group/Sales Fin., Inc.*, 272 B.R. 332, 334 (D. Md. 2000) (stating that "the reason for [section 506(c)] is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs").

26. The "equities of the case" exception of § 552(b) permits a debtor, creditors' committee or other party-in-interest to exclude post-petition proceeds from pre-petition collateral on equitable grounds. It "…is intended to prevent secured creditors from receiving windfalls and to allow bankruptcy courts broad discretion in balancing the interests of secured creditors against the general policy of the Bankruptcy Code, which favors giving debtors a fresh start." *In re Photo Promotion Assocs., Inc.*, 61 B.R. 936, 940 (Bankr. S.D.N.Y. 1986).

27. Further, §552(b) is designed to prevents a situation where unencumbered assets of debtors fund the costs of the secured creditors' recovery to the detriment of unsecured creditors, like Landlord.

28. Landlord does not object to Debtors' efforts to maximize value for creditors and the Estate

through a reasonable sale process with rational financing. *See Inre Ames Department Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) (post-petition financing should only be approved to the extent it is "in the best interests of the general creditor body.").

29. However, Landlord is an involuntary creditor in this case and bears the inherent risk of the Estate's administrative insolvency.

30. The Approved Budget does not provide for the payment of Stub Rent. Further, neither the DIP Motion nor the Interim Order provides any assurance that Debtors' estates will have sufficient funds to pay the Stub Rent. Unless and until the Debtors provide for the payment of the Stub Rent under the Leases, this Court should not approve any waiver of the estates' rights under §§506(c) and 552(b).

31. This Court may require payment of Stub Rent under §506(c), as the Landlord is effectively bearing the costs of preserving a secured creditor's collateral. *See In re Evanston Beauty Supply Inc.*, 136 B.R. 171, 175 (Bankr. N.D. Ill. 1992). "Ample case authority exists which permits lessors to recover under Section 506(c) provided that the standards for recovery are met." *In re World Wines, Ltd.*, 77 B.R. 653, 658 (Bankr. N.D.Ill.1987). Standards for recovery are that the services were necessary and beneficial to the lender. *Visual Ind., Inc.*, 57 F.3d at 325.

32. The post-petition use of the Premises is necessary and beneficial to generating sales for Debtors.

33. Stub Rent owed to Landlord is reasonable and necessary to the preservation and disposal of DIP Lenders' collateral and provides a direct benefit to Debtors and the DIP Lenders. Without it, Debtors and DIP Lenders would have to find other locations to store and liquidate the inventory, and pay costs associated with removing the inventory and finding other locations. Further, allowing DIP Lenders access to storage and preservation of collateral at no cost would "result in a windfall benefit to the secured creditor to the detriment of a third party." *In re So Good South Potato Chip Co.*, 116 B.R. 144, 146 (Bankr. E.D. Mo. 1990).

34. Debtors should not be permitted to waive their rights under §§ 506(c) and 552(b) without payment of Stub Rent. Debtors' cases cannot be conducted solely to benefit the secured creditors. *Zazzali v. 1031n Exch. Group (In re DBSI, Inc.)*, 478 B.R. 192, 199 (Bankr. D. Del. 2012).

35. Based on the above, this Court can and should require the payment of Stub Rent for the preservation of DIP Lenders' collateral under §§ 506(c) and 552(b), and deny any request for such waiver in the DIP Motion until such Stub Rent is paid.

### D. Limiting Rights of DIP Lenders Consistent with Interim DIP Order

36. Any further or final order should provide that any lien in favor of the DIP Agent and/or the DIP Lenders is granted only as to any proceeds of the Leases and not the Leases themselves.

37. Paragraph 9(c) of the Interim DIP Order entered by the Court restricted liens in favor of the DIP Agent and/or the DIP Lenders to "Lease Proceeds, but not the Leases themselves, whether or not so perfected prior to the Petition Date." Interim DIP Order, ¶ 9(c).

38. The further or final order should likewise provide that any lien in favor of the DIP Agent and/or the DIP Lenders is granted only as to any proceeds of the Leases and not the Leases themselves similar to the provisions of the Interim DIP Order.

39. Any further or final order approving the DIP Motion must also make it clear that neither the DIP Agent nor the DIP Lenders have rights to use or occupy the Premises.

40. Paragraph 41 of the Interim DIP Order entered by the Court restricted the DIP Agent and DIP Lenders' remedies as follows:

> (A) with respect to any of the Debtors' leasehold locations, the DIP Agent's and the DIP Lenders' rights shall be limited to such rights (i) as may be ordered by this Court upon motion and notice to the applicable landlord with an opportunity to respond that is reasonable under the circumstances; (ii) to which the applicable landlord agrees in writing with the DIP Agent; or (iii) which DIP Agent and DIP Lenders have under non-bankruptcy law....

41. Interim DIP Order, ¶ 41. The further or final order should provide for the same limitations.

42. The entry of any Interim or Final DIP Order should be conditioned upon the Debtor's immediate payment to Landlord of Stub Rent. Any waiver of the protections of §§ 506(c) and 552(b) must be denied in the absence of payment of Stub Rent and all administrative rent to Landlord.

**E. Reservation of Rights**

43. Landlord reserves the right to supplement this objection and joinder and make such other and further objections as they be necessary and/or appropriate.

**WHEREFORE**, for the foregoing reasons and for the reasons set forth in its original objection, Levin Management Corporation, as agent for Ikea Properties, Inc. respectfully requests the relief set forth above, and such other and further relief as this Court deems just and proper.

Respectfully submitted,

**STARK & STARK**
**A Professional Corporation**

By: /s /*John R. Weaver, Jr.*
John R. Weaver, Jr.

Dated: March 30, 2016

P.O. Box 510
203 W. 18th Street
Wilmington, Delaware 19899
(302) 428-1077 (main)
(302) 655-7371 (direct)
jrweaverlaw@verizon.net

and

Thomas S. Onder
Timothy P. Duggan
Joseph H. Lemkin
**STARK & STARK**
**A Professional Corporation**
993 Lenox Drive
Lawrenceville, NJ 08648
(609) 219-7458 (direct)

(609) 896-9060 (main)
(609) 895-7395 (facsimile)

Attorneys for Levin Management
Corporation, as Agent for Ikea Properties,
Inc.

# EXHIBIT A

Account Number: 7G002  
Location: Paramus, NJ

**Sports Authority**  
**Pre-Petition**  
**Statement of Account**

March 16, 2016

A. MINIMUM RENT

| | | |
|---|---:|---:|
| February 1, 2016 | 141,666.66 | |
| March 1, 2016 | 141,666.66 | |
| | | 283,333.32 |

B. COMMON AREA MAINTENANCE (monthly w/year end settle-up)

| | | |
|---|---:|---:|
| February 1, 2016 | 5,330.42 | |
| 2015 Year End Reconciliation | 11,373.90 | |
| January & February 2016 Escrow Adjustment | 1,895.65 | |
| March 1, 2016 | 6,278.24 | |
| | | 24,878.21 |

C. REAL ESTATE TAXES (monthly w/ year end settle-up)

| | | |
|---|---:|---:|
| January 1, 2016-Payment Received | (69.57) | |
| February 1, 2016 | 19,173.43 | |
| 2015 Year End Reconciliation | (834.91) | |
| March 1, 2016 | 19,173.43 | |
| | | 37,442.38 |

**Total Amount Due**                                                       **345,653.91**