**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Sports Authority Holdings, Inc., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors. | Jointly Administered |
| | **Objection Deadline:  April 26, 2016  at 4:00 p.m.** |
| | **Hearing Date:  May 25, 2016  at 11:30 a.m.** |

**MOTION OF AMY MARY RENFROE AND ROGER DENNIS RENFROE**
**FOR RELIEF FROM AUTOMATIC STAY**

Amy Mary Renfroe and Roger Dennis Renfroe (the "Movants") hereby request entry of an order modifying the automatic stay of 11 U.S.C. § 362(a) to allow them to liquidate their claims against the above captioned debtors, including in particular, TSA Stores, Inc. (the "Debtor"), in the Civil Action (defined below) and pursue recovery from insurance policies and proceeds.  In support thereof, the Movants state:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for relief requested herein are 362(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of their respective federal tax identification numbers, are:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado, 80110.

## BACKGROUND

3.      On June 13, 2013, Movant **Amy Mary Renfroe** slipped and fell on Debtor's premises injuring her foot.  The Movant suffered bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, inconvenience, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition.

4.      On September 20, 2013, the Movants commenced a civil action against the Debtor by filing a complaint in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "Civil Action").  The Civil Action is presently pending as Case No. 13-030196-CA-01.  On January 19, 2016, the Movants filed their Second Amended Complaint in the Civil Action.  Attached to this motion as **Exhibit "A"** is a copy of the Movants' Second Amended Complaint (the "Complaint"), incorporated by reference herein.

5.      Upon information and belief, the Debtor owns certain liability insurance policies which would provide coverage against the claim that the Movants allege in the Civil Action (the "Insurance Policies").  The available proceeds from the Insurance Policies may cover an award that the Movants receive in connection with their claims asserted in the Civil Action.

6.      On March 2, 2016, the Debtor and certain of its affiliates commenced the above-captioned jointly administered bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby subjecting the Civil Action to an automatic stay.

## RELIEF REQUESTED

7.      The Movants request relief from the automatic stay of 11 U.S.C. § 362(a), so that they may liquidate their claims against the Debtor in the Civil Action and pursue a recovery against the Insurance Proceeds.

## APPLICABLE AUTHORITY

8.  Section 362(d)(1) of the Bankruptcy Code provides:

> (d)  On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay …
>
> (1)  for cause, including the lack of adequate protection of an interest in property of such party in interest.

9.  "Generally, in the determination of 'cause,' section 362(g) is interpreted as placing an initial burden on the moving party to establish its prima facie case which must then be rebutted by the party opposing such relief." Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 577 (Bankr. D. Del. 1992).

10. As this Court has explained,

> The legislative history indicates that cause may be established by a single factor such as "a desire to permit an action to proceed in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case."
>
> The legislative history to section 362(d)(1) emphasizes the section's applicability to proceedings in another tribunal. "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere."

Rexene Prods., 141 B.R. at 576 (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977)).

11. Courts conduct a "fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." In re The SCO Group, Inc., 395 B.R. 852, 857-58 (Bankr. D. Del. 2007). This Court has considered three factors when balancing the competing interests of debtor and movant:

      a.     The prejudice to either the bankruptcy estate or the debtor that would result should the stay be lifted;

      b.     Any hardships facing the movant and debtor should the stay be maintained; and

      c.     The movant's probability of success if the stay is lifted.

Santa Fe Minerals v. BEPCO. L.P. (In re 15375 Memorial Corp.), 382 B.R. 652, 686 (Bankr. D. Del. 2008) (citing In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993)); Rexene Prods., 141 B.R. at 576, rev'd on other grounds, 400 B.R. 420 (D. Del. 2009).

## ANALYSIS

**A.**    **No prejudice to the estates or the Debtors would result from granting relief from the stay.**

    12.    As mentioned above, upon information and belief, the Insurance Proceeds should cover any award that the Movants may receive in connection with their claims asserted in the Civil Action.

    13.    A bankruptcy estate is generally not considered to have an interest in proceeds of liability insurance policies. See, e.g., 15375 Memorial, 382 B.R. at 687 ("[U]nder the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.") (quoting Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51, 55-56 (5th Cir. 1993)); Landry v. Exxon Pipeline Co., 260 B.R. 769, 786 (Bankr. M.D. La. 2001) ("[W]hen the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate. . . . In the liability insurance context the debtor has no cognizable claim to the proceeds paid by an insurer on account of a covered claim."). See also In re Downey Fin. Corp., 428 B.R. 595, 608 (Bankr. D. Del. 2010) (holding that proceeds of a D&O liability policy payable directly to directors and officers were not estate property).

