## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*, | Case No. 16-10527 (MFW) |
| Debtors. | Jointly Administered |
| | **Ref. Docket Nos. 106 & 1181** |

**ORDER (A) APPROVING BID PROCEDURES IN CONNECTION WITH (I) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND (II) THE TRANSFER, ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY, (B) SCHEDULING SEPARATE AUCTIONS FOR AND HEARINGS TO APPROVE THE SALE OF ASSETS AND UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY SUBJECT TO THE DEBTORS' STORE CLOSING PLAN, (C) APPROVING NOTICE OF RESPECTIVE DATE, TIME AND PLACE FOR AUCTIONS AND FOR HEARINGS ON APPROVAL OF RESPECTIVE SALES, (D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALES, (E) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (F) GRANTING RELATED RELIEF**

Upon the *Debtors' Motion, Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, Fed. R. Bankr. P. 2002, 6003, 6004, 6006, 9007, 9008 and 9014 and Del. Bankr. L.R. 2002-1, 6004-1 and 9006-1, for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction for and Hearing to Approve Sale of Assets, (C) Approving Notice of Respective Date, Time and Place for Auction and for Hearing on Approval of Sale, (D) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (E) Approving Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II) an Order Authorizing and Approving (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, (B) the Assumption and*

01:18574380.1

*Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Related Relief* (the

"Motion")[1] for entry of an order authorizing or approving, among other things and as modified

herein:

    (a)    the bid procedures (in the form attached hereto as Exhibit 1, the "Main Auction Bid Procedures") in connection with the sale or disposition (the "Main Sale") of substantially all of the Debtors' assets (as described further in the Main Auction Bid Procedures, the "Main Auction Assets," which, for the avoidance of doubt, are inclusive of the Closing Store Leases (as defined below));

    (b)    the bid procedures (in the form attached hereto as Exhibit 2, the "Closing Store Lease Bid Procedures," and together with the Main Auction Bid Procedures, the "Bid Procedures") in connection with the sale or disposition (the "Closing Store Lease Sale," and together with the Main Sale, the "Sales") of the Debtors' unexpired nonresidential real property leases that are or will be the subject of the *Debtors' Emergency Motion for Interim and Final Orders (A) Authorizing the Debtors to Assume the Closing Store Agreement, (B) Authorizing and Approving Store Closing Sales Free and Clear of All Liens, Claims and Encumbrances, (C) Authorizing the Implementation of Customary Employee Bonus Program and Payments to Non- Insiders Thereunder, (D) Approving Dispute Resolution Procedures, and (E) Approving the Debtors' Store Closing Plan* (the leases for such stores and distribution centers, collectively, the "Closing Store Leases," a listing of which is attached hereto as Exhibit 3);

    (c)    the notice of the Auctions and Sales and hearings thereon (in the form attached hereto as Exhibit 4, the "Notice of Auctions and Sale Hearings");

    (d)    the procedures (the "Assignment Procedures"), as set forth below, for the assumption and assignment of certain of the Debtors' executory contracts or unexpired leases (collectively, the "Contracts," which, for the avoidance of doubt, include the Closing Store Leases); and

    (e)    the notice of the potential assumption and assignment of the Contracts (in the form attached hereto as Exhibit 5, the "Potential Assumption and Assignment Notice");

and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§

1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District

---

[1]    Capitalized terms used but not otherwise defined herein are to be given the meanings ascribed to them in the Motion, Main Auction Bid Procedures or the Closing Store Lease Bid Procedures, as applicable.

Court for the District of Delaware dated as of February 29, 2012; and the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given except as set forth herein with respect to the Auctions (defined below), the Sale Hearings (as defined in paragraph 19 below) and the potential assumption and assignment of the Contracts; and a reasonable opportunity to object to or be heard regarding the relief provided herein has been afforded to parties-in-interest pursuant to Bankruptcy Rule 6004(a); and the Court having considered the First Day Declaration; and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found that the relief sought in the Motion, as modified herein, is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and the Court having found that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[2]

      A.      The Main Auction Bid Procedures attached hereto as <u>Exhibit 1</u> and the Closing Store Lease Bid Procedures attached hereto as <u>Exhibit 2</u>, are fair, reasonable and appropriate, and are designed to maximize the value to be realized from the Sales.

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

01:18574380.1

B.      The Motion complies with the requirements of Local Rule 6004-1(c).

C.      The Assignment Procedures provided for herein are fair, reasonable, appropriate and consistent with the provisions of section 365 of the Bankruptcy Code.

D.      The Debtors have articulated good and sufficient business reasons for this Court to approve (i) the Bid Procedures, including the scheduling of bid deadlines, auctions and sale hearings with respect to the proposed Sales; and (ii) the establishment of procedures to assume and assign the Contracts and fix the Cure Costs (as defined below) to be potentially paid pursuant to section 365 of the Bankruptcy Code.

E.      The Notice of Auctions and Sale Hearings, and the Debtors' proposed publication of the Notice of Auctions and Sale Hearings, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auctions, the Sales, the Bid Procedures and the Assignment Procedures to be employed in connection therewith, including, without limitation: (i) the date, time and place of the Auctions (if one or more are held); (ii) the Bid Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the Sales and the date, time and place of the Sale Hearings; (iv) reasonably specific identification of the Main Auction Assets and the Closing Store Leases; and (v) representations describing the Sales as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the proceeds of the Sales; and no other or further notice of the Sales shall be required.

F.      The Potential Assumption and Assignment Notice is appropriate and reasonably calculated to provide each non-debtor party to any Contracts (such parties, collectively, the "Non-Debtor Counterparties") with proper notice of the Assignment Procedures.  The inclusion of any Contract on a Potential Assumption and Assignment Notice does not constitute an

admission that a particular Contract is an executory contract or unexpired lease of property or require or guarantee that such Contracts will be assumed and assigned and all rights of the Debtors with respect thereto are reserved.

G.      No further notice beyond that described in the foregoing paragraphs is required in connection with the Sales.

H.      The entry of this order (this "Bid Procedures Order") is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth herein and on the record at the April 14, 2016 hearing.

2.      All objections to the Motion or the relief provided herein, as they pertain to the entry of this Bid Procedures Order, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

### The Bid Procedures

3.      The Bid Procedures are incorporated herein and approved, and shall apply with respect to the respective Sales.  The Debtors are authorized to take all actions reasonable and necessary or appropriate to implement the Bid Procedures.

4.      The Debtors are authorized to conduct the Bidding Process in accordance with the respective Bid Procedures and the terms hereof, and without the necessity of complying with any state or local bulk transfer laws or requirements applicable to the Debtors.

5.      Potential Bidders, landlords bidding on the leases to which they are a party (collectively, the "Landlords"), and Qualified Bidders (other than any Stalking Horse Bidder), shall not be allowed any break-up, termination or similar fee with respect to the Main Auction

Assets or the Closing Store Leases. Moreover, all Potential Bidders, Qualified Bidders, and any Stalking Horse Bidder (excluding any Bid Protections approved by the Court) waive any right to seek a claim for substantial contribution pursuant to section 503 of the Bankruptcy Code or the payment of any broker fees or costs.

## **Assignment Procedures**

6.      The following Assignment Procedures shall govern the assumption and assignment of the Contracts in connection with the Sales, and any objections related thereto:

Cure Notice and Cure Objections

  a.   No later than one business day after entry of this Bid Procedures Order, the Debtors shall file with this Court and serve on each Non-Debtor Counterparty to each of the Contracts the Potential Assumption and Assignment Notice. In the event that the Debtors identify any Non-Debtor Counterparties which were not served with the Potential Assumption and Assignment Notice, the Debtors may subsequently serve such Non-Debtor Counterparty with a Potential Assumption and Assignment Notice, and the following procedures will nevertheless apply to such Non-Debtor Counterparty; provided, however, that the Cure Cost Objection Deadline (defined below) with respect to such Non-Debtor Counterparty shall be 4:00 p.m. (prevailing Eastern Time) on the date that is the later of April 29, 2016, or fourteen (14) days following filing and service of such supplemental Potential Assumption and Assignment Notice.

  b.   The Potential Assumption and Assignment Notice served on each Non-Debtor Counterparty shall (i) identify each Contract (listed in alphabetical order by Non-Debtor Counterparty); (ii) list the proposed calculation of the cure amounts that the Debtors believe must be paid to cure all defaults outstanding under the Contract as of such date (the "Cure Costs") and, with respect to Contracts that are unexpired leases of nonresidential real property, provide a further breakdown of (a) rent-related Cure Costs (including CAM and real estate taxes) on an aggregate basis, and (b) non-rent related Cure Costs on an aggregate basis; (iii) include a statement that assumption and assignment of such Contract is not required or guaranteed; and (iv) inform such Non-Debtor Counterparty of the requirement to file any Cure Cost Objections (defined below) by the Cure Cost Objection Deadline (defined below). Service of a Potential Assumption and Assignment Notice does not constitute an admission that a particular Contract is an executory contract or unexpired lease of property, or confirm that the Debtors are required to assume and/or assign such Contract.

  c.   Objections (a "Cure Cost Objection"), if any, to the scheduled Cure Costs must (x) be in writing; (y) state with specificity the nature of such objection, including

the amount of Cure Costs in dispute; and (z) be filed with this Court and properly served on the Notice Parties (as defined below) **so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on April 29, 2016** (the "Cure Cost Objection Deadline"), subject to the proviso in subparagraph (a) above.

d.  Any Non-Debtor Counterparty to a Contract who fails to timely file and properly serve a Cure Cost Objection as provided herein will be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtors and the Debtors and potential buyers shall be entitled to rely solely upon the Cure Costs.

e.  If a Non-Debtor Counterparty files a Cure Cost Objection satisfying the requirements of these Assignment Procedures, the Debtors and the Non-Debtor Counterparty shall informally confer in good faith to attempt to resolve any such objection without Court intervention. If the applicable parties determine that the objection cannot be resolved without judicial intervention in a timely manner, the Court shall make all necessary determinations relating to such Cure Cost Objection at the appropriate time, provided, however, that (i) any Contract that is the subject of a Cure Cost Objection may be assumed and assigned prior to resolution of such objection, and (ii) the Debtors, in consultation with the Consultation Parties, may adjourn the hearing with respect to any Cure Cost Objection in their discretion; provided further that, pending the resolution of any Cure Cost Objection, the Debtors shall hold, in a segregated account, cash proceeds realized from the assignment of the applicable Contract equal to 100% of the disputed amount of any such Cure Costs for applicable Contracts.

Main Sale Assignment Procedures

a.  The Stalking Horse Bid Deadline (defined below) is **April 28, 2016, at 5:00 p.m. (prevailing Eastern Time)**, and the Main Auction Bid Deadline (defined below) is **May 11, 2016 at 5:00 p.m. (prevailing Eastern Time)**.

b.  Within one business day following the Stalking Horse Bid Deadline and the Main Auction Bid Deadline, respectively, the Debtors will deliver to each affected Non-Debtor Counterparty that is a landlord the Adequate Assurance Information (as defined in the Main Auction Bid Procedures) related solely to any Bids received for such landlord's applicable unexpired lease of nonresidential real property; provided, however, that each Non-Debtor Counterparty receiving Adequate Assurance Information shall keep such Adequate Assurance Information confidential, and shall be restricted from using or disclosing such information to any third party other than in connection with a Stalking Horse Assignment Objection or Main Auction Assignment Objection (each as applicable and as defined below), and in the event that such Non-Debtor Counterparty files any such Stalking Horse Assignment Objection or Main Auction Assignment Objection, it shall file any portion of such pleading containing any Adequate Assurance Information under seal (without the need to file a motion seeking

authority to file under seal).  Delivery of the Adequate Assurance Information shall be made to Non-Debtor Counterparties that are landlords via e-mail to counsel for such Non-Debtor Counterparty (if such counsel and e-mail address have been previously identified to the Debtors by the Non-Debtor Counterparty or via the filing of a notice of appearance) or otherwise via overnight mail to the address of record for the Non-Debtor Counterparty.

c.    Objections (a "Stalking Horse Assignment Objection"), if any, to the proposed assumption, assignment and/or transfer of any Contract to any Stalking Horse Bidder (including the identity of and adequate assurance of future performance provided by any Stalking Horse Bidder), must (x) be in writing; (y) state with specificity the nature of such objection; and (z) be filed with this Court and properly served on the Notice Parties (as defined below) **so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on May 13, 2016** (the "Stalking Horse Assignment Objection Deadline").

d.    Objections (a "Main Auction Assignment Objection"), if any, to the proposed assumption, assignment and/or transfer of any Contract to any Successful Bidder or Next-Highest Bidder at the Main Auction (including the identity of and adequate assurance of future performance provided by such Successful Bidder or Next-Highest Bidder), including any supplemental objection to a Stalking Horse Bidder (initial objections to any Stalking Horse Bidder must be filed by May 13, 2016 at 4:00 p.m. (ET)) must (x) be in writing; (y) state with specificity the nature of such objection; and (z) be filed with this Court and properly served on the Notice Parties so as to be received **no later than 4:00 p.m. (prevailing Eastern Time) on May 20, 2016.**

e.    Any Non-Debtor Counterparty to a Contract who fails to timely file and properly serve a Stalking Horse Assignment Objection or a Main Auction Assignment Objection as provided herein will be deemed to have consented to the assumption, assignment and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the Stalking Horse Bidder or relevant Successful Bidder (as applicable) and shall be forever barred and estopped from asserting or claiming against the Debtors, the Stalking Horse Bidder or the relevant Successful Bidder (as applicable) that the conditions to assumption, assignment, and/or transfer have not been satisfied under such Contract, or that any related right or benefit under such Contract cannot or will not be available to the Stalking Horse Bidder or relevant Successful Bidder (as applicable).

f.    Consideration of unresolved Stalking Horse Assignment Objections or Main Auction Assignment Objections, if any, will be held at the Main Auction Sale Hearing, except insofar as such objections relate solely to a Cure Cost dispute, in which case such objections may be adjourned in the Debtors' discretion.

