**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline:  April 22, 2016 at 12:00 NOON (ET)**<br>**Hearing Date:  April 26, 2016 at 11:30 a.m. (ET)** |

## DEBTORS' MOTION FOR ORDER APPROVING
## KEY EMPLOYEE RETENTION PROGRAM

The Sports Authority, Inc. ("**Sports Authority**") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") hereby file this motion (this "**Motion**") for entry of an order approving the Debtors' key employee retention program for certain key, non-insider employees (the "**KERP**") and authorizing the payments contemplated thereunder.  In support of this Motion, the Debtors respectfully represent and set forth as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 105, 363(b), and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

2.      On March 2, 2016 (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**") with the United States Bankruptcy Court for the District of Delaware (the "**Court**").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.  No trustee or examiner has been appointed in these Chapter 11 Cases.  On March 10, 2016, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Committee**").

3.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Jeremy Aguilar in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 22] (the "**First Day Declaration**"), which was filed on the Petition Date.

## FACTS SPECIFIC TO THE RELIEF REQUESTED

4.      At this time, the Debtors have identified certain key, non-insider employees (the "**KERP Participants**") whose institutional knowledge and skill are essential to maximizing the value of the Debtors' estates during the Chapter 11 Cases.  The current KERP Participants are

identified on the schedule attached as Exhibit I to the KERP attached hereto as <u>Exhibit A</u>.[2]  In addition to maintaining most of their normal responsibilities related to the Debtors' operations and retail activity, the KERP Participants already have assumed, and will continue to assume, significantly greater responsibilities as a result of the Chapter 11 Cases.  The Debtors submit that payments made under the KERP are necessary to ensure key employees focus their efforts on maximizing estate value, and ultimately enabling recoveries to the Debtors' creditors.  Further, without the incentive provided by the KERP, the Debtors may lose certain of their most essential personnel.

5.      The Debtors and their advisors reviewed the Debtors' needs during the Chapter 11 Cases and the necessary features of a retention plan.  In concert with their advisors, the Debtors designed the KERP keeping in mind their goals of maximizing the value of their estates for the benefit of all interested parties and ensuring that their operations are conducted in an effective and stable manner while the Chapter 11 Cases are pending.  The Debtors designed the KERP in a reasonable, cost-effective way to ensure the commitment of the key personnel that will be essential to the Debtors' success.

6.      The Debtors also worked closely with their advisors to ensure that the KERP was competitive within the industry and that the incentives set for the KERP Participants were appropriate.  Moreover, the Debtors and their advisors considered a number of different retention plans that were previously approved by the Court, and developed the KERP to be comparable to plans similar in design and scope.  Finally, the Debtors allowed the Committee

---

[2]  To protect the privacy of the KERP Participants and minimize detrimental impacts on employee morale, Exhibit I to the KERP, which includes the names of the KERP Participants, their positions, salaries, and projected payments under the KERP will only be provided to the Court, the U.S. Trustee, the Debtors' prepetition and post-petition secured lenders, and the Committee.  The Debtors have contemporaneously filed herewith a motion requesting the Court's authorization to file an unredacted copy of the KERP under seal.

and the Term Loan Agent (defined below) an opportunity to review and comment on the KERP prior to filing the Motion, and neither of these parties oppose the relief requested herein.

<u>**DESCRIPTION OF THE KERP**</u>

7.      The KERP Participants have the relevant expertise and knowledge of the Debtors' operations that make it essential that the KERP Participants remain employed while the Chapter 11 Cases are pending.  The KERP Participants include employees from various functions, including, but not limited to, accounting, finance, human resources, information technology, legal, operations and sourcing/planning.  Without the guaranteed payments under the proposed KERP, the KERP Participants are more likely to seek alternative employment, harming the value of the estates and affecting the efficiency of the Debtors' efforts during the Chapter 11 Cases.

