# EXHIBIT A

**Key Employee Retention Program**

**THE SPORTS AUTHORITY, INC.**
**KEY EMPLOYEE RETENTION PROGRAM**

**Objective and Participants**

The Sports Authority Key Employee Retention Program (the "**KERP**") is designed to provide retention payments (the "**Retention Bonuses**") to certain key, non-insider employees (collectively, the "**KERP Participants**") of The Sports Authority, Inc. and certain of its affiliates (collectively, the "**Debtors**") in order to increase the likelihood that the proceeds received by the Debtors through the sale or liquidation of their assets are maximized, as well as preserved, during the Debtors' chapter 11 cases (the "**Chapter 11 Cases**").

At this time, the Debtors have identified as KERP Participants those individuals whose institutional knowledge and skill are essential to maximizing the value of the Debtors' estates during the Chapter 11 Cases. The KERP Participants are identified in the schedule attached hereto as <u>Exhibit I</u>.[1] In addition to maintaining most of their normal responsibilities related to the Debtors' operations and retail activity, the KERP Participants already have assumed, and will continue to assume, significantly greater responsibilities as a result of the Chapter 11 Cases. The Debtors submit that payments made under the KERP are necessary to ensure key employees focus their efforts on maximizing estate value, and ultimately enabling recoveries to the Debtors' creditors. Further, without the incentive provided by the KERP, the Debtors may lose certain of their most essential personnel.

As a condition precedent to any obligation of the Debtors to pay a Retention Bonus to a KERP Participant, each KERP Participant shall, upon or within thirty (30) days prior to the date

---

[1] To protect the privacy of the KERP Participants and minimize detrimental impacts on employee morale, the names of the KERP Participants, their positions, salaries, and projected payments under the KERP will only be provided to the Court, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), the Debtors' prepetition and post-petition secured lenders, and the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "**Committee**"). The Debtors have contemporaneously filed herewith a motion requesting the Court's authorization to file an unredacted copy of the KERP under seal.

01:18476675.6

that such payment is made to the KERP Participant or such KERP Participant otherwise becomes entitled to such payment, be required to fully execute and return to the Debtors a general release and waiver of claims (the "**Release**"), in substantially the form attached hereto as Exhibit II. The Debtors shall have no obligation to pay a Retention Bonus, and shall not pay a Retention Bonus, to any KERP Participant who does not execute the Release or who otherwise revokes the Release within any revocation period afforded by applicable law.

**Description of the KERP**

The KERP Participants have relevant expertise and knowledge of the Debtors' operations that make it essential that the KERP Participants remain employed while the Chapter 11 Cases are pending. The KERP Participants include employees from various functions, including, but not limited to, accounting, finance, human resources, information technology, legal, operations and sourcing/planning. Without the guaranteed payments under the proposed KERP, the KERP Participants are more likely to seek alternative employment, harming the value of the estates and affecting the efficiency of the Debtors' efforts during the Chapter 11 Cases. A description of the KERP is as follows:

> Participation: At this time, the Debtors have limited participation in the KERP to certain critical non-insider employees. However, the Debtors reserve the right, in their reasonable business judgment, to select additional non-insider KERP Participants upon notice to the U.S. Trustee, the Debtors' prepetition and post-petition secured lenders, and the Committee. The KERP Participants represent a cross-section of various functions of the Debtors, including accounting, finance, human resources, information technology, legal, operations and sourcing/planning.
>
> Cost: The aggregate cost of the KERP shall be no greater than $1,250,000.
>
> Retention Bonus: The Retention Bonus paid to each KERP Participant will be a lump sum amount, with those KERP Participants who are the most critical and irreplaceable eligible for the largest Retention Bonuses. The Retention Bonus of each KERP Participant is set forth in Exhibit A. The Debtors reserve the right, in their reasonable business judgment, to reallocate Retention Bonuses among KERP

Participants upon notice to the U.S. Trustee, the Debtors' prepetition and post-petition secured lenders, and the Committee.

