**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 16-10527 (MFW) |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | (Jointly Administered) |
| Debtors. | **Hearing Date: April 26, 2016 at 11:30 a.m. (ET)** |
| | **Objections Due: April 19, 2016 at 12:00 p.m. (ET)** |

**TERM LOAN AGENT'S OMNIBUS OBJECTION**
**TO LANDLORDS' MOTIONS TO COMPEL PAYMENT OF STUB RENT**

Wilmington Savings Fund Society, FSB, as successor administrative and collateral agent (together, the "Term Loan Agent") under that certain Amended and Restated Credit Agreement, dated as of November 16, 2010, by and among The Sports Authority, Inc., as the Borrower, Slap Shot Holdings Corp., as Holdings, Wilmington Savings Fund Society, FSB, as successor Administrative Agent and Collateral Agent to Bank of America, N.A, and the lenders from time to time party thereto, hereby files this objection (the "Objection") to the motions, and joinders to such motions, of certain landlords (collectively, the "Landlords") to compel the Debtors to pay certain prepetition rent obligations (the "Stub Rent").[2]  In support of this Objection, the Term Loan Agent respectfully states as follows:

**PRELIMINARY STATEMENT**

1.     The Debtors are at a critical point in their chapter 11 cases.  The store closing sales have commenced, the bid procedures have just been approved and the 363 sale process is

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The Debtors' headquarters are located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2]     The motions, and joinders to such motions, to which this Objection applies are set forth on Exhibit A attached hereto (collectively, the "Stub Rent Motions").

underway, but the ultimate case outcome is not yet certain. The Debtors are still engaged in sensitive negotiations with their DIP Lenders regarding the final DIP financing package, with the final DIP hearing having been postponed multiple times while the parties negotiate the DIP Budget.[3]

2.      In the midst of this uncertainty, the Term Loan Agent understands the Landlords' desire to have their claims for Stub Rent paid immediately. But, the Bankruptcy Code is clear that the Landlords' Stub Rent claims are administrative expense claims, which are typically paid at the end of a chapter 11 case on the effective date of a plan of reorganization. Obtaining expedited payment of an administrative expense claim is exceptional relief. The Term Loan Agent respectfully submits that such relief is not appropriate here.

3.      These cases are at a crossroads. We have not had the final DIP hearing; there have been no discussions up to this point regarding a potential plan of reorganization; the order approving the bid procedures was entered less than a week ago; we have not received indicative bids yet (the bid deadline is not until May 11, 2016). With DIP financing negotiations ongoing, the Debtors' liquidity position is already unsettled, and layering in an additional $8.1 million in administrative expense claims that are usually paid at the end of a chapter 11 case would drain the Debtors' limited resources and put further stress on the Debtors' business. Moreover, approval of the immediate payment of the Landlords' administrative expense claims would likely open the floodgates to similar requests from the Debtors' other administrative expense claimants, including landlords that have not filed a Stub Rent Motion, seeking immediate payment of their claims. The Debtors have not even filed their schedules of assets and liabilities or their statements of financial affairs, with the deadline for such filings having been extended to May

---

[3]      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the *Declaration of Jeremy Aguilar in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief*, dated March 2, 2016 [Docket No. 22].

16, 2015.  We simply do not know where these cases are going, and, accordingly, the relief requested in the Stub Rent Motions is inappropriate at this time.

4.      Further, as the Term Loan Agent has asserted in a number of previous pleadings and declarations, the Term Loan Agent's collateral position appears to be deteriorating.  Use of the Term Loan Agent's cash collateral to make the immediate payment of Stub Rent, which the Debtors estimate at approximately $8.1 million, will further erode the Term Loan Agent's collateral interests.   Absent proof that the Term Loan Agent is adequately protected, the administrative expense claims for Stub Rent should not be paid at this time.

## OBJECTION

### I.      The Immediate Payment Of Stub Rent Is Inappropriate At This Time.

5.      When considering whether to authorize immediate payment of administrative expense claims, courts in this district typically analyze three factors:  (i) the prejudice to the debtors; (ii) the hardship to the claimant; and (iii) the potential detriment to other creditors.  In re Garden Ridge Corp., 323 B.R. 136, 143 (Bankr. D. Del. 2005); HQ Global Holdings, 282 B.R. 169, 172-73 (Bankr. D. Del. 2002).  Here, these factors militate against the immediate payment of Stub Rent.

6.      First, the Debtors would be prejudiced by the immediate payment of Stub Rent. The payment of Stub Rent at this point in the case is premature.  The final DIP hearing has not yet occurred and the final DIP Budget is still being negotiated between the Debtors and the DIP Lenders.   The prior DIP Budget did not provide for the immediate payment of Stub Rent. Debtors' Omnibus Reply [Docket No. 991], at ¶ 75.  Compelling the payment of approximately $8.1 million in previously un-budgeted Stub Rent would substantially reduce the Debtors' liquidity position and inhibit the Debtors' ability to maximize the value of the estates through the store closing and 363 sale processes.  Moreover, as the Debtors contend, the payment of $8.1

million in un-budgeted Stub Rent could result in covenant defaults under the DIP Credit Agreement at a time when the Debtors are still in sensitive negotiations with the DIP Lenders regarding the DIP Budget.  See id.  Such a default would prejudice all stakeholders who might benefit from the sale process that is currently underway.

