**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-10527 (MFW)<br><br>Jointly Administered<br><br>**Ref. Docket Nos. 709, 789, 797, 939, 1014, 1024, 1025, 1033, 1037, 1067, 1081, 1086, 1089, 1109, 1133, 1146, 1147, 1167, 1172, 1176, 1177, 1182, 1190, 1196, 1208, 1211, and 1212** |

### DEBTORS' OMNIBUS OBJECTION TO STUB RENT MOTIONS

Sports Authority Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby submit this omnibus objection (this "Objection") to the various motions for immediate payment of administrative claims filed by certain landlords (collectively, the "Landlords") related to the Debtors' use and occupancy of certain store locations during the period March 2-31, 2016 (collectively, the "Stub Rent Motions").[2]  In further support of this Objection, the Debtors respectfully represent as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

[2] The Stub Rent Motions include Docket numbers 709, 789, 797, 939, 1014, 1024, 1025, 1033, 1037, 1067, 1081, 1086, 1089, 1109, 1111, 1133, 1146, 1147, 1167, 1172, 1176, 1177, 1182, 1190, 1196, 1208, 1211, 1212, any joinders thereto, and any similar requests for relief.  Certain landlords also filed objections to the Debtors' store closing motion (Docket No. 15) on the basis that the Debtors should pay stub rent as a condition to conducting store closing sales.  The Debtors' reply to those objections is set forth on pages 38-44 of Docket No. 991.

01:18588531.2

**PRELIMINARY STATEMENT**

1.      It is well established under Third Circuit law that the Debtors are not required to pay rent that came due prepetition.  Here, the dispute is over the rent that came due on March 1, 2016, the day before the Debtors commenced these cases.  By virtue of the Stub Rent Motions, the Landlords seek an end run around that law that imperils the Debtors' ability to maximize value for stakeholders.

2.      Landlords receive statutorily-mandated adequate protection payments in the form of current lease payments pursuant to section 365(d)(3) of title 11 of the United States Code (the "Bankruptcy Code").  For landlords with above market leases, this provision over-compensates them for the Debtors' use and occupancy of the applicable property.  For landlords with below market leases, it is likely that their leases will be assumed (and possibly assigned) such that stub rent will be paid as part of the cure.  Perhaps for these reasons, no Landlord has articulated a harm that will befall it if stub rent is not immediately paid.

3.      This is not so for the Debtors. The Debtors are working to manage their liquidity and stabilize their businesses.  If the Stub Rent Motions are granted, the Debtors risk being in default under their debtor-in-possession financing facility since the Stub Rent Motions seek immediate remittance of $5.9 million in un-budgeted payments.  What's more, such a ruling will open the floodgates, and the Debtors will risk drowning in a sea of requests for immediate payment of myriad administrative expense claims.  Indeed, motions for immediate payment of stub rent owed to all of the Debtors' landlords (beyond movants here) could collectively result in remittance of as much as $27.6 million in un-budgeted payments.  Conversely, denying the Stub Rent Motions will accommodate the payment of lease obligations dictated by the Bankruptcy Code, avoid potentially disastrous consequences to the Debtors, and ensure that the petitioning

Landlords' administrative expense claims are determined and paid on the same timeline as other administrative expense claims.

## BACKGROUND

**A.     General Background**

4.      On March 2, 2016 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

5.      The Debtors lease approximately 460 store locations.  In accordance with section 365(d)(3) of the Bankruptcy Code, the Debtors have remained current on all obligations arising after the Petition Date under their unexpired leases of nonresidential real property.

**B.     The Stub Rent Motions**

6.      The Stub Rent Motions were filed by 65 Landlords with respect to 87 stores.[3] Collectively, they seek immediate payment of approximately $5.9 million in so-called stub rent.[4] None of the Stub Rent Motions is supported by a declaration or other admissible evidence; and none of the Stub Rent Motions articulates a particularized harm that might befall any landlord if stub rent is not immediately paid.

---

[3]  A chart of the Stub Rent Motions and the stores they cover is annexed hereto as Exhibit A.

[4]  Although the amounts in question are referred to herein as "stub rent," the Debtors do not concede that the rate of rent specified in the applicable lease necessarily applies; and the Debtors reserve all rights to argue that any particular landlord's administrative expense claim should be less than the amount set forth in the applicable lease.

