IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SPORTS AUTHORITY HOLDINGS, INC.,<br>*et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 16-10527 (MFW)<br>(Jointly Administered)<br><br>**Objection Deadline: May 12, 2016 at 4:00 p.m.**<br>**Hearing Date: May 25, 2016 at 11:00 a.m.** |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SPORTS AUTHORITY HOLDINGS, INC. ET AL., PURSUANT TO 11 U.S.C. §§ 328(a) AND 1103, FED. R. BANKR. P. 2014 AND 5002, AND LOCAL R. 2014-1 (I) AUTHORIZING RETENTION AND EMPLOYMENT OF HOULIHAN LOKEY CAPITAL, INC. AS INVESTMENT BANKER, *NUNC PRO TUNC*, TO MARCH 13, 2016 AND (II) MODIFYING CERTAIN REQUIREMENTS OF DEL. BANKR. L.R. 2016-2**

The Official Committee of Unsecured Creditors (the "Committee") of Sports Authority Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") hereby files this application (the "Application") seeking entry of an order under sections 328(a) and 1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the employment and retention of Houlihan Lokey Capital, Inc. ("Houlihan Lokey") as investment banker to the Committee and (ii) modifying certain requirements of Del. Bankr. L.R. 2016-2. In support of this Application, the Committee submits and incorporates by reference the Declaration of

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

Christopher Di Mauro, attached hereto as "**Exhibit B**" (the "Di Mauro Declaration"). In further support of the Application, the Committee respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory and procedural predicates for the relief requested herein are Bankruptcy Code sections 328(a) and 1103(a), Bankruptcy Rules 2014 and 5002 and Local Rule 2014-1.

## BACKGROUND

2. On March 2, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). Since the Petition Date, the Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in these cases. On March 3, 2016, the Court entered an order providing for the joint administration of the Debtors' chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

3. On March 10, 2016, pursuant to Bankruptcy Code section 1102, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee. The Committee currently consists of the following seven members: (i) TCW/Crescent Mezzanine Partners; (ii) New York Life Investment Management Mezzanine Partners, LP; (iii)

Nike, Inc.; (iv) Asics America Corp.; (v) GGP Limited Partnership; and (vi) Realty Income Corporation.[2]

4. On March 10, 2016, pursuant to Bankruptcy Code section 1103(a), the Committee selected Pachulski Stang Ziehl & Jones LLP to serve as its counsel. On March 13, 2016, the Committee selected Houlihan Lokey to serve as the Committee's investment banker.

## RELIEF REQUESTED

5. By this Application, the Committee requests that the Court enter an order (i) authorizing the Committee to employ and retain Houlihan Lokey as its investment banker, for the purpose of advising the Committee during all phases of the Debtors' chapter 11 cases, pursuant to the terms of the agreement, dated as of March 13, 2016, attached hereto as "**Exhibit A**" (the "Engagement Agreement"), which is incorporated herein by reference, and (ii) granting a waiver of compliance with the information requirements relating to compensation requests set forth in Local Rule 2016-2, to the extent requested herein.

6. The Committee brings this Application because of the critical importance of a investment banker to assist in the performance of its duties. The Committee believes that Houlihan Lokey is well qualified to provide investment banking services and that the terms of its retention are reasonable.

## HOULIHAN LOKEY'S QUALIFICATIONS

7. Houlihan Lokey is a nationally recognized investment banking and financial advisory firm, with 21 offices worldwide and more than 1,200 professionals. Houlihan Lokey's Financial Restructuring Group, which has more than 170 professionals, is one of the leading

---

[2] A seventh member, Stitching Pensioenfonds ABP, was originally named to the Committee but resigned shortly after the Committee was appointed.

