# Exhibit A

**(Engagement Agreement)**

*Personal and Confidential*

As of March 13, 2016

The Official Committee (the "Committee") of Unsecured Creditors
of Sports Authority Holdings, Inc.
and its affiliated debtors and debtors-in-possession
(the "Debtors") in care of the Chair of the Committee

Nike USA, Inc.
One Bowerman Dr.
Beaverton, OR 97005

TCW/Crescent Capital Group, Inc.
11100 Santa Monica Blvd., Ste. 2000
Los Angeles, CA 90025

Dear Ladies and Gentlemen:

This letter agreement (this "Agreement") confirms the terms under which the Committee has engaged Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), to provide investment banking services to the Committee in connection with the Debtors' Chapter 11 cases (the "Cases"), which are pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

1.      **Services**.  Pursuant to its engagement by the Committee, Houlihan Lokey's services will consist of, if appropriate and if requested by the Committee:

      a)  Analyzing business plans and forecasts of the Debtors;

      b)  Assessing the financial issues and options concerning (i) the sale of the Debtors, either in whole or in part, and (ii) the Debtors' chapter 11 plan(s) of reorganization or liquidation or any other chapter 11 plan(s);

      c)  Providing such financial analyses as the Committee may require in connection with the Cases;

d) Assisting in the determination of an appropriate capital structure for the Debtors;

e) Assisting with a review of the Debtors' employee benefit programs, including key employee retention, incentive, pension and other post-retirement benefit plans;

f) Analyzing strategic alternatives available to the Debtors;

g) Review and analysis of any M&A bids received by the Debtors;

h) Evaluating the Debtors' debt capacity in light of its projected cash flows;

i) Assisting the Committee in identifying potential alternative sources of liquidity in connection with any debtor-in-possession financing, any chapter 11 plan(s) or otherwise;

j) Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

k) Providing testimony in court on behalf of the Committee with respect to any of the foregoing, if necessary; and

l) Providing such other investment banking services as may be required by additional issues and developments not anticipated on the Effective Date, as described in Section 5 of the Agreement.

2. **Committee Engagement**. Neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee ("Committee Counsel")), shall be liable for the fees, expenses or other amounts payable to Houlihan Lokey hereunder. Houlihan Lokey is providing its services as the investment banker to the Committee, and is not providing any services on behalf of the individual members of the Committee. To the extent any issue arises as to the scope, nature or substance of Houlihan Lokey's analysis, Houlihan Lokey and the Committee, with the advice of Committee Counsel, shall in good faith work to mutually resolve such issue. At the direction of Committee Counsel, certain communications and correspondence from Houlihan Lokey, and work product and analyses prepared by Houlihan Lokey for the Committee in connection with this matter, will be considered in preparation for litigation over the restructuring of the Debtors and, accordingly, will be subject to the attorney-client privilege and work-product doctrine.

3. **Fees and Expenses.** In consideration of Houlihan Lokey's acceptance of this engagement, the Debtors shall pay the following:

(i) *Monthly Fees*: Houlihan Lokey shall be paid in advance a nonrefundable monthly cash fee of $125,000 ("Monthly Fee"). The first payment shall be made upon the approval of this Agreement by the Bankruptcy Court and shall be in respect of the period as from the Effective Date through the month in which payment is made. Thereafter, payment of the Monthly Fee shall be made on every monthly anniversary of the Effective Date during the term of this Agreement. Each Monthly Fee shall be earned upon Houlihan Lokey's

receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein; and

(ii) *Deferred Fee*: In addition to the other fees provided for herein, the Debtors shall pay Houlihan Lokey a fee (the "Deferred Fee") to be paid in cash as follows:

a. In the event of (i) a Chapter 11 plan of reorganization, (ii) a Sale Transaction (as defined below), or (iii) a Chapter 11 or Chapter 7 plan of liquidation, the Deferred Fee to be paid in cash shall be $1,600,000 plus 1.0% of the Total Consideration (as defined below), if any, received by the unsecured creditors in the Cases.

b. In the event of a Chapter 11 or Chapter 7 plan of liquidation that includes the liquidation of all of the Debtors stores, the Deferred Fee to be paid in cash shall be $1,250,000.

