IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | ) ) | Case No.: 16-10527 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING MOTIONS TO COMPEL PAYMENT OF STUB RENT**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Sports Authority Holdings, Inc., *et al.*, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby submits this statement regarding the motions to compel payment of stub rent (collectively, the <u>Stub Rent Motions</u>").

**STATEMENT OF THE COMMITTEE**

1.      Since the petition date, the Debtors at the behest of their senior secured lenders have been operating these cases on an administratively insolvent basis. Neither the budget filed initially with the Debtors' DIP financing motion, nor any of the Debtors' subsequently revised budgets, have provided for nearly $100 million in known, incurred administrative expenses arising under section 503(b) of the Bankruptcy Code. These unpaid expenses include $28 million in "stub rent" owed on account of the Debtors' post-petition use and occupancy of the approximately 420 stores they operate in leased locations, a sizeable

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

portion of which (approximately $8.5 million) represents stub rent for 140 stores in which the Debtors are conducting GOB sales and liquidating the secured lenders' collateral.

2. Despite the demonstrable influx of cash into the Debtors' estates from the GOB sales and operations of go-forward stores, the Debtors are locked into a DIP financing arrangement that requires compliance with a budget that contains no funding for the $28 million in unpaid March stub rent, nearly $50 million in 503(b)(9) claims, $16 million in professional fees, or unpaid post-petition trade claims. And yet under the DIP financing arrangement that does not actually provide any new financing – the ABL debt has been paid down by approximately $109 million since the petition date – the Debtors propose to pay approximately $10 million in fees to the secured lenders and the Debtors' investment bankers, the professional fees of the Debtors, the fees and expenses of no fewer than eight professional firms engaged by the ABL, FILO and Term Lenders, and proposed payments to insiders under a KERP program.

3. These cases cannot be run for the sole benefit of the secured creditors on the backs of administrative creditors, including landlords and suppliers represented by the Committee.

4. The Debtors' failure and refusal to budget for the payment of stub rent and other excluded administrative expenses is tantamount to a plan not to pay those claims given the fact that substantially all of the Debtors' assets are liened up and the Term Lenders profess to be the fulcrum security and are significantly undersecured. As the Committee sets forth in its pending objection to the Debtors' DIP financing motion [Docket No. 924], if administrative expenses are not included in the budget, it is virtually certain that they will not be paid.

5. The Committee respectfully urges the Court to deny the Debtors' and secured lenders' request to run these cases on an administratively insolvent basis, in the context

of the DIP financing motion, as well as the dozens of motions by unpaid landlords moving to compel the Debtors to pay stub rent. The Committee submits that granting the landlords' motions now is appropriate, as delaying payment is likely as good as denying it. Particularly in the case of stub rent for closing stores, which is generally paid as a matter of course in retail bankruptcies, an order compelling payment is warranted.

6. Both the Debtors and the Term Lenders filed omnibus objections to the Stub Rent Motions. The thrust of the Debtors' objection [Docket No. 1243] is that it would be a hardship to require the Debtors to pay the stub rent because it is not provided for in their DIP budget, and making them pay the rent would result in a default under the DIP. While it may be true, the problem here does not lie in the unreasonableness of the landlords' demand for payment of rent, but in the Debtors' failure to secure their lenders' permission to make payments for rent that they are required to make as a matter of law. It would be as if the Debtors told the IRS they will not be paying their income taxes this year because tax payments are not in their budget. Equally as unconvincing is the Debtors' argument that the landlords have shown no prejudice, as the facts bear out that this is not a case of deferred payment but non-payment if the rent is not ordered to be paid before the scheduled auction sales of the Debtors' assets.

7. The Term Lenders' objection [Docket No. 1241] is remarkable for its effort to lead the Court to believe that deferring payment of stub rent will not prejudice landlords, and the Term Lenders' willingness to contradict positions they took only days ago in their Emergency Motion for Adequate Protection [Docket No. 1091] filed on April 8, 2016. In their stub rent pleading, the Term Lenders urge patience for the landlords, stating, among other things, that it is early in these cases, the outcome is unknown, and the parties have not discussed a plan of reorganization yet. In other words, the Term Lenders argue, there is no risk of non-

payment to them. (*See* Term Lenders' Objection at ¶¶ 2, 3 and 6). Yet when it is their ox being gored, the Term Lenders portray a very different picture of "significant cash burn over the course of the Debtors' chapter 11 cases," insufficient unencumbered assets to pay the Term Lenders' putative superpriority administrative claim for diminution which is statutorily ahead of stub rent claims, and ultimately a lack of any source of value in the estates that could adequately protect them. (*See* Emergency Motion for Adequate Protection, ¶¶ 54-59). The Term Lenders' depiction of the future prospects for payment of stub rent if not paid now is disingenuous and belied by their sober, candid assessment of the facts in the Emergency Motion for Adequate Protection.

8. The Term Lenders also argue that with their collateral position allegedly deteriorating, it would be unfair and would make matters worse for them if the Debtors were forced to pay even the $8.5 million of stub rent for stores in which the Debtors are liquidating the secured lenders' collateral for their benefit. To be clear, the Term Lenders have no section 506(c) surcharge waiver under the interim DIP financing order and the Committee has objected to the inclusion of such a waiver in the final order precisely due to the stubborn refusal of the secured lenders in these cases to allow the Debtors to pay administrative expenses like stub rent

in closing stores that are plainly incurred in connection with the disposition of the secured lenders' collateral and routinely paid in retail bankruptcy cases.

Dated:  April 21, 2016	Respectfully Submitted,

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford J. Sandler*
Robert J. Feinstein (NY Bar No. 1767805)
Jeffrey N. Pomerantz (CA Bar No. 143717)
Bradford J. Sandler (DE Bar No. 4142)
919 North Market Street, 17th Floor
Wilmington, DE  19801
Telephone: 302-652-4100
Facsimile:  302-652-4400
E-mail:   rfeinstein@pszjlaw.com
E-mail:   jpomerantz@pszjlaw.com
             bsandler@pszjlaw.com

[Proposed] Counsel for the Official Committee of Unsecured Creditors