# EXHIBIT A

RIDER

to

RETAIL LEASE

by and between

770 TAMALPAIS DRIVE INC.

and

TSA STORES, INC.

dated for reference purposes only as of November 3, 2010

1.      Option to Extend. Tenant shall have the option to extend the Term of the Lease for an additional period of five (5) years (the "Option Period"), provided that Tenant is not in default under the Lease beyond applicable cure periods at the time Tenant's Extension Notice (defined herein) is given or at the time the extension Term is to commence. The option to extend the Term of the Lease set forth herein is personal to Tenant and shall not be included in any assignment of the Lease. Tenant shall exercise such option, if at all, by written notice (hereinafter referred to as the "Extension Notice") to Landlord no later than one hundred eighty (180) days and no earlier than three hundred (300) days prior to the expiration of the original Term of the Lease. If Tenant shall not timely exercise its extension option, such extension option shall lapse and be of no further force or effect. In the event that Tenant shall timely exercise its extension option, the Term of the Lease shall be extended by an additional five (5) years on all of the terms and conditions of the Lease, except (i) after Tenant's exercise of its extension option, Tenant shall have no right to further extend the Term of the Lease, (ii) the monthly Minimum Rent during the extension Term shall be equal to the greater of 90% of the then prevailing fair market rent for like space in the area, as determined pursuant to subparagraph (a) below, or 103% of the annual Minimum Rent then in effect for the immediately preceding year (iii) the Percentage Rent factor during the extension Term shall remain as specified in Paragraph 1(c), and (iv) the Gross Sales amount used for purposes of calculating Percentage Rent shall be adjusted accordingly during each year of the extension Term to the "natural breakpoint." The "natural breakpoint" shall be determined by multiplying Tenant's monthly Minimum Rent for the extension Term times twelve and dividing the product by the percentage specified in Paragraph 1(c).

(a)     If the parties are unable to agree on the fair market rent as Minimum Rent for the Option Period within sixty (60) days following Tenant's Extension Notice of its exercise of its option with respect to such Option Period, then Landlord will, within seven (7) days after the expiration of such 60-day period, deliver to Tenant a written determination of the fair market rent as determined by Landlord ("Landlord's Determination"). Tenant will have fourteen (14) days from the date of Landlord's delivery of Landlord's Determination to notify Landlord of Tenant's acceptance of Landlord's Determination or deliver to Landlord Tenant's written determination of the fair market rent as determined by Tenant ("Tenant's Determination"). If Tenant does not deliver Tenant's Determination to Landlord within such 14-day period, Tenant will be deemed to have accepted Landlord's Determination and the rental rate set forth in Landlord's Determination will be the fair market rent. If Tenant does deliver Tenant's Determination within such 14-day period, then Landlord and Tenant will have an additional ten (10) days from the date of delivery of Tenant's Determination to negotiate a fair market rent acceptable to both Landlord and Tenant. If no agreement can be reached as to the fair market rent within such 10-day period, then, within seven (7) days after such 10-day period expires, Landlord and Tenant will mutually appoint a retail real estate broker who has at least five (5) years full-time retail real estate brokerage experience in the San Francisco Bay area market. If Landlord and Tenant are unable to mutually agree on a broker, either of the parties to the Lease, after giving five (5) days prior notice to the other party, may apply to the then President of the San Francisco Board of Realtors for the selection of a retail real estate broker who meets the foregoing qualifications, which selection will be made within three (3) business days. The broker selected by the President of the Board of Realtors must be a person who has not

TENANT INITIALS          LANDLORD INITIALS

1

previously acted in any capacity for either party and who meets the foregoing experience qualifications. The broker will, within ten (10) days of its appointment, review Landlord's Determination and Tenant's Determination and such other information as he or she deems necessary and will determine whether Landlord's Determination or Tenant's Determination is closer to the prevailing fair market rent. The fair market rent for the Option Period will be the rental rate selected by the broker, but in no event will the minimum annual rent paid by Tenant during the Option Period be less than 103% of the Minimum Rent in effect for the immediately preceding year. Each of the parties will bear 1/2 the cost of the broker.

(b) In the event the Minimum Rent for the first year of the Option Period has not been finally determined as of the commencement of such Option Period, Tenant shall pay 103% of the Minimum Rent payable in the last year of the original Term, and within 30 days following determination of the new Minimum Rent, Tenant shall pay to Landlord the amount necessary to make up any deficiency.

