IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-10527 (MFW)<br><br>(Jointly Administered)<br><br>Hearing Date: June 28, 2016 at 10:30 a.m. (ET)<br>Objection Deadline: May 31, 2016 at 4:00 p.m. (ET)<br><br>Ref. No. 1699 |

**OMNIBUS MOTION OF SGS SPORTS, INC., LIFELINE FIRST AID LLC, G-III LEATHER FASHIONS, INC., ICY-HOT HYDRATION LLC AND SPORT WRITE, INC. TO EXTEND CHALLENGE DEADLINE WITH RESPECT TO CONSIGNMENT VENDORS**

SGS Sports, Inc. ("**SGS**"), Lifeline First Aid LLC ("**Lifeline**"), G-III Leather Fashions, Inc. ("**G-III**"), Icy-Hot Hydration LLC ("**Icy-Hot**") and Sport Write, Inc. ("**Sport Write**" and together with SGS, Lifeline, G-III and Icy Hot, collectively, the "**Movants**"), by and through their undersigned counsel, hereby move (this "**Motion**") this Court for an order either (a) determining that the deadline in the *Final Order (I) Authorizing Debtors to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 362, 363, and 364; (II) Granting Liens and Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C. §§ 364 and 507; and (III) Authorizing the Use of Cash Collateral and Providing Adequate Protection to Prepetition Secured Lenders and Modifying the Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364* (the "**Final DIP Order**") to challenge the validity, extent, perfection, or priority of the security interests and liens of Wilmington Savings Fund Society, FSB, as Administrative and

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

Collateral Agent for the benefit of the Debtors' Term Lenders (the **"Term Loan Agent"**) does not apply to Movants or other consignors, who are named as defendants in pending adversary proceedings where the priority of the Term Loan Agent's lien is at issue, or (b) extending the deadline for such a challenge to the deadline for filing an answer to the Term Loan Agent's complaints filed, or to be filed, in such adversary proceedings. In support of the Motion, Movants respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).

## BACKGROUND

2. Prior to the Petition Date, G-III and TSA had entered into a consignment agreement, pursuant to which G-III periodically consigned goods to TSA for sale in various Sports Authority brand stores across the country. The consigned goods together with the proceeds derived therefrom that were in the Debtors' possession as of the Petition Date are referred to herein collectively as the **"G-III Property"**.[2]

3. Prior to the Petition Date, Icy-Hot and TSA had entered into a consignment agreement, pursuant to which Icy-Hot periodically consigned goods to TSA for sale in various Sports Authority brand stores across the country. The consigned goods together with the

---

[2] The relevant background surrounding G-III's relationship and dealings with TSA have been set forth in various pleadings previously filed on the docket. *See* Docket No. 1317. Accordingly, for the Court's convenience, G-III refers the Court to the referenced docket numbers and incorporates such pleadings herein by reference.

proceeds derived therefrom that were in the Debtors' possession as of the Petition Date are referred to herein collectively as the "**Icy-Hot Property**".[3]

4. Prior to the Petition Date, Lifeline and TSA had entered into a consignment agreement, pursuant to which Lifeline periodically consigned goods to TSA for sale in various Sports Authority brand stores across the country. The consigned goods together with the proceeds derived therefrom that were in the Debtors' possession as of the Petition Date are referred to herein collectively as the "**Lifeline Property**".[4]

5. Prior to the Petition Date, SGS and TSA had entered into a consignment agreement, pursuant to which SGS periodically consigned goods to TSA for sale in various Sports Authority brand stores across the country. The consigned goods together with the proceeds derived therefrom that were in the Debtors' possession as of the Petition Date are referred to herein collectively as the "**SGS Property**".[5]

6. Prior to the Petition Date, Sport Write and TSA had entered into a consignment agreement, pursuant to which Sport Write periodically consigned goods to TSA for sale in various Sports Authority brand stores across the country. The consigned goods together with the proceeds derived therefrom that were in the Debtors' possession as of the Petition Date are

---

[3] The relevant background surrounding Icy-Hot's relationship and dealings with TSA have been set forth in various pleadings previously filed on the docket. *See* Docket Nos. 1319 and 1654. Accordingly, for the Court's convenience, Icy-Hot refers the Court to the referenced docket numbers and incorporates such pleadings herein by reference.

