## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: June 28, 2016 at 10:30 a.m. (ET)**<br>**Objection Deadline: June 21, 2016 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE, EXTENDING THE EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND THE SOLICITATION AND ACCEPTANCE THEREOF

Sports Authority Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this Motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), extending the Exclusive Periods (as defined below) for the filing of a chapter 11 plan and soliciting acceptances thereof.  In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9006-2.

## BACKGROUND

### A.    General Background

3.    On March 2, 2016 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

4.    On March 10, 2016, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 Cases [Docket. No. 262].

5.    Information regarding the Debtors' history, business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases, can be found in the *Declaration of Jeremy Aguilar in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 22].

01:18747963.4

**B.      Background Regarding Sale Process**

6.      On the Petition Date, the Debtors filed the *Debtors' Motion, Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, Fed. R. Bankr. P. 2002, 6003, 6004, 6006, 9007, 9008 and 9014 and Del. Bankr. L.R. 2002-1, 6004-1 and 9006-1, for Entry of (A) an Order (I) Approving Bid Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Scheduling an Auction for and Hearing to Approve Sale of Assets, (III) Approving Notice of Respective Date, Time and Place for Auction and for Hearing on Approval of Sale, (IV) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving Form and Manner of Notice Thereof, and (VI) Granting Related Relief; and (B) an Order Authorizing and Approving (I) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Related Relief* [Docket No. 106] (the "Sale Motion").

7.      On April 14, 2016, in connection with the Sale Motion, the Court entered an order [Docket No. 1186] (the "Procedures Order") approving, among other things, the Main Auction Bid Procedures and the Closing Store Lease Bid Procedures.[2]  In conjunction therewith, the Debtors scheduled the Main Auction to be held on May 16, 2016, and the Closing Store Lease Auction (together with the Main Auction, the "Auctions") to be held on May 4, 2016.[3]

8.      Leading up to the Auctions, the Debtors solicited interest in substantially all of their assets, including their leasehold interests in nonresidential real property and their inventory and FF&E (such inventory and FF&E, the "Retail Inventory").  Unfortunately, the Debtors did not receive any going concern bids for their assets on an enterprise level, and at the conclusion of

---

[2]    Capitalized terms used in this sentence have the meanings ascribed to such terms in the Procedures Order.

[3]    The Closing Store Lease Auction was ultimately adjourned to May 16, 2016 [Docket No. 1691].

the Auctions, the Debtors accepted the bid submitted by a contractual joint venture composed of

(i) Gordon Brothers Retail Partners, LLC, (ii) Hilco Merchant Resources, LLC, and (iii) Tiger

Capital Group LLC (collectively, the "Agent") for their Retail Inventory.  In addition, the

Debtors entered into numerous assignment agreements and lease termination agreements

disposing of valuable leasehold interests, which generated significant proceeds for the estates.

9.      On May 24, 2016, the Court entered that certain *Order Pursuant to Sections 105,*

*363, and 365 of the Bankruptcy Code, Approving Sale of Debtors' Assets and Granting Related*

*Relief* [Docket No. 2081] (the "Sale Order") approving the agency agreement (the "Agency

Agreement") entered into by and between the Agent and the Debtors.  Consistent with the relief

granted thereby, the Agent will conduct "going out of business" sales at the Debtors' remaining

store locations through August 31, 2016 (or later, as provided under the Sale Order) to liquidate

substantially all of the Debtors' remaining Retail Inventory.

10.      While the Agent is selling the Retail Inventory, the Debtors will continue to

market their current portfolio of leasehold interests in various unexpired leases of nonresidential

real property (collectively, the "Remaining Leases") and other valuable assets such as their

intellectual property.  In light thereof, the Main Auction was adjourned to June 29, 2016 (the

"Adjourned Main Auction") and a sale hearing (the "Sale Hearing") on the Remaining Leases

and other miscellaneous assets is scheduled to go forward on July 15, 2016 [Docket No. 1953].

11.      Once the Adjourned Main Auction is held and the liquidation of the Debtors'

remaining Retail Inventory and other assets is complete, the Debtors will be able to better

determine what proceeds are available for distribution to their creditors and to formulate a

chapter 11 plan.  However, given that the Debtors' ongoing sale process will extend past the

current deadline to file a plan, June 30, 2016, the Debtors require additional time to market the

01:18747963.4

Remaining Leases and other assets and conclude the sale process before they are able to

determine the best path forward and propose a chapter 11 plan.

