## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 16-10527 (MFW) |
| TSAWD HOLDINGS, INC., *et al.*,[1] | Jointly Administered |
| Debtors. | **Hearing Date:  May 23, 2017 at 10:30 a.m. (ET)** |
| | **Objection Deadline:  May 16, 2017 at 4:00 p.m. (ET)** |

### JOINT MOTION OF DEBTORS
### AND TERM LOAN AGENT FOR ORDER, PURSUANT TO
### BANKRUPTCY CODE SECTION 105(A), (I) ENFORCING THE 9019 ORDER
### AND 9019 SETTLEMENT AGREEMENT BY AND AMONG THE DEBTORS,
### THE TERM LOAN AGENT, AND CERTAIN NON-PERFORMING
### SETTLING VENDORS, AND (II) GRANTING RELATED RELIEF

TSAWD Holdings, Inc. and its affiliated debtors and debtors in possession (collectively,

the "Debtors") in the above-captioned Chapter 11 cases, and Wilmington Savings Fund Society,

FSB, as successor administrative and collateral agent (the "Term Loan Agent") under that certain

Amended and Restated Credit Agreement, dated as of November 16, 2010, by and among The

Sports Authority, Inc., as the Borrower, Slap Shot Holdings Corp., as Holdings, the Term Loan

Agent, and the lenders from time to time party thereto,[2] hereby jointly file this motion (the

"Motion"), pursuant to Section 105(a) of title 11 of the United States Code (the "Bankruptcy

Code"), seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the

"Proposed Order"), (i) enforcing the Court's *Order, Pursuant to Bankruptcy Code Section 105(a)*

*and Bankruptcy Rule 9019, Approving the Settlement Agreement by and among the Debtors,*

---

[1]      The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: TSAWD Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); TSAWD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 2305 East Arapahoe Road, Suite 234, Centennial, CO 80122.

[2]      The Debtors and the Term Loan Agent are referred to herein together as the "Movants".

*Term Loan Agent, and Certain Consignment Vendors Party Thereto* [Docket No. 2434] (the

"9019 Order"), and that certain *Settlement Agreement Regarding Pay-by-Scan Vendors, dated as*

*of June 30, 2016*, attached as Exhibit A to the 9019 Order (the "9019 Settlement"), against those

consignment vendors that are party to the 9019 Settlement but that have failed to perform in

accordance therewith, as listed on **Annex 1** to the Proposed Order (collectively, the "Non-

Performing Settling Vendors"), and (ii) to the extent that any Non-Performing Settling Vendors

fail to comply with any such Proposed Order entered by the Court, then preserving Movants'

rights to seek sanctions against such Non-Performing Settling Vendors.  Copies of the 9019

Order and the 9019 Settlement are attached hereto as **Exhibit B**.  In support of this Motion,

Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1.      By this Motion, Movants seek to collect approximately $2.8 million in amounts

owed by thirty-four (34) Non-Performing Settling Vendors under the 9019 Settlement.

Consistent with the 9019 Settlement, notices with respect to these amounts were sent to the Non-

Performing Settling Vendors in December 2016 (with follow-up phone and email

communications by the Term Loan Agent since then), but the Non-Performing Settling Vendors

have thus far failed to pay the amounts they owe.  Notably, other than Implus Footcare, LLC

(discussed further below), none of the Non-Performing Settling Vendors have disputed the

amounts they owe under the 9019 Settlement.  They have simply failed to pay.

2.      As the Court is well aware, one of the most contentious matters in these Chapter

11 cases was the dispute among the Debtors, the Term Loan Agent, and certain consignment

vendors regarding the parties' competing claims and interests in respect of the Prepetition PBS

Goods[3] and the PBS Proceeds.   After months of costly and time-consuming litigation, the Debtors, Term Loan Agent, and a substantial number of consignment vendors (the "Settling Vendors") reached a global resolution of issues in respect of the Prepetition PBS Goods and PBS Proceeds, which resolution was embodied in the 9019 Settlement and approved by this Court pursuant to the 9019 Order.

3.      The 9019 Settlement provides for, among other things, the following:

(a)      The Debtors and Settling Vendors acknowledged and agreed that, for purposes of the 9019 Settlement, the Prepetition PBS Goods and PBS Proceeds were subject to the Term Loan Agent's lien and security interest and that any payment made to a Settling Vendor pursuant to the 9019 Settlement was a carveout of the Term Loan Agent's collateral (referred to as a "Vendor Carveout").

