# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TSAWD HOLDINGS, INC., *et al.*, | Case No. 16-10527 (MFW) |
| Debtors. | Jointly Administered |

**OPPOSITION BY BOOST OXYGEN A "SETTLING VENDOR" TO THE JOINT MOTION OF DEBTORS AND TERM LOAN AGENT FOR ORDER, PURSUANT TO BANKRUPTCY CODE SECTION 105(a), (I) ENFORCING THE 9019 ORDER AND 9019 SETTLEMENT AGREEMENT BY AND AMONG THE DEBTORS, THE TERM LOAN AGENT, AND CERTAIN NON-PERFORMING SETTLING VENDORS, AND (II) GRANTING RELATED RELIEF**

The premise for the Order that the Debtors and Term Loan Agent seek is that none of the identified settling vendors -- pejoratively referred to as "Non-Performing" -- has disputed the amounts they owe under the 9019 Settlement (pp 2, 10, 14) and yet "Have simply refused to pay" (Joint Motion, p. 2). The failure to pay is said to be all the more unjustified because the Term Loan Agreement tried to "contact the substantial majority of Non-Performing Settling Vendors" in order to get them to pay (p. 5) and made repeated attempts to collect the Vendor Return Amounts (*id.* at 4-5, 14).

None of the foregoing representations apply to Boost Oxygen. In fact, Boost Oxygen disputes the amount it is said to owe; but it has never simply refused to pay the lawful amount that it owes. To the contrary, after receiving the Exhibit C-4 letter from the Term Loan Agent's counsel, Boost Oxygen responded to it on January 11, 2017. (Exhibit 1 hereto). Boost Oxygen heard nothing back from the joint movants.

The Exhibit 1 letter, part of which is reproduced here, explained Boost Oxygen's position in the accounting and acknowledged its willingness to pay the right amount under the Settlement Agreement; to wit:

> The Exhibit A accounting of Boost's obligation under the settlement agreement enclosed with your letter appears to be incomplete. The accounting ends with a credit to Boost for sales consummated as of July 2, 2016. No credit is given for sales after this date. Yet, it seems highly probable that sales for which Boost is entitled to a credit were made after July 2. I say this because Boost's records indicate that the Sports Authority and/or the liquidators had in inventory 3,627 twenty-two ounce oxygen canisters and 2,908 four ounce oxygen canisters as of July 2. Inventory cost is calculated using $6.75 for the twenty-two canister and $4.50 for the four ounce canister.
>
> Boost is a small company as [sic] ("on") whom the settlement agreement imposes a particularly onerous burden. Boost has had to relinquish its entitlement to any payment for the oxygen canisters that Sports Authority sold in January and February 2016 (approximately $49,000.00) and, before the credit mentioned in the preceding paragraph, it is required to give back three-quarters of the payments it received, less a small credit, viz., $62,490.72, for the post-March 2016 sales of the oxygen canisters.

In the circumstances, the relief that the Debtor's and Term Loan Agent seek against Boost Oxygen should be DENIED. Leave to re-file the Motion should be granted only if the Term Loan Agent engages in good faith negotiations with Boost Oxygen to resolve the monetary amount of give-back required of Boost Oxygen and the terms of a repayment schedule.

                                        Respectfully submitted,
                                        BOOST OXYGEN

DATED: May 16, 2017                By:     /Robert Neuner/
                                                            Robert Neuner
                                                            Hoffmann & Baron, LLP
                                                            6 Campus Drive
                                                            Parsippany, New Jersey 07054
                                                           Telephone: 973-331-1700
                                                           Facsimile: 973-331-1717
                                                           E-mail: rneuner@hbiplaw.com