14.     Due to the estate's lack of interest in liability policy proceeds, courts typically hold that debtors do not suffer prejudice when creditors obtain stay relief to liquidate claims that are covered by such proceeds.  See, e.g., In re Fernstrom Storage and Van Co., 938 F.2d 731, 734 (7th Cir. 1991) ("Debtors-defendants suffer little prejudice when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve as a predicate for a recovery against insurers, sureties, or guarantors."); In re Jet Florida Systems. Inc., 883 F.2d 970, 975 (11th Cir. 1989) (Allowing stay relief and finding, "The debtor is not prejudiced by exposure to the liability claim because the Debtor and his property are not subject to any risk and maintenance of the suit does not frustrate the policy of the Bankruptcy Code in giving the Debtor a fresh start in his economic life."); Downey, 428 B.R. at 609 ("It is difficult to see how lifting the stay in this case would result in any great prejudice to the Debtor.  Even if the Debtor's interest in the Policy proceeds is not sufficiently speculative and remote to bring the proceeds outside of the bankruptcy estate, the Debtor's interest is almost certainly not strong enough that it would suffer 'great prejudice' from a lifting of the stay."); 15375 Memorial, 382 B.R. at 690 (Granting stay relief and explaining, "Because the policy proceeds will be available only to creditors with the type of claims covered by the policy, there is no depletion of assets that would otherwise be available to satisfy general, unsecured claims, and there is therefore no reason to delay the creditor seeking to recover under the policy.'') (quoting 3 Collier on Bankruptcy, ¶362.07[3][a]).

15.     Importantly, any award that the Movants may receive is very likely to be covered in full by the Insurance Policies and Insurance Proceeds. Under no circumstances would the Insurance Proceeds ever become part of the Debtors' bankruptcy estates.  Therefore, the estates

would not be in any practical danger of suffering depletion if the Movants were to obtain their requested relief.

16.    Moreover, as the primary parties in interest in the Civil Action, the Debtors' insurers would be highly motivated to provide a vigorous defense. The Debtors would not need to expend their resources in that regard.

17.    In effect, all that the Movants seek is an adjudication of liability that can serve as a predicate for recovery from the insurers.  They respectfully submit that no prejudice to the estates - much less the "great prejudice" that the standard requires - would result.

**B.    The hardship to the Movants by maintaining the stay considerably outweighs any hardship to the Debtors**.

18.    As explained above, the Debtors would not suffer any hardship if the Movants were granted their requested relief.  On the other hand, the Movants would suffer great hardship if they were denied relief from the stay.

19.    The Movant Amy Mary Renfroe suffered painful and serious injuries for which she has not been compensated.  Further, Movants are without adequate resources to cope with their damages while they wait for due compensation.  Additional delay compounds the already significant hardship that the Movants have suffered.

20.    As this court explained in granting stay relief in 15375 Memorial, a claimant under a liability policy will suffer prejudice from delay due to the "lost time value of money," as well as "the lapse of time in terms of its ability to effectively prosecute its claims.  Witnesses and documents become unavailable."  15375 Memorial, 382 B.R. at 690.

21.    In addition, there is a great logistical burden to Movants if relief from the stay is denied.  "The claim against the Debtors would certainly have to be resolved prior to confirmation […] through a claims estimation proceeding," forcing the Movants to litigate in Delaware.

6

Rexene Products, 141 B.R. at 577.  The Movants are residents of Florida, the conduct that is the subject of the Civil Action occurred in Florida, and the Movants' personal injury counsel is located in Florida. Documents, witnesses, the scene of the accident, and physical items involved in the accident are all located in Florida.  Just as in Rexene Products, "[t]he added expense of transporting the lawsuit to Delaware is unnecessary," and would be a waste of resources. Rexene Products, 141 B.R. at 577.  In Rexene Products, this Court granted relief from the stay.

22.    Further, the Movants have been investing their resources for years, prosecuting the Civil Action in Florida. This Court in Rexene Products noted this factor also in its "hardship" analysis. The court stated,

> In addition to the geographic burden, there is the risk of duplicative litigation. Conceivably, a full trial on the merits would follow a claims estimation proceeding . . . . One of the primary purposes in granting relief from the stay to permit claim liquidation is to economize judicial resources....

> The risk of unnecessary, duplicative litigation is great . . . . The duplicative litigation is burdensome both to Movants and the courts involved. Judicial economy dictates a prompt resolution in a single forum and with the same judge who was originally assigned to the case. This Court is of the opinion that to begin this litigation anew in this bankruptcy court would result in more of a hardship to the Movant and would certainly result in a waste of judicial resources."