Closing Store Sale Assignment Procedures

    a.  The Closing Store Lease Bid Deadline (defined below) is **April 28, 2016 at 5:00 p.m. (prevailing Eastern Time)**.

    b.  Within one business day following the Closing Store Lease Bid Deadline, the Debtors will deliver to each affected Non-Debtor Counterparty the Adequate Assurance Information (as defined in the respective Bid Procedures) related solely to any Bids received for the Non-Debtor Counterparty's applicable Contract; provided, however, that each Non-Debtor Counterparty shall keep such Adequate Assurance Information confidential, and shall be restricted from using or disclosing such information to any third party other than in connection with a Closing Store Assignment Objection (as defined below), and in the event that such Non-Debtor Counterparty files any such Closing Store Assignment Objection, it shall file any portion of such pleading containing any Adequate Assurance Information under seal.  Delivery of the Adequate Assurance Information shall be made via e-mail to counsel for such Non-Debtor Counterparty (if such counsel and e-mail address have been previously identified to the Debtors by the Non-Debtor Counterparty or via the filing of a notice of appearance) or otherwise via overnight mail to the address of record for the Non-Debtor Counterparty.

    c.  Objections (a "Closing Store Assignment Objection"), if any, to the proposed assumption, assignment and/or transfer of such Contract to any Successful Bidder in the Closing Store Lease Auction (including the identity of and adequate assurance of future performance provided by such Successful Bidder) must (x) be in writing; (y) state with specificity the nature of such objection; and (z) be filed with this Court and properly served on the Notice Parties (as defined below) **so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on May 13, 2016**.

    d.  Any Non-Debtor Counterparty to a Contract who fails to timely file and properly serve a Closing Store Assignment Objection as provided herein will be deemed to have consented to the assumption, assignment and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the relevant Successful Bidder and shall be forever barred and estopped from asserting or claiming against the Debtors or the relevant Successful Bidder that the conditions to assumption, assignment, and/or transfer have not been satisfied under such Contract, or that any related right or benefit under such Contract cannot or will not be available to the relevant Successful Bidder.

    e.  Consideration of unresolved Closing Store Assignment Objections, if any, will be held at the Closing Store Lease Sale Hearing, except insofar as such objections relate solely to a Cure Cost dispute, in which case such objections may be adjourned in the Debtors' discretion.

General Provisions Governing Contract Assignment

    a. A timely filed and properly served Cure Cost Objection, Stalking Horse Assignment Objection, Main Auction Assignment Objection or Closing Store Assignment Objection will reserve the filing Non-Debtor Counterparty's rights relating to the Contract, but will not be deemed to constitute an objection to the relief generally requested in the Motion with respect to the approval of the Sales.

    b. The Debtors' assumption and/or assignment of a Contract is subject to approval by the Court, consummation of the Sales and receipt of a Confirmation Notice (as defined below). Absent consummation of the Sales, receipt of a Confirmation Notice and entry of a Sale Order approving the assumption and/or assignment of the Contracts, the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

    c. Within two (2) business days following the assumption and assignment of any Contract to the relevant Successful Bidder, the Debtors shall file with the Court and shall serve each Non-Debtor Counterparty whose Contract the Debtors assumed and/or assigned with a notice of assumption and assignment of such Contract (the "Confirmation Notice"). Any Contract for which no Confirmation Notice was served shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

    d. The Debtors' decision to assume and assign the Contracts to the relevant Successful Bidder is subject to the Court's approval and the closing of the Sales. Accordingly, absent the Court's approval and the closing of the Sales, the Contracts shall not be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these Chapter 11 Cases.

## Notice Procedures

7.     Service and publication of the Notice of Auctions and Sale Hearings are sufficient to provide effective notice to all interested parties of, *inter alia*, the Bid Procedures, the Auctions, the Sale Hearings, the Sales and the Assignment Procedures in accordance with Bankruptcy Rules 2002 and 6004, as applicable, and are approved.

8.     On or before two (2) business days after entry of this Bid Procedures Order, the Debtors will cause the Notice of Auctions and Sale Hearings to be sent by first-class mail postage prepaid, to the following: (a) the Office of the United States Trustee for the District of

01:18574380.1

Delaware; (b) Pachulski Stang Ziehl & Jones LLP, as proposed counsel for the Official Committee of Unsecured Creditors (the "Committee"); (c) Riemer & Braunstein LLP as counsel for Bank of America, N.A., in its capacity as Administrative Agent and Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012; (d) Brown Rudnick LLP as counsel for (A) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (B) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (e) Choate, Hall & Stewart LLP as counsel for Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015; (f) O'Melveny & Meyers LLP as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (g) all holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (h) counsel to the DIP Agent under the proposed Debtor-in-Possession Credit Agreement; (i) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (j) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (k) all persons known or reasonably believed to have asserted an interest in any of the Assets; (l) the Non-Debtor Counterparties to the Contracts; (m) the Attorneys General in the State(s) where the Assets are located; (n) the Environmental Protection Agency; (o) all state and local environmental agencies in any jurisdiction where the Debtors own or have owned or used real property; and (p) all other known creditors of the Debtors.

9.      In addition to the foregoing, on or before five (5) business days after entry of this Bid Procedures Order, the Debtors shall, subject to applicable submission deadlines, publish the Notice of Auctions and Sale Hearings once in the national edition of *The New York Times*, and post the Notice of Auctions and Sale Hearings and the Bid Procedures Order on the website of the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC.

10.      Promptly following the conclusion of the Auctions (but in any event no later than 24 hours following the conclusion of the Auctions), the Debtors shall file a notice on the Court's docket identifying the Successful Bidder(s) for the Main Auction Assets (or subset thereof) and Closing Store Leases, and any applicable Next-Highest Bidder(s).  In the event that the Sale to the Successful Bidder(s) does not close by the Closing Date with respect the Main Auction Assets, the Debtors shall promptly file a notice on the Court's docket stating that the Debtors intend to proceed to closing for the Main Auction Assets with the Next-Highest Bidder(s).

11.      The Potential Assumption and Assignment Notice, and the other Assignment Procedures set forth herein, are sufficient to provide effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c) to the Non-Debtor Counterparties to the Contracts of the Debtors' intent to potentially assume and assign some or all of the Contracts and are approved.

### Auctions, Objection Deadlines and Sale Hearings

12.      **Stalking Horse Bid Deadline**.  As further described in the Main Auction Bidding Procedures, the deadline by which all Stalking Horse Bids must be actually received by the Debtors is April 28, 2016 at 5:00 p.m. (prevailing Eastern Time) (the "Stalking Horse Bid Deadline").

13.      **Main Auction Bid Deadline**.  As further described in the Main Auction Bid Procedures, the deadline for submitting Bids related to the Main Auction Assets (which, for the

avoidance of doubt, may include, as a subset of such bid, one or more of the Closing Store Leases) must be delivered by no later than May 11, 2016 at 5:00 p.m. (prevailing Eastern Time) (the "Main Auction Bid Deadline"). Notwithstanding anything to the contrary herein and in the Main Auction Bid Procedures, the Debtors shall consider Bids submitted by Landlords for the Landlords' own respective Leases at the Main Auction (as defined below).

14.    **Closing Store Lease Bid Deadline**. As further described in the Closing Store Lease Bid Procedures, the deadline for submitting Bids related solely to Closing Store Leases must be delivered by no later than April 28, 2016 at 5:00 p.m. (prevailing Eastern Time) (the "Closing Store Lease Bid Deadline").

15.    **Main Auction**. The Debtors may sell the Main Auction Assets by conducting an Auction in accordance with the Main Auction Bid Procedures (the "Main Auction"). If at least two Qualified Bids (or one Qualified Bid if there is also a Stalking Horse Bid) are received by the Main Auction Bid Deadline with regard to any particular Main Auction Assets, the Debtors will conduct the Main Auction in accordance with the Main Auction Bid Procedures, which Main Auction shall commence on May 16, 2016 at 10:00 a.m. (prevailing Eastern Time) at the offices of counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, or such later time or such other place as the Debtors shall designate and notify to all Qualified Bidders (as defined in the Main Auction Bid Procedures) that have submitted Qualified Bids. If the Debtors receive only a Stalking Horse Bid or one Qualified Bid with regard to any particular Main Auction Assets (or all of the Main Auction Assets), (a) the Debtors shall not hold a Main Auction with respect to such Main Auction Assets; (b) the Stalking Horse Bid or the Qualified Bid, as applicable, will be deemed the Successful Bid with respect to such Main Auction Assets; and (c) the Stalking Horse Bidder or the Qualified

Bidder, as applicable, will be named the Successful Bidder with respect to such Main Auction Assets.

16.    **Closing Store Lease Auction**.  The Debtors may sell the Closing Store Leases by conducting an Auction in accordance with the Closing Store Lease Bid Procedures (the "Closing Store Lease Auction," and together with the Main Auction, the "Auctions").  If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Closing Store Lease(s), the Debtors will conduct the Closing Store Lease Auction in accordance with the Closing Store Lease Bid Procedures, which Closing Store Lease Auction shall commence on May 4, 2016 at 10:00 a.m. (prevailing Eastern Time) at the offices of counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, DE, 19801, or such later time or such other place as the Debtors shall designate and notify to all Qualified Bidders (as defined in the Closing Store Lease Bid Procedures) that have submitted Qualified Bids.  If the Debtors receive only one Qualified Bid with regard to any particular Closing Store Lease(s), (a) the Debtors shall not hold a Closing Store Lease Auction with respect to such Closing Store Lease(s); and (b) the Qualified Bid will be deemed the Successful Bid with respect to such Closing Store Lease(s).

17.    Each Qualified Bidder participating in the Closing Store Lease Auction will be required to confirm, in writing, that (a) it has not engaged in any collusion with respect to the applicable Bidding Process, (b) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder, and (c) the Qualified Bidder agrees to serve as a backup bidder if the Qualified Bidder's Qualified Bid is the next highest and best bid after the Successful Bid with respect to the relevant Main Auction Assets or Closing Store Lease(s).

18.    **Main Auction Sale Hearing**.  A telephonic status conference shall be held on May 18, 2016 at 10:00 a.m. (ET) with respect to the Main Sale.  The hearing with respect to the Main Sale solely as it pertains to the Successful Bidder (the "Main Auction Sale Hearing") shall be held before the Court on May 24, 2016 at 9:30 a.m. (prevailing Eastern Time) before the Honorable Mary F. Walrath, United States Bankruptcy Judge for the United States Bankruptcy Court for the District of Delaware, at 824 North Market Street, 5th Floor, Courtroom No. 4, Wilmington, Delaware 19801.  The Debtors shall file a form of order approving the Main Sale (the "Main Auction Sale Order") no later than May 6, 2016.  At the Main Auction Sale Hearing, the Debtors will seek the entry of the Main Auction Sale Order approving and authorizing the Main Sale to the Successful Bidder(s).  A subsequent hearing will be held, if necessary, on May 27, 2016 at 10:00 a.m. (ET) to consider approval of the Main Sale to the Next-Highest Bidder(s) in the event that the Successful Bidder(s) fails to close by the Closing Date (such hearing, the "Subsequent Main Sale Hearing").  The Main Auction Sale Hearing and/or the Subsequent Main Sale Hearing (or any portion thereof) may be adjourned by the Court or the Debtors from time to time without further notice other than by announcement in open court, on the Court's calendar or through the filing of a notice or other document on the Court's docket.

19.    **Closing Store Lease Sale Hearing**.  A telephonic status conference shall be held on May 10, 2016 at 1:00 p.m. (ET) with respect to the Closing Store Lease Sale.  The hearing with respect to the Closing Store Lease Sale (the "Closing Store Lease Sale Hearing," and collectively with the Main Auction Sale Hearing and the Subsequent Main Sale Hearing, the "Sale Hearings") shall be held before the Court on May 25, 2016 at 9:30 a.m. (prevailing Eastern Time) before the Honorable Mary F. Walrath, United States Bankruptcy Judge for the United States Bankruptcy Court for the District of Delaware, at 824 North Market Street, 5th Floor,

01:18574380.1

15

Courtroom No. 4, Wilmington, Delaware 19801. The Debtors shall file a form of order approving a Closing Store Lease Sale (the "Closing Store Lease Sale Order," and together with the Main Auction Sale Order, the "Sale Orders") no later than May 6, 2016. At the Closing Store Lease Sale Hearing, the Debtors will seek the entry of the Closing Store Lease Sale Order(s) approving and authorizing the Closing Store Lease Sales to the Successful Bidder(s). The Closing Store Sale Hearing to approve the Next-Highest Bid(s), if necessary, shall be held at a date and time to be scheduled, on notice to any interested parties. The Closing Store Lease Sale Hearing (or any portion thereof) may be adjourned by the Court or the Debtors from time to time without further notice other than by announcement in open court, on the Court's calendar or through the filing of a notice or other document on this Court's docket.

20.    **Main Auction Sale Objection Deadline**. The deadline to object to the relief requested in the Motion with respect to the Main Sale, including entry of the proposed Main Auction Sale Order (a "Main Auction Sale Objection"), is May 13, 2016 at 4:00 p.m. (prevailing Eastern Time) (the "Main Auction Sale Objection Deadline"). A Main Auction Sale Objection must be filed with the Court and served in the manner set forth below so as actually received no later than the Main Auction Sale Objection Deadline.

21.    **Closing Store Lease Sale Objection Deadline**. The deadline to object to a Closing Store Lease Sale, including entry of the proposed Closing Store Lease Sale Order and the conduct at the Closing Store Lease Auction (if held) (a "Closing Store Lease Sale Objection," and together with the Main Auction Sale Objections, the "Sale Objections") is May 13, 2016 at 4:00 p.m. (prevailing Eastern Time) (the "Closing Store Lease Sale Objection Deadline," and together with the Main Auction Sale Objection Deadline, the "Sale Objection Deadline"). A Closing Store Lease Sale Objection must be filed with the Court and served in the manner set

forth below so as actually received no later than the Closing Store Lease Sale Objection Deadline.

22.     **Post-Main Auction Objection Deadline**.  The deadline to object only to the conduct at the Main Auction (if held) and the adequate assurance of future performance provided by the successful bidder at such Main Auction (a "Post-Main Auction Objection") is May 20, 2016 at 4:00 p.m. prevailing Eastern Time (the "Post-Main Auction Objection Deadline").  A Post-Main Auction Objection must be filed with the Court and served in the manner set forth below so as actually received no later than the Post-Main Auction Objection Deadline.  For the avoidance of doubt, objections to the Main Auction on grounds other than those expressly set forth in this paragraph 22 shall be filed by the Main Auction Sale Objection Deadline, as provided in paragraph 20 hereof.

**Objection Procedures**

23.     Any party that seeks to object to approval of the Sales shall file a formal written objection that complies with the objection procedures as set forth herein.