8.      While several KERP Participants have titles that include words such as "vice president" or "director" suggesting officer status, none of the KERP Participants are in reality insiders.  Although the KERP Participants are important to the Debtors' business and will be particularly vital during the Chapter 11 Cases, they do not have access to strategic inside information, nor do they have the ability to influence the direction of the Debtors' business operations.  None of the KERP Participants was appointed by, or reports directly to, the Sports Authority Board of Directors, and none of the KERP Participants reports directly to the Chief Executive Officer.  Many of the KERP Participants' duties are limited to an individual division and may be further limited to specific offices or locations.  In each case, the KERP Participants' scope of authority is limited.  Merely holding a title of vice president or director conveys no special privileges within the Debtors' corporate hierarchy.

4

9.        An overview of the KERP is as follows:[3]

Participation:  At this time, the Debtors have limited participation in the KERP to certain critical non-insider employees.  However, the Debtors reserve the right, in their reasonable business judgment, to select additional non-insider KERP Participants upon notice to the U.S. Trustee, the Debtors' prepetition and post-petition secured lenders, and the Committee.   The KERP Participants represent a cross-section of various functions of the Debtors, including accounting, finance, human resources, information technology, legal, operations and sourcing/planning.

Cost:  The aggregate cost of the KERP shall be no greater than $1,250,000.

Retention Bonus:   The Retention Bonus paid to each KERP Participant will be a lump sum amount, with those KERP Participants who are the most critical and irreplaceable eligible for the largest Retention Bonuses.   The Retention Bonus of each KERP Participant is set forth in Exhibit A.   The Debtors reserve the right, in their reasonable business judgment, to reallocate Retention Bonuses among KERP Participants upon notice to the U.S. Trustee, the Debtors' prepetition and post-petition secured lenders, and the Committee.

Retention Bonus Schedule:   Each KERP Participant's Retention Bonus shall be paid upon the latest to occur of (a) 75 days following the Court's approval of a sale of substantially all of the Debtors' assets, and/or, a liquidation process, or (b) if applicable, confirmation of a chapter 11 plan.

Termination Provisions:  As set forth in greater detail in Exhibit A, any KERP Participant that voluntarily resigns, or is terminated for cause, prior to payment of a Retention Bonus, will forfeit his or her Retention Bonus.    The Debtors reserve the right, in their reasonable business judgment, to make forfeited payments available to other employees or reallocate forfeited payments among the other eligible KERP Participants, upon notice to the U.S. Trustee, the Debtors' prepetition and post-petition secured lenders, and the Committee.

---

[3]  The KERP is attached as Exhibit A.  The summary below is qualified in all respects by reference to the KERP itself.

**RELIEF REQUESTED**

10.     By this Motion, the Debtors respectfully request entry of an order approving the KERP and authorizing the payments thereunder.

**BASIS FOR RELIEF REQUESTED**

11.     A company's decision to file for chapter 11 necessarily creates difficulties for its employees and can lead to retention problems, low morale and low productivity. Unfortunately, these negative consequences affect a debtor's ability to maximize the value of their estates and achieve the highest possible value for their stakeholders.  For this reason, bankruptcy courts have long authorized thoughtful retention plans designed to reduce disruption to employees while improving morale and incentivizing job performance.  Courts have routinely approved payments under these plans pursuant to section 363(b) of the Bankruptcy Code as an exercise of the Debtors' business judgment.

12.     The Debtors seek approval of the KERP in order to increase the likelihood that the proceeds received by the Debtors through the sale or liquidation of their assets are maximized, as well as preserved, during the Chapter 11 Cases.  These goals cannot be met without the support of the KERP Participants.  It is possible that a number of the KERP Participants will confront the loss of employment in the near future; therefore, it is crucial that the Debtors maintain the loyalty of these key employees to deliver their best performance throughout the Chapter 11 Cases.  Indeed, the loss of any of the KERP Participants will likely reduce the value of the Debtors' estates and disrupt their efforts in the Chapter 11 Cases.  The KERP Participants are highly skilled, and their skill and institutional knowledge are critical to the Debtors' efforts during the Chapter 11 Cases.  Without the implementation of the KERP, the KERP Participants are likely to pursue other employment at a time when the services that they

6

provide to the Debtors are still critically important.  For this reason, the Debtors must be afforded the chance to implement the KERP to offer incentives and protections that will maximize creditor recoveries and reduce the likelihood of the KERP Participants' departure.