Retention Bonus Schedule:  Each KERP Participant's Retention Bonus shall be paid upon the latest to occur of (a) 75 days following the Court's approval of a sale of substantially all of the Debtors' assets, and/or, a liquidation process, or (b) if applicable, confirmation of a chapter 11 plan.

Termination Provisions:  As set forth in greater detail below, any KERP Participant that voluntarily resigns, or is terminated for cause, prior to payment of a Retention Bonus, will forfeit his or her Retention Bonus.  The Debtors reserve the right, in their reasonable business judgment, to make forfeited payments available to other employees or reallocate forfeited payments among the other eligible KERP Participants, upon notice to the U.S. Trustee, the Debtors' prepetition and post-petition secured lenders, and the Committee.

**Termination of Employment**

In the event that a KERP Participant is terminated without cause, his or her Retention Bonus shall be paid upon 30 days following the execution of the Release.  Any KERP Participant that retires, dies, voluntarily resigns, or is terminated for cause, shall not be entitled to any Retention Bonus after the termination of his or her employment.

For purposes of the KERP, the term "for cause" means, either before or after adoption of the KERP:

- The arrest or conviction (or plea of guilty or nolo contendere) of a KERP Participant for any felony, or other crime involving dishonesty or moral turpitude;

- A finding by the Debtors' management that a KERP Participant engaged in willful misconduct, or was grossly negligent, in the performance of his or her duties;

- Unlawful use of narcotics or other controlled substances in a manner the management reasonably determine to be adverse to the best interests of the Debtors;

- A material and direct conflict of interest, not specifically waived in advance by the Debtors;

- Unauthorized use or disclosure of confidential information that belongs to the Debtors, their customers or employees;

- Repeated absences from work that management reasonably determines to be materially adverse to the best interests of the Debtors;

- Refusal to follow the instructions of a direct supervisor or from a member of the Debtors' board of directors; or

- Other material misconduct including, but not limited to: falsification of the Debtors' records, theft, sexual harassment, or possession of firearms, controlled substances or illegal drugs on the Debtors premises or while performing the Debtors' business.

**Further Actions**

As a condition to each KERP Participant's eligibility to participate in the KERP, each KERP Participant shall agree to take such further actions as are reasonably requested by the Debtors, including such actions as the Debtors may request subsequent to termination of employment by the Debtors.

**Change of Address**

The KERP Participants shall be responsible for notifying the Debtors of any change of address before payment is made by written notification to Douglas Garrett, The Sports Authority Inc., 1050 West Hampden Avenue, Englewood, Colorado 80110.

**No Promise of Continued Employment**

The KERP and any KERP Participant's selection as a participant in the KERP does not, and is in no manner intended to constitute, a promise of employment for any period of time or to change a KERP Participant's status, if applicable, as an at will employee subject to termination at any time for any reason.

**Taxes**

All payments made pursuant to the KERP shall be subject to standard withholding and deductions.  Neither the Debtors nor their officers or agents make or has made any representation

about the tax consequences of any payments or benefits offered by the Debtors to any KERP Participant.

**Choice of Law and Venue**

The KERP shall be governed by the laws of the State of Delaware, notwithstanding that State's conflict of law provisions. The Debtors and each of the KERP Participants shall irrevocably and unconditionally consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). The Debtors and each of the KERP Participants shall irrevocably and unconditionally waive any objection to the laying of venue of any action, suit, or proceeding arising out of or related to the KERP in the Bankruptcy Court and shall further irrevocably and unconditionally waive and agree not to plead or claim that any such action, suit or proceeding brought in the Bankruptcy Court has been brought in an inconvenient forum.

**Entire Agreement and Amendment**

This document constitutes the complete, final and exclusive embodiment of the terms and conditions of the KERP and may only be modified in writing signed by an authorized officer of the Debtors. Any agreement between any KERP Participant and the Debtors with regard to the KERP and its subject matter is superseded in its entirety by this document.

**No Assignment**

The rights of a KERP Participant or any other person to any payment or other benefits under the KERP may not be assigned, transferred, pledged, or encumbered except by will or the laws of descent and distribution.