7.      Second, there is no evidence before the Court supporting a claim of hardship on behalf of the Landlords if the Stub Rent is not paid immediately.  For example, there is no evidence that the immediate payment of Stub Rent is necessary to keep any of the Landlords in business.  See In re Global Home Prods., LLC, No. 06-10340, 2006 WL 1791955, at *5 (Bankr. D. Del. Dec. 21, 2006) (Carey, J.) (denying landlord request for immediate payment of stub rent and noting, with respect to the hardship factor, that there was no evidence that the landlord would go out of business if the stub rent were not immediately paid).

8.      Finally, immediate payment of Stub Rent would be to the detriment of other creditors.  The immediate payment of the Landlords' administrative expense claims ahead of other administrative expense claimants would conflict with two of the fundamental goals of bankruptcy:  the orderly and equal distribution among creditors and the prevention of a race to the Debtors' assets.  See In re HQ Global Holdings, 282 B.R. at 169.  The Debtors operate more than 450 store locations, and only a subset of the Debtors' landlords have filed Stub Rent Motions.  Immediate payment of Stub Rent would likely precipitate further demands from the Debtors' other landlords, exacerbating the strain on the Debtors' liquidity.  Further, if Stub Rent is paid immediately, other administrative expense claimants may seek the immediate payment of their administrative expense claims, precipitating a potential "race to the Debtors' assets" and distracting the Debtors from focusing on the 363 sale process.  Moreover, the Landlords' Stub Rent claims may be satisfied in connection with the sale process through cures.  Under the

circumstances, the Term Loan Agent submits that the better way to manage the Stub Rent claims is to include them in the bar date process so that the Debtors can reconcile and administer these claims in an orderly fashion.

**II.    The Court Should Not Authorize Immediate Payment Of Stub Rent Without Determining That The Term Loan Agent's Interests Are Adequately Protected.**

9.      Pursuant to Bankruptcy Code Section 363(e), the Court cannot authorize the use of the Term Loan Agent's cash collateral to immediately pay Stub Rent unless the Court determines that the Term Loan Agent's interests are adequately protected.  Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 67 (2d Cir. 1998) ("If a debtor seeks authorization to use cash collateral from the bankruptcy court under § 363(c)(2)(B), rather than seeking consent of a secured creditor under § 363(c)(2)(A), the bankruptcy court 'shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection' for the secured creditor's interest.") (citing 11 U.S.C. § 363(e).

10.     The Landlords bear the burden of proving, through clear and convincing evidence, that the Term Loan Agent's interests are adequately protected.  In re Las Torres Development, L.L.C., 413 B.R. 687, 694-95 (S.D. Tex. 2009) ("The parties requesting court approval to use cash collateral over the secured creditor's objection must prove there is adequate protection for that creditor.") (citing 11 U.S.C. § 363(p)(1)); In re Carbone Cos., Inc., 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008); N. Trust Co. v. Leavell (In re Leavell), 56 B.R. 11, 13 (Bankr. S.D. Ill. 1985) ("[T]he Bankruptcy Code places a high burden of proof on the party requesting the use of cash collateral….  [Such party] must prove by clear and convincing evidence that the secured creditor will realize the value of its bargain in light of all the facts and circumstances of the case.") (citing In re Sheehan, 38 B.R. 859, 868 (Bankr. S.D. 1984)).

11.    The Landlords have not provided any evidence that the Term Loan Agent's interests would be adequately protected if the Stub Rent were immediately paid.  The only evidence before the Court indicates that the Term Loan Agent's collateral interests are materially deteriorating.  Absent evidence proving that the Term Loan Agent's interests are adequately protected, the Court should not approve the immediate payment of Stub Rent.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Term Loan Agent respectfully requests that the Court deny the relief requested in the Stub Rent Motions and grant such other and further relief as the Court deems just and proper.

Dated: April 19, 2016
   Wilmington, Delaware

        **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

        */s/ Daniel B. Butz*
        Robert J. Dehney (No. 3578)
        Gregory W. Werkheiser (No. 3553)
        Daniel B. Butz (No. 4227)
        1201 N. Market St., 16th Floor
        P.O. Box 1347
        Wilmington, DE  19899-1347
        Tel: 302-658-9200
        Fax: 302-658-3989
        Email: rdehney@mnat.com
          gwerkheiser@mnat.com
          dbutz@mnat.com

          - and -

        **BROWN RUDNICK LLP**
        Robert J. Stark (admitted *pro hac vice*)
        Bennett S. Silverberg (admitted *pro hac vice*)
        Seven Times Square
        New York, NY 10036
        Tel: (212) 209-4800
        Fax: (212) 209-4801

        *Counsel to Wilmington Savings*
        *Fund Society, FSB, as Term Loan Agent*