01:18588531.2

3

**OBJECTION**

A. **Section 365(d)(3) Does Not Require Immediate Payment of Stub Rent**

7. Section 365(d)(3) of the Bankruptcy Code provides, in pertinent part, that the "trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property . . . ." 11 U.S.C. § 365(d)(3).

8. The Third Circuit has adopted the "billing date" approach for determining when an obligation arises under a lease. *See In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 208-212 (3d Cir. 2001); *see also In re HQ Global Holdings, Inc.*, 282 B.R. 169, 172-73 (Bankr. D. Del. 2002) (following *Montgomery Ward*'s "billing date" approach and holding that immediate payment of stub rent is not required by section 365(d)(3)). Thus, in the Third Circuit, an "obligation arises under a lease for the purposes of 11 U.S.C. § 365(d)(3) when the legally enforceable duty to perform arises under that lease." *Montgomery Ward*, 268 F. 3d at 211; *see also HQ Global Holdings*, 282 B.R. at 172-73 (following *Montgomery Ward*).

9. The instant case falls squarely within the foregoing authorities. Here, as in *Montgomery Ward*, the Debtors' obligation to pay March rent became a legally enforceable duty to perform on the first day of March, before these bankruptcy cases were filed. *Cf. HQ Global Holdings*, 282 B.R. at 173 ("In this case the Debtors were obligated to pay the entire March rent in advance on March 1, 2002. The leases do not require payment on a pro-rata basis. The Debtors were therefore legally obligated to pay the March rent before the [March 13] Petition Date. Thus, we cannot conclude that section 365(d)(3) requires the payment of the Stub Rent."). Accordingly, section 365(d)(3) does not apply to the March rent. Rather, the Landlords have an administrative expense claim for March rent that will be reconciled and addressed later in these cases, at the same time as other alleged administrative expense claims. *See also In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818-20 (3d Cir. 2010) (holding that "Landlords are entitled

to receive payment under Bankruptcy Code § 503(b)(1) for use of their nonresidential real property during the stub period").

B.   **The Landlords Have Not Met the Requirements for Immediate Payment of Their Administrative Expense Claims for Stub Rent**

10.   To be clear, the Debtors agree that the Landlords will have administrative expense claims related to the Debtors' use and occupancy of their properties during the month of March. However, the Debtors do not believe that the Landlords have met their burden to show that immediate payment of such administrative expense claims is warranted under the circumstances.

11.   Courts in this District have applied the following three factors in determining whether to order the immediate payment of an administrative expense claim: (i) the prejudice to the debtors; (ii) the hardship to the claimant; and (iii) the potential detriment to other creditors. *See In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005); *HQ Global Holdings*, 282 B.R. at 173. In applying this standard, courts defer to the debtor's business judgment in deciding whether to immediately pay administrative expense claims. *See In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 617 (Bankr. D. Del. 2008), *aff'd* 401 B.R. 656 (D. Del. 2009), *aff'd* 610 F.3d 812 (3d Cir. 2010) ("[A] debtor's decision as to the timing of the payment of claims is generally inside the ordinary course of the debtor's business. Certainly a decision relating to the payment of rent by these Debtors, which lease and operate approximately 300 stores, is inside the Debtors' ordinary course of business. As such, the Debtors' decision is entitled to deference . . . ."). Thus, "courts have consistently declined to require immediate payment of stub rent in similar circumstances." *Goody's*, 392 B.R. at 617 (Bankr. D. Del. 2008) (citing *In re Chi-Chi's, Inc.*, 305 B.R. 396, 401-02 (Bankr. D. Del. 2004) and *HQ Global Holdings*, 282 B.R. at 175).

12. The application of the foregoing factors compels denial of the Stub Rent Motions and other requests for payment of the March stub rent. First, immediate payment of stub rent will prejudice the Debtors. Remittance of $5.9 to $27.6 million in stub rent payments will, at a minimum, reduce the Debtors' liquidity by a concomitant amount and thereby harm the Debtors' efforts to stabilize their business during this critical juncture of the sale process. Indeed, several Landlords acknowledge that the Debtors' debtor-in-possession financing budget does not account for immediate payment of stub rent. Although they posit that the Debtors' lack of budgetary authority to make the payments counsels in favor of ordering immediate payment, the Debtors respectfully submit that the opposite is true. If the Stub Rent Motions are granted, the Debtors could face a covenant default under their debtor-in-possession financing as a result of making approximately $5.9 million in un-budgeted payments. If other landlords file similar requests, the Debtors could be forced to remit upwards of $27.6 million in unbudgeted payments. All of this threatens to derail the Debtors' stabilization and sale efforts.