advisors and investment bankers to unsecured and secured creditors, debtors, acquirers, and other parties-in-interest involved in financially troubled companies based in a variety of industries and requiring complex financial restructurings, both in and outside of bankruptcy. Houlihan Lokey has been, and is, involved in some of the largest restructuring cases in the United States, including representing official committees recently in <u>In re Furniture Brands, International, Inc.</u>, Case No. 13-12329 (CSS) (Bankr. D. Del. Sept. 9, 2013); <u>In re THQ, Inc.</u>, Case No. 12-13398 (MFW) (Bankr. D. Del. Dec. 19, 2012); <u>In re Overseas Shipping Group, Inc.</u>, Case No. 12-20000 (PJW) (Bankr. D. Del. Nov. 14, 2012); <u>In re Arcapita Bank B.S.C.</u>, Case No. 12-11076 (SHL) (Bankr. S.D.N.Y. Mar. 19, 2012); <u>In re Gen. Growth Props.</u>, No. 09-11977 (ALG) (Bankr. S.D.N.Y Apr. 16, 2009); <u>In re Chemtura Corp.</u>, No. 09-11233 (REG) (Bankr. S.D.N.Y. Mar. 18, 2009); <u>In re Smurfit-Stone Container Corp.</u>, Case No. 09-10235 (BLS) (Bankr. D. Del. Jan. 26, 2009); <u>In re WCI Communities Inc.</u>, Case No. 08-11643 (KJC) Bankr. D. Del. Aug. 4, 2008); <u>In re SemGroup LP</u>, Case No. 08-11525 (BLS) (Bankr. D. Del. Jul. 22, 2008); <u>In re Lehman Brothers Holdings Inc.</u>, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Sept. 15, 2008); <u>In re Delta Airlines, Inc.</u>, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 14, 2005); <u>In re Refco, Inc.</u>, Case No. 05-60006 (RDD) (Bankr. S.D.N.Y. Oct. 17, 2005); <u>In re WorldCom, Inc.</u>, Case no. 02-13533 (AJG) (Bankr. S.D.N.Y. July. 21, 2002); <u>In re Enron Corp.</u>, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Dec. 2, 2001). In addition, Houlihan Lokey has been involved in restructuring situations representing debtors, including recent retentions on: <u>In re The Wet Seal, Inc.</u>, Case No. 15-10081 (CSS) (Bankr. D. Del. Jan. 15, 2015); <u>In re Deb Stores Holding LLC</u>, Case No. 14-12676 (KG) (Bankr. D. Del. Dec. 4, 2014); <u>In re Trump Entertainment Resorts, Inc.</u>, Case No. 14-12103 (KG) (Bankr. D. Del. Sept. 9, 2014); <u>In re Gridway Energy Holdings, Inc.</u>, Case No. 14-10833 (CSS) (Bankr. D. Del. May 14, 2014); <u>In re Northhampton Generating Co., LP</u>, Case

No. 11-33095 (JCW) (Bankr. W.D.N.C. Dec. 5, 2011); In re AES Thames, L.L.C., No. 11-10334 (KJC) (Bankr. D. Del. Feb. 1, 2011); In re MSR Resort Golf Course LLC, Case No. 11-10372 (SHL) (Bankr. S.D.N.Y. Feb. 1, 2011); In re Truvo USA LLC, No. 10-13513 (AJG) (Bankr. S.D.N.Y July 1, 2010); In re Mark IV Indus., Inc., Case No. 09-12705 (SMB) (Bankr. S.D.N.Y. Apr. 30, 2009); In re Premier Inter. Holdings, Inc., Case No. 09-12019 (CSS) (Bankr. D. Del. Jun. 13, 2009); In re Aventine Renewable Energy Holdings, Inc., Case No. 09-11214 (KG) (Bankr. D. Del. Apr. 7, 2009); In re Foamex Inter. Inc., Case No. 09-10560 (KJC) (Bankr. D. Del. Feb. 18, 2009); and In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Jan. 22, 2008).

8. In light of the size and complexity of the Debtors' chapter 11 cases, the Committee requires the services of a seasoned and experienced investment banker that is familiar with the Debtors' businesses and operations and the chapter 11 process and that can enable the Committee to adequately assess and participate in meaningful negotiations regarding the potential sales of the Debtors' assets or potential plan of reorganization. The Committee believes that Houlihan Lokey is well qualified to provide its services in a cost-effective, efficient and timely manner. Houlihan Lokey will coordinate with the other retained professionals in the chapter 11 cases to eliminate unnecessary duplication or overlap of work. The Committee submits that the employment and retention of Houlihan Lokey would be in the best interest of the Debtors' estates and their unsecured creditors.