The Deferred Fee shall be earned and payable upon the earlier of (i) the effective date of such Chapter 11 plan of reorganization or Chapter 11 or Chapter 7 plan of liquidation, with respect to the Debtors (a "Plan") or (ii) the closing of a Sale Transaction.

Sale Transaction. Any transaction or series of related transactions that constitute the disposition to one or more third parties (including, without limitation, any person, group of persons, partnership, corporation or other entity, and also including, among others, any of the Debtors' existing owners, shareholders, employees, creditors and/or the affiliates of each) in one or a series of related transactions of (a) all or a material portion of the equity securities of the Debtors or any interest held by the Debtors, any direct or indirect subsidiary or affiliate in any joint venture or partnership or other entity formed by any of them and/or (b) all or substantially all of the assets (including the assignment of any executory contracts) or operations of the Debtors or any joint venture or partnership or other entity formed by it, in either case, including, without limitation, through a sale or exchange of capital stock, options or assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction, including, without limitation, any sale transaction under Sections 363, 1129 or any other provision of Title 11, United States Code (II U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") (each a "Sale Transaction").

For purposes hereof, "Total Consideration" shall mean the total aggregate amounts paid by the Debtors on account of allowed unsecured claims against the Debtors pursuant to the Plan (including, without limitation, any amounts held in escrow or in claims reserves). Total Consideration shall include, without limitation: (a) cash; (b) notes, securities (including, but not limited to, debt and/or equity) or other property; (c) payments made in installments; (d) contingent payments (whether or not related to future earnings or operations); and (e) other interests or consideration. For purposes of computing any fees payable to Houlihan Lokey hereunder, non-cash consideration shall be valued as the greatest of: (I) if the value of such non-cash consideration is disclosed in a court approved disclosure statement in support of the Plan, the value of such non-cash consideration in such disclosure statement; (II) if such non-cash consideration includes equity securities that are publicly traded prior to the effective date of the Plan, the value of such securities shall be calculated based on the weighted average of the last sale or closing price for the [ten] trading [days immediately][day period ending two days] prior to the effective date of the Plan; (III) if such non-cash consideration

includes notes or debt securities, such notes or debt securities shall be valued at face value; or (IV) if such non-cash consideration cannot be valued under clauses (I), (II) or (III), Houlihan Lokey will prepare a valuation of such non-cash consideration, and Houlihan Lokey and the Committee will mutually agree on a fair valuation thereof for the purposes of calculating the Deferred Fee; <u>provided</u> that, if the Committee and Houlihan Lokey are unable to agree on the value of such non-cash consideration, then the Bankruptcy Court will determine the value of such non-cash consideration and such decision will be final and binding on the Committee and Houlihan Lokey.

4. **Term and Termination.** In the event that (a) the Committee's application for employment of Houlihan Lokey under Sections 328(a) and 1103 of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") is not granted by the Bankruptcy Court or (b) the form of the order entered by the Bankruptcy Court granting such employment application is not acceptable to Houlihan Lokey in its sole discretion, this Agreement shall terminate immediately. Otherwise, this Agreement may be terminated at any time by either Houlihan Lokey or the Committee upon thirty days prior written notice of termination to the other party. The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 and 3 and (ii) Houlihan Lokey's right to receive, and the Debtors' obligation to pay, any and all fees, expenses and other amounts due hereunder, as more fully set forth in this Agreement.

In addition, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Debtors of the Deferred Fee described in this Agreement so long as the conditions set forth in Section 3(ii) hereunder causing such Deferred Fee to be due and payable are satisfied during the term of this Agreement or within 18 months after the date of expiration or termination of this Agreement.

5. **Reasonableness of Fees.** The parties acknowledge that this engagement will require a substantial professional commitment of time and effort by Houlihan Lokey. Moreover, the amount of time and effort may vary substantially during different periods of the engagement. As a result, in order to ensure the availability of all necessary professional resources, whenever required, Houlihan Lokey may be foreclosed from pursuing other alternative engagement opportunities. In light of the foregoing, and given: (i) the numerous issues which can currently be anticipated in engagements such as this, (ii) Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, (iii) the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and (iv) the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Company. The parties further agree and acknowledge that: (a) additional issues and developments, not currently anticipated, may arise and have an impact upon the services to be rendered by Houlihan Lokey hereunder, and may result in substantially more work and/or services being performed by Houlihan Lokey than is anticipated at this time; and (b) as a result of such unanticipated issues and/or developments, the results of Houlihan Lokey's services under this Agreement may also be substantially more beneficial than anticipated at this time. Accordingly, in the event of the occurrence of (a) and/or (b), in the prior sentence, each of the parties to this Agreement may, at the conclusion of the services rendered by Houlihan Lokey pursuant hereto, agree to a modification of the fees described herein to more appropriately reflect the actual work performed, services rendered and/or any extraordinary results achieved by Houlihan Lokey pursuant to its engagement hereunder.