2.  Tenant's Early Termination Right. Tenant shall have the one time right to terminate the Lease during the fifth (5th) full calendar year if Tenant's Gross Sales (as defined in Paragraph 4(c) of the Lease) do not exceed Four Million Six Hundred Thirty Eight Thousand Dollars ($4,638,000.00) during the fourth (4th) full calendar year. For purposes of this Section 2, a "full calendar year" shall mean the period January 1 through December 31. Such termination right shall be exercised by Tenant no earlier than January 1 and no later than March 31 of the fifth (5th) full calendar year by Tenant's written notice to Landlord and, in such event, the Term of the Lease shall terminate three hundred sixty five (365) days after Tenant's service of written notice to Landlord, which notice shall be accompanied by a certified statement of Tenant's Gross Sales during the relevant time period, including the Gross Sales of any competing store open in violation of Section 17. In the event Tenant exercises its right to terminate the Lease in accordance with this Section 2, Tenant shall be obligated to reimburse Landlord within one hundred eighty (180) days after service of Tenant's termination notice the then unamortized amount of Landlord's total Construction Contribution and brokerage commissions, fully amortized on a straight line basis over ten (10) years commencing on the Rent Commencement Date. Neither party shall thereafter have any further liability or obligation to the other hereunder, except for then accrued liabilities and obligations including, but not limited to, obligations of indemnification for acts or omissions occurring prior thereto. Notwithstanding the forgoing, if during any consecutive 12 month period during the Lease Term prior to delivery of Tenant's notice as contemplated herein, Tenant achieves Gross Sales of at least Four Million Six Hundred Thirty Eight Thousand Dollars ($4,638,000.00), Tenant's right to terminate the Lease shall be deemed null and void and of no further force and effect.

3.  Landlord's Early Termination Right. Landlord shall have the one time right to terminate the Lease during the fifth (5th) full calendar year if Tenant's Gross Sales (as defined in Paragraph 4(c) of the Lease) do not exceed Five Million Four Hundred Eleven Thousand Dollars ($5,411,000.00) during the fourth (4th) full calendar year. For purposes of this Section 3, a "full calendar year" shall mean the period January 1 through December 31. In the event that a casualty or force majeure event occurs during the fourth (4th) full calendar year which prevents Tenant from conducting normal business operations at the Premises for a period exceeding twenty (20) consecutive days, then, in such event, the measuring period for Tenant's Gross Sales shall be the period comprising the twelve (12) full calendar months immediately preceding such casualty or force majeure event. Such termination right shall be exercised by Landlord no earlier than January 1 and no later than March 31 of the fifth (5th) full calendar year by Landlord's written notice to Tenant and, in such event, the Term of the Lease shall terminate one hundred eighty (180) days after Landlord's service of written notice to Tenant. Neither party shall thereafter have any further liability or obligation to the other hereunder, except for then accrued liabilities and obligations including, but not limited to, obligations of indemnification for acts or omissions occurring prior thereto.

4.  Opening Co-Tenancy Condition. Landlord agrees that as of the Rent Commencement Date: (A) the following tenants must be open and operating in the Center: (i) Barnes & Noble; (ii) Crate & Barrel; and (iii) Safeway, and (B) additional retail tenants must be open and operating in not less than an aggregate of seventy percent (70%) of the total leasable area in the Center (excluding the Premises and the premises of Barnes & Noble, Crate & Barrel and Safeway) [A) and (B) together, the "Opening Co-Tenancy Condition"]. Notwithstanding anything to the contrary in the Lease, if the Opening Co-Tenancy Condition shall not be satisfied on the Rent Commencement Date, Tenant may either (a) delay opening for business to the public until the Opening Co-Tenancy Condition is entirely satisfied, in which event, anything herein to the contrary notwithstanding, no Rent and

2

Additional Rent shall be due hereunder and the Rent Commencement Date shall be deferred until the Opening Co-Tenancy Condition is satisfied, or (b) open for business to the public and pay one hundred percent (100%) of all Rent and Additional Rent payable pursuant to the terms of the Lease. If the Opening Co-Tenancy Condition is not satisfied by Landlord within twelve (12) months after the originally scheduled Rent Commencement Date and Tenant has elected not to open for business during such period, Tenant shall either (a) terminate the Lease upon written notice to Landlord delivered no later than thirty (30) days following the expiration of such twelve (12) month period in which event the Lease shall terminate sixty (60) days after delivery of such notice; provided, however, that if the Opening Co-Tenancy Condition is satisfied within said sixty (60) day period, the Lease shall not terminate but shall remain in full force and effect, or (b) immediately open for business to the public and upon opening pay one hundred percent (100%) of all Rent and Additional Rent payable pursuant to the terms of the Lease.

5.   Improvements. Included in Tenant's Work (as defined in Exhibit C) shall be the construction of the Premises in a style and quality consistent with Tenant's Elite's Cherry Creek store design, including but not limited to the installation of Tenant's ID signs, new awnings, the replacement of the storefront, the installation of a complete new interior including but not limited to: electrical systems, lighting, plumbing, HVAC mechanical systems, HVAC ducting, walls, floor coverings and ceiling coverings, if any. Tenant shall pay all fees of the Town of Corte Madera's designated architects in connection with their review of Tenant's plans and specifications for Tenant's Work or for any other alterations or improvements undertaken by Tenant in or to the Premises, including, but not limited to, design review and permit fees.

6.   Entrances to Remain Open. Throughout the entire Term of the Lease and any extension thereof, Tenant shall keep both the east and west entrances open for public use at all times during which the Premises shall be open for business to the public, and shall utilize and designate both the east and west entrances as regular means of ingress and egress between the Premises and the Common Area of the Center. Without limitation of the foregoing, Tenant shall not utilize the east or west entrances for storage purposes nor restrict access to such entrances to solely emergency, fire exit or delivery purposes.