[4] The relevant background surrounding Lifeline's relationship and dealings with TSA have been set forth in various pleadings previously filed on the docket. *See* Docket Nos. 1320 and 1652. Accordingly, for the Court's convenience, Lifeline refers the Court to the referenced docket numbers and incorporates such pleadings herein by reference.

[5] The relevant background surrounding SGS' relationship and dealings with TSA have been set forth in various pleadings previously filed on the docket. *See* Docket Nos. 110, 553, 663 and 1315. Accordingly, for the Court's convenience, SGS refers the Court to the referenced docket numbers and incorporates such pleadings herein by reference.

referred to herein collectively as the "**Sport Write Property**",[6] and together with the G-III Property, the Icy-Hot Property, the Lifeline Property, and the SGS Property, the "**Movants' Property**."

7. On March 2, 2016, (the "**Petition Date**") the above-captioned debtors filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

8. On March 11, 2016, the Court entered its *Interim Order (A) Authorizing the Debtors to (I) Continue to Sell Consigned Goods in the Ordinary Course of Business Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (II) Grant Administrative Expense Priority and Purchase Money Security Interests to Consignment Vendors for Consigned Goods Delivered Post-Petition; and (B) Grant Replacement Liens to Consignment Vendors with Security Interests and/or Holding Title or Ownership Rights in Consigned Goods and/or Remit the Consignment Sale Price, Arising from Sale of Consigned Goods to Putative Consignment Vendors* [Docket No. 278] (as subsequently amended, the "**Interim Consignment Order**"). The Interim Consignment Order authorizes the Debtors to continue selling consignment goods, including the Movants' Property, post-petition under the terms of the existing agreements with consignment vendors.

9. On or about March 15, 2016, the Debtors commenced an adversary proceeding against each of the Movants (the "**Adversary Proceedings**") by filing complaints seeking, among other things, declaratory judgment that the Debtors had a senior interest in consignment

---

[6] The relevant background surrounding Sport Write's relationship and dealings with TSA have been set forth in various pleadings previously filed on the docket. *See* Docket Nos. 661 and 1335. Accordingly, for the Court's convenience, Sport Write refers the Court to the referenced docket numbers and incorporates such pleadings herein by reference.

goods provided by Movants to the Debtors (the **"Complaints"**). The deadline for Movants to answer the Debtors' Complaints in the Adversary Proceedings is May 30, 2016.

10. On April 27, 2016, the Court entered an order permitting the Term Loan Agent to intervene in the Adversary Proceedings. On May 16, 2016, the Term Loan Agent filed its Complaints (the **"Term Loan Agent's Complaints"**) in the Adversary Proceedings, seeking a declaration that "the Term Loan Agent has a properly perfected security interest, senior to the interests of [Movants] in all of the Prepetition Consigned Goods delivered by [Movants] . . . ." Movants have not yet been served with the Term Loan Agent's Complaint, but, if properly served, they intend to continue defending against the same, as well as against the Complaint, and reserve the right to seek any and all claims, causes of action and damages against both the Debtors and the Term Loan Agent arising out of or relating to their respective complaints.

11. Following a hearing on May 3, 2016, the Court entered its *Final Order Authorizing the Debtors to Sell Prepetition Consigned Goods* [Docket No. 1704] (the **"Final Consignment Order"**). The Final DIP Order was entered that same day. Paragraph 2 of the Final Consignment Order provides, among other things, that to the extent of any conflict between the Final DIP Order and the Final Consignment Order with respect to the treatment of proceeds of consignment goods, "the terms of the [Final Consignment] Order shall govern." In several places, both the Interim Consignment Order and the Final Consignment Order provide that the rights, claims and defenses of the consignment vendors are reserved and retained. *See* Final Consignment Order, at ¶¶3, 5, 8, and 9.