12.     Prior to filing this Motion, the Debtors' undersigned counsel discussed the

requested extension proposed herein with the Committee's advisors, and were advised that the

Committee does not object to the relief requested hereby.

## RELIEF REQUESTED

13.     By this Motion, the Debtors request, pursuant to section 1121(d)(1) of the

Bankruptcy Code, entry of an order extending the periods within which only the Debtors may

file a chapter 11 plan and solicit acceptances thereof by ninety (90) days.  Unless extended, the

Debtors' Plan Period and Solicitation Period (each as defined below, and together, the

"Exclusive Periods") will expire on June 30, 2016, and August 29, 2016, respectively.[4]  The

Debtors seek to extend the Plan Period and Solicitation Period through and including September

28, 2016, and November 28, 2016, respectively, without prejudice to the Debtors' right to seek

further extensions of both periods, as may be appropriate under the circumstances.  This is the

Debtors' first request for an extension of the Exclusive Periods.

## BASIS FOR RELIEF REQUESTED

14.     Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days

after commencement of a chapter 11 case during which a debtor has the exclusive right to

propose and file a chapter 11 plan (the "Plan Period").  11 U.S.C. § 1121(b).  Section 1121(c)(3)

of the Bankruptcy Code provides that if a debtor has not filed a plan that has been accepted by

each class of claims or interests that is impaired under the plan before 180 days after

---

[4]     By operation of Local Rule 9006-2, the Plan Period and Solicitation Period are automatically extended until
such time as the Court has had an opportunity to consider and act upon the relief requested in this Motion.

01:18747963.4

commencement of a chapter 11 case (the "Solicitation Period"), any party in interest may file a

competing plan.  11 U.S.C. § 1121(c)(3).

A.    **Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods for "Cause"**

15.    The Exclusive Periods are designed to afford a debtor a full and fair opportunity

to propose a consensual plan and solicit acceptances of such plan, without disruption to the

administration of the estate that may result from the filing of competing plans by non-debtor

parties.  To this end, where the Exclusive Periods prove to be an unrealistic timeframe for filing

and soliciting acceptances of a meaningful chapter 11 plan that would garner support from

parties in interest, section 1121(d) of the Bankruptcy Code allows the Court to extend such

Exclusive Periods for "cause."  11 U.S.C. § 1121(d).  Although the Bankruptcy Code does not

define the term "cause," the legislative history indicates that it is intended to be a flexible

standard to balance the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95-

595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress

intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing an

unimpeded opportunity to negotiate settlement of debts without interference from other parties in

interest).

16.    Congress built flexibility into section 1121 of the Bankruptcy Code to give the

debtor a sufficient opportunity to stabilize its business operations at the outset of its chapter 11

case and to negotiate an effective plan with its creditors.  *See In re Newark Airport/Hotel Ltd.

P'ship*, 156 B.R. 444, 451 (Bankr. D.N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993) (noting that

Congress designed chapter 11 provisions to enable a debtor to remain in control for some period

of time, thereby making reorganization an attractive alternative to financially troubled

companies); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297-98 (W.D. Tenn. 1987)

(Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

17.     It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case.[5]  *See First Am. Bank of N.Y. v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986).  In making the determination to affirm or deny a request to extend the Exclusive Periods for "cause," courts have considered a variety of factors, including the following:

(i)      The size and complexity of the debtor's case;

(ii)     The necessity of sufficient time to negotiate and prepare adequate information;

(iii)    The existence of good-faith progress towards reorganization;

(iv)     Whether the debtor is paying its debts as they become due;

(v)      Whether the debtor has made progress negotiating with creditors;

(vi)     The length of time a case has been pending;

(vii)    Whether the debtor is seeking an extension to pressure creditors; and

(viii)   Whether or not unresolved contingencies exist.

*In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (citations omitted); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (citing to most of the factors listed above in determining whether to extend the exclusive periods); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed cause to extend its exclusive period based upon certain of the above-quoted factors).

---

[5]    Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended section 1121(d) by prohibiting extensions of the Exclusive Periods beyond 18 and 20 months, respectively, of the date of the order for relief, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of the instant cases.

18.      As set forth herein, the facts and circumstances of these Chapter 11 Cases justify extending the Exclusive Periods to provide the Debtors with an unimpeded opportunity to propose, and ultimately confirm, a viable chapter 11 plan.