(b)      Each Settling Vendor would be paid only the Vendor Carveout portion of the PBS Proceeds.  The amount of the Vendor Carveout was calculated as a percentage of the amount that the Settling Vendor would otherwise have been entitled to under the applicable PBS Agreement (referred to as the "Vendor Allocation").

(c)      The percentages used to calculate the Vendor Allocation for each Settling Vendor were set forth on Schedule A (and Rider B) to the 9019 Settlement.  Generally, Settling Vendors received between 25% and 40% of their entitlement under the applicable PBS Agreement, with the balance to be retained by the Term Loan Agent.

(d)      In addition to receiving the Vendor Carveout, the Settling Vendors also received a waiver of any estate preference claims against the Settling Vendors, and the dismissal with prejudice of adversary proceedings that were then pending against the Settling Vendors with respect to the Prepetition PBS Goods and PBS Proceeds.

4.      Prior to entering into the 9019 Settlement, the Debtors were paying Settling Vendors the amount that such Settling Vendors were otherwise entitled to receive under the applicable PBS Agreement.  To ensure that the Term Loan Agent received the amount it was

---

[3]      Unless otherwise indicated, capitalized terms used herein but not defined shall have the meanings ascribed to them in the 9019 Settlement.

entitled to receive under the 9019 Settlement, and that no Settling Vendor received more than their Vendor Allocation, the 9019 Settlement provided for the Debtors, Term Loan Agent, and Settling Vendors to perform a final reconciliation of the PBS Proceeds upon the conclusion of the liquidation sales of the Debtors' assets.  To the extent that any Settling Vendors received more than their Vendor Allocation, they were to pay any excess amounts, referred to as a "Vendor Return Amount," to the Term Loan Agent within twenty (20) calendar days of receiving an invoice for such amount.  To the extent that any Settling Vendors received less than the Vendor Allocation, the Term Loan Agent was to pay any shortfall amount, referred to as a "TLA Return Amount," to the Settling Vendors within twenty (20) calendar days of the completion of the final reconciliation.

5.      The Debtors' liquidation sales were substantially concluded in July 2016 and shortly thereafter the Debtors commenced work on the final reconciliation of the PBS Proceeds. On or about November 17, 2016, the Debtors distributed the final reconciliation to the Term Loan Agent and Settling Vendors.  Between December 14 and December 22, 2016, the Term Loan Agent sent notices to each Settling Vendor that owed a Vendor Return Amount, which notices provided (i) a calculation of the applicable Vendor Return Amount due from the Settling Vendor based on the final reconciliation, (ii) payment instructions for the Vendor Return Amount, and (iii) a demand that payment of the Vender Return Amount be made within twenty (20) calendar days of the notice, as provided under the 9019 Settlement.

6.      Many Settling Vendors upheld their obligations under the 9019 Settlement and promptly paid their Vendor Return Amount to the Term Loan Agent.  However, the Non-Performing Settling Vendors have thus far failed to satisfy their payment obligations under the 9019 Settlement.  Since sending out the notices in December, the Term Loan Agent attempted to

contact the substantial majority of Non-Performing Settling Vendors by telephone and email in an effort to engage them on paying their Vendor Return Amount. However, these efforts have been largely unsuccessful.

7.      Accordingly, the Debtors and Term Loan Agent bring this Motion seeking entry of the Proposed Order directing the Non-Performing Settling Vendors to pay to the Term Loan Agent the Vendor Return Amount applicable to each such Non-Performing Settling Vendor, as set forth on **Annex 1** to the Proposed Order. As set forth herein, the Term Loan Agent has made repeated attempts to collect the Vendor Return Amounts from the Non-Performing Settling Vendors. Movants, therefore, request that, to the extent that the Court enters any Order granting the relief requested in this Motion and any Non-Performing Settling Vendors fail to comply with such Order, then the Court expressly preserve Movants' rights to seek sanctions against such Non-Performing Settling Vendors.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is Bankruptcy Code Section 105(a).[4]

---

[4]      Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware, Movants consent to the entry of a final judgment or order with respect to the Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of Movants.