23.    Finally, the Movants note that pursuant to 28 U.S.C. § 157(b)(5), this Court cannot try the Civil Action. Pursuant to section 157(b)(5), the personal injury claims set forth in the Civil Action may only be tried before either the District Court in Florida or the District Court in Delaware. Consequently, the Debtors do not have as strong an interest as a bankruptcy debtor ordinarily would in moving a given piece of litigation to the "home" bankruptcy court.

24.    The Movants' hardships enumerated above are great.  Movants have suffered severe injury and significant financial damages related to Ms. Renfroe's injuries.  Any additional delay to a resolution of their claim would be tremendously harmful.  In contrast, the Debtors will

face virtually no hardship if the Movants were granted their requested relief.  No estate assets would be jeopardized, and the Debtors would not have to expend any funds or commit any significant resources to defend the Civil Action.

25.    The Movants respectfully submit that the hardship that they would suffer if the stay remains in effect considerably outweighs any hardship to the Debtors with respect to his requested relief.

**C.    <u>The Movants are likely to prevail on the merits.</u>**

26.    With respect to this prong of the analysis, courts hold that "[t]he required showing is very slight." <u>Id</u>. at 578. <u>See also</u> <u>Downey Financial</u>, 428 B.R. at 610 ("Even a slight probability of success on the merits may be sufficient to warrant stay relief in an appropriate case.") (quoting <u>In re The SCO Group. Inc.</u>, 395 B.R. 852, 859 (Bankr. D. Del. 2007)); <u>15375 Memorial</u>, 382 B.R. at 691 (same) (quoting <u>Continental Airlines</u>, 152 B.R. at 426). In addition, "[o]nly strong defenses to state court proceedings can prevent a bankruptcy court from granting relief from the stay in cases where […] the decision-making process should be relegated to bodies other than [the bankruptcy] court." <u>In re Fonseca v. Philadelphia Housing Authority</u>, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990).

27.    No strong defenses to the Civil Action are apparent, here, and there is a strong likelihood that the Movants will succeed on the merits given that Ms. Renfroe was a customer on the Debtors' premises when she was injured due to a slip and fall.  There clearly exist triable issues of fact in the Civil Action. <u>See</u> <u>In re Fernstrom Storage and Van Co.</u>, 938 F.2d 731, 736 (7th Cir. 1991) (automatic stay lifted upon finding the underlying action non-frivolous).

28.    This already low bar of this third prong is even lower where, as here, a movant's claim would be covered by non-debtor sources.  In <u>15375 Memorial</u>, this Court stated that under

such circumstances, a bankruptcy court should not examine the merits of the movant's claims. Rather, "all that is required is that the movant make more than a 'vague initial showing' that he can establish a *prima facie* case. In a case, such as this one where the claimant seeks only to liquidate its claims as a predicate to recovering against insurance and other non-debtor sources, to require a merits analysis would defeat the objective of economizing judicial resources and would frustrate the effort to resolve relief from stay motions expeditiously." 15375 Memorial, 382 B.R. at 691 (quoting and citing Peterson v. Cundy (In re Peterson), 116 B.R. 247, 250 (D. Colo. 1990).

29.     Here, the Movants have certainly alleged colorable and plausible claims, and respectfully submit that they have met this prong of the stay relief analysis.

ACTIVE 39844278v1 04/12/2016

## CONCLUSION

WHEREFORE, the Movants respectfully request entry of an order, in substantially the form attached: (1) granting them relief from the automatic stay of 11 U.S.C. §362(a) so that they may proceed to liquidate their claims against the Debtors in the Civil Action and pursue a recovery against the Insurance Proceeds for any judgment or other resolution obtained against the Debtors; and (2) granting such further relief as may be appropriate.


Dated: April 12, 2016                    FOX ROTHSCHILD LLP
      Wilmington, Delaware

                                                      */s/ L. John Bird*
                                                      Carl D. Neff (No. 4895)
                                                      L. John Bird (No. 5310)
                                                      Citizens Bank Center
                                                      919 North Market Street, Suite 1600
                                                      Wilmington Delaware 19801
                                                      Telephone: (302) 654-7444
                                                      cneff@foxrothschild.com
                                                      lbird@foxrothschild.com

                                                      *Counsel to Amy Mary Renfroe and Roger Dennis Renfroe*

ACTIVE 39844278v1 04/12/2016