24.     Objections, if any, must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with this Court and (vi) served on the following parties (collectively, the "Notice Parties"): (a) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. and Andrew L. Magaziner, Esq.), and Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, (Attn: Robert A. Klyman, Esq. and Matthew J. Williams, Esq.), counsel to the Debtors; (b) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th

Floor, Wilmington, DE 1980 (Attn: Bradford J. Sandler, Esq., Robert J. Feinstein, Esq., and Jeffery N. Pomerantz, Esq.) proposed counsel to the Committee; (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Hannah J. McCollum, Esq.); (d) Riemer & Braunstein LLP, Three Center Plaza, Boston, Massachusetts 02108 (Attn: Donald E. Rothman, Esq.) as counsel for Bank of America, N.A., in its capacity as (A) DIP Agent under the proposed Debtor-in-Possession Credit Agreement, and (B) Administrative Agent and Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012; (e) Brown Rudnick LLP, Seven Times Square, New York, NY 10036 (Attn: Robert J. Stark, Esq. and Bennett S. Silverberg, Esq.) as counsel for (A) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (B) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (f) Choate, Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110 (Attn: Kevin J. Simard, Esq.) as counsel for Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015; and (g) O'Melveny & Meyers LLP, 7 Times Square, Broadway, New York, NY 10036 (Attn: John J. Rapisardi, Esq.), as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006.

25.     Failure to file a Sale Objection on or before the applicable Sale Objection Deadline shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code.

01:18574380.1

**Other Relief Granted**

26.    This Bid Procedures Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code.

27.    Nothing herein shall be deemed to or constitute the assumption, assignment or rejection of any executory contract or unexpired lease.

28.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, the stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Bid Procedures Order shall be effective immediately and enforceable upon its entry.

29.    This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bid Procedures Order.


Dated:  Wilmington, Delaware
        April 14, 2016

                                    _____
                                    MARY F. WALRATH
                                    UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

**Main Auction Bid Procedures**

## BID PROCEDURES – MAIN AUCTION

Set forth below are the bid procedures (the "Bid Procedures") to be used with respect to the sale or disposition (the "Sale") of the Assets (as defined below) of Sports Authority Holdings, Inc., Slap Shot Holdings, Corp., The Sports Authority, Inc., TSA Stores, Inc., TSA Gift Card, Inc., TSA Ponce, Inc., and TSA Caribe, Inc. (collectively, the "Debtors").

**Additional information regarding the Assets can be obtained by contacting Bernard Douton (bernard.douton@rothschild.com, (212) 403-5254) and Mahir Quraishi (Mahir.Quraishi@Rothschild.com, (212) 403-3579) with Rothschild Inc., the Debtors' investment banker.**

## I.    Description of the Assets to be Sold

The Debtors are soliciting offers for the sale of all or substantially all of their assets, whether in a single or multiple transactions. Pursuant to these Bid Procedures, the Debtors are hereby inviting all parties with an interest in the Assets to submit bids upon such structure, terms and conditions as the Potential Bidder (defined below) may determine, subject in all respects to the Potential Bidder's compliance with the procedures outlined herein. The assets available for sale include, but are not limited to, store and distribution center level inventory, receivables, equipment, intellectual property, fixed assets, unexpired leases, contract rights, and other assets related or incident to the Debtors' business, namely selling sporting equipment and related apparel to retail customers in store, online and by catalog (but excluding causes of action arising under chapter 5 of the Bankruptcy Code (as defined below)) (collectively, the "Assets"). Any sale of the Assets shall be free and clear of all liens, claims and encumbrances thereon. For the avoidance of doubt, the Assets to be sold include the unexpired leases of all of the Debtors' store locations and distribution centers, including but not limited to the stores and distribution centers that are identified in Exhibit 3 to the Court's order approving these Bid Procedures (the leases for such stores and distribution centers, the "Closing Store Leases"), but will only include such Closing Store Leases to the extent included in a more comprehensive going concern or block bid for the Debtors' non-Closing Store Lease Assets. Bids that relate solely to the Debtors' Closing Store Leases shall be governed by the separate "Bidding Procedures – Closing Store Leases" (the "Closing Store Bidding Procedures") approved by the Bankruptcy Court (defined below) contemporaneously herewith.

The Sale of the Assets shall be subject to a competitive bidding process as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure, and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. The Debtors may consider bids for the Assets (or any portion thereof) in a single bid from a single bidder, or in multiple bids from multiple bidders.

## II.     Confidentiality Agreement

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must enter into (unless previously entered into), on or before the Bid Deadline (as defined below), an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (the "Confidentiality Agreement"). Each person or entity that enters into the Confidentiality Agreement with the Debtors on or before the Bid Deadline is hereinafter referred to as a "Potential Bidder."

After a Potential Bidder enters into the Confidentiality Agreement with the Debtors, the Debtors shall deliver or make available (unless previously delivered or made available) to each Potential Bidder certain designated information (including, if applicable, financial data) with respect to the Assets.

## III.     Determination by the Debtors

As appropriate throughout the Bidding Process, the Debtors will consult, subject to the proviso below, with (1) Bank of America, N.A., ("BofA") in its capacity as Administrative Agent and Collateral Agent (the "ABL Agent") under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012 (the "ABL Agreement"), (2) Wells Fargo Bank, National Association ("Wells Fargo"), in its capacity as FILO Agent (the "FILO Agent") under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015 (the "FILO Agreement"), (3) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 (the "Term Agent," and, together with the ABL Agent and the FILO Agent, the "Prepetition Agents")), (4) BofA in its capacity as Administrative Agent and Collateral Agent (in such capacity, the "DIP ABL Agent") in respect of a senior secured, super-priority asset based revolving credit facility of up to approximately $595 million in aggregate principal amount (the "Revolving DIP Facility") pursuant to the terms of that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement, dated as of March 3, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement"), (5) Wells Fargo in its capacity as FILO Agent (the "DIP FILO Agent" and collectively with the DIP ABL Agent, the "DIP Agents") under the DIP Credit Agreement, and (6) the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Creditors' Committee" and, collectively with the Prepetition Agents and the DIP Agents, the "Consultation Parties") and shall (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence, (b) evaluate bids from Potential Bidders on any or all of the Assets, (c) negotiate any bid made to acquire any or all of the Assets, and (d) make such other determinations as are provided in these Bid Procedures (collectively, the "Bidding Process"); provided, however, that to the extent any of the foregoing parties submit a Bid in connection with any of the Assets, the Debtors (in consultation with the non-interested Consultation Parties) and such Consultation Party shall work together to establish appropriate supplemental consultation procedures applicable to such party following the submission of such Bid to ensure the continued efficacy of the bidding process associated with the affected Asset or class of Assets at issue. In the event the Debtors and the Consultation Party submitting such Bid are unable to agree on the supplemental consultation procedures applicable to such party, either party may submit such dispute to the Bankruptcy Court for resolution. Neither the Debtors nor

their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any party that is not a Potential Bidder or a Consultation Party.

## IV.     Due Diligence

Up to and including the applicable Bid Deadline (as defined below) (such period, the "Diligence Period"), the Debtors shall afford any Potential Bidder, and any Consultation Party (provided that such Consultation Party has previously entered into a confidentiality arrangement with the Debtors), such available due diligence access or additional information as may be reasonably requested by the Potential Bidder or Consultation Party, as applicable, that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances. The Debtors will provide, in an electronic data room to be established for these purposes, a form asset purchase agreement for a sale of substantially all of the Debtors' Assets (the "Form APA"), and will grant each Potential Bidder, or Consultation Party (provided that such Consultation Party has previously entered into a confidentiality arrangement with the Debtors), as applicable, access to such data room. Notwithstanding the foregoing, the Debtors reserve the right to restrict, limit or condition access to any commercially sensitive information if the Debtors, in their business judgment, determine that providing a particular Potential Bidder with such information would result in a competitive risk to the Debtors.

The Debtors may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders and/or Consultation Parties, as applicable. Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined below).

## V.      Bid Deadline

A Bid for any or all of the Assets, including, but not limited to, going concern bids or bids that include Closing Store Leases only in part (but excluding Bids that relate solely to Closing Store Leases, which Bids shall be governed by the Closing Store Bidding Procedures) must be delivered by no later than May 11, 2016 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline").

Copies of all Bids must be delivered (via email) on or before the Bid Deadline to the following parties: (a) counsel to the Debtors, (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com) and Andrew L. Magaziner (amagaziner@ycst.com), and (ii) Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, Attn: Robert A. Klyman (rklyman@gibsondunn.com) and Matthew J. Williams (mjwilliams@gibsondunn.com); and (b) investment banker for the Debtors, Rothschild Inc., Attn: Neil Augustine (neil.augustine@rothschild.com), Bernard Douton (bernard.douton@rothschild.com) and Mahir Quraishi (Mahir.Quraishi@Rothschild.com).

The Debtors, within 24 hours of their receipt of the Bid materials, shall provide copies of all Bid materials to each Consultation Party, so long as such party has not submitted a Bid, as set forth below.

01:18574445.1

## VI.    <u>Stalking Horse Bidder(s)</u>

The Debtors may solicit binding "stalking horse bids" for the Assets (any such bid, a "<u>Stalking Horse Bid</u>," and the provider of such bid, a "<u>Stalking Horse Bidder</u>") at any time up to and including April 28, 2016 (the "<u>Stalking Horse Bid Deadline</u>"), which bid(s), if accepted by the Debtors, shall set the floor for all bids for the relevant Assets at the Auction.  Recognizing a Stalking Horse Bidder's expenditure of time, energy and resources, and that a Stalking Horse Bid, if accepted by the Debtors, provides a floor bid with respect to the relevant Assets, the Debtors may seek Bankruptcy Court authority to provide any Stalking Horse Bidder with customary bid protections (collectively, the "<u>Bid Protections</u>").  In the event that a Stalking Horse Bid is accepted by the Debtors by the Stalking Horse Bid Deadline, the Debtors will, following consultation with the Consultation Parties, announce the designation of the Stalking Horse Bidder(s) by filing a notice on the Bankruptcy Court's docket within one business day following the designation of a Stalking Horse Bidder (a "<u>Stalking Horse Bid Notice</u>").  A Stalking Horse Bid Notice shall:

    (i)    state the identity of the Stalking Horse Bidder and identify the Assets that are subject to the Stalking Horse Bid;

    (ii)    attach an agreement accompanying the Stalking Horse Bid (a "<u>Stalking Horse Agreement</u>") memorializing the proposed transaction by and between the Stalking Horse Bidder and the Debtors for the Assets or a subset thereof;

    (iii)    contain a statement setting forth the terms of the Bid Protections, which the Debtors will seek expedited approval of, as applicable (the "<u>Bid Protection Amount</u>"); and

    (iv)    contain a statement setting forth the adjusted Minimum Bid (as defined below), which amount shall equal the sum of (A) the value of the Stalking Horse Bid, (B) the Bid Protection Amount, and (C) a reasonable minimum overbid amount to be calculated in the Debtors' sole discretion, following consultation with the Consultation Parties, based on the aggregate price set forth in the Stalking Horse Bid (a "<u>Stalking Horse Overbid</u>").

## VII.    <u>Bid Requirements</u>

All bids (each hereinafter, a "<u>Bid</u>") must (collectively, the "<u>Bid Requirements</u>"):

(a)    be accompanied by a letter:

    (i)    stating with specificity the Assets (including the specific executory contracts and unexpired leases, together with a schedule allocating store by store value (including any components thereof), contemplated in the Bid) such Potential Bidder wishes to bid on, the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale, and the proposed treatment of employees and employment contracts;

(ii)    detailing the following:

(A)    a duly executed purchase agreement (a "Purchase Agreement");

(B)    solely in the event that a Stalking Horse Bid Notice has been filed prior to the Bid Deadline with respect to the relevant Assets, a redline of the Purchase Agreement marked to reflect any proposed amendments and modifications to the Stalking Horse Agreement and the applicable schedules and exhibits;

(C)    solely in the event that no Stalking Horse Bid Notice has been filed prior to the Bid Deadline with respect to a sale of all or substantially all of the Debtors' Assets, a redline of the Purchase Agreement marked to reflect any proposed amendments and modifications to the Form APA and the applicable schedules and exhibits.

(iii)    agreeing that the Potential Bidder's offer is binding and irrevocable until the earlier of (i) the Closing Date (as defined herein), or (ii) ten (10) days after the Sale Hearing (unless selected as the Next-Highest Bidder (as defined below) in which case such offer will remain open until the Closing Date);

(iv)    providing for a Closing Date that is consistent with the milestones set forth in the Debtors' post-petition financing agreement and occurs on or by May 26, 2016;

(v)    offering to pay a price equal to or greater than the Stalking Horse Overbid in the event that a Stalking Horse Bid Notice has been filed prior to the Bid Deadline with respect to the relevant Assets (the "Minimum Bid");

(vi)    providing evidence of committed financing or available capital sufficient to consummate the transaction and stating that such Bid is not subject to any due diligence or financing contingency; and

(vii)    providing that the Potential Bidder agrees to serve as a backup bidder (the "Next-Highest Bidder") if the Potential Bidder's Qualified Bid (as defined below) is the next highest and best bid after the Successful Bid (as defined below) (the "Next-Highest Bid") with respect to the relevant Assets.

(b)    be accompanied by a proposed Letter of Intent sufficient for purposes of any required filing under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "HSR Act") and a statement indicating whether the Potential Bidder would cover any filing fees under the HSR Act; and

(c)    be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information"), including (i) information about the Potential Bidder's

01:18574445.1

financial condition, such as audited (or if unavailable, unaudited) financial statements and federal tax returns for two years, and bank account statements, (ii) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact legal name of the Potential Bidder (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale), including the legal name of the entity that the Potential Bidder intends to be the assignee of any leases that are included in the Bid, (v) a summary of the Potential Bidder's operational experience in operating stores in shopping centers and/or operating sporting goods stores, (vi) a summary description of any intended use of the premises that are the subject of any leases that are included in the Bid, and (vii) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include.  In addition, to the extent that any Bid submitted contains a liquidation element, the Potential Bidder shall provide a copy of any agency agreement, asset purchase agreement and any store closing guidelines that are part and parcel of such Bid as part of the Adequate Assurance Information. By submitting a Bid, Potential Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected landlords, contract counterparties, and the Consultation Parties, among others, in the event that the Debtors determine such bid to be a Qualified Bid (as defined below).

The closing shall not be contingent in any way on the Successful Bidder's financing or such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (provided that such commitments may have covenants and conditions acceptable to the Debtors).

**VIII.**     <u>**Good Faith Deposit**</u>

Bids must be accompanied by a deposit in the form of a certified check or wire transfer, payable to the order of the Debtors in the amount of the greater of (A) $5,000,000 and (B) seven and one-half percent (7.5%) of the Bid, which funds will be deposited into an interest bearing escrow account to be identified and established by the Debtors (the "<u>Good Faith Deposits</u>").

The Debtors reserve the right to increase or decrease the Good Faith Deposit for one or more Qualified Bidders (as defined below) in their discretion after consulting with the Consultation Parties.