**A.      The KERP is Not Prohibited by Section 503(c) of the Bankruptcy Code.**

13.      The KERP provides retention payments to non-insider employees and is therefore not subject to the requirements of section 503(c)(1) or (2) of the Bankruptcy Code, which apply only to insiders.  Section 101(31)(B) of the Bankruptcy Code defines an insider as any director, officer, person in control of the debtor, partnership where the debtor is a general partner, general partner of the debtor, or relative of a general partner, director, officer, or person in control of the debtor.  *See* 11 U.S.C. § 101(31)(B).  None of the KERP Participants meet this definition.

14.      The Court previously held that any person holding an officer's title is presumptively an officer and thus an insider.  *In re Foothills Texas, Inc.*, 408 B.R. 573 (Bankr. D. Del. 2009).  In *Foothills Texas* the Court held that "A party seeking to rebut that presumption must present evidence sufficient to establish that the person holds the title of an officer in name only and, in fact, does not meet the substantive definition of the same, *i.e.*, he or she is not taking part in the management of the debtor."  *Id*. at 574-75.

15.      As demonstrated above, the KERP Participants do not report directly to the Sports Authority Board of Directors or Chief Executive Officer.  Indeed, the majority of the KERP Participants report to intermediate managers.  *See In re Global Aviation Holdings Inc*., 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) (finding that director-level employees were not "officers" because none of them were members of board, participated in corporate governance, attended board meetings or reported to board).  Many of the KERP Participants' duties are limited to sales or support functions and may be restricted to a particular division.  Courts have

declined to find insider status where the scope of authority is quite limited.  *See In re Borders Grp., Inc.*, 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011) (employees in key employee retention plan were not insiders because none of them had authority to implement company policy, did not report to board of directors and were subordinate to actual officers).  The titles the KERP Participants have been given reflect the employees' individual functions and roles, but do not reflect an officer's status.  *See In re NMI Sys., Inc.*, 179 B.R. 357, 370 (Bankr. D.D.C. 1995) (finding that vice president was not insider because he was conferred title "for purposes of marketing" only and was not "in the inner circle making the company's critical financial decisions.").  In sum, the KERP Participants are officers in name only.  They do not take part in the overall management of the Debtors, do not direct or implement company policy, and do not report to the Debtors' Board of Directors or Chief Executive Officer.  Therefore, they are not "insiders."[4]

   16. Similarly, the KERP complies with section 503(c)(3) of the Bankruptcy Code.  Section 503(c)(3) prohibits transfers made "outside the ordinary course of business and not justified by the facts and circumstances of the case."  Courts that have analyzed the prohibition on "other transfers" have applied the same standard under that section as they do under section 363(b) of the Bankruptcy Code: namely, whether the decision to use estate property outside of the ordinary course of business is based on a sound exercise of the debtor's business judgment.  *See In re Dana Corp.*, 358 B.R. at 576 (Bankr. S.D.N.Y 2006) (test for compensation program under section 503(c)(3) is the same as the "business judgment" test); *In re Nobex*, 2006 WL 4063024, at *3 (Bankr. D. Del. Jan. 19, 2006) (section 503(c)(3) is essentially reiteration of standard under section 363).

---

[4]  The Debtors are prepared to submit at the hearing on this Motion additional evidence necessary to rebut any presumption of insider status conferred by the KERP Participants' titles.

17.     The KERP has been designed by the Debtors and their advisors to incentivize performance and ensure continued employment within the parameters of sections 363(b) and 503(c) of the Bankruptcy Code.   As described in detail below, the implementation of the KERP is a valid exercise of the Debtors' business judgment pursuant to section 363(b) of the Bankruptcy Code.

**B.      The KERP is a Valid Exercise of the Debtors' Business Judgment Pursuant to Section 363(b) of the Bankruptcy Code.**

18.     Section 363(b)(1) provides that the debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when a "sound business purpose" justifies such action.   *See, e.g., Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (holding that section 363(b) requires that "there must be some articulated justification for using, selling, or leasing the property outside the ordinary course of business"); *The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification).