**EXHIBIT I**

**DOCUMENT TO BE KEPT UNDER SEAL**

01:18476675.6

# **EXHIBIT II**

**FORM WAIVER AND RELEASE AGREEMENT**

01:18476675.6

## **RELEASE**

This GENERAL RELEASE ("**Release**") dated as of this _____ day by _____ (the "**Participant**").

WHEREAS, the Participant [was / is] an employee of The Sports Authority, Inc. and / or certain of its direct and indirect affiliates (collectively, the "**Company**"); and

WHEREAS, pursuant to The Sports Authority, Inc. Key Employee Retention Program (the "**KERP**"), Participant is eligible for certain incentive compensation, contingent upon the full execution of this Release.

NOW, THEREFORE, in consideration of the premises and mutual agreements contained in the KERP, the Participant agrees as follows:

1. Participant, on Participant's own behalf and on behalf of Participant's heirs, estate and beneficiaries, does hereby release the Company, and any and all of its affiliates, and each past or present officer, director, agent, employee, shareholder, and insurer of any such entities (collectively, the "**Released Parties**"), from any and all claims made, to be made, or which might have been made of whatever nature, whether known or unknown, from the beginning of time, including those that arose as a consequence of Participant's employment by the Company, or arising out of the severance of such employment relationship, or arising out of any act committed or omitted during or after the existence of such employment relationship, all up through and including the date on which this Release is executed, including, but not limited to, those which were, could have been or could be the subject of an administrative or judicial proceeding filed by Participant or on Participant's behalf under federal, state or local law, whether by statute, regulation, in contract or tort, and including, but not limited to, every claim for front pay, back pay, wages, bonus, fringe benefit, any form of discrimination (including but not limited to, every claim of race, color, sex, religion, national origin, disability or age discrimination), wrongful termination, emotional distress, pain and suffering, breach of contract, compensatory or punitive damages, interest, attorney's fees, reinstatement or reemployment. If any court rules that such waiver of rights to file, or have filed on Participant's behalf, any administrative or judicial charges or complaints is ineffective, Participant agrees not to seek or accept any money damages or any other relief upon the filing of any such administrative or judicial charges or complaints. Participant acknowledges and agrees that even though claims and facts in addition to those now known or believed by Participant to exist may subsequently be discovered, it is Participant's intention to fully settle and release all claims Participant may have against the Released Parties, whether known, unknown or suspected.

2. The Participant has been informed and acknowledges that Participant is also releasing any rights or claims Participant may have against the Released Parties under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq*. ("**ADEA**"), up to and including the date of execution of this Release. Participant acknowledges that Participant has consulted with an attorney before signing this Release, and further understands that Participant has a period of twenty-one (21) days during which time Participant may consider whether to accept the terms of this Release. Participant has a right to revoke this Release as far

01:18476675.6

as it extends to potential claims under the ADEA, by informing the Company of Participant's intent to revoke this Release within seven (7) calendar days following its execution.  To be effective, written notice of revocation must be delivered by hand or overnight mail to the Company's general counsel at the following address:  Douglas Garrett, The Sports Authority Inc., 1050 West Hampden Avenue, Englewood, Colorado 80110.  No payments or benefits shall be provided to the Participant pursuant to the KERP until Participant executes this Release and the revocation period described in this paragraph has expired.

3. The Company and Participant acknowledge and agree that the releases contained in Paragraphs 1 and 2 do not, and shall not be construed to, release or limit the scope of any existing obligation of the Company (i) to indemnify Participant for Participant's acts as an employee of the Company  in accordance with the bylaws of the Company and the policies and procedures of the Company that are presently in effect; (ii) to Participant and Participant's eligible, participating dependents or beneficiaries under any existing group welfare or retirement plan of the Company in which Participant and/or such dependents are participants; or (iii) to the Participant under the terms of the KERP, including any rights Participant may have to incentive compensation payments following the execution of this Release.

IN WITNESS WHEREOF, the parties have executed this Release on the date first above written.

PARTICIPANT

_____

THE COMPANY

By:_____

01:18476675.6