13. Second, the Landlords have not shown the requisite hardship. "To qualify for exceptional immediate payment, a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'" *In re Continental Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D. Del. 1992) (quoting *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 178-79 (Bankr. S.D.N.Y. 1989)); *see also In re Bookbinders' Rest., Inc.*, 2006 Bankr. LEXIS 3749, *23 (Bankr. E.D. Pa. Dec. 28, 2006) (denying motion to pay 503(b)(9) claim despite contention that the debtor's monthly operating reports proved it had sufficient cash to make the payments). No Landlord has presented any compelling reason, let alone any evidence, as to why there is a necessity that it be paid immediately. *Cf. Goody's*, 392 B.R. at 617 (Bankr. D. Del. 2008)

(declining to order immediate payment of stub rent claims, finding, among other things, that there was no evidence that delay in payment would harm or prejudice the landlords).

14. Third, paying stub rent now to the Landlords will prejudice other creditors. "[O]ne of the chief factors courts consider [in determining whether to pay an administrative claim early] is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets." *In re Global Home Prods., LLC*, 2006 Bankr. LEXIS 3608, at *10-11 (Bankr. D. Del. Dec. 21, 2006) (citation omitted); *HQ Global Holdings*, 282 B.R. at 173. Accordingly, courts generally deny requests for payment of stub rent prior to confirmation if there is a risk that the bankruptcy estate may not be able to pay all of the administrative expenses in full. *HQ Global Holdings*, 282 B.R. at 173.

15. The Debtors are operating all of their stores for the benefit of their creditors (including their landlords). Ordering immediate payment of stub rent to a certain subset of landlords would serve to favor that group of landlords over all other landlords, as well as other non-landlord creditors that hold administrative expense claims. This Court has specifically identified such a preference as a reason to deny a party's request for stub rent. *See, e.g.*, *HQ Global Holdings*, 282 B.R. at 173 ("one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors"). Further, immediate payment of the petitioning Landlords' administrative expense claims will only serve to encourage numerous other administrative expense creditors to seek payment of their claims in an undesirable "race to [the] debtor's assets." *Global Home Prods.*, 2006 Bankr. LEXIS 3608 at *10-11 (citation omitted); *HQ Global Holdings*, 282 B.R. at 173 (Bankr. D. Del. 2002).

16. Nonetheless, several Landlords argue that the debtors cannot "pick-and-choose among their administrative expenses, paying some (like attorneys' fees) in full and others (like

01:18588531.2

7

stub rent payable to landlords) in part, or not at all." Docket No. 1024 at 4; Docket No. 1025 at 4; *see also* Docket No. 1033 at 5 (arguing that the landlord "should not bear a disproportionate share of the risk that Debtors eventually may be unable to fully compensate its administrative creditors on an administrative priority basis"). Judge Sontchi expressly rejected this argument in *Goody's*, finding that "[t]he Landlords' argument that delaying the payment for stub rent while immediately paying other administrative claims inequitably treats their unpaid claims from the paid claims is fundamentally flawed." *Goody's*, 392 B.R. at 615. The court further observed, on facts similar to those in this case, that "a debtor's decision as to the timing of the payment of claims is generally inside the ordinary course of the debtor's business. Certainly a decision relating to the payment of rent by these Debtors, which lease and operate approximately 300 stores, is inside the Debtors' ordinary course of business. As such, the Debtors' decision is entitled to deference. . . ." *Id.* at 616. The Court should follow suit and defer to the Debtors' business judgment related to the timing of the payment of claims for stub rent.