## SCOPE OF SERVICES TO BE RENDERED

9. As further set forth in the Engagement Agreement, the Committee has requested that Houlihan Lokey serve as its investment banker during the Debtors' chapter 11 cases to perform the following services on behalf of the Committee:

a) Analyzing business plans and forecasts of the Debtors;

b) Assessing the financial issues and options concerning (i) the sale of the Debtors, either in whole or in part, and (ii) the Debtors' chapter 11 plan(s) of reorganization or liquidation or any other chapter 11 plan(s);

c) Providing such financial analyses as the Committee may require in connection with the Cases;

d) Assisting in the determination of an appropriate capital structure for the Debtors;

e) Assisting with a review of the Debtors' employee benefit programs, including key employee retention, incentive, pension and other post-retirement benefit plans;

f) Analyzing strategic alternatives available to the Debtors;

g) Review and analysis of any M&A bids received by the Debtors;

h) Evaluating the Debtors' debt capacity in light of its projected cash flows;

i) Assisting the Committee in identifying potential alternative sources of liquidity in connection with any debtor-in-possession financing, any chapter 11 plan(s) or otherwise;

j) Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

k) Providing testimony in court on behalf of the Committee with respect to any of the foregoing, if necessary; and

l) Providing such other investment banking services as may be required by additional issues and developments not anticipated on the Effective Date, as described in Section 5 of the Agreement.

The Committee also has retained BDO Consulting ("BDO") as its financial advisor. The Committee will work closely with both Houlihan Lokey and BDO to ensure that there is no unnecessary duplication of effort or cost.

10. The Committee hereby requests that the Court approve Houlihan Lokey's retention nunc pro tunc to March 13, 2016. This is appropriate because, since that date, Houlihan Lokey has been providing critical services to the Committee, including (but not limited to) reviewing extensive operating information, marketing materials and additional due diligence information provided by the Debtors; participating in meetings and other regular

6

communications with the Debtors' advisors and other parties-in-interest; analyzing various issues confronting the Debtors; reviewing and providing input on motions and related documentation being filed with the Court in connection with these chapter 11 cases; negotiating the proposed terms of the Debtors' bid procedures, debtor-in-possession financing, and other key documents on behalf of the Committee; providing testimony in Court; and communicating with the Committee and its representatives regarding such matters.

## TERMS OF HOULIHAN LOKEY'S RETENTION

11. Houlihan Lokey has agreed to provide assistance to the Committee in accordance with the terms and conditions which are set forth in the Di Mauro Declaration filed in support of this Application and in the Engagement Agreement which is appended hereto as "**Exhibit A**" and incorporated herein by reference.[3]

12. As described more fully in the Engagement Agreement, Houlihan Lokey will be entitled to receive the following, as compensation for its services:

- a) *Monthly Fees*: Houlihan Lokey shall be paid in advance a nonrefundable monthly cash fee of $125,000 ("Monthly Fee"). The first payment shall be made upon the approval of the Engagement Agreement by the Bankruptcy Court and shall be in respect of the period as from the Effective Date through the month in which payment is made. Thereafter, payment of the Monthly Fee shall be made on every monthly anniversary of the Effective Date during the term of this Agreement. Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein; and

- b) *Deferred Fee*: In addition to the other fees provided for herein, the Debtors shall pay Houlihan Lokey a fee (the "Deferred Fee") to be paid in cash as follows:

---

[3] Unless otherwise defined in this section and the section titled "Scope of Services to be Rendered", capitalized terms shall have the meanings ascribed to them in the Engagement Agreement.

7

a. In the event of (i) a Chapter 11 plan of reorganization, (ii) a Sale Transaction[4], or (iii) a Chapter 11 or Chapter 7 plan of liquidation, the Deferred Fee to be paid in cash shall be $1,600,000 plus 1.0% of the Total Consideration[5] (as defined below), if any, received by the unsecured creditors in the Cases.

b. In the event of a Chapter 11 or Chapter 7 plan of liquidation that includes the liquidation of all of the Debtors stores, the Deferred Fee to be paid in cash shall be $1,250,000.

The Deferred Fee shall be earned and payable upon the earlier of (i) the effective date of such Chapter 11 plan of reorganization or Chapter 11 or Chapter 7 plan of liquidation, with respect to the Debtors (a "Plan") or (ii) the closing of a Sale Transaction.