6.      **Expenses.** In addition to all of the other fees and expenses described in this Agreement, the Debtors shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed fee arrangements made with, travel agents, airlines or other vendors on a periodic basis, and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Houlihan Lokey shall, in addition, be reimbursed by the Debtors for the fees and expenses of Houlihan Lokey's legal counsel incurred in connection with (i) the negotiation and performance of this Agreement and the matters contemplated hereby, (ii) Houlihan Lokey's employment as a professional person in the Cases and (iii) the payment of all fees and expenses due to Houlihan Lokey hereunder, including, without limitation, in connection with fee disputes and objections to Houlihan Lokey's fees by any party in the Cases.

7.      **Invoicing and Payment.** All amounts payable to Houlihan Lokey shall, unless otherwise expressly permitted herein, be made in lawful money of the United States, and shall be made in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Debtors shall provide contemporaneous written notice of each such payment to Houlihan Lokey. All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes"). All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

8.      **Information.** The Committee shall use all reasonable efforts to cause the Debtors (i) to provide Houlihan Lokey with access to management and other representatives of the Debtors and other participants in a transaction, as reasonably requested by Houlihan Lokey and (ii) to furnish all data, material and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Debtors that Houlihan Lokey reasonably requests in connection with the services to be performed for the Committee hereunder. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Debtors or the Committee or otherwise reviewed by, or discussed with, Houlihan Lokey. The Committee understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. The Committee acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any assets or liabilities of the Debtors or any other party or to evaluate the solvency of any party under any applicable laws relating to bankruptcy, insolvency or similar matters. The Committee acknowledges that Houlihan Lokey's ability to render the services hereunder will depend upon the extent of cooperation that it receives from the Debtors and the Debtors' advisors. Houlihan Lokey's role in reviewing any information is limited solely to performing such a review as it shall deem necessary to support its own advice and analysis and shall not be on behalf of any other party. Any

advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Committee in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or entity or used for any other purpose. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey.

9.   **Limitations on Services as Advisor.**  Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing, by Houlihan Lokey and the Committee. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, or similar activities. The parties understand that Houlihan Lokey is being engaged hereunder as an independent contractor to provide the services hereunder solely to the Committee, and that Houlihan Lokey is not acting as an agent or fiduciary of the Committee or any other person or entity in connection with this engagement, and the Committee agrees that it shall not make, and hereby waives, any claim based on an assertion of such an agency or fiduciary relationship. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Committee's or the Debtors' decision on whether to pursue, endorse or support any business strategy, or to effect, or not to effect, any transaction(s).

10.   **Bankruptcy Court Approval.**  The Committee shall, as soon as practicable following the execution of this Agreement by the Committee, seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Sections 328(a) and 1103 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and Houlihan Lokey's employment hereunder shall not be subject to any other standard of review under Section 330 of the Bankruptcy Code. In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Committee, that the value to the Committee of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Deferred Fee is reasonable regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder. The Committee shall use its best efforts to cause Houlihan Lokey's employment application to be considered on the most expedited basis. The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of their filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion. If the order authorizing the employment of Houlihan Lokey is obtained, the Debtors shall pay all fees and expenses due pursuant to this Agreement, as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

11. **Credit.** Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Debtors' logo or other identifying marks) describing its services in connection with this engagement.

12. **Choice of Law; Jury Trial Waiver; Jurisdiction.** THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. THIS AGREEMENT AND ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS. EACH OF HOULIHAN LOKEY AND THE COMMITTEE IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT AND MAINTAINED IN THE BANKRUPTCY COURT.

13. **Indemnification and Standard of Care.** As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services to the Committee under this Agreement, the Debtors shall (i) indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, and (ii) reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action), arising out of or related to the formulation of any plan of reorganization for the Debtors or such engagement or matter. However, the Debtors shall not be liable under the foregoing indemnification provision for any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party.