12. The Final DIP Order provides, in part, that any party in interest (other than the debtors in the Bankruptcy Case) may challenge "the validity, extent, perfection, or priority of the security interests and Liens of the Prepetition Agents and Prepetition Secured Lenders in and to

the Prepetition Collateral" (a **"Challenge Proceeding"**) provided that such Challenge Proceeding, if commenced by a party in interest other than the Official Committee of Unsecured Creditors, must be commenced within seventy-five days of the date the Interim DIP Order was entered (the **"Challenge Deadline"**). The Challenge Deadline is currently May 17, 2016.[7]

## RELIEF REQUESTED

13. By this Motion, Movants seek the entry of an order (i)(a) confirming that the Challenge Deadline does not apply to consignment vendors, such as Movants or, (b) in the alternative, extending the Challenge Deadline until the deadline to file responsive pleadings in the Adversary Proceedings to the Term Loan Agent Complaint, and (ii) finding that any challenge to the Term Loan Agent's liens asserted by way of defense or claim in the Adversary Proceedings shall constitute a Challenge Proceeding in compliance with paragraph 25 of the Final DIP Order.

## BASIS FOR RELIEF

14. The Term Loan Agent intervened in the adversary proceedings and sought a declaration as to the validity, extent and priority of its liens. Thus, by the Term Loan Agent's own actions, the validity, extent and priority of the Term Loan Agent's asserted liens on the consignment goods are at issue in the Adversary Proceedings. Movants and the other consignment vendors must be afforded their full procedural rights to respond to and defend against the Term Loan Agent's Complaint and assert any claims they may have. Those procedural rights entitle Movants to respond to the Term Loan Agent's Complaint in the timeline allotted under the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**).

---

[7] Pursuant to Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware, the Challenge Deadline will "automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order." Del. Bankr. L.R. 9006-2.

Moreover, the issues surrounding the extent and priority of the Term Loan Agent's liens in consignment proceeds clearly falls within the scope of the Final Consignment Order, which supersedes conflicting provisions of the Final DIP Order. Accordingly, the Term Loan Agent should not be permitted to rely upon the Challenge Deadline to eliminate Movants' rights to challenge the Term Loan Agent's purported liens in the consigned goods, or to truncate the time to respond to the Complaint afforded by the Bankruptcy Rules.

15. Should this Court find that the Challenge Deadline was intended to apply to lien challenges by consignment vendors, the Court should extend the Challenge Deadline to the date when the consignment vendors are required to respond to the Term Loan Agent's Complaints under the Bankruptcy Rules (the **"Response Deadline"**). *See* Docket No. 1753. The consignment vendors should not be required to file a challenge to the Term Loan Agent's liens in advance of Response Deadline when their responses will implicate the very same issues that would be asserted in any Challenge Proceeding. Any extension of the Challenge Deadline will not prejudice the Term Loan Agent, as it has been clear from the first day of this case that the relative rights of the consignment vendors and the Term Loan Agent in the consigned goods were at issue.

16. Equity also demands that any response filed by a consignment vendor in its adversary proceeding that asserts a counterclaim challenging the Term Loan Agent's liens be deemed to constitute a Challenge Proceeding for purposes of paragraph 25 of the Final DIP Order. Given the Court's prior instructions on the subject, consignment vendors need not file separate Challenge Proceedings to address consignment issues, as it would be a tremendous waste of judicial resources to adjudicate related issues between the same parties in two separate adversary proceedings.

## NOTICE

17. Movants will provide notice of this Motion to: (i) the U.S. Trustee; (ii) counsel to the Debtors, (iii) counsel to the Committee; (iv) counsel to the Term Loan Agent; and (v) all parties on the list attached to the Certificate of Service.

**WHEREFORE,** Movants respectfully request that this Court enter an order (i) deeming consignment vendors exempt from the Challenge Deadline under the Final DIP Order or extending the Challenge Deadline for consignment vendors to the date they are required to file responsive pleadings to the Term Loan Agent's Complaint in their respective adversary proceedings, (ii) deeming any challenge to the Term Loan Agent's liens by way of defense or claim in the Adversary Proceedings to satisfy the requirements for commencing a Challenge Proceeding under paragraph 25 of the Final DIP Order and (iii) granting related relief.

Dated: May 17, 2016
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

_/s/ William E. Chipman, Jr._
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:  (302) 295-0191
Facsimile:  (302) 295-0199
Email:  chipman@chipmanbrown.com
olivere@chipmanbrown.com

*Counsel for SGS Sports, Inc., Lifeline First Aid LLC, G-III Leather Fashions, Inc., Icy-Hot Hydration LLC and Sport Write, Inc.*