**B.      Cause Exists for an Extension of the Exclusive Periods in These Chapter 11 Cases**

19.      Since the Petition Date, the Debtors have focused their efforts and resources on, among other things, stabilizing their businesses, ensuring a smooth transition into chapter 11, complying with the myriad reporting requirements imposed on a chapter 11 debtor, and working to obtain approval of various sales of their assets, including the Agency Agreement.  Moreover, these Chapter 11 Cases have been contentious and burdened by extensive litigation since the Petition Date as the Debtors attempted to, among other things, protect the estates' interest in consigned goods and secure postpetition financing over strenuous objection.  In that context, the Debtors and their professionals have devoted significant time and resources to, among other things, (i) coordinating tasks associated with the various sales (collectively, the "Sales"), including the negotiation of underlying documents and other instruments submitted by multiple bidders and actively participating in the necessary diligence attendant thereto; (ii) resolving a significant number of sale objections and contract counterparty inquiries in connection with the Sales; (iii) participating in extensive litigation related to consigned goods and use thereof; (iv) resolving or otherwise overcoming hundreds of objections to the Debtors' proposed bid procedures and sale timeline; (v) litigating significant issues pertaining to "stub" rent and the extension of time to reject or assume leases of nonresidential real property; (vi) securing postpetition financing over significant landlord, Committee and creditor objections; (vii) finalizing and filing the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules and Statements"), which necessarily required a significant expenditure of time and effort on the part of the Debtors' management and certain of

their personnel and professional advisors; and (viii) ensuring that the estates continue to be competently and efficiently managed during the pendency of these Chapter 11 Cases.

20.    At the same time, the Debtors and their advisors have been dealing with administrative issues attendant to these Chapter 11 Cases, including, but not limited to, (i) obtaining Court approval for multiple bar dates and implementing notice services in relation thereto; (ii) responding to routine and numerous creditor inquiries; (iii) retaining professionals; (iv) evaluating and resolving requests for additional adequate assurance of future payment from certain utility providers; (v) obtaining approval of a key employee retention plan; and (vi) preparing initial and subsequent monthly operating reports.  These demands on the Debtors during the first four months of the Chapter 11 Cases have occupied significant time and resources, and required substantial attention from the Debtors' respective retained professionals. Under these circumstances, the Debtors submit that the requested extensions are both appropriate and necessary to afford the Debtors with sufficient time to adequately prepare a viable chapter 11 plan and related disclosure statement.

### i.    The Size, Complexity, and Duration of the Chapter 11 Cases

21.    As is evident from the docket, which already contains more than 2,100 entries, these Chapter 11 Cases have been active—and quite contested—since their inception.  With respect to the Sales, in particular, the Debtors have directed substantially all of their energy and resources towards maintaining ongoing operations and business relationships while simultaneously soliciting interest in their assets.  Now that the Agency Agreement has been approved, the Debtors will focus on marketing the Remaining Leases and their other assets for sale while the Retail Inventory is liquidated over the summer.  As set forth in the timeline filed with the Court, this sale process is expected to conclude by mid-July and the Retail Inventory will be sold at retail locations through approximately the end of August.  Given this timeline, the

01:18747963.4

Debtors believe that it is in the best interests of all parties to allow the Debtors sufficient additional time to determine the scope of the Sales' proceeds and to formulate a practical and effective chapter 11 plan after the marketing strategies have run their course.  Accordingly, the Debtors submit that the complexity and relatively short duration of these Chapter 11 Cases warrant the extension of the Exclusive Periods.

    **ii.**    **The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information**

22.    Since the Petition Date, the Debtors and their professionals have focused much of their time, energy, and resources on smoothly transitioning into chapter 11 and the pursuit, and ultimate resolution of, the Sales.  Working toward that goal, the Debtors prepared and prosecuted numerous motions for first and second day relief, and prepared and filed their Schedules and Statements and required operating reports.  The Debtors and their professionals have focused most of their time and resources on the Sales and related issues, and the Debtors believe that it is reasonable to request additional time to negotiate and finalize a chapter 11 plan given the recent entry of the Sale Order approving the Agency Agreement and the time, resources, and effort that will be required to market the Debtors' Remaining Leases and other assets.  Moreover, the Debtors will have more clarity regarding the pending adversary proceedings which relate to the use of consigned goods (collectively, the "Consignment Adversary Proceedings") as these Chapter 11 Cases unfold.  Accordingly, the Debtors submit that a brief extension of time is appropriate under the circumstances.