## RELEVANT BACKGROUND

A.    **Overview of Consignment Dispute, 9019 Motion, and Entry of 9019 Order.**

9.      The disputes regarding the competing claims and interests of the Debtors, the Term Loan Agent, and the Settling Vendors with respect to the Prepetition PBS Goods and PBS Proceeds have been addressed extensively in these Chapter 11 cases (and related adversary proceedings).  After substantial good faith, arm's length negotiations (and several days of court-supervised mediation), the Debtors, Term Loan Agent, and Settling Vendors agreed to resolve their disputes on the terms set forth in the 9019 Settlement.

10.      On June 30, 2016, the Debtors and Term Loan Agent filed their joint motion seeking approval of the 9019 Settlement.[5]  Numerous Settling Vendors filed joinders in support of the 9019 Motion.

11.      On July 7, 2016, the Court conducted a hearing on the 9019 Motion in which the Court described the 9019 Settlement as "a perfect settlement," noting that—

> [T]he consignors are giving up a portion of their asserted entitlements. The lenders are giving up a portion of their asserted entitlements. The debtors are giving up the preferences, but getting their portion of the sale of the consigned goods at this time so that the case is not held up for years in litigation. The estate is saving substantial administrative expenses.  So I think that the – again, the settlement is a perfect settlement, from my perspective….[6]

12.      On July 7, 2016, the Court entered the 9019 Order.  The 9019 Order provided, among other things, that:

---

[5]      *Joint Motion for an Order, Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9019, Approving the Settlement Agreement by and among the Debtors, Term Loan Agent, and Certain Consignment Vendors Party Thereto* [Docket No. 2361] (the "9019 Motion").

[6]      July 7, 2016 Hr'g Tr. at 74:1-9.

6

(a)     The 9019 Settlement (including all riders appended to the 9019 Settlement) was approved in its entirety pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9019,[7]

(b)     The Debtors and Term Loan Agent were authorized to enter into the 9019 Settlement with the Settling Vendors and to take any and all actions necessary and appropriate to consummate the 9019 Settlement,[8]

(c)     The 9019 Order and the 9019 Settlement was binding on the Debtors, the Term Loan Agent, and each of the Settling Vendors, and any of the foregoing parties' successors and/or assigns,[9] and

(d)     The Debtors and Term Loan Agent were authorized and empowered to, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the 9019 Order.[10]

13.     Further, the 9019 Order provides that the Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the 9019 Motion, the 9019 Settlement, or the implementation of the 9019 Order.[11]

## B.     Overview of Relevant Provisions of 9019 Settlement.

14.     The following is a summary of the material provisions of the 9019 Settlement:

| Provision | Description |
|---|---|
| Vendor Carveout | The Settling Vendors stipulated and agreed, for purposes of the 9019 Settlement, that:  (a) the entirety of the Prepetition PBS Goods and PBS Proceeds are collateral of the Term Loan Agent and are subject to the prepetition liens of the Term Loan Agent; and (b) any distributions to the Settling Vendors is a carveout (the Vendor Carveout) from the Term Loan Agent's collateral.[12] |

---

[7]     9019 Order ¶ 2.

[8]     *Id.* ¶ 3.

[9]     *Id.* ¶ 4.

[10]     *Id.* ¶ 8.

[11]     *Id.* ¶ 11.

[12]     9019 Settlement § 1(c).

| Provision | Description |
|---|---|
| **Vendor Allocation** | The Settling Vendors were to be paid by the Debtors (or could retain) only the Vendor Carveout portion of the PBS Proceeds. The amount payable to the Settling Vendors (the Vendor Allocation) was calculated as a percentage (as set forth on <u>Schedule A</u> to the 9019 Settlement) of the Settling Vendor's entitlement under the applicable PBS Agreement. The Vendor Allocation was to be calculated based upon "gross rings" at the register without any deduction of any commission due to the joint venture liquidators.[13] |
| **PBS Escrow and Payments to Term Loan Agent** | From and after entry of the 9019 Order, all Vendor Allocation amounts (i) then held by the Debtors relating to prior sales of Prepetition PBS Goods, and (ii) collected by the Debtors from future sales of Prepetition PBS Goods, were transferred to an escrow (the "<u>PBS Escrow</u>"). Funds in the PBS Escrow were tracked by the Debtors on a vendor-by-vendor basis.[14]<br><br>From and after entry of the 9019 Order, the Debtors remitted to the Term Loan Agent, on behalf of the Settling Vendors, (i) the funds in the PBS Escrow, plus (ii) the entire amount of the Vendor Allocation resulting from the sale of Prepetition PBS Goods, unless and until a Settling Vendor was receiving less than the agreed upon Vendor Allocation from the sales of Prepetition PBS Goods. Thereafter, such Settling Vendor received the Vendor Carveout amount in respect of any further sales of Prepetition PBS Goods.[15] |
| **Final Reconciliation and Vendor Return Amount** | The Debtors, Term Loan Agent, and Settling Vendors were to perform a final reconciliation of the PBS Proceeds upon the conclusion of the Debtors' liquidation sales. To the extent that the amount paid to a Settling Vendor exceeded the Vendor Carveout amount (such excess being the Vendor Return Amount), the Debtors were to invoice the Settling Vendor for such Vendor Return Amount. The Settling Vendors agreed that they would pay the Term Loan Agent the invoiced Vendor Return Amount within 20 calendar days of invoicing.[16] |