**IX.**     <u>**Qualified Bids**</u>

The Debtors, in consultation with the Consultation Parties, will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above.  A Bid received from a Potential Bidder that meets the above requirements, and is otherwise satisfactory to the Debtors, will be considered a "<u>Qualified Bid</u>" and each Potential Bidder that submits a Qualified Bid will be considered a "<u>Qualified Bidder</u>."  The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than 24 hours after such Bids are received.  For the avoidance of doubt, any Stalking Horse Agreement will be deemed a

Qualified Bid and any Stalking Horse Bidder will be deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bid Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder. The Debtors shall, within 24 hours following the Bid Deadline, inform any Stalking Horse Bidder of the Qualified Bids received and shall provide copies of the Starting Bid (as defined below) at the same time other Qualified Bidders receive such information.

For the avoidance of doubt, the ABL Agent and the FILO Agent will be deemed to be Qualified Bidders for all purposes and requirements pursuant to the Bid Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder, and any Bid submitted by the ABL Agent or the FILO Agent will be deemed to be a Qualified Bid, for all purposes and requirements pursuant to these Bid Procedures, notwithstanding the requirements that a Bid must satisfy to be a Qualified Bid, including the requirements, among others, to deliver a confidentiality agreement and post a Good Faith Deposit.

A Qualified Bid will be valued by the Debtors based upon any and all factors that the Debtors reasonably deem pertinent in their reasonable business judgment upon consultation with the Consultation Parties, including, among others, (a) the amount of the Qualified Bid, (b) the liabilities (including cure costs) to be assumed, (c) the proposed treatment of trade vendors, employees and employment contracts, (d) the risks and timing associated with consummating the transaction(s) with the Qualified Bidder, (e) any excluded assets or executory contracts and leases, and (f) any other factors that the Debtors (in consultation with the Consultation Parties) may reasonably deem relevant.

The Debtors, in their business judgment, and in consultation with the Consultation Parties, reserve the right to reject any Bid (other than any Stalking Horse Bid accepted by the Debtors after consultation with the Consultation Parties) if such Bid, among other things:

    (a)    is on terms that are more burdensome or conditional than the terms of the Stalking Horse Agreement, if applicable;

    (b)    requires any indemnification of the Potential Bidder in its Purchase Agreement;

    (c)    is not received by the Bid Deadline;

    (d)    is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets; or

    (e)    does not, in the Debtors' determination (after consultation with the Consultation Parties), include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtors' estates.

Any Bid rejected pursuant to the preceding paragraph shall not be deemed to be a Qualified Bid. In the event that any Bid is so rejected, the Debtors shall cause the Good Faith Deposit of such Potential Bidder (including all accumulated interest thereon) to be refunded to it within five (5) business days after the Bid Deadline.

01:18574445.1

If the Debtors do not receive any Stalking Horse Bid prior to the Stalking Horse Bid Deadline or Qualified Bids prior to the Bid Deadline with respect to all of the Assets or a particular portion of the Assets (other than the Closing Store Leases, which assets sales shall be governed by the Closing Store Bidding Procedures), the Debtors may, in consultation with the Consultation Parties, among other things, (i) extend such Bid Deadline (one or more times) with respect to the subject Assets and postpone the Auction (one or more times), or (ii) upon appropriate notice on the docket, using commercially reasonable best efforts to provide not less than 24 hours' notice prior to the Auction (provided that any notice that is less than 24 hours prior to the Auction shall not be deemed inadequate if circumstances justify such shortened notice), cancel the Auction and terminate the proposed Sale for the subject Assets.

## X.     Credit Bidding

In connection with the Sale of all or any of the Assets, unless the Bankruptcy Court for cause orders otherwise pursuant to section 363(k) of the Bankruptcy Code, the Prepetition Agents holding perfected security interests in such Assets may seek to credit bid some or all of their claims for their respective collateral (each such bid, a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code.  A Credit Bid may be applied only to reduce the cash consideration with respect to those Assets in which the party submitting such Credit Bid holds a security interest.  Each Prepetition Agent shall be considered a Qualified Bidder with respect to its right to acquire all or any of the Assets by Credit Bid, and shall not be required to post a Good Faith Deposit in connection with such Credit Bid.  Unless otherwise provided herein, all Qualified Bids shall be cash bids.

## XI.     Auction

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders (including any Stalking Horse Bidder) are eligible to participate at the Auction (as defined below).  The following parties shall be entitled to attend but not participate in the Auction (unless they are also a Qualified Bidder): (i) the Consultation Parties and their respective professionals (including professionals for any member of such Consultation Party), and (ii) any creditors or any landlord providing written notice to Debtors' counsel of their intention to attend the Auction on or before the Bid Deadline.  At least one (1) day prior to the Auction, each Qualified Bidder, other than any Stalking Horse Bidder, must inform the Debtors in writing whether it intends to participate in the Auction.  If the Debtors receive only a Stalking Horse Bid or one Qualified Bid with regard to any particular Assets (or all of the Assets), (a) the Debtors shall not hold an Auction with respect to such Assets; (b) the Stalking Horse Bid or the Qualified Bid, as applicable, will be deemed the Successful Bid with respect to such Assets; and (c) the Stalking Horse Bidder or the Qualified Bidder, as applicable, will be named the Successful Bidder with respect to such Assets.

If at least two Qualified Bids (or one Qualified Bid if there is also a Stalking Horse Bid) are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct an auction (the "Auction") with respect to such Assets and shall determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Qualified Bid for the relevant Assets (the "Starting Bid"), which determination will be communicated to

Qualified Bidders prior to the commencement of the Auction. The Auction shall take place at 10:00 a.m. (prevailing Eastern Time) on May 16, 2016 at the offices of counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, DE, 19801, or such later time or such other place as the Debtors shall designate and notify to all Qualified Bidders that have submitted Qualified Bids. Professionals and principals for the Debtors, the Stalking Horse Bidder(s) (if any), each Qualified Bidder and the Consultation Parties shall be able to attend and observe the Auction, along with any other parties the Debtors deem appropriate.

Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

Bidding at the Auction for the Assets (or subset thereof) that are subject to Qualified Bids will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid (defined below) is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors reasonably determine, in consultation with the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each Subsequent Bid at the Auction shall provide net value to the estates in an amount to be announced at or prior the Auction ("Incremental Overbid") over the Starting Bid or the Leading Bid (as defined below), as the case may be, as determined by the Debtors in the exercise of their reasonable business judgment and in consultation with the Consultation Parties; provided that: (i) if the Leading Bid was made by a Stalking Horse Bidder, such bid shall be deemed to include the Bid Protection Amount (in the event that any Bid Protections were previously approved by the Bankruptcy Court), and (ii) any Subsequent Bid made by any Stalking Horse Bidder shall only be required to equal the sum of the amount of (w) the Starting Bid or the Leading Bid, as applicable, and (x) the Incremental Overbid, less the Bid Protection Amount (if applicable). After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest or otherwise best offer for the subject Assets (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures as set forth below. Qualified Bidders may not pass with respect to the subsequent rounds of bidding without forfeiting their standing in the Auction.

The Debtors may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make Subsequent Bids, the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids or other rules to facilitate the Auction) for conducting the Auction or otherwise modify these Bid Procedures; provided that such rules (1) are not materially inconsistent with the Bankruptcy Code or any order of the Bankruptcy Court, and (2) are disclosed to each Qualified Bidder during the Auction. The bidding at the Auction shall be transcribed or videotaped and the Debtors shall maintain a transcript of all Bids made and announced at the Auction.

01:18574445.1

Immediately prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties will, for the Assets (or subset thereof) that were subject to the Auction: (a) determine, consistent with the Bid Procedures, which bid constitutes the highest or otherwise best bid (the "Successful Bid"); and (b) notify all Qualified Bidders at the Auction for the subject Assets, prior to its conclusion, of the name of the party submitting the Successful Bid (the "Successful Bidder") with respect to the subject Assets, and the amount and other material terms of the Successful Bid.  The Debtors may, in their discretion after consultation with the Consultation Parties, designate the Next-Highest Bid (and the corresponding Next-Highest Bidder) to close with respect to the subject Assets in the event that the Successful Bidder does not close the Sale.  Unless the Bankruptcy Court orders otherwise upon application by the Debtors, the Debtors shall not consider any Bids or Subsequent Bids submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

Promptly following the conclusion of the Auction (but in no event later than 24 hours following conclusion of the Auction), the Debtors shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s) for the Assets (or subset thereof) and any applicable Next-Highest Bidders.  Upon request, the Debtors shall promptly provide any party in interest with a copy of the Purchase Agreement that is the subject of any Successful Bid or Next-Highest Bid.

All bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale and the construction and enforcement of any Stalking Horse Agreement (if applicable) and all other agreements entered into in connection with any proposed Sale transaction.

**XII.**   **Acceptance of Qualified Bids**

The Debtors may reject at any time, before entry of an order of the Bankruptcy Court approving the Sale, any Bid that, in the Debtors' judgment, upon considering any comments of the Consultation Parties, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtors and their estates.

The Debtors' presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such Bid.  The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.  The Debtors intend to close the Sale(s) on or before May 26, 2016 unless another time or date, or both, are agreed to in writing by the Debtors and the Successful Bidder (the "Closing Date"), or upon direction from the Bankruptcy Court.

**XIII.**   **No Fees for Potential Bidders or Qualified Bidders**

Potential Bidders or Qualified Bidders, other than a Stalking Horse Bidder if so approved by the Bankruptcy Court, shall not be allowed any break-up, termination or similar fee. Moreover, all Potential Bidders, Qualified Bidders, and the Stalking Horse Bidder (excluding

any Bid Protections approved by the Bankruptcy Court), by participating in the Bidding Process, will be deemed to have waived any right to seek a claim for substantial contribution pursuant to section 503 of the Bankruptcy Code or the payment of any broker fees or cost.

**XIV.**    **Sale Hearing**

Each Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of a Stalking Horse Bidder or one Qualified Bidder is received with respect to the Assets (or subset thereof), then the Stalking Horse Bid or the Qualified Bidder, respectively) will be subject to approval by the Bankruptcy Court. The hearing to approve a Successful Bid (or if no Qualified Bid other than that of a Stalking Horse Bidder or one Qualified Bid is received with respect to the Assets (or subset thereof), then the Stalking Horse Bid or the Qualified Bid, respectively) shall take place on May 24, 2016 at 9:30 a.m. (ET) (prevailing Eastern Time) (the "Sale Hearing"). A subsequent hearing will be held, if necessary, on May 27, 2016 at 10:00 a.m. (ET) to consider approval of the Sale to the Next-Highest Bidder(s) in the event that the Successful Bidder(s) fails to close by the Closing Date (such hearing, the "Subsequent Sale Hearing"). The Sale Hearing and Subsequent Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or the Subsequent Sale Hearing (as applicable), or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Debtors' chapter 11 cases.

**XV.**    **Return of Good Faith Deposit**

The Good Faith Deposits of all Potential Bidders shall be held in escrow by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Good Faith Deposits of all Potential Bidders shall be retained by the Debtors, notwithstanding Bankruptcy Court approval of the Sale(s), until three (3) business days after the earlier of (a) the applicable Closing Date(s), or (b) ten (10) days following the Sale Hearing; provided, however, that the Good Faith Deposit of each Next-Highest Bidder shall be retained until three (3) business days after the applicable Closing Date. The Debtors shall retain any Good Faith Deposit submitted by each Successful Bidder. At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided.

If a Successful Bidder (or, if the Sale is to be closed with a Next-Highest Bidder, then the Next-Highest Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement or the Stalking Horse Agreement, as applicable (and as such agreements may be amended or modified at the Auction), the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale is to be closed with the Next-Highest Bidder, then such Next-Highest Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

01:18574445.1

11

XVI.        **Reservation of Rights and Modifications**

Notwithstanding any of the foregoing, the Debtors and their estates, in consultation with the Consultation Parties, reserve the right to modify these Bid Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bid Procedures; provided, however, that the Debtors shall not consult with any Consultation Party (or its advisors) that submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open (including any credit bid), solely with respect to the Assets that are subject to such Bid (or any other Bids relating thereto).

XVII.       **Next-Highest Bidder**

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale prior to such date as specified in the applicable Purchase Agreement (or such date as may be extended by the Debtors), the Debtors, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for the Assets (or subset thereof), the Next-Highest Bidder will be deemed to be the Successful Bidder for such Assets, and the Debtors will be authorized, but not directed, to close the Sale to the Next-Highest Bidder subject to the terms of the Next-Highest Bid without the need for further order of the Bankruptcy Court and without the need for further notice to any interested parties.

XVIII.      **Disclosures Regarding Consigned Goods**

All interested parties are advised that certain vendors (collectively, the "Consignment Vendors"), provided goods to the Debtors ("Consigned Goods") pursuant to certain pay-by-scan agreements (each a "Vendor Agreement") prior to the Petition Date. A chart containing (i) the identity of each Consignment Vendor, together with a cost value of the applicable Consigned Goods as of the Petition Date, and (ii) the identity of those Consignment Vendors who assert that their Vendor Agreement terminated prepetition, shall be provided to each Potential Bidder. Certain Consignment Vendors assert (i) full legal and beneficial title to the Consigned Goods, (ii) that such Consigned Goods are not property of the Debtors' estates within the meaning of 11 U.S.C. § 541, and (iii) that pursuant to certain of the Vendor Agreements, Consigned Goods cannot be sold below certain costs, and other Consigned Goods cannot be sold at discounts without the Consignment Vendors' express consent. Certain Consignment Vendors have informed the Debtors that they do not consent to the continued sale of their Consigned Goods and/or that they intend to object to any sale contemplating the sale of such Consigned Goods. The Debtors contest the assertions by applicable Consignment Vendors, have commenced adversary proceedings against the Consignment Vendors for declaratory relief related to the Debtors' rights in the Consigned Goods, and intend to defend the sale of Consigned Goods against any objections. The Prepetition Agents and the DIP Agents claim a senior perfected lien on all goods delivered prepetition by the alleged Consignment Vendors, which vendors have signed agreements with the Debtors acknowledging that their agreements constitute a

01:18574445.1

consignment under Section 9-102 of the Uniform Commercial Code ("UCC").  As such, the Prepetition Agents and the DIP Agents assert that under Article 9 of the UCC, the claimed retention of title is ineffective as against secured lenders and other creditors of the Debtors, unless and only to the extent that the Consignment Vendor has perfected its purchase money security interest in its goods in accordance with Article 9 of the UCC. The Consignment Vendors dispute the arguments put forth by the Debtors, Prepetition Agents and DIP Agents, respectively.