19.     Once the Debtors have articulated a valid business purpose for use of the property, a presumption arises that the Debtors' decision is made on an informed basis, in good faith, and in the honest belief that the action is in the best interest of the company.   *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992).   A party in interest seeking to challenge the debtor's

valid business purpose must "produce some evidence supporting its objections." *Montgomery Ward*, 242 B.R. at 155.

20.     To maintain a cohesive and motivated workforce during a bankruptcy process, debtors frequently implement retention programs.  Without such programs, essential employees will leave a debtor's employ to pursue other employment opportunities offering greater financial rewards rather than enduring the uncertainties inherent in the bankruptcy process.  Implementation of the KERP is a proper exercise of the Debtors' business judgment. First, the Debtors, in consultation with their advisors, engaged in a careful process to identify the KERP Participants as key contributors to the Debtors and these Chapter 11 Cases.  Second, as described above, the Debtors and their advisors considered a number of different retention plans that were previously approved by this Court, and developed the KERP to be comparable to plans similar in design and scope.  Considering these relevant comparable retention plans, the Debtors and their advisors designed the KERP in a reasonable and cost-effective way to promote the Debtors' goal of maximizing the value of their assets during the Chapter 11 Cases.

21.     Implementing the KERP as proposed will allow the Debtors to combat the declines in employee morale that have arisen from the Debtors' current circumstances, and the unease that employees have developed regarding the commencement of the Chapter 11 Cases. At this critical time in the chapter 11 process, the Debtors seek approval of the KERP in order to increase the likelihood that the proceeds received by the Debtors through the sale or liquidation of their assets are maximized, as well as preserved, during the Chapter 11 Cases.  In addition, the KERP should prevent the KERP Participants from seeking alternative employment while the Chapter 11 Cases are pending.   The harm to the value of the Debtors' estates, which will occur

if key employees depart for other opportunities during the Chapter 11 Cases, cannot be overstated.

22.     In light of the foregoing, the Debtors believe that the KERP is reasonable and appropriate and that the requested approval of the KERP will allow the Debtors to retain and motivate employees to maximize the value of their estates.  The approval of the KERP is therefore in the best interest of the Debtors, their creditors, and their estates.

**C.     The KERP is Also Appropriate Under Section 105(a) of the Bankruptcy Code.**

23.     As set forth in detail above, the KERP is critical to the Debtors' efforts to maximize the value of their estates during the Chapter 11 Cases.  Maintaining employee morale among the KERP Participants that function in various segments of the Debtors' operations is critical to maximizing return for the Debtors' creditors and other parties in interest.  Therefore, the costs associated with the KERP are reasonable and necessary and are justified by the benefits that the Debtors will realize as a result of the services of the KERP Participants.

**D.     The 14-Day Stay Should Be Waived.**

24.     Finally, the Debtors request a waiver of the 14-day stay that would otherwise apply to the Court's approval of the KERP pursuant to Bankruptcy Rule 6004(h).  In order to implement the foregoing successfully, the Debtors must be able to provide certainty to the KERP Participants that they will be compensated for their efforts to maximize value of the Debtors' estates.  Therefore, the Court should approve the waiver of the 14-day stay under Bankruptcy Rules 6004(h).

**NOTICE**

25.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) Riemer & Braunstein LLP (attn.: Donald Rothman) as counsel for (i) Bank of America, N.A., in its capacity as Administrative Agent and Collateral Agent under the Second Amended and

Restated Credit Agreement, dated as of May 17, 2012, and (ii) certain DIP Lenders under the Debtors' proposed postpetition financing facility; (c) Brown Rudnick LLP (attn.: Robert Stark and Bennett Silverberg) as counsel for (i) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent (the "**Term Loan Agent**") under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010 and (ii) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated as of November 16, 2010; (d) Choate, Hall & Stewart LLP (attn.: Kevin Simard) as counsel for (i) Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015, and (ii) certain DIP Lenders under the Debtors' proposed postpetition financing facility; (e) O'Melveny & Meyers LLP (attn: John Rapisardi) as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (f) all holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (g) proposed counsel to the Committee; and (h) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no other notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit B, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:  April 15, 2016
        Wilmington, Delaware

/s/ Kenneth J. Enos
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kenos@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

Counsel to the Debtors