C.  **The Landlords are Adequately Protected by Sections 365(d)(3) and 503(b) of the Bankruptcy Code**

17. Several of the petitioning Landlords contend that sections 105(a), 361, and 363(e) of the Bankruptcy Code require that the Debtors provide them with "adequate protection." As noted above, section 365(d)(3) of the Bankruptcy Code provides landlords with statutorily-mandated adequate protection in the form of current payment of lease obligations when those obligations come due. This special form of adequate protection is not available to other administrative expense creditors. As a result, courts have concluded that landlords must look to their remedies under sections 365(d)(3) and 503(b) in seeking adequate protection of their interest in a lease. *See, e.g.*, *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) ("Segregating the Stub Rent has the same effect as providing adequate protection or

01:18588531.2

8

granting a security interest to the Landlords. Such rights have no basis in the Bankruptcy Code and go beyond the rights granted under section 365(d)(3) or 503(b)."); *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) ("among the cases which have discussed a landlord's entitlement to adequate protection, none has been found in which the court held that a lessor was entitled to adequate protection payments at an amount higher than the rent reserved in the lease"); *see also In re Republic Techs. Int'l, LLC*, 267 B.R. 548 (Bankr. N.D. Ohio 2001) (personal property lessor's adequate protection rights defined by section 365(d)(10)).

18. In fact, section 365(d)(3) operates to overcompensate many of the Landlords. For those Landlords whose leases are above market, section 365(d)(3) ensures that they are paid, during the case, an amount that exceeds what they could obtain for their properties outside of bankruptcy (in the event of rejection), or in bankruptcy under section 503(b). In the absence of this special statutory provision, such Landlords would have administrative expense claims that are limited to the fair rental value of their properties. *See, e.g.*, *HQ Global Holdings*, 282 B.R. at 173 (observing that administrative expense claims for rent are limited to the "fair rental value of the [applicable] lessor's property actually used by the debtor").

19. The Debtors are (and will remain) in compliance with their obligations under section 365(d)(3) of the Bankruptcy Code. In addition, the Debtors do not dispute that the Landlords will have administrative expense claims relating to the Debtors' use and occupancy of their store locations from March 2, 2016 through March 31, 2016. In light of the foregoing, the Debtors believe that the petitioning Landlords are more than adequately protected.

**D.    Paying Stub Rent Now Will Unnecessarily Impair the Debtors' Liquidity**

20. The Debtors are currently marketing their business, including their lease portfolio, for sale. Any buyer will be required, as part of the purchase price, to cure any outstanding defaults under the leases that it seeks to acquire. This will include any unpaid stub rent. Thus,

the stub rent with respect to many of the Debtors' store locations may be paid by a third party in the near future.

21.  Given the unfolding sale process, there is no reason to substantially impair the Debtors' liquidity by ordering immediate payment of stub rent claims that may be paid by a third party in a little more than a month. This is particularly true given that no Landlord has articulated any harm that it will suffer by a short delay in the payment of stub rent. *Cf. HQ Global Holdings*, 283 B.R. at 175 ("[W]e agree with the Debtors' assertion that any decision on the amount and payment of the Stub Rent must await the Debtors' decision whether to assume or reject the leases. Assumption of the leases will moot the issue for many of the Landlords.").

**E.    The Court Should Delay a Determination of the Amount of Any Stub Rent Claims Arising Under Section 503(b) of the Bankruptcy Code**

22.  As noted above, the Debtors do not dispute that the Landlords will have administrative expense claims under section 503(b)(1)(A) of the Bankruptcy Code related to the Debtors' use and occupancy of applicable store locations during the period March 2-31, 2016. However, the amount of those administrative expense claims is limited to the "fair rental value of the [applicable] lessor's property actually used by the debtor." *HQ Global Holdings*, 282 B.R. at 173.

23.  The Debtors acknowledge that it is generally presumed that the "fair rental value" of a leased premises is an amount equal to the rate set forth in the applicable lease. *See, e.g.*, *In re F.A. Potts & Co., Inc.*, 173 B.R. 13, 18 (E.D. Pa. 1992). But, the Debtors are in the middle of a process whereby they are marketing each of their leases for sale. Through that process, the Debtors anticipate gathering evidence related to the fair rental value of their leases, including, without limitation, through the conduct of the lease auction process. Once the dust has settled on the Debtors' auction process they will be better positioned to assess which of their lease rates

constitute the "fair rental value" for the applicable properties.  Accordingly, the Debtors respectfully submit that the Court should delay any determination regarding the allowed amount of administrative expense claims for stub rent and refrain from ordering payment of those administrative expense claims until the amount thereof can be properly evaluated.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court deny the Stub Rent Motions.