13. In addition to all of the other fees and expenses described in the Engagement Agreement, the Debtors shall, upon Houlihan Lokey's request and in accordance with applicable orders of the Bankruptcy Court, reimburse Houlihan Lokey for its reasonable out-of-pocket

---

[4] Sale Transaction. Any transaction or series of related transactions that constitute the disposition to one or more third parties (including, without limitation, any person, group of persons, partnership, corporation or other entity, and also including, among others, any of the Debtors' existing owners, shareholders, employees, creditors and/or the affiliates of each) in one or a series of related transactions of (a) all or a material portion of the equity securities of the Debtors or any interest held by the Debtors, any direct or indirect subsidiary or affiliate in any joint venture or partnership or other entity formed by any of them and/or (b) all or substantially all of the assets (including the assignment of any executory contracts) or operations of the Debtors or any joint venture or partnership or other entity formed by it, in either case, including, without limitation, through a sale or exchange of capital stock, options or assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction, including, without limitation, any sale transaction under Sections 363, 1129 or any other provision of Title 11, United States Code (II U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") (each a "Sale Transaction").

[5] For purposes hereof, "Total Consideration" shall mean the total aggregate amounts paid by the Debtors on account of allowed unsecured claims against the Debtors pursuant to the Plan (including, without limitation, any amounts held in escrow or in claims reserves). Total Consideration shall include, without limitation: (a) cash; (b) notes, securities (including, but not limited to, debt and/or equity) or other property; (c) payments made in installments; (d) contingent payments (whether or not related to future earnings or operations); and (e) other interests or consideration. For purposes of computing any fees payable to Houlihan Lokey hereunder, non-cash consideration shall be valued as the greatest of: (I) if the value of such non-cash consideration is disclosed in a court approved disclosure statement in support of the Plan, the value of such non-cash consideration in such disclosure statement; (II) if such non-cash consideration includes
equity securities that are publicly traded prior to the effective date of the Plan, the value of such securities shall be calculated based on the weighted average of the last sale or closing price for the [ten] trading [days immediately][day period ending two days] prior to the effective date of the Plan; (III) if such non-cash consideration includes notes or debt securities, such notes or debt securities shall be valued at face value; or (IV) if such non-cash consideration cannot be valued under clauses (I), (II) or (III), Houlihan Lokey will prepare a valuation of such non-cash consideration, and Houlihan Lokey and the Committee will mutually agree on a fair valuation thereof for the purposes of calculating the Deferred Fee; provided that, if the Committee and Houlihan Lokey are unable to agree on the value of such non-cash consideration, then the Bankruptcy Court will determine the value of such non-cash consideration and such decision will be final and binding on the Committee and Houlihan Lokey.

DOCS_DE:206219.3 80784/001

expenses incurred from time to time in connection with its services hereunder. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to, (i) actually incurred and reasonably documented travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

14. The Committee also requests that, subject to application to this Court, Houlihan Lokey be reimbursed by the Debtors for the fees and expenses of Houlihan Lokey's legal counsel incurred in connection with (i) the negotiation and performance of the Engagement Agreement and the matters contemplated hereby, (ii) Houlihan Lokey's employment as a professional person in the Debtors' chapter 11 cases and (iii) the payment of all fees and expenses due to Houlihan Lokey hereunder, including without limitation, in connection with fee disputes and objections to Houlihan Lokey's fees by any party in the Debtors' chapter 11 cases.

15. As set forth more fully in the Di Mauro Declaration, the terms of the engagement are similar to the terms, both financial and otherwise, agreed to by Houlihan Lokey and other investment bankers in similar engagements, both in and outside of bankruptcy. The terms of the Engagement Agreement were negotiated at arm's length between the Committee and Houlihan Lokey, and reflect the extensive work to be performed by Houlihan Lokey and the firm's advisory expertise.

DOCS_DE:206219.3 80784/001

16. In light of the foregoing and given the numerous issues which Houlihan Lokey may be required to address in the performance of its services hereunder, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Houlihan Lokey's services for engagements of this nature and in an out-of-court context, the Committee acknowledges and agrees that the Monthly Fees are fair and reasonable under the standards set forth in Bankruptcy Code section 328(a).

## DISCLOSURE OF COMPENSATION AND PRIOR ENGAGEMENTS

17. Prior to the Petition Date, Houlihan Lokey had advised, but had not been formally retained by, an ad hoc group of noteholders of The Sports Authority, Inc.'s 11.5% Senior Subordinated Notes due 2018 (the "Ad Hoc Noteholder Group"). Houlihan Lokey advised the Ad Hoc Noteholder Group in connection with potential strategic alternatives and other matters. Houlihan Lokey no longer represents the Ad Hoc Noteholder Group. Houlihan Lokey will not represent any party other than the Committee in connection with these chapter 11 cases.