If for any reason the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any Indemnified Party or to hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in such indemnification or reimbursement

provisions, then the Debtors shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received by the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, in connection with the services rendered by Houlihan Lokey. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Debtors shall contribute to such amount paid or payable by such Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Committee and Debtors (and their respective affiliates, and their respective directors, employees, agents or other advisors), on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Debtors pursuant to this Agreement. Relative benefits received by the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Debtors, and its security holders, creditors (including members of the Committee), and other affiliates, as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under this Agreement. Neither the Committee nor the Debtors shall settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement (whether or not an Indemnified Party is an actual or potential party thereto), or participate in or otherwise facilitate any such settlement, compromise, consent or termination, unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.

Neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Committee, the Debtors or any person or entity asserting claims arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, except for losses, claims, damages or liabilities incurred by the Committee and/or the Debtors which are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party, and no Indemnified Party shall have any liability whatsoever to any other person or entity.  The indemnity, reimbursement, and other obligations and agreements of the Committee and the Debtors set forth herein (i) shall apply to any services provided by Houlihan Lokey in connection with this engagement prior to the Effective Date and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which such parties may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of such parties or any Indemnified Party or any person controlling any of them, and (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement.

14.     **Miscellaneous.**  This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed in the Cases.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the Committee, the Indemnified Parties and each of their respective successors, heirs and assigns, any rights or remedies (directly or indirectly as a third party beneficiary or otherwise) under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral.  This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by Houlihan Lokey and the Chair or other authorized representative of the Committee and approved by the Bankruptcy Court.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, the Debtors will provide Houlihan Lokey upon request certain identifying information necessary to verify the identity of the Debtors, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement or trust instrument.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument.  Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

In order to enable Houlihan Lokey to bring relevant resources to bear on its engagement hereunder from among its global affiliates, the Committee agrees that Houlihan Lokey may share information obtained from the Committee, the Debtors and other parties hereunder with certain of its affiliates, and may perform the services contemplated hereby in conjunction with such affiliates.

The Committee has all requisite power and authority to enter into this Agreement.  This Agreement has been duly and validly authorized by all necessary action on the part of the Committee and has been duly executed and delivered by the Committee and constitutes a legal, valid and binding agreement of the Committee, enforceable in accordance with its terms.  This Agreement has been reviewed by the signatories hereto and their counsel.  There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Committee understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Committee confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

All of us at Houlihan Lokey thank you for choosing us to advise the Committee, and look forward to working with you on this engagement.

Very truly yours,

HOULIHAN LOKEY CAPITAL, INC.

By: _____
Christopher Di Mauro
Managing Director

Accepted and agreed to as of the Effective Date:

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SPORTS AUTHORITY HOLDINGS., INC, ET AL.**

By: **Nike USA, Inc. and TCW/Crescent Capital Group, Inc., Chairs of the Committee**

By: _____
Kim Stewart
Director

By: _____
Richard Stevenson
Managing Director

All of us at Houlihan Lokey thank you for choosing us to advise the Committee, and look forward to working with you on this engagement.

Very truly yours,

**HOULIHAN LOKEY CAPITAL, INC.**

By: _____
Christopher Di Mauro
Managing Director

Accepted and agreed to as of the Effective Date:

**OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF SPORTS AUTHORITY HOLDINGS., INC, ET AL.**

By: **Nike USA, Inc. and TCW/Crescent Mezzanine Partners III, L.P., Chairs of the Committee**

By: *[signature: Kim Stewart]*
Kim Stewart
Director

By: _____
Elizabeth Ko
Senior Vice President

All of us at Houlihan Lokey thank you for choosing us to advise the Committee, and look forward to working with you on this engagement.

Very truly yours,

**HOULIHAN LOKEY CAPITAL, INC.**

By: _____
Christopher Di Mauro
Managing Director

Accepted and agreed to as of the Effective Date:

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF SPORTS AUTHORITY HOLDINGS., INC, ET AL.**

By: **Nike USA, Inc. and TCW/Crescent Mezzanine Partners III, L.P., Chairs of the Committee**

By: _____
Kim Stewart
Director

By: _____
Elizabeth Ko
Senior Vice President