    **iii.**    **Good Faith Progress Made in These Chapter 11 Cases**

23.    As detailed above, the Debtors have made significant and material progress in these Chapter 11 Cases.  Most importantly, the Debtors worked closely with their professionals to evaluate all potential strategic and financial buyers in connection with the Sales, held robust

Auctions that led to the selection of the Agent's bid, and obtained Court approval of the Agency Agreement.  In addition, the Debtors have commenced the Consignment Adversary Proceedings and expect that they will result in significant upside for the estates.  Accordingly, the Debtors submit that they have made good faith progress in these Chapter 11 Cases, which weighs in favor of extending the Exclusive Periods.

### iv.    The Debtors Are Paying Their Debts as They Come Due

24.    As the Debtors continue to make timely payment on their undisputed post-petition obligations, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of post-petition creditors.  As such, the Debtors submit that this factor weighs in favor of extending the Exclusive Periods.

### v.    The Debtors Are Not Seeking an Extension to Pressure Creditors

25.    The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods.  The Debtors have worked diligently over the past few months to maximize the value of their estates, and require the extension sought by this Motion to bring these Chapter 11 Cases to an orderly and efficient conclusion.  The Debtors are not seeking an extension to pressure creditors or other parties-in-interest.  Indeed, the Debtors have regularly consulted with their post-petition secured lenders, the Committee's professionals, and various creditors throughout these proceedings, regularly apprising them of the Debtors' operational progress, the Sales, and other material events as they have unfolded.  As such, the Debtors are not seeking the relief requested herein to pressure creditors.

### vi.    Termination of the Debtors' Exclusive Periods Would Adversely Impact these Chapter 11 Cases

26.    Termination of the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize value and hinder progress made to date.  In effect, if the Court were to

deny the Debtors' request for an extension of the Exclusive Periods, any party-in-interest would

be free to propose a chapter 11 plan for the Debtors.  Such a ruling would foster a chaotic

environment with no central focus and cause substantial harm to the Debtors' efforts to preserve

and maximize the value of their estates.

27.     Based on the foregoing, the Debtors respectfully submit that cause exists to

extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

Specifically, the Debtors request that the Plan Period and Solicitation Period be extended through

and including September 28, 2016, and November 28, 2016, respectively, without prejudice to

the Debtors' right to seek further extensions of the Exclusive Periods, as may be appropriate

under the circumstances.

## NOTICE

28.     The Debtors have provided notice of this Motion to: (a) the U.S. Trustee;

(b) Pachulski Stang Ziehl & Jones LLP, 919 North Market St., 17th Floor, Wilmington, DE

19801 (Attn: Bradford J. Sandler and Colin Robinson), counsel for the Committee; (c) Riemer &

Braunstein LLP (attn: Donald Rothman) as counsel for (i) Bank of America, N.A., in its capacity

as Administrative Agent and Collateral Agent under the Second Amended and Restated Credit

Agreement, dated as of May 17, 2012, and (ii) certain DIP Lenders under the Debtors' proposed

postpetition financing facility; (d) Brown Rudnick LLP (attn: Robert Stark and Bennett

Silverberg) as counsel for (i) Wilmington Savings Fund Society, FSB as Administrative Agent

and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3,

2006 and amended and restated as of November 16, 2010 and (ii) certain Term Lenders under

the Amended and Restated Credit Agreement, dated as of May 3, 2006 and amended and restated

as of November 16, 2010; (e) Choate, Hall & Stewart LLP (attn: Kevin Simard) as counsel for (i)

Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second

Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015,

and (ii) certain DIP Lenders under the Debtors' proposed postpetition financing facility; (f)

O'Melveny & Meyers LLP (attn: John Rapisardi) as counsel for certain holders of 11.5% Senior

Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as

of May 3, 2006; (g) all holders of 11.5% Senior Subordinated Notes Due February 19, 2018

under the Securities Purchase Agreement, dated as of May 3, 2006; and (h) all parties that have

filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

In light of the nature of the relief requested herein, the Debtors submit that no other or further

notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

01:18747963.4

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, (i) extending the Plan Period through and including September 28, 2016, (ii) extending the Solicitation Period through and including November 28, 2016, and (iii) granting such other and further relief as the Court deems just and proper.

Dated:   June 7, 2016
        Wilmington, Delaware

*/s/ Andrew L. Magaziner*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kenos@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Counsel to the Debtors and
Debtors in Possession*

01:18747963.4