---

[13]    *Id.* § 1(d). To the extent that there were Prepetition PBS Goods sold with a cost guarantee, the Vendor Allocation was (1) if such Prepetition PBS Goods were sold for an amount equal to or greater than the guaranteed amount specified in such Settling Vendor's PBS Agreement, the amount such Settling Vendor would ordinarily receive under its applicable PBS Agreement, or (2) if such Prepetition PBS Goods were sold for an amount less than the guaranteed amount, the actual retail proceeds realized upon the sale of such Prepetition PBS Goods.

[14]    *Id.* § 1(e).

[15]    *Id.* § 1(f).

[16]    9019 Settlement § 1(g).

| Provision | Description |
|---|---|
| **Releases** | The Debtors, Term Loan Agent, and Settling Vendors provided mutual releases with respect to the Prepetition PBS Goods and Vendor Allocation, except for, among other things, the enforcement of the 9019 Settlement. The releases included the release of any and all Chapter 5 causes of action of the Debtors' estates and all claims set forth in the complaints filed in the adversary proceedings pending against the Settling Vendors (and related appeals), and provided for the dismissal of the adversary proceedings with prejudice.[17] |
| **Retention of Jurisdiction** | The Court retained jurisdiction with respect to the 9019 Settlement, including the consummation and enforcement thereof.[18] |

### C.   The Final Reconciliation; Notices of Vendor Return Amount Sent to Settling Vendors.

15.   The Debtors' liquidation sales concluded in or about July 2016. Thereafter, the Debtors commenced the reconciliation analysis as required under the 9019 Settlement. In determining whether a Settling Vendor owed a Vendor Return Amount, the Debtors performed the following analysis:

(i)   The Debtors calculated the actual post-petition payments made to the Settling Vendor in respect of the sale of the Prepetition PBS Goods.

(ii)   The Debtors calculated the total post-petition payments that would have been due to the Settling Vendor in the ordinary course (not accounting for the 9019 Settlement) pursuant to the applicable PBS Agreement based upon "gross rings" at the register (without any deduction of any commission due to the joint venture liquidators) (the "Gross Rings Amount"). To the extent applicable, the Debtors subtracted from the Gross Rings Amount any amounts that, pursuant to the applicable PBS Agreement, were to be charged back to the Settling Vendor (including entitlement chargebacks and shipping and handling chargebacks).

(iii)   The Debtors multiplied the Gross Rings Amount (less any applicable chargebacks) by the Vendor Allocation percentage applicable to such Settling Vendor, as set forth on Schedule A to the 9019 Settlement. The product of this calculation was the "Settling Vendor Amount."

---

[17]   *Id.* § 4(a)

[18]   *Id.* § 5(f).

(iv)    The Debtors calculated the Vendor Return Amount by taking the amount actually paid to the Settling Vendor and subtracting the Settling Vendor Amount (and, to the extent applicable, subtracting any additional e-commerce proceeds that were due to the Settling Vendor).

16.    The Debtors completed the reconciliation analysis for each Settling Vendor on or about November 17, 2016 and provided the same to the Term Loan Agent and Settling Vendors. Between December 14, 2016 and December 22, 2016, the Term Loan Agent sent notices to each Settling Vendor that owed a Vendor Return Amount. Each such notice included: (i) a calculation of the applicable Settling Vendor's Vendor Return Amount consistent with the methodology described above; (ii) notice that payment of such Vendor Return Amount was due within twenty (20) calendar days, as provided under the 9019 Settlement; and (iii) payment instructions with respect to the Vendor Return Amount. Copies of the notices sent to the Non-Performing Settling Vendors are attached hereto as **Exhibit C-1** through **Exhibit C-34**.