*[End of Bid Procedures]*

01:18574445.1

## EXHIBIT 2

**Closing Store Lease Bid Procedures**

## BID PROCEDURES – CLOSING STORE LEASES

Set forth below are the bid procedures (the "Bid Procedures") to be used with respect to the sale or disposition (the "Sale") of the Closing Store Leases (as defined below) of Sports Authority Holdings, Inc., Slap Shot Holdings, Corp., The Sports Authority, Inc., TSA Stores, Inc., TSA Gift Card, Inc., TSA Ponce, Inc., and TSA Caribe, Inc. (collectively, the "Debtors").

**Additional information regarding the Closing Store Leases can be obtained by contacting Michael Jerbich (michael@agrealtypartners.com, (312) 454-2057) with A&G Realty Partners, LLC ("A&G"), the Debtors' Real Estate Advisor.**

I.    **Description of the Assets to be Sold**

The Debtors are seeking to sell the unexpired nonresidential real property leases of the Debtors' store locations and distribution centers that are identified on Exhibit 3 to the Court's order approving these Bid Procedures (the leases for such stores and distribution centers, the "Closing Store Leases").

The Sale of the Closing Store Leases shall be subject to a competitive bidding process as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to title 11 of the United States Code. The Debtors may consider bids for the Closing Store Leases in a single bid from a single bidder, or in multiple bids from multiple bidders.

II.    **Determination by the Debtors**

As appropriate throughout the Bidding Process, the Debtors will consult, subject to the proviso below, with (1) Bank of America, N.A., ("BofA") in its capacity as Administrative Agent and Collateral Agent (the "ABL Agent") under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012 (the "ABL Agreement"), (2) Wells Fargo Bank, National Association ("Wells Fargo"), in its capacity as FILO Agent (the "FILO Agent") under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015 (the "FILO Agreement"), (3) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 (the "Term Agent," and, together with the ABL Agent and the FILO Agent, the "Prepetition Agents")), (4) BofA in its capacity as Administrative Agent and Collateral Agent (in such capacity, the "DIP ABL Agent") in respect of a senior secured, super-priority asset based revolving credit facility of up to approximately $595 million in aggregate principal amount (the "Revolving DIP Facility") pursuant to the terms of that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement, dated as of March 3, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement"), (5) Wells Fargo in its capacity as FILO Agent (the "DIP FILO Agent" and collectively with the DIP ABL Agent, the "DIP Agents") under the DIP Credit Agreement, and (6) the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Creditors' Committee" and, collectively with the Prepetition Agents and the DIP Agents, the "Consultation Parties") and shall (a) coordinate the efforts of third-parties that have expressed interest in one or more of the Closing Store Leases (such parties "Potential

Bidders") in conducting their respective due diligence, (b) evaluate bids from Potential Bidders on any or all of the Closing Store Leases, (c) negotiate any bid made to acquire any or all of the Closing Store Leases, and (d) make such other determinations as are provided in these Bid Procedures (collectively, the "Bidding Process").

## III.    Due Diligence

The Debtors will provide each Potential Bidder with (i) copies of all Closing Store Leases and related documents in which a Potential Bidder has expressed an interest, (ii) access to the premises (on reasonable advance notice and during normal business hours) that are the subject of the Closing Store Leases in which a Potential Bidder has expressed an interest, and (iii) a form agreement for the assumption and assignment of leases of nonresidential real property (the "Form Assignment Agreement"), a copy of which is attached hereto as Schedule 1. The Debtors may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Closing Store Leases in conjunction with submitting its Bid (as defined below).

## IV.    Bid Deadline

A Bid for one or more of the Closing Store Leases (including any Landlord Bid, as defined below) must be delivered by no later than April 28, 2016 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline").

Copies of all Bids must be delivered (via email) on or before the Bid Deadline to the following parties: (a) counsel to the Debtors, (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com) and Andrew L. Magaziner (amagaziner@ycst.com), and (ii) Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, Attn: Robert A. Klyman (rklyman@gibsondunn.com) and Matthew J. Williams (mjwilliams@gibsondunn.com); (b) A&G Realty Partners LLC, Attn: Michael Jerbich (michael@agrealtypartners.com); and (c) proposed counsel to the Creditors' Committee, Pachulski Stang Ziehl & Jones, 780 Third Avenue, 34th Floor, New York, NY 10027, Attn: Bradford J. Sandler (bsandler@pszjlaw.com) and Robert J. Feinstein (rfeinstein@pszjlaw.com).

The Debtors, within 24 hours of their receipt of the Bid materials, shall provide copies of all Bid materials to each Consultation Party not served with a Bid.

## V.    Bid Requirements

### Non-Landlord Bids

All bids, other than a Landlord Bid (each hereinafter, a "Non-Landlord Bid") must (collectively, the "Non-Landlord Bid Requirements"):

(a)     be accompanied by a letter:

      (i)     stating with specificity (A) the Closing Store Leases such Potential Bidder wishes to bid on, (B) the full name and identity of the proposed assignee of each individual Closing Store Lease, (C) the intended use of each premises covered by a Closing Store Lease in such Potential Bidder's Bid, and (D) the amount being offered for each individual Closing Store Lease (if more than one Closing Store Lease) in the form of an allocation schedule;

      (ii)    attaching the following:

            (A)     a duly executed assignment agreement (an "<u>Assignment Agreement</u>");

            (B)     a redline of the Assignment Agreement marked to reflect any proposed amendments and modifications to the Form Assignment Agreement;

      (iii)   stating that (A) it had an opportunity to inspect and examine the leased premises subject to the Bid and to review the Closing Store Lease(s) and all other pertinent documents with respect to the Closing Store Lease(s) prior to making its Bid, (B) that it relied solely on that review and upon its own investigation and inspection of the leased premises in making its Bid, (C) that it is not relying upon any written or oral statements, representations, or warranties of the Debtors, their agents or representatives, (D) in the event that such Potential Bidder is using a real estate broker as its agent, it exclusively authorizes such broker to submit a Bid on its behalf and that any commission or fee of any type due and payable to such broker as a result of an assignment of the Closing Store Lease(s) shall be paid solely by the Potential Bidder and the Potential Bidder shall indemnify Debtors, their estates and A&G in this regard, and (E) that the occupancy of the premises set forth in the Closing Store Leases may not be available until June 1, 2016.

      (iv)    agreeing that the Potential Bidder's offer is binding and irrevocable until the earlier of (i) the Closing Date (as defined herein), or (ii) ten (10) days after the Sale Hearing (unless selected as the Next-Highest Bidder (as defined below) in which case such offer will remain open until the Closing Date);

      (v)     offering to pay a price equal to or greater than $75,000 per Closing Store Lease plus the monetary value of any defaults existing under the Closing Store Lease ("<u>Cure Costs</u>") as determined by the Bankruptcy Court or by agreement with the applicable landlord(s);

(vi)    providing evidence of committed financing or available capital sufficient to consummate the transaction and stating that such Bid is not subject to any due diligence or financing contingency; and

(vii)   providing that the Potential Bidder agrees to serve as a backup bidder (the "Next-Highest Bidder") if the Potential Bidder's Qualified Bid (as defined below) is the next highest and best bid after the Successful Bid (as defined below) (the "Next-Highest Bid") with respect to the relevant Assets.

(d)    be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information"), including (i) information about the Potential Bidder's (and the proposed lease assignee's and any guarantors') financial condition, such as audited (or if unavailable, unaudited) financial statements and federal tax returns for two years, and bank account statements, (ii) the identity and exact legal name of the Potential Bidder (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale), including the legal name of the entity that the Potential Bidder intends to be the assignee of the Closing Store Leases, (iii) a summary of the Potential Bidder's operational experience in operating stores in shopping centers and/or operating sporting goods stores, and the number of stores the Potential Bidder (and the proposed assignee and any guarantors) currently operate and under what trade names, (iv) a summary description of any intended use of the premises that are the subject of any leases that are included in the Bid (including any business/trade name to be used), (v) the name and contact information of a person employed by the Potential Bidder who has knowledge of the Bid and any Closing Store Leases to be assigned to the Potential Bidder, and (vi) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include.  By submitting a Bid, Potential Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected landlords and the Consultation Parties in the event that the Debtors determine such bid to be a Qualified Bid (as defined below).

*Landlord Bids*

All bids of a landlord bidding on a Closing Store Lease(s) to which such landlord is a party ("Landlord Bids," and together with Non-Landlord Bids, "Bids"), must (the "Landlord Bid Requirements," and together with the "Non-Landlord Bid Requirements," the "Bid Requirements") (a) be accompanied by a written offer on landlord's corporate letterhead, or, if on behalf of landlord by landlord's legal counsel, then on landlord's legal counsel's letterhead, for the purchase of one or more of its own Closing Store Leases, (b) identify the gross amount offered for each individual Closing Store Lease (if the offer includes more than one Closing Store Lease), (c) include a breakdown identifying that portion of the offer which is payable in cash to the Debtors (the "Landlord Bid Cash Portion") and that portion, if any, which is "credit bid" (representing total outstanding documented and verifiable rental arrears), (d) expressly state that the landlord's offer is irrevocable until the earlier to occur of (i) the Closing Date (as defined herein), or (ii) ten (10) days after the Sale Hearing (unless selected as the Next-Highest Bidder in which case such offer will remain open until the Closing Date), (e) state that if it is the Successful Bidder, landlord is ready, willing and able to execute a reasonable short form of Lease Termination Agreement(s), (f) state the extent to which, if any, landlord agrees to waive and release any and all claims it may have against the Debtors, including claims pursuant to

section 502(b)(6) of the Bankruptcy Code, and (g) include a redline of the form of lease termination agreement attached hereto as <u>Schedule 2</u> (the "<u>Form Lease Termination Agreement</u>"), marked to reflect any proposed amendments and modifications to the Form Lease Termination Agreement.  For the avoidance of doubt, there is no "minimum" bid for Landlord Bids.

**VI.**     **<u>Good Faith Deposit</u>**

Non-Landlord Bids must be accompanied by a deposit in the form of a certified check or wire transfer, payable to the order of the Debtors, in the amount of $20,000 per Closing Store Lease included in the Non-Landlord Bid, which funds will be deposited into an interest bearing escrow account to be identified and established by the Debtors (the "<u>Potential Bidder Good Faith Deposits</u>").

Landlord Bids which contain a Landlord Bid Cash Portion must be accompanied by a deposit in the form of a certified check or wire transfer, payable to the order of the Debtors, in the amount of ten percent (10%) of the Landlord Bid Cash Portion (the "<u>Landlord Good Faith Deposit</u>," and together with the Potential Bidder Good Faith Deposit, the "<u>Good Faith Deposit</u>").

The Debtors reserve the right to increase or decrease the Good Faith Deposit for one or more Qualified Bidders (as defined below) in their discretion after consulting with the Consultation Parties.

**VII.**     **<u>Qualified Bids</u>**

The Debtors, in consultation with the Consultation Parties, will review each Bid received to determine whether it meets the requirements set forth above.  A Bid received that meets the above requirements, and is otherwise satisfactory to the Debtors, will be considered a "<u>Qualified Bid</u>" and each Potential Bidder or landlord that submits a Qualified Bid will be considered a "<u>Qualified Bidder</u>."  No later than two business days after the Bid Deadline, the Debtors shall (i) inform Qualified Bidders that their Bids have been designated as Qualified Bids, and (ii) provide copies of the Adequate Assurance Information of such Qualified Bidders to the affected landlords; <u>provided</u>, <u>however</u>, that each landlord shall keep such Adequate Assurance Information confidential, and shall be restricted from using or disclosing such information to any third party other than in connection with an objection relating to the identity of the Qualified Bidder, which such objections shall be filed under seal.

The Debtors, in their business judgment, and in consultation with the Consultation Parties, reserve the right to reject any Bid if such Bid, among other things:

> (a)     Does not satisfy the Bid Requirements;

> (b)     contains anything other than cash consideration (other than a Landlord Bid which contains a "credit bid" component and/or waiver of claims)

> (c)     requires any indemnification of the Potential Bidder or landlord;

> (d)     is not received by the Bid Deadline; or

01:18574437.1

(e)    is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Closing Store Leases.

Any Bid rejected pursuant to the preceding paragraph shall not be deemed to be a Qualified Bid. In the event that any Bid is so rejected, the Debtors shall cause the Good Faith Deposit of such Potential Bidder of landlord (including all accumulated interest thereon) to be refunded to it within five (5) business days after the Bid Deadline.

If the Debtors do not receive any Qualified Bids prior to the Bid Deadline with respect to particular Closing Store Leases, the Debtors may, in consultation with the Consultation Parties, among other things, (i) extend such Bid Deadline (one or more times) with respect to the subject Closing Store Leases and postpone the Auction (one or more times), or (ii) upon appropriate notice on the docket using commercially reasonable best efforts to provide not less than 24 hours' notice prior to the Auction (provided that any notice that is less than 24 hours prior to the Auction shall not be deemed inadequate if circumstances justify such shortened notice), cancel the Auction and terminate the proposed Sale for the subject Closing Store Leases.

Not less than 24 hours prior to the Auction, the Debtors shall file a notice on the docket indicating (a) the Closing Store Leases that are the subject of only one Qualified Bid, which Qualified Bid will be accepted by the Debtors and will not be subject to the Auction, (b) the Closing Store Leases that did not receive any Qualified Bids and will not be subject to the Auction, and (c) the Closing Store Leases that received more than one Qualified Bid and will be subject to the Auction.

## VIII.    Auction

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders are eligible to participate at the Auction (as defined below). The following parties shall be entitled to attend but not participate in the Auction (unless they are also a Qualified Bidder): (i) the Consultation Parties and their respective professionals (including professionals for any member of such Consultation Party), and (ii) any landlords providing written notice to Debtors' counsel of their intention to attend the Auction on or before the Bid Deadline. At least one (1) day prior to the Auction, each Qualified Bidder must inform the Debtors in writing whether it intends to participate in the Auction. If the Debtors receive only one Qualified Bid with regard to any particular Closing Store Lease(s), (a) the Debtors shall not hold an Auction with respect to such Closing Store Lease(s); (b) the Qualified Bid will be deemed the Successful Bid with respect to such Closing Store Lease(s); and (c) the Qualified Bidder will be named the Successful Bidder with respect to such Closing Store Lease(s).