Dated: April 19, 2016
      Wilmington, Delaware

*/s/ Andrew L. Magaziner*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mnestor@ycst.com
amagaziner@ycst.com

- and -

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*

## **Exhibit A**
Stub Rent Motions

01:18588531.2

| Docket No. | Landlord | Store Location | Store Number | Stub Rent[1] |
|---|---|---|---|---|
| 709 | DDR Corp. | Framingham, MA | 322 | $43,352 |
| | | Spring Hill, FL | 377 | $55,799 |
| | | Tucson, AZ | 777 | $48,562 |
| | Equity One, Inc. | Bronx, NY | 500 | $94,213 |
| | | Garden City, NY | 083 | $96,308 |
| | | Walnut Creek, CA | 055 | $57,426 |
| | Garden Commercial Properties, Inc. | Piscataway, NJ | 472 | $43,065 |
| | GGP Limited Partnership | Chicago, IL | 070 | $81,172 |
| | | Northbrook, IL | 072 | $63,990 |
| | | Columbia, MD | 082 | $51,533 |
| | | Ogden, UT | 330 | $37,759 |
| | National Realty Development Corp. | North Haven, CT | 153 | $88,023 |
| | Realty Income Corp. | Melbourne, FL | 362 | $57,958 |
| | | Orlando, FL | 363 | $43,097 |
| | | Daytona Beach, FL | 366 | $34,155 |
| | | Fort Myers, FL | 391 | $42,326 |
| | | El Paso, TX | 506 | $34,348 |
| | | Fredericksburg, VA | 535 | $53,494 |
| | | Geneva, IL | 585 | $42,077 |
| | Regency Centers Corp. | Township of Lower Nazareth, PA | 439 | $69,088 |
| | Rouse Properties, Inc. | Lakeland, FL | 383 | $35,379 |
| 789 | Mill Creek Mall, LLC | Secaucus, NJ | 458 | $131,030 |
| 797 | CBL & Associates Management, Inc. | Pearland, TX | 223 | $61,811 |
| 939 | Kimco Realty Corp. | Wilmington, DE | 455 | $42,298 |
| | | Wayne, NJ | 462 | $85,854 |
| | | Commack, NY | 492 | $71,490 |
| | | Towson, MD | 514 | $54,852 |
| | | St. Peters, MO | 752 | $37,865 |
| | | Mesa, AZ | 792 | $62,413 |
| 1014 | OWRF Baybrook LLC | Webster, TX | 230 | $51,769 |
| | SPG Arsenal, L.P. | Watertown, MA | 180 | $64,606 |
| | OCW Retail-Nashua, LLC | Nashua, NH | 164 | $44,371 |
| | Warwick Mall OP, LLC | Warwick, RI | 156 | $79,756 |
| | Gateway-DC Properties, Inc. | Montgomeryville, PA | 441 | $56,730 |

---

[1] The stub rent amounts listed herein are for reference only. The Debtors reserve all rights to challenge the amount of stub rent owed to any particular Landlord.