18. Houlihan Lokey professionals who were advising the Ad Hoc Noteholder Group may participate in this engagement.

19. To the best of the Committee's knowledge, and except as disclosed in the Di Mauro Declaration and as noted above, Houlihan Lokey has not provided services to the Debtors' creditors, equity security holders, or any other parties-in-interest, or their respective attorneys, in any matter relating to the Debtors or their estates.

## DISINTERESTEDNESS OF PROFESSIONALS

20. As set forth in more detail in the Di Mauro Declaration, and subject to the disclosures made therein, Houlihan Lokey is a "disinterested person" as that term is defined in

section 101(14) of the Bankruptcy Code, such that none of Houlihan Lokey, its officers, directors, managers, members, partners and employees:

    a.    is a creditor, an equity security holder or an insider of the Debtors;

    b.    is or was, within 2 years before the Petition Date, a director, officer, or employee of the Debtors; and

    c.    has an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or for any other reason.

21.    Houlihan Lokey conducted a review of its professional contacts for all entities listed on "**Annex 2**" of the Di Mauro Declaration. The firm's review, completed under the supervision of the firm's compliance department, consisted of queries of an internal computer database containing names of individuals and entities that are present, recent or former clients of Houlihan Lokey in order to identify potential relationships. A summary of such present or recent representations that Houlihan Lokey was able to locate using its reasonable efforts is reflected in "**Annex 3**" of the Di Mauro Declaration.

22.    Further, as part of its diverse practice, Houlihan Lokey appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtors' cases. Also, Houlihan Lokey has performed in the past, and may perform in the future, financial advisory and investment banking services for various attorneys and law firms in the legal community, and Houlihan Lokey and its employees have been represented by several attorneys and law firms in the legal community, some of whom are, may be or may become involved in these proceedings. In addition, Houlihan Lokey has in the past, may currently and will likely in the future be working with or against other professionals involved in

these cases in matters unrelated to the Debtors and these cases. Based upon the Di Mauro Declaration, none of these business relationships creates interests materially adverse to the Debtors herein or the Committee in matters upon which Houlihan Lokey is to be employed, and none is in connection with these chapter 11 cases.

23. Furthermore, except as disclosed in the Di Mauro Declaration and below, Houlihan Lokey has indicated that, based on the results of its computer database research conducted to date, and to the best of its knowledge, neither Houlihan Lokey, nor any employee thereof, has any connection with the Debtors, their creditors, equity holders, or any other parties-in-interest (as reasonably known to Houlihan Lokey) or their respective attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee.

24. Houlihan Lokey researched its client database to determine its connections (if any) with significant parties in interest in these cases based on a list provided by the Debtors and summarized in "**Annex 2**" of the Di Mauro Declaration, including the following entities, among others:

   i. The Debtors;

   ii. The Debtors' domestic nondebtor affiliates;

   iii. The Debtors' foreign nondebtor affiliates;

   iv. Current and former officers, directors, and senior management of the Debtors;

   v. Current bond trustees of the Debtors;

   vi. Various debtholders of the Debtors;

   vii. Top suppliers of services and goods to the Debtors;

    viii.    Parties to material contracts with the Debtors;

    ix.    Beneficiaries and issuers of letters of credit;

    x.    Debtors' largest unsecured creditors, as identified in their chapter 11 petitions;

    xi.    Significant professionals, consultants, and service providers to the Debtors; and

    xii.    Certain other parties in interest in these cases.

25. Houlihan Lokey has informed the Committee that, except as may be set forth in the Di Mauro' Declaration, it does not represent any other entity having an adverse interest in connection with these cases, and therefore believes it is eligible to represent the Committee under Section 1103(b) of the Bankruptcy Code.

26. If Houlihan Lokey discovers any information that is contrary to or pertinent to the statements made in the Di Mauro Declaration, Houlihan Lokey will promptly supplement its disclosure to the Court.