17.    Many Settling Vendors promptly remitted payment of the Vendor Return Amount in accordance with the 9019 Settlement. However, approximately thirty-four (34) Non-Performing Settling Vendors have thus far failed to remit payment of their Vendor Return Amount. The aggregate Vendor Return Amount due from the Non-Performing Settling Vendors is approximately $2.8 million. A schedule setting forth each Non-Performing Settling Vendor and the Vendor Return Amount owed by each is attached as **Annex 1** to the Proposed Order.

18.    Notably, other than Implus Footcare, LLC ("Implus"), none of the Non-Performing Settling Vendors has disputed the amounts they owe under the 9019 Settlement.[19] With respect to Implus, the Vendor Return Amount owed by Implus is $551,231.82. Implus has disputed this amount and alleges that its Vendor Return Amount is $287,617. The Term Loan

---

[19]    Counsel to one of the Non-Performing Settling Vendors, Jade Swimwear, LP, has inquired about units he alleges were not part of the Vendor Return Amount calculation, but has not challenged the actual calculation of Jade Swimwear's Vendor Return Amount.

Agent engaged Implus on paying the undisputed portion of Implus' Vendor Return Amount, with all parties reserving all rights with respect to the disputed portion. Implus has thus far not agreed to move forward on this basis.

## RELIEF REQUESTED

19. By this Motion, Movants seek entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, (i) enforcing the 9019 Order and 9019 Settlement against the Non-Performing Settling Vendors and ordering such Non-Performing Settling Vendors to remit payment of the applicable Vendor Return Amount owed by such Non-Performing Settling Vendor, as set forth on **Annex 1** to the Proposed Order, not later than five (5) business days following entry of the Proposed Order, and (ii) preserving Movants' rights to seek sanctions in the event that a Non-Performing Settling Vendor fails to comply with any Proposed Order entered by the Court.

## BASIS FOR RELIEF REQUESTED

### I. The Court Should Compel Payment of the Vendor Return Amount.

20. It is well settled that bankruptcy courts have jurisdiction to interpret and enforce their own orders,[20] and that Bankruptcy Code Section 105(a) allows bankruptcy courts to issue any order necessary to carry out the provisions of the Bankruptcy Code, including to enforce their previously entered orders.[21]

---

[20] *In re Allegheny Health, Education and Research Foundation*, 383 F.3d 169, 175-76 (3d Cir. 2004) (holding that a bankruptcy court had jurisdiction to interpret and give effect to its previous sale order); *In re Worldcorp., Inc.*, 252 B.R. 890, 897 (Bankr. D. Del. 2000) (enforcing order and settlement agreement); *see In re Texaco, Inc.*, 182 B.R. 937, 944 (Bankr. S.D.N.Y. 1995) (recognizing that "it is essential for a bankruptcy court to have jurisdiction to adjudicate controversies respecting, and to enforce, its own orders").

[21] *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991) (noting that Bankruptcy Code Section 105 "gives the bankruptcy court the power and the jurisdiction to enforce its valid orders.") (quoting *In re Radco Merchandising Services, Inc.*, 111 B.R. 684, 688-89 (N.D. Ill. 1990)).

21.    It is also well settled that a court may enforce a settlement agreement entered into by parties in a proceeding pending before it.[22]  Indeed, the obligation of parties to perform under a valid settlement agreement is a bedrock principle of law.[23]  In this regard, both the 9019 Order and the 9019 Settlement explicitly provide that the Court will retain jurisdiction with respect to all matters arising with respect to the 9019 Order and the 9019 Settlement, including the enforcement thereof.[24]

22.    Where, as here, a party refuses to perform under a valid settlement agreement, the appropriate remedy is for the Court to enforce the agreement by its terms.[25]  Importantly, the Court may compel the payment of amounts owed under a previously approved settlement agreement by way of a contested matter, rather than an adversary proceeding.[26]  In In re Worldcorp., the liquidating agent of the debtors brought an adversary proceeding against Atlas Companies ("Atlas") seeking to set aside certain prepetition transactions between the debtors and

---

[22]    *See Hobbs & Co. v. Am. Investors Mgmt., Inc.*, 576 F.2d 29, 33 n.7 (3d Cir. 1978); *see Fox v. Consolidated Rail Corp.*, 739 F.2d 929, 932 (3d Cir. 1984) ("It is well settled that a federal court has the inherent power to enforce and to consider challenges to settlements entered into in cases originally filed  therein."); *Rosso v. Foodsales, Inc.*, 500 F. Supp. 274, 276 (E.D. Pa. 1980) (noting that it was "well settled that a district court has jurisdiction to enforce a settlement agreement entered into by litigants in a case pending before it.").