If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Closing Store Lease(s), the Debtors will conduct an auction (the "Auction") with respect to such Closing Store Lease(s) and shall determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Qualified Bid for the relevant Closing Store Lease(s) (the "Starting Bid"), which determination will be communicated to Qualified Bidders prior to the commencement of the Auction. The Auction shall take place at

01:18574437.1

10:00 a.m. (prevailing Eastern Time) on May 4, 2016 at the offices of counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, DE, 19801, or such later time or such other place as the Debtors shall designate and notify to all Qualified Bidders who have submitted Qualified Bids. Professionals and principals for the Debtors, each Qualified Bidder and the Consultation Parties shall be able to attend and observe the Auction, along with any other parties the Debtors deem appropriate.

Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

Bidding at the Auction for the Closing Store Lease(s) that are subject to Qualified Bids will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid (defined below) is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors reasonably determine, in consultation with the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each Subsequent Bid at the Auction shall provide net value to the estates in an amount to be announced at or prior the Auction ("Incremental Overbid") over the Starting Bid or the Leading Bid (as defined below), as the case may be, as determined by the Debtors in the exercise of their reasonable business judgment and in consultation with the Consultation Parties. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest or otherwise best offer for the subject Closing Store Lease(s) (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures as set forth below. Qualified Bidders may not pass with respect to the subsequent rounds of bidding without forfeiting their standing in the Auction.

The Debtors may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make Subsequent Bids, the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids or other rules to facilitate the Auction) for conducting the Auction or otherwise modify these Bid Procedures; provided that such rules (1) are not materially inconsistent with the Bankruptcy Code or any order of the Bankruptcy Court, and (2) are disclosed to each Qualified Bidder during the Auction. The bidding at the Auction shall be transcribed or videotaped and the Debtors shall maintain a transcript of all Bids made and announced at the Auction.

Immediately prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties will, for the Closing Store Leases that were subject to the Auction: (a) determine, consistent with the Bid Procedures, which bid constitutes the highest or otherwise best bid (the "Successful Bid"); and (b) notify all Qualified Bidders at the Auction for the subject Closing Store Leases, prior to its conclusion, of the name of the maker of the Successful Bid (the "Successful Bidder") with respect to the subject Assets, and the amount and other material terms of the Successful Bid. The Debtors may, in their discretion after consultation with the

Consultation Parties, designate the Next-Highest Bid (and the corresponding Next-Highest Bidder) to close with respect to the subject Closing Store Lease(s) in the event that the Successful Bidder does not close the Sale. Unless the Bankruptcy Court orders otherwise upon application by the Debtors, the Debtors shall not consider any Bids or Subsequent Bids submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

Promptly following the conclusion of the Auction (but in no event later than 24 hours following conclusion of the Auction), the Debtors shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s) for each Closing Store Lease and any applicable Next-Highest Bidders, as well as the amount of the Successful Bid (with a separate breakdown of Cure Costs to be paid). Upon request, the Debtors shall promptly provide any party in interest with a copy of the Assignment Agreement that is the subject of any Successful Bid or Next-Highest Bid.

All bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale and the construction and enforcement of any Assignment Agreement (if applicable) and all other agreements entered into in connection with any proposed Sale transaction.

## IX.    Acceptance of Qualified Bids

The Debtors may reject at any time, before entry of an order of the Bankruptcy Court approving the Sale, any Bid that, in the Debtors' judgment, upon considering any comments of the Consultation Parties, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtors and their estates.

The Debtors' presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such Bid. The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.

## X.    No Fees for Potential Bidders, Landlords or Qualified Bidders

Potential Bidders, landlords and Qualified Bidders shall not be allowed any break-up, termination or similar fee. Moreover, all Potential Bidders, landlords and Qualified Bidders, by participating in the Bidding Process, will be deemed to have waived any right to seek a claim for substantial contribution pursuant to section 503 of the Bankruptcy Code or the payment of any broker fees or cost.

## XI.    Sale Hearing and Closing

Each Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of one Qualified Bidder is received with respect to a particular Closing Store Lease, then the Qualified Bidder) will be subject to approval by the Bankruptcy Court (the hearing approving such Bids, the "Sale Hearing"). The Sale Hearing to approve a Successful Bid (or if no

01:18574437.1

8

Qualified Bid other than that of one Qualified Bid is received with respect to a particular Closing Store Lease, then the Qualified Bid) shall take place on May 25, 2016 at 9:30 a.m. (ET) (prevailing Eastern Time). The Sale Hearing to approve the Next-Highest Bid, if necessary, shall be held at a later date and time to be determined, on notice to all interested parties. The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Debtors' chapter 11 cases.

The Debtors intend to close the Sale(s) on or before May 31, 2016 unless another time or date, or both, are agreed to in writing by the Debtors and the Successful Bidder (the "Closing Date"). All adjustments to be made in connection with the Closing including, without limitation, adjustments, if any, for rent under a Closing Store Lease, shall be made as of midnight of the date immediately prior to the date of Closing (the "Adjustment Date"). Any adjustments attributable to escalation or pass-through charges which would be billed after the Adjustment Date shall be made based upon the most recent billing received by the Debtors for such charges. The Successful Bidder shall be liable for all obligations with respect to a Store Closing Lease from the Adjustment Date forward including, but not limited to, any year-end adjustments, and shall indemnify the Debtors with respect thereto and unless otherwise agreed the Debtors shall be liable for all obligations accrued prior to the Adjustment Date.

## XII.       Return of Good Faith Deposit

The Good Faith Deposits shall be held in escrow by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Good Faith Deposits shall be retained by the Debtors, notwithstanding Bankruptcy Court approval of the Sale(s), until three (3) business days after the earlier of (a) the applicable Closing Date(s), or (b) ten (10) days following the Sale Hearing; provided, however, that the Good Faith Deposit of each Next-Highest Bidder shall be retained until three (3) business days after the applicable Closing Date. The Debtors shall retain any Good Faith Deposit submitted by each Successful Bidder. At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided.

If a Successful Bidder (or, if the Sale is to be closed with a Next-Highest Bidder, then the Next-Highest Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale is to be closed with the Next-Highest Bidder, then such Next-Highest Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

## XIII.      Reservation of Rights and Modifications

Notwithstanding any of the foregoing, the Debtors and their estates, in consultation with the Consultation Parties, reserve the right to modify these Bid Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Bids

01:18574437.1

9

(including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

XIV.    **Next-Highest Bidder**

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale prior to the Closing Date, the Debtors, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for the applicable Closing Store Lease(s), and the Next-Highest Bidder will be deemed to be the Successful Bidder for such Closing Store Lease(s). The Sale Hearing to approve the Next-Highest Bid(s), if necessary, shall be held at a date and time to be scheduled, on notice to any interested parties.

XV.    **Miscellaneous Terms of Sale**

Any sale, assignment or other disposition of each of the Closing Store Leases shall be without representations or warranties of any kind, nature or description by the Debtors, their agents or representatives. Each of the Closing Store Leases shall be transferred "as is" and "where is." Unless otherwise indicated by the Debtors at the Auction, sales of the Closing Store Leases shall not include personal property, inventory, fixtures, trade fixtures, or other furnishings or equipment located in the premises whether or not owned by the Debtors. The Debtors reserve the right either to sell such personal property to the Successful Bidder or to any other party, to abandon any or all of the personal property located at each of the locations, or to make such other arrangements as may be appropriate. All sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the assignment of the Closing Store Leases or the sale of personal property of the Debtors in connection therewith shall be the sole responsibility of the Successful Bidder and shall be paid to the Debtors at the Closing of each transaction.

*[End of Bid Procedures]*

# EXHIBIT 3

**Closing Store Leases**

| Store | Address | City | ST |
|---|---|---|---|
| 697 | 1004 N Promenade Parkway | Casa Grande | AZ |
| 797 | 7360 W. Bell Road | Glendale | AZ |
| 792 | 1812 W 8th Street | Mesa | AZ |
| 795 | 4820 E Ray Road | Phoenix | AZ |
| 676 | 4821 Ming Avenue | Bakersfield | CA |
| 686 | 351 West Ventura Boulevard | Camarillo | CA |
| 54 | 435 Corte Madera Avenue | Corte Madera | CA |
| 79 | 2983 Jamacha Road | El Cajon | CA |
| 780 | 1352 W. Valley Parkway | Escondido | CA |
| 57 | 6600 Topanga Canyon Boulevard | Los Angeles | CA |
| 637 | 1919 S. Sepulveda Boulevard | Los Angeles | CA |
| 714 | 4550 W. Pico Boulevard | Los Angeles | CA |
| 659 | 1345 Chum Creek Road | Redding | CA |
| 765 | 243 Madonna Road | San Luis Obispo | CA |
| 656 | 10536 Trinity Parkway | Stockton | CA |
| 729 | 145 W. Hillcrest Drive | Thousand Oaks | CA |
| 647 | 4870 Telephone Road | Ventura | CA |
| 55 | 1675 Olympic Boulevard | Walnut Creek | CA |
| 101 | 1000 Broadway | Denver | CO |
| 128 | 9000 E. Peakview Boulevard | Greenwood Village | CO |
| 147 | 4543 Main Street | Bridgeport | CT |
| 153 | 180 Universal Drive N. | North Haven | CT |
| 455 | 1100 Rocky Run Parkway | Wilmington | DE |
| 386 | 201 Cortez Road West | Bradenton | FL |
| 366 | 1910 W. International Speedway Blvd | Daytona | FL |
| 391 | 2317 Colonial Boulevard | Fort Myers | FL |
| 362 | 1750 Evans Road | Melbourne | FL |
| 363 | 7500 W. Colonial Drive | Orlando | FL |
| 368 | 610 N. Alafaya Trail | Orlando | FL |
| 385 | 9560 US Highway 19 | Port Richey | FL |
| 294 | 1624 Govenor's Square Boulevard | Tallahassee | FL |
| 414 | 4471-B Jimmy Lee Smith Parkway | Hiram | GA |
| 603 | 1510 S. Torrence Avenue | Calumet City | IL |
| 70 | 4025 Water Tower Place | Chicago | IL |
| 589 | 2700 Plainfield Road | Joliet | IL |
| 75 | 727 West Route 22 | Lake Zurich | IL |
| 626 | 4832 W. 211th Street | Matteson | IL |
| 72 | 2171 Northbrook Court | Northbrook | IL |
| 605 | 1015 East Golf Road | Schaumburg | IL |
| 618 | 3211 S. Veterans Parkway | Springfield | IL |
| 273 | 12014 W. 95 Street | Lenexa | KS |
| 271 | 6959 E. 21st North | Wichita | KS |
| 82 | 10300 Little Patuxent Parkway | Columbia | MD |
| 518 | 3326 Crain Highway | Waldorf | MD |
| 66 | 730 Center Street, Unit 3 | Auburn | ME |
| 594 | 33930 Gratiot Avenue | Clinton Township | MI |
| 706 | 80 25th Street SE | Rochester | MN |

| | | | |
|---|---|---|---|
| 755 | 11982 St. Charles Rock Road | Bridgeton | MO |
| 753 | 788 Gravois Bluff Boulevard | Fenton | MO |
| 275 | 8980 NW Skyview Avenue | Kansas City | MO |
| 752 | 4025 Veteran's Memorial Parkway | St. Peters | MO |
| 598 | 17021 Evans Plaza | Omaha | NE |
| 599 | 885 S. 72nd Street | Omaha | NE |
| 164 | 213 Daniel Webster Highway | Nashua | NH |
| 475 | 2139 Route 38 | Cherry Hill | NJ |
| 463 | 300 Route 18 | East Brunswick | NJ |
| 476 | 55 U.S. 9 | Manalapan Twnshp | NJ |
| 462 | 81 Willowbrook Boulevard | Wayne | NJ |
| 500 | 171 West 230th Street | Bronx | NY |
| 499 | 550 Gateway Drive | Brooklyn | NY |
| 492 | 124 Veterans Memorial Hwy | Commack | NY |
| 83 | 950 Old Country Road | Garden City | NY |
| 479 | 1160 Old Country Road | Riverhead | NY |
| 481 | 2110 Nesconset Highway | Stony Brook | NY |
| 498 | 1 Carousel Center | Syracuse | NY |
| 485 | 750 Central Park Avenue | Yonkers | NY |
| 741 | 6285 Sawmill Road | Dublin | OH |
| 68 | 2870 S 6th Street | Kalamath Falls | OR |
| 69 | 1440 NW Garden Valley Blvd, Ste 100 | Roseburg | OR |
| 443 | 2180 MacArthur | Whitehall | PA |
| 88 | 1st Level Unit A Plaza Carolina Mall | Carolina | PR |
| 90 | Rafael "Churumba" Cordero Santiago Ave | Ponce | PR |
| 89 | 525 FD Roosevelt Avenue, #750 | San Juan | PR |
| 283 | 10337 E. Shelby Drive | Collierville | TN |
| 288 | 2751 Wolfcreek Parkway | Memphis | TN |
| 245 | 9600 S. IH35 Service Road SB | Austin | TX |
| 210 | 9100 N. Central Expressway-#123 | Dallas | TX |
| 219 | 1800 South Loop 288 | Denton | TX |
| 506 | 801 Sunland Park Drive | El Paso | TX |
| 207 | 4245 LBJ Freeway @ Midway Road | Farmers Branch | TX |
| 220 | 4830 S. W. Loop 820-Overton Park | Fort Worth | TX |
| 230 | Bay Area Boulevard | Friendswood | TX |
| 238 | 2930 Preston Road, Ste. 200-B | Frisco | TX |
| 225 | 2131 South Post Oak Boulevard | Houston | TX |
| 226 | 10225 Katy Freeway | Houston | TX |
| 228 | 8625 FM 1960 West | Houston | TX |
| 229 | 20416 Highway 59 North | Humble | TX |
| 233 | 2620 Gulf Freeway South | League City | TX |
| 204 | 1551 US Highway 287 | Mansfield | TX |
| 244 | 3300 Expressway 83 | McAllen | TX |
| 237 | 3949 Fairway Plaza | Pasadena | TX |
| 223 | 11200 W Broadway Street | Pearland | TX |
| 203 | 2201 Preston Road | Plano | TX |
| 215 | 3000 North Central Expressway | Richardson | TX |
| 239 | 5472 W Grand Parkway S | Richmond | TX |
| 211 | 920 Steger Towne Road | Rockwall | TX |
| 235 | 21115 US Highway 281 North | San Antonio | TX |

| 236 | 125 N. W. Loop 410 - Ste 240 | San Antonio | TX |
| 231 | 19075 Interstate 45 South | Shenandoah | TX |
| 227 | 12730 Fountain Lake Circle | Stafford | TX |
| 330 | 3651 Wall Avenue | Ogden | UT |
| 325 | 10453 S State Street | Sandy | UT |
| 324 | 5786 S. Redwood Road | Taylorsville | UT |
| 328 | 7682 S Campus View Drive | West Jordan | UT |
| 535 | 1461 Carl D. Silver Parkway | Fredericksburg | VA |
| 538 | 2106 Coliseum Drive | Hampton | VA |
| 537 | 5900 E. Virginia Beach | Norfolk | VA |
| 534 | 21070 Southbank Street | Sterling | VA |
| 539 | 2720 N. Mall Drive | Virginia Beach | VA |