01:18588531.2

| | | | | |
|---|---|---|---|---|
| 1024 | Kukui Grove Center Investment Group, Inc. | Lihue, HI | 775 | $88,659 |
| 1025 | Maui Marketplace Investment Group, Inc. | Kahului, HI | 770 | $154,750 |
| 1033 | U.S. REIF Joliet SC Fee, LLC | Joliet, IL | 589 | $48,616 |
| 1037 | PB IL Oreo, LLC | Phoenix, AZ | 795 | $90,507 |
| 1067 | WP Glimcher Inc. | McAllen, TX | 244 | $76,510 |
| | | Altamonte Springs, FL | 359 | $50,883 |
| 1081 | Levin Management Corp. | Paramus, NJ | 466 | $110,089 |
| 1086 | Amherst Crossing AMA Realty Ventures, LLC | Amherst, NH | 149 | $76,684 |
| 1089 | Haines Center-Burlington, LLC | Burlington County, NJ | 843 | $189,453 |
| 1109 | Ledgewood Investors, LLC | Ledgewood, NJ | 470 | $21,303 |
| 1111 | IA Boynton Beach Congress, LLC | Boynton Beach, FL | 352 | $42,167 |
| | IA San Antonio Stone Ridge LLC | San Antonio, TX | 235 | $65,941 |
| | IA League City Victory Lakes L.P. | League City TX | 233 | $47,371 |
| | Inland American South Frisco Village LLC | Frisco, TX | 238 | $48,716 |
| 1133 | Ramco-Gershenson Properties, L.P. | Fort Collins, CO | 110 | $57,031 |
| | | Jensen Beach, FL | 355 | $37,057 |
| | | Clinton Township, MI | 594 | $33,241 |
| | | Delafield, WI | 629 | $51,133 |
| | Janaf Shopping Center, LLC | Norfolk, VA | 537 | $31,176 |
| | U.S. 41 & I 285 Company, LLC | Atlanta, GA | 425 | $68,725 |
| | Bayshore Town Center, LLC | Glendale, WI | 621 | $82,592 |
| | Edens Plaza, LLC | Wilmette, IL | 076 | $27,751 |
| | Randhurst Improvements, LLC | Mt. Prospect, IL | 619 | $50,985 |
| | Burbank Realty Company, LLC | Burbank, IL | 573 | $30,895 |

01:18588531.2

2

| 1146 | Westlake Promenade, LLC | Westlake Village, CA | 685 | $66,532 |
|---|---|---|---|---|
| 1147 | CCA-Renaissance Square Shopping Center, LLC | Cedar City, UT | 310 | $3,672 |
| 1167 | Shops at Bella Terra Owner, LP | Richmond, TX | 239 | $36,724 |
| | RioCan America Management, L.P. o/b/o: Route 28 Salem, LP | Salem, NH | 160 | $68,635 |
| 1172 | RioCan America Management, L.P. o/b/o: Inland Western Austin Southpark II Meadows LP | Austin, TX | 245 | $55,328 |
| | RioCan America Management, L.P. o/b/o: CSC Cross Keys LP | Sewell, NJ | 456 | $62,869 |
| 1176 | James Campbell Company LLC | Romeoville, IL | 820 | $169,303 |
| | JCC California Properties, LLC | Novato, CA | 680 | $90,968 |
| | IREIT Mansfield Pointe, LLC | Mansfield, TX | 204 | $48,385 |
| | IREIT Lake St. Louis Hawk Ridge, LLC | St. Louis, MO | 754 | $45,752 |
| 1177 | RE Income Omaha Whispering Ridge, LLC | Omaha, NE | 598 | $47,523 |
| | Inland Continental Property Management Corp. as managing agent for Yuma Palms 1031, LLC | Yuma, AZ | 698 | $39,895 |
| | Hillsboro 1031 DST | Hillsboro, OR | 739 | $88,940 |
| 1182 | Excel Stockton LP | Stockton, CA | 656 | $48,181 |
| | Excel Gilroy LP | Gilroy, CA | 657 | $45,484 |
| | Merrillville Partners | Merrillville, IN | 611 | $39,523 |
| | Clark Street Investors, LLC | Chicago, IL | 606 | $134,698 |
| 1190 | HC Niles Developers, LLC | Niles, IL | 601 | $75,280 |
| | Next Gateway, LLC | Chicago, IL | 617 | $66,176 |
| | Schaumburg Associates | Schaumburg, IL | 605 | $69,176 |

01:18588531.2

3

| | | | | |
|---|---|---|---|---|
| 1196 | Plaza Las Americas, Inc. | San Juan, PR | 89 | $156,687 |
| | PDC Fringe II, LLC | Ponce, PR | 90 | $77,419 |
| 1208 | Ward Gateway Industrial Village, LLC | Honolulu, HI | 771 | $301,148 |
| | Summerlin Centre, LLC | Las Vegas, NV | 789 | $65,275 |
| 1211 | OPCLK, LLC | Lenexa, KS | 273 | $91,489 |
| | Cocoplum Associates | North Port, FL | 397 | $77,101 |
| | Pelsota, LLC | Sarasota, FL | 395 | $39,699 |
| | Sarasota Associates | Sarasota, FL | 379 | $129,128 |
| 1212 | Buckhead Pavilion, LLC | Atlanta, GA | 417 | $64,460 |