**RETENTION UNDER SECTION 328(A) OF THE BANKRUPTCY CODE**

27. Section 328(a) of the Bankruptcy code provides, in relevant part, that a creditors' committee "with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 on any reasonable terms and conditions of employment, including on retainer, on an hourly basis, on a fixed or percentage fee basis, or on a continent fee basis." 11 U.S.C. § 328(a). Section 328(a) of the Bankruptcy Code permits this Court to approve the terms of Houlihan Lokey's engagement as set forth in the Engagement Agreement.

28. The Debtors submit that the fee structure, expense reimbursements and indemnification provisions are reasonable terms and conditions of employment under Bankruptcy Code section 328(a) in light of the following: (a) the nature and scope of services to be provided by Houlihan Lokey; (b) industry practice with respect to the fee structures and indemnification provisions typically utilized by leading investment banks and investment bankers that do not bill their clients on an hourly basis; (c) market rates charged for comparable services both in and out of the chapter 11 context; and (d) Houlihan Lokey's substantial experience with respect to financial restructuring and investment banking.

29. Pursuant to section 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the orders of this Court, Houlihan Lokey will apply to the Court for the interim and final allowance of compensation and reimbursement of expenses.

## WAIVER OF COMPLIANCE WITH REQUIREMENTS REGARDING TIME ENTRY DETAIL

30. Consistent with its ordinary practice and the practice of investment bankers and financial advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, Houlihan Lokey does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals. Houlihan Lokey will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these cases. As Houlihan Lokey's compensation will be calculated and paid based on a fixed, deferred transaction fee (in addition to the Monthly Fees), Houlihan Lokey requests that it not be required to file time records in accordance with Local Rule 2016-2 and the United States Trustee Fee Guidelines. Instead, notwithstanding that Houlihan Lokey does not charge for its services on an hourly basis,

Houlihan Lokey will nonetheless maintain records (in summary format with 0.5 hour increments) of its services rendered for the Committee, including descriptions of those services, the time expended in providing those services and the individuals who provided those services, and will present such records together with its fee applications filed with the Court.

## NOTICE

31.    Notice of this Application has been given to the following parties: (a) the Debtors; (b) the Office of the United States Trustee for the District of Delaware; and (c) any persons who have filed a request for notice in the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 2002. The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR RELIEF REQUESTED

32.    No application for the relief requested herein has been made by the Committee to this or any other court.

[Remainder of page left intentionally blank.]

## CONCLUSION

33. WHEREFORE, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as "**Exhibit C**", (i) authorizing the Committee's retention of Houlihan Lokey as its investment banker effective as of March 13, 2016, (ii) modifying certain requirements of Del. Bankr. L.R. 2016-2 as set forth in the annexed proposed Order, (iii) authorizing the payment and reimbursement of Houlihan Lokey's fees and disbursements, subject to interim and final allowance thereof in accordance with sections 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 5002, and Local Rules 2014-1 and 2016-2 or as otherwise ordered by the Court, and (iv) granting such other and further relief as may be just and proper.

Dated: April 19, 2016

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SPORTS AUTHORITY HOLDINGS, INC.**, *et al.*

Nike USA, Inc., solely in its capacity as Co-Chairperson of the Committee and not in its individual capacity

By: _____
Name: Kim Stewart

TCW/Crescent Mezzanine Partners III, L.P., solely in its capacity as Co-Chairperson of the Committee and not in its individual capacity

By: _____
Name: Elizabeth Ko

DOCS_DE:206219.3 80784/001

## CONCLUSION

33. WHEREFORE, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as "**Exhibit C**", (i) authorizing the Committee's retention of Houlihan Lokey as its investment banker effective as of March 13, 2016, (ii) modifying certain requirements of Del. Bankr. L.R. 2016-2 as set forth in the annexed proposed Order, (iii) authorizing the payment and reimbursement of Houlihan Lokey's fees and disbursements, subject to interim and final allowance thereof in accordance with sections 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 5002, and Local Rules 2014-1 and 2016-2 or as otherwise ordered by the Court, and (iv) granting such other and further relief as may be just and proper.

Dated: April 19, 2016

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SPORTS AUTHORITY HOLDINGS, INC.,** *et al.*

Nike USA, Inc., solely in its capacity as Co-Chairperson of the Committee and not in its individual capacity

By: _____
Name: Kim Stewart

TCW/Crescent Mezzanine Partners III, L.P., solely in its capacity as Co-Chairperson of the Committee and not in its individual capacity

By: _____
Name: Elizabeth Ko