[23]    *Good v. Pennsylvania Railroad Co.*, 384 F.2d 989, 990 (3d Cir. 1967) ("The obligation to remain bound by a valid agreement of settlement duly entered into by counsel with the authority of his client is one which pervades the law.").

[24]    9019 Order ¶ 11; 9019 Settlement § 5(f).

[25]    *Pugh v. Super Fresh Food Markets, Inc.*, 640 F. Supp. 1306, 1307-08 (E.D. Pa. 1986) (enforcing settlement agreement according to terms).

[26]    *In re Worldcorp*, 252 B.R. at 895 ("While it is true as a general proposition that a claim to recover money or property or to obtain an injunction or other equitable relief must be brought as an adversary proceeding, that general rule is not applicable to this case.  In this case, the Debtors are merely seeking to enforce an order already in place.  The case was originally brought by the Debtors as an adversary proceeding.  The adversary proceeding was resolved by a Settlement Agreement pursuant to which we issued the order the Debtors now seek to enforce.  Thus, we conclude that an adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained).

Atlas.[27]   The debtors and Atlas subsequently entered into a settlement agreement pursuant to

which all of the claims between the parties were resolved and Atlas agreed to pay the debtors a

"tax sharing payment" in an amount (if any) to be determined.[28]   The court approved the

settlement agreement and the "tax sharing payment."[29]   Subsequently, Atlas refused to pay the

debtors the "tax sharing payment" and, as a result, the debtors filed a motion to compel

payment.[30]   Although acknowledging that a claim to recover money or property must typically

be brought as an adversary proceeding, the court stated that such "general rule is not applicable

[where] the debtors are merely seeking to enforce an order already in place."[31]   The court noted

that the dispute was originally brought as an adversary proceeding and was resolved by the

settlement agreement and order approving the same.[32]   Thus, the court concluded "that an

adversary proceeding is not necessary where the relief sought is the enforcement of an order

previously obtained."[33]   Here, the Debtors initiated more than 100 adversary proceedings against

the consignment vendors, which the Term Loan Agent joined, regarding the Prepetition PBS

Goods and PBS Proceeds.   Those adversary proceedings were resolved pursuant to the 9019

Settlement, as approved by the 9019 Order.   Through this Motion, the Debtors and Term Loan

Agent are simply seeking to enforce the 9019 Order and 9019 Settlement against the Non-

Performing Settling Vendors.   Thus, the relief requested by this Motion is procedurally proper.

---

[27]      252 B.R. at 893.

[28]      *Id*.

[29]      *Id*. at 894.

[30]      *Id*.

[31]      *Id*. at 895.

[32]      252 B.R. at 895.

[33]      *Id*.

23.     Under the 9019 Order and the 9019 Settlement, the Non-Performing Settling Vendors' obligations are plain and unambiguous:  They were required to pay the Vendor Return Amount to the Term Loan Agent within twenty (20) calendar days of receiving a notice and invoice with respect to such amount.  Notably, other than Implus, none of the Non-Performing Settling Vendors have disputed the amounts they owe under the 9019 Settlement.

24.     The Vendor Return Amount notices were sent over four months ago, and the Non-Performing Settling Vendors have still failed to pay their respective Vendor Return Amounts.  In the intervening months, the Term Loan Agent attempted to contact the substantial majority of Non-Performing Settling Vendors by phone and/or email, but such efforts have been largely fruitless.  Accordingly, Movants request entry of the Proposed Order compelling the Non-Performing Settling Vendors to pay the Vendor Return Amount applicable to each such Non-Performing Settling Vendor, as set forth on **Annex 1** to the Proposed Order, within five (5) business days of entry of the Proposed Order.