## EXHIBIT 4

**Notice of Auctions and Sale Hearings**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors. | Jointly Administered |
| | **Sale Objection Deadline:**<br>**May 13, 2016 at 4:00 p.m. (ET)** |
| | **Post-Main Auction Objection Deadline:**<br>**May 20, 2016 at 4:00 p.m. (ET)** |
| | **Main Auction Sale Hearing Date:**<br>**May 24, 2016 at 9:30 a.m. (ET)** |
| | **Closing Store Lease Sale Hearing Date:**<br>**May 25, 2016 at 9:30 a.m. (ET)** |

## NOTICE OF SALE, BID PROCEDURES, AUCTION AND SALE HEARINGS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

      1.    On March 2, 2016, the affiliated debtors and debtors in possession in the above-captioned cases (each a "<u>Debtor</u>," and collectively, the "<u>Debtors</u>") filed with the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") their motion [D.I. 106] (the "<u>Motion</u>") for the entry of: (a) an order (the "<u>Bid Procedures Order</u>"),[2] (i) scheduling an auction (the "<u>Auction</u>") and hearing (the "<u>Sale Hearing</u>") on approval of the proposed sale or disposition (the "<u>Sale</u>") of substantially all of the assets of the Debtors (the "<u>Assets</u>") or any portion thereof, free and clear of all liens, claims, encumbrances, and other interests, except certain permitted encumbrances as determined by the Debtors and any purchaser of the Assets (collectively, the "<u>Encumbrances and Liabilities</u>"), to the Successful Bidder(s) and authorizing the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "<u>Assigned Contracts</u>") in connection therewith; (ii) authorizing and approving certain proposed bid procedures for the Sale (collectively, the "<u>Bid Procedures</u>"), certain proposed

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order (including the Bid Procedures). Any summary of the Assignment Procedures and the Bid Procedures Order contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

assumption and assignment procedures for the Assigned Contracts (collectively, the "Assignment Procedures"), and the form and manner of notice thereof; and (iii) granting related relief; and (b) an order (the "Sale Order"), (i) authorizing and approving the Debtors' entry into an agreement with the Successful Bidder(s) for all or a portion of the Assets; (ii) authorizing and approving the Sale, free and clear of all Encumbrances and Liabilities; (iii) authorizing and approving the assumption and assignment of the Assigned Contacts in connection therewith; and (iv) granting related relief.

2.    Subsequent to filing the Motion, the Debtors bifurcated the sale process and tendered a revised form of Bid Procedures Order contemplating separate timelines for (a) the sale of substantially all of the Debtors' assets, and (b) the assumption, assignment and transfer of certain unexpired leases of nonresidential real property subject to the Debtors' store closing plan.

3.    On April 14, 2016, the Bankruptcy Court entered the Bid Procedures Order [D.I. ___]. Pursuant to the Bid Procedures Order, the Debtors have until **April 28, 2016 at 5:00 p.m. (ET)** (the "Stalking Horse Bid Deadline") to obtain Stalking Horse Bids for the Main Auction Assets (if any).

### Main Auction Bid Deadline

4.    Pursuant to the Bid Procedures, a Potential Bidder that desires to make a bid for the Main Auction Assets shall deliver an electronic copy of its bid to the parties identified in the Bid Procedures so as to be received on or before **May 11, 2016 at 5:00 p.m. (ET)** (the "Main Auction Bid Deadline") and otherwise comply with the Main Auction Bid Procedures. **FAILURE TO ABIDE BY THE BID PROCEDURES MAY RESULT IN A BID BEING REJECTED. ANY PARTY INTERESTED IN BIDDING ON THE MAIN AUCTION ASSETS SHOULD CONTACT BERNARD DOUTON (BERNARD.DOUTON@ROTHSCHILD.COM) AND MAHIR QURAISHI (MAHIR.QURAISHI@ROTHSCHILD.COM) WITH ROTHSCHILD INC., THE DEBTORS' INVESTMENT BANKER.**

### Closing Store Lease Bid Deadline

5.    Pursuant to the Bid Procedures, a Potential Bidder or Landlord that desires to make a bid solely for the Closing Store Leases shall deliver an electronic copy of its bid to the parties identified in the Bid Procedures so as to be received on or before **April 28, 2016 at 5:00 p.m. (ET)** (the "Closing Store Lease Bid Deadline") and otherwise comply with the Closing Store Lease Bid Procedures. **FAILURE TO ABIDE BY THE BID PROCEDURES MAY RESULT IN A BID BEING REJECTED. ANY PARTY INTERESTED IN BIDDING ON THE CLOSING STORE LEASES SHOULD CONTACT MICHAEL JERBICH (MICHAEL@AGREALTYPARTNERS.COM) WITH A&G REALTY PARTNERS, LLC, THE DEBTORS' REAL ESTATE ADVISOR.**

### Main Auction and Main Auction Sale Hearing

6.    Pursuant to the Main Auction Bid Procedures, in the event that the Debtors receive at least two Qualified Bids (or one Qualified Bid if there is also a Stalking Horse

01:18574344.1

Bid) by the Main Auction Bid Deadline with regard to any the Main Auction Assets or subset thereof, the Debtors will conduct an auction which shall commence on **May 16, 2016 at 10:00 a.m. (ET)** (the "Main Auction") at the offices of counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, DE, 19801, or such later time or such other place as the Debtors shall designate and notify to all Qualified Bidders who have submitted Qualified Bids.  Only Qualified Bidders (including any Stalking Horse Bidder) shall be entitled to participate at the Main Auction.

7.    If the Debtors do not receive any Stalking Horse Bid prior to the Stalking Horse Bid Deadline or Qualified Bids prior to the Main Auction Bid Deadline with respect to a particular portion of the  Main Auction Assets (or all of the Main Auction Assets), the Debtors may, in consultation with the Consultation Parties (i) extend such Bid Deadline with respect to the subject Main Auction Assets, (ii) cancel the Main Auction and terminate the proposed Sale for the subject Main Auction Assets, or (iii) otherwise seek Bankruptcy Court relief.

8.    Each Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of a Stalking Horse Bidder or one Qualified Bidder is received with respect to a to the Main Auction Assets or subset thereof, then the Stalking Horse Bid or the Qualified Bidder, respectively) will be subject to approval by the Bankruptcy Court.  The sale hearing solely as it pertains to the Successful Bidder(s) (the "Main Auction Sale Hearing") shall take place on **May 24, 2016 at 9:30 a.m. (ET)**.  A subsequent hearing will be held, if necessary, on **May 27, 2016 at 10:00 a.m. (ET)** to consider approval of the Main Sale to the Next-Highest Bidder(s) in the event that the Successful Bidder(s) fails to close by the Closing Date (such hearing, the "Subsequent Main Sale Hearing").  The Main Auction Sale Hearing and/or the Subsequent Main Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Main Auction Sale Hearing and/or the Subsequent Main Sale Hearing, respectively, or by filing a notice, which may be a hearing agenda, stating the adjournment, on the docket of the Debtors' chapter 11 cases.

### *Closing Store Lease Auction and Closing Store Lease Sale Hearing*

9.    Pursuant to the Closing Store Lease Bid Procedures, in the event that the Debtors receive at least two Qualified Bids by the Closing Store Lease Bid Deadline with regard to any Closing Store Leases, the Debtors will conduct an auction for such Closing Store Leases which shall commence on **May 4, 2016 at 10:00 a.m. (ET)** (the "Closing Store Lease Auction") at the offices of counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, DE, 19801, or such later time or such other place as the Debtors shall designate and notify to all Qualified Bidders who have submitted Qualified Bids.  Only Qualified Bidders shall be entitled to participate at the Closing Store Lease Auction.

10.    Each Successful Bid and any Next-Highest Bid for a Closing Store Lease will be subject to approval by the Bankruptcy Court.  The Closing Store Lease Sale Hearing to approve each Successful Bidder shall take place on **May 25, 2016 at 11:30 a.m. (ET)**.  The Closing Store Lease Sale Hearing to approve the Next-Highest Bid, if necessary, shall be held at a later date and time to be determined, on notice to all interested parties.  The Closing Store Lease Sale Hearing may be adjourned by the Debtors from time to time without further notice to

01:18574344.1

3

creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Closing Store Lease Sale Hearing or by filing a notice, which may be a hearing agenda, stating the adjournment, on the docket of the Debtors' chapter 11 cases.

*Sale Objections*

      11.    Any objections to the Main Auction Sale or a Closing Store Lease Sale (and with respect to the Closing Store Lease Sale, objections related to the conduct at the auction), or the relief requested in connection with the Sales, including objections to entry of a proposed order approving the Main Auction Sale or a Closing Store Lease Sale, respectively (a "Sale Objection"),[3] other than a Post-Main Auction Objection (as defined below) must: (i) be in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, together with proof of service, **on or before 4:00 p.m. (ET) on May 13, 2016** (the "Sale Objection Deadline"); and (vi) be served, so as to be actually received on or before the Sale Objection Deadline, upon (a) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. and Andrew L. Magaziner, Esq.), and Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, (Attn: Robert A. Klyman, Esq. and Matthew J. Williams, Esq.), counsel to the Debtors; (b) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 1980 (Attn: Bradford J. Sandler, Esq., Robert J. Feinstein, Esq., and Jeffery N. Pomerantz, Esq.) proposed counsel to the Committee; (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Hannah J. McCollum, Esq.); (d) Riemer & Braunstein LLP, Three Center Plaza, Boston, Massachusetts 02108 (Attn: Donald E. Rothman, Esq.) as counsel for Bank of America, N.A., in its capacity as (A) DIP Agent under the proposed Debtor-in-Possession Credit Agreement, and (B) Administrative Agent and Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012; (e) Brown Rudnick LLP, Seven Times Square, New York, NY 10036 (Attn: Robert J. Stark, Esq. and Bennett S. Silverberg, Esq.) as counsel for (A) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (B) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (f) Choate, Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110 (Attn: Kevin J. Simard, Esq.) as counsel for Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015; and (g) O'Melveny & Meyers LLP, 7 Times Square, Broadway, New York, NY 10036 (Attn: John J. Rapisardi, Esq.), as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006 (collectively, the "Notice Parties").

---

[3]    The deadlines for filing Cure Cost Objections, Stalking Horse Assignment Objections, Main Auction Assignment objections and Closing Store Assignment Objections shall be governed by the Assignment Procedures.

01:18574344.1

*Post-Main Auction Objections*

12.     Any objections solely with respect to conduct at the Main Auction (a "Post-Main Auction Objection") must:  (i) be in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, together with proof of service, **on or before 4:00 p.m. (ET) on May 20, 2016** (the "Post-Main Auction Objection Deadline"); and (vi) be served, so as to be actually received on or before the Post-Main Auction Objection Deadline, upon the Notice Parties.

13.     If a Sale Objection is not filed and served on or before the applicable Sale Objection Deadline or Post-Main Auction Objection is not filed and served on or before the Post-Main Auction Objection Deadline in accordance with the foregoing requirements, the Court may enter a Main Auction Sale Order and/or Closing Store Lease Sale Order(s) without further notice to such party.

14.     All interested parties are advised that certain vendors (collectively, the "Consignment Vendors"), provided goods to the Debtors ("Consigned Goods") pursuant to certain pay-by-scan agreements (each a "Vendor Agreement") prior to the Petition Date.  A chart containing (i) the identity of each Consignment Vendor, together with a cost value of the applicable Consigned Goods as of the Petition Date, and (ii) the identity of those Consignment Vendors who assert that their Vendor Agreement terminated prepetition, shall be provided to each Potential Bidder.  Certain Consignment Vendors assert (i) full legal and beneficial title to the Consigned Goods, (ii) that such Consigned Goods are not property of the Debtors' estates within the meaning of 11 U.S.C. § 541, and (iii) that pursuant to certain of the Vendor Agreements, Consigned Goods cannot be sold below certain costs, and other Consigned Goods cannot be sold at discounts without the Consignment Vendors' express consent.  Certain Consignment Vendors have informed the Debtors that they do not consent to the continued sale of their Consigned Goods and/or that they intend to object to any sale contemplating the sale of such Consigned Goods.  The Debtors contest the assertions by applicable Consignment Vendors, have commenced adversary proceedings against the Consignment Vendors for declaratory relief related to the Debtors' rights in the Consigned Goods, and intend to defend the sale of Consigned Goods against any objections. The Prepetition Agents and the DIP Agents claim a senior perfected lien on all goods delivered prepetition by the alleged Consignment Vendors, which vendors have signed agreements with the Debtors acknowledging that their agreements constitute a consignment under Section 9-102 of the Uniform Commercial Code ("UCC").  As such, the Prepetition Agents and the DIP Agents assert that under Article 9 of the UCC, the claimed retention of title is ineffective as against secured lenders and other creditors of the Debtors, unless and only to the extent that the Consignment Vendor has perfected its purchase money security interest in its goods in accordance with Article 9 of the UCC. The Consignment Vendors dispute the arguments put forth by the Debtors, Prepetition Agents and DIP Agents, respectively.