II.     **To the Extent that any Non-Performing Settling Vendors Fail to Comply with any Order Entered by the Court with Respect to the Motion, Movants' Rights to Seek Sanctions Should Be Expressly Preserved.**

25.     The Court "has the authority to impose civil contempt to enforce compliance with a court order and to compensate a party damaged by a violation of that order."[34]  "Sanctions for civil contempt serve two purposes:  (1) to coerce the disobedient party into compliance with the court's order; and (2) to compensate for losses sustained by the disobedience."[35]  The Court is "afforded broad discretion to fashion a sanction that will achieve full remedial relief."[36]

---

[34]     *In re Swanson*, 207 B.R. 76, 79 (Bankr. D.N.J. 1997) (citation omitted); *see also Dubin v. Jakobowski*, 879 F.2d 856 (3d Cir.), cert. denied, 493 U.S. 976 (1989).

[35]     *In re Anderson*, 348 B.R. 652, 661 (Bankr. D. Del. 2006) (citing  In re Meyers, 344 B.R. at  66).

[36]     *John T. v. Del. Co. Intermediate Unit*, 318 F.3d 545, 554 (3d Cir. 2003).

26.     Civil contempt sanctions are appropriate where (i) there is a valid court order, (ii) the party against whom contempt sanctions are sought had knowledge of the order, and (iii) such party disobeyed the order.[37]  Notably, a party is not required to demonstrate willfulness to obtain civil contempt sanctions.[38]

27.     To the extent that the Court enters the Proposed Order and any Non-Performing Settling Vendors fail to comply therewith, Movants' rights to seek sanctions against such Non-Performing Settling Vendors should be expressly preserved.  Movants submit that, to the extent that the Court enters the Proposed Order and any Non-Performing Settling Vendors fail to comply therewith, a finding of contempt would be warranted and appropriate sanctions would include, without limitation, ordering the Non-Performing Settling Vendors to pay (a) interest on the Non-Performing Settling Vendors' respective Vendor Return Amount at the federal judgment rate from the date that payment was due under the 9019 Settlement (*i.e.*, 20 days after receipt of notice with respect to the Vendor Return Amount), and (b) the reasonable costs and fees incurred by Movants in connection with bringing this Motion and seeking to collect the Vendor Return Amount.

## NO PRIOR REQUEST

28.     No prior request for the relief requested herein has been made to this or any other court.

## NOTICE

29.     Movants have provided notice of this Motion, via overnight mail and/or email, to: (a) the Office of the United States Trustee for the District of Delaware; (b) Pachulski Stang Ziehl

---

[37]     *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990) (internal quotations omitted).

[38]     *In re Snider Farms, Inc.*, 125 B.R. 993, 997-8 (Bankr. N.D. Ind. 1991).

& Jones LLP (attn.: Bradford J. Sandler, Esq.), as counsel for the Official Committee of Unsecured Creditors; (c) each of the Non-Performing Settling Vendors listed on **Annex 1** to the Proposed Order; and (d) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, Movants submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank.]*

## CONCLUSION

**WHEREFORE**, Movants respectfully request that the Court:  (i) enter an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, (a) enforcing the 9019 Order and 9019 Settlement against the Non-Performing Settling Vendors listed on **Annex 1** to the Proposed Order, and ordering such Non-Performing Settling Vendors to remit payment of the applicable Vendor Return Amount set forth on **Annex 1** not later than five (5) business days following entry of the Proposed Order, and (b) to the extent that any Non-Performing Settling Vendors fail to comply with any such Proposed Order entered by the Court, then preserving Movants' rights to seek sanctions against such Non-Performing Settling Vendors; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: May 2, 2017
Wilmington, Delaware

/s/ Daniel B. Butz
Robert J. Dehney (No. 3578)
Gregory W. Werkheiser (No. 3553)
Daniel B. Butz (No. 4227)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market St., 16th Floor
P.O. Box 1347
Wilmington, DE  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@mnat.com
gwerkheiser@mnat.com

- and -

Robert J. Stark (admitted *pro hac vice*)
Bennett S. Silverberg (admitted *pro hac vice*)
Andrew M. Carty (admitted *pro hac vice*)
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
rstark@brownrudnick.com

bsilverberg@brownrudnick.com
acarty@brownrudnick.com

*Counsel to Wilmington Savings
Fund Society, FSB, as Term Loan Agent*


*/s/ Michael R. Nestor*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
amagaziner@ycst.com

- and -

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Jeremy L. Graves (CO No. 45522)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*