15.     Copies of the Motion, the Main Auction Bid Procedures, the Closing Store Lease Bid Procedures, the Bid Procedures Order, and the Assignment Procedures may be

obtained by parties in interest free of charge on the dedicated webpage related to the Debtors' chapter 11 cases maintained by the claims and noticing agent in these cases (http://kccllc.net/sportsauthority. Copies of such documents are also available for inspection during regular business hours at the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, and may be viewed for a fee on the internet at the Court's website (http://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

Dated: April ___, 2016
      Wilmington, Delaware

/s/ _____
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4454)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kenos@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Keith R. Martorana (NY No. 4576971)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Counsel to the Debtors and*
*Debtors in Possession*

01:18574344.1

6

## EXHIBIT 5

**Potential Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors. | Jointly Administered |
| | **Cure Cost Objection Deadline:**<br>**April 29, 2016 at 4:00 p.m. (ET)** |
| | **Stalking Horse Assignment Objection**<br>**Deadline: May 13, 2016 at 4:00 p.m. (ET)** |
| | **Closing Store Lease Sale Objection Deadline:**<br>**May 13, 2016 at 4:00 p.m. (ET)** |
| | **Main Auction Assignment Objection**<br>**Deadline: May 20, 2016 at 4:00 p.m. (ET)** |
| | **Main Auction Sale Hearing Date:**<br>**May 24, 2016 at 9:30 a.m. (ET)** |
| | **Closing Store Lease Sale Hearing Date:**<br>**May 25, 2016 at 9:30 a.m. (ET)** |

## NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALES

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    On March 2, 2016, the affiliated debtors and debtors in possession in the above-captioned cases (each a "<u>Debtor</u>," and collectively, the "<u>Debtors</u>") filed with the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") their motion [D.I. 106] (the "<u>Motion</u>") for the entry of: (a) an order (the "<u>Bid Procedures Order</u>"),[2] (i) scheduling an auction (the "<u>Auction</u>") and hearing (the "<u>Sale Hearing</u>") on approval of the proposed sale or

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order (including the Bid Procedures). Any summary of the Assignment Procedures and the Bid Procedures Order contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

disposition (the "Sale") of substantially all of the assets of the Debtors (the "Assets") or any portion thereof, free and clear of all liens, claims, encumbrances, and other interests, except certain permitted encumbrances as determined by the Debtors and any purchaser of the Assets (collectively, the "Encumbrances and Liabilities"), to the Successful Bidder(s) and authorizing the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assigned Contracts") in connection therewith; (ii) authorizing and approving certain proposed bid procedures for the Sale (collectively, the "Bid Procedures"), certain proposed assumption and assignment procedures for the Assigned Contracts (collectively, the "Assignment Procedures"), and the form and manner of notice thereof; and (iii) granting related relief; and (b) an order (the "Sale Order"), (i) authorizing and approving the Debtors' entry into an agreement with the Successful Bidder(s) for all or a portion of the Assets; (ii) authorizing and approving the Sale, free and clear of all Encumbrances and Liabilities; (iii) authorizing and approving the assumption and assignment of the Assigned Contacts in connection therewith; and (iv) granting related relief.

       2.     Subsequent to filing the Motion, the Debtors bifurcated the sale process and tendered a revised form of Bid Procedures Order contemplating separate timelines for (a) the sale of substantially all of the Debtors' assets, and (b) the assumption, assignment and transfer of certain unexpired leases of nonresidential real property subject to the Debtors' store closing plan.

       3.     On April 14, 2016, the Bankruptcy Court entered the Bid Procedures Order [D.I ___ ], thereby approving the Closing Store Lease Bid Procedures, the Main Auction Bid Procedures and the Assignment Procedures.

### Cure Costs and Related Objection Deadline

       4.     To facilitate the Sales, the Debtors are potentially seeking to assume and assign certain Contracts (collectively, the "Assigned Contracts") to any Successful Bidder, in accordance with the Assignment Procedures provided for in the Bid Procedures Order. Each of the Debtors' Contracts is identified on Exhibit 1 attached hereto. The inclusion of any Contract on Exhibit 1 does not constitute an admission that a particular Contract is an executory contract or unexpired lease of property or require or guarantee that such Contract will be assumed and assigned, and all rights of the Debtors with respect thereto are reserved. The cure amount (each, a "Cure Cost"), if any, that the Debtors believe is required to be paid to the applicable counterparty (each, a "Non-Debtor Counterparty," and collectively, the "Non-Debtor Counterparties") to each of the Contracts under section 365(b)(1)(A) and (B) of the Bankruptcy Code is identified on Exhibit 1 attached hereto.

       5.     If a Non-Debtor Counterparty objects to the Cure Costs for its Contract, the Non-Debtor Counterparty must file with the Bankruptcy Court and serve on the Notice Parties (as defined below) a written objection (a "Cure Cost Objection"). Any Cure Cost/Assignment Objection shall: (i) be in writing; (ii) state with specificity the nature of such objection, including the amount of Cure Costs in dispute; and (iii) be filed with the Bankruptcy Court and properly served on the Notice Parties so as to be received no later than **4:00 p.m. (ET) on April 29, 2016** (the "Cure Cost Objection Deadline"). The "Notice Parties" are as follows: (a) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. and Andrew L. Magaziner, Esq.),

and Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, (Attn: Robert A. Klyman, Esq. and Matthew J. Williams, Esq.), counsel to the Debtors; (b) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 1980 (Attn: Bradford J. Sandler, Esq., Robert J. Feinstein, Esq., and Jeffery N. Pomerantz, Esq.) proposed counsel to the Committee; (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Hannah J. McCollum, Esq.); (d) Riemer & Braunstein LLP, Three Center Plaza, Boston, Massachusetts 02108 (Attn: Donald E. Rothman, Esq.) as counsel for Bank of America, N.A., in its capacity as (A) DIP Agent under the proposed Debtor-in-Possession Credit Agreement, and (B) Administrative Agent and Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012; (e) Brown Rudnick LLP, Seven Times Square, New York, NY 10036 (Attn: Robert J. Stark, Esq. and Bennett S. Silverberg, Esq.) as counsel for (A) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (B) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (f) Choate, Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110 (Attn: Kevin J. Simard, Esq.) as counsel for Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015; and (g) O'Melveny & Meyers LLP, 7 Times Square, Broadway, New York, NY 10036 (Attn: John J. Rapisardi, Esq.), as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006.

### *Bid Deadlines and Delivery of Adequate Assurance Information*

6.    Pursuant to the Bid Procedures Order, the Debtors have until **April 28, 2016 at 5:00 p.m. (ET)** (the "Stalking Horse Bid Deadline") to obtain Stalking Horse Bids for the Main Auction Assets (if any).

7.    Pursuant to the Bid Procedures, a Potential Bidder that desires to make a bid for the Main Auction Assets shall deliver an electronic copy of its bid to the parties identified in the Bid Procedures so as to be received on or before **May 11, 2016 at 5:00 p.m. (ET)** (the "Main Auction Bid Deadline").

8.    Pursuant to the Bid Procedures, a Potential Bidder or Landlord that desires to make a bid solely for the Closing Store Leases shall deliver an electronic copy of its bid to the parties identified in the Bid Procedures so as to be received on or before **April 28, 2016 at 5:00 p.m. (ET)** (the "Closing Store Lease Bid Deadline").

9.    Within one business day following the Stalking Horse Bid Deadline, the Main Auction Bid Deadline and Closing Store Lease Bid Deadline, as applicable, the Debtors will deliver to each affected Non-Debtor Counterparty the Adequate Assurance Information (as defined in the respective Bid Procedures) related solely to any Bids received for the Non-Debtor Counterparty's applicable Contract; provided, however, that each Non-Debtor Counterparty shall keep such Adequate Assurance Information confidential, and shall be restricted from using or disclosing such information to any third party other than in connection with an Assignment

01:18574458.1

Objection (as defined below), and in the event that such Non-Debtor Counterparty files any such Assignment Objection, it shall file any portion of such pleading containing any Adequate Assurance Information under seal.  Delivery of the Adequate Assurance Information shall be made via e-mail to counsel for such Non-Debtor Counterparty (if such counsel and e-mail address have been previously identified to the Debtors by the Non-Debtor Counterparty or via the filing of a notice of appearance) or otherwise via overnight mail to the address of record for the Non-Debtor Counterparty.

### Main Auction Sale – Assignment Objections

10.     If a Non-Debtor Counterparty objects to the proposed assumption, assignment and/or transfer of its Contract (including the transfer of any related rights or benefits thereunder) to any Stalking Horse Bidder (including the identity of any adequate assurance of future performance provided by any Stalking Horse Bidder), the Non-Debtor Counterparty must file with the Bankruptcy Court and serve on the Notice Parties (as defined in paragraph 5 hereof) a written objection (a "Stalking Horse Assignment Objection").  Any Stalking Horse Assignment Objection shall:  (i) be in writing; (ii) state with specificity the nature of such objection; and (iii) be filed with the Bankruptcy Court and properly served on the Notice Parties so as to be received no later than **4:00 p.m. (ET) on May 13, 2016** (the "Stalking Horse Assignment Objection Deadline").

11.     If a Non-Debtor Counterparty objects to the proposed assumption, assignment and/or transfer of its Contract to any Successful Bidder or Next-Highest Bidder at the Main Auction (including the identity of and adequate assurance of future performance provided by such Successful Bidder or Next-Highest Bidder), including any supplemental objection to a Stalking Horse Bidder (initial objections to any Stalking Horse Bidder must be filed by May 13, 2016 at 4:00 p.m. (ET)), the Non-Debtor Counterparty must file with the Bankruptcy Court and serve on the Notice Parties a written objection (a "Main Auction Assignment Objection").  Any Main Auction Assignment Objection shall:  (i) be in writing; (ii) state with specificity the nature of such objection; and (iii) be filed with the Bankruptcy Court and properly served on the Notice Parties (as defined in paragraph 5 hereof) so as to be received no later than **4:00 p.m. (ET) on May 20, 2016** (the "Main Auction Assignment Objection Deadline").

### Closing Store Lease Sale – Assignment Objections

12.     Objections, if any, to the proposed assumption, assignment and/or transfer of a Contract to any Successful Bidder in the Closing Store Lease Auction (including the identity of and adequate assurance of future performance provided by such Successful Bidder) (such objection, a "Closing Store Assignment Objection, and collectively with the Stalking Horse Assignment Objections  and the Main Auction Assignment Objections, the "Assignment Objections") must (x) be in writing; (y) state with specificity the nature of such objection; and (z) be filed with the Court and properly served on the Notice Parties (as defined in paragraph 5 hereof) so as to be received no later than **4:00 p.m. (prevailing Eastern Time) on May 13, 2016** (the "Closing Store Assignment Objection Deadline").

*Sale Hearings*

13.      The Main Auction Sale Hearing, solely as it pertains to the Successful Bidder, shall take place on **May 24, 2016 at 9:30 a.m. (ET)**.  A subsequent hearing will be held, if necessary, on **May 27, 2016 at 10:00 a.m. (ET)** to consider approval of the Main Sale to the Next-Highest Bidder(s) in the event that the Successful Bidder(s) fails to close by the Closing Date (such hearing, the "Subsequent Main Sale Hearing").  The Main Auction Sale Hearing and/or the Subsequent Main Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Main Auction Sale Hearing or the Subsequent Main Sale Hearing, respectively, or by filing a notice, which may be a hearing agenda, stating the adjournment, on the docket of the Debtors' chapter 11 cases.

14.      The Closing Store Lease Sale Hearing shall take place on **May 25, 2016 at 9:30 a.m. (ET)**.  The Closing Store Lease Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Closing Store Lease Sale Hearing or by filing a notice, which may be a hearing agenda, stating the adjournment, on the docket of the Debtors' chapter 11 cases.

15.      At the Main Auction Sale Hearing, the Subsequent Main Sale Hearing and the Closing Store Lease Sale Hearing, the Debtors may seek Bankruptcy Court approval of the assumption and assignment to any Successful Bidder or Next-Highest Bidder, as applicable, of those Contracts that have been selected by the applicable Successful Bidder or Next-Highest Bidder to be assumed and assigned.  The Debtors and their estates reserve any and all rights with respect to any Contracts that are not ultimately assigned to the Successful Bidder or Next-Highest Bidder.

*Failure to File and Serve Objections*

16.      Any Non-Debtor Counterparty to a Contract who fails to timely file and properly serve a Cure Cost Objection or Assignment Objection as provided herein will (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtors and the Debtors shall be entitled to rely solely upon the Cure Costs, and (ii) be deemed to have consented to the assumption, assignment and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the relevant Successful Bidder or Next-Highest Bidder (if applicable) and shall be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder (or Next-Highest Bidder, if applicable) that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under such Contract, or that any related right or benefit under such Contract cannot or will not be available to the relevant Successful Bidder (or Next-Highest Bidder, if applicable).

*Procedures Governing Resolution of Cure Cost Objections and Assignment Objections*

17.      If a Non-Debtor Counterparty files a Cure Cost Objection satisfying the requirements of these Assignment Procedures, the Debtors and the Non-Debtor Counterparty

shall informally confer in good faith to attempt to resolve any such objection without Court intervention. If the applicable parties determine that the objection cannot be resolved without judicial intervention in a timely manner, the Court shall make all necessary determinations relating to such Cure Cost Objection at the appropriate time, provided, however, that (i) any Contract that is the subject of a Cure Cost Objection may be assumed and assigned prior to resolution of such objection, and (ii) the Debtors, in consultation with the Consultation Parties (as defined in the Bidding Procedures), may adjourn the hearing with respect to any Cure Cost Objection in their discretion; provided further that, pending the resolution of any Cure Cost Objection, the Debtors shall hold, in a segregated account, cash equal to 100% of the disputed amount of any such Cure Costs for applicable Contracts.

18.     Consideration of unresolved Stalking Horse Assignment Objections and Main Auction Assignment Objections, if any, will be held at the Main Auction Sale Hearing, except insofar as such objections relate solely to a Cure Cost dispute, in which case such objections may be adjourned in the Debtors' discretion.

19.     Consideration of unresolved Closing Store Assignment Objections, if any, will be held at the Closing Store Lease Sale Hearing, except insofar as such objections relate solely to a Cure Cost dispute, in which case such objections may be adjourned in the Debtors' discretion.

20.     A timely filed and properly served Cure Cost Objection or Assignment Objection will reserve the filing Non-Debtor Counterparty's rights relating to the Contract, but will not be deemed to constitute an objection to the Sales.

21.     The Debtors' assumption and/or assignment of a Contract is subject to approval by the Bankruptcy Court, consummation of a Main Auction Sale and/or a Closing Store Lease Sale, and receipt of a Confirmation Notice (as defined below). Absent consummation of a Sale, receipt of a Confirmation Notice and entry of a Sale Order approving the assumption and/or assignment of the Contracts, the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

22.     Within two (2) business days following the assumption and assignment of any Contract to the relevant Successful Bidder, the Debtors shall file with the Court and shall serve each Non-Debtor Counterparty whose Contract the Debtors assumed and/or assigned with a notice of assumption and assignment of such Contract (the "Confirmation Notice"). Any Contract for which no Confirmation Notice was served shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

23.     Copies of the Motion, the Bid Procedures, the Bid Procedures Order, and the Assignment Procedures may be obtained by parties in interest free of charge on the dedicated webpage related to these chapter 11 cases maintained by the claims and noticing agent in these cases (http:// www.kccllc.net/sportsauthority). Copies of such documents are also available for inspection during regular business hours at the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, and may be viewed for a fee on the internet at the

Bankruptcy Court's website (http://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

Dated: April ___ 2016
      Wilmington, Delaware

/s/ _____
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4454)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kenos@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Keith R. Martorana (NY No. 4576971)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Counsel to the Debtors and
Debtors in Possession*

**EXHIBIT 1**

**Assigned Contracts**

(attached)