**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TSAWD HOLDINGS, INC., et al.,[1] | Case No. 16-10527 (MFW) |
| Debtors. | (Jointly Administered) |

## CHAPTER 11 PLAN OF LIQUIDATION OF TSA CARIBE, INC.

Dated: Wilmington, Delaware
      September 5, 2017

IRELL & MANELLA LLP
Jeffrey M. Reisner (Pro Hac Vice)
Michael Strub, Jr. (Pro Hac Vice)
Kerri Lyman (Pro Hac Vice)
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Special Counsel to Debtors TSAWD Holdings, Inc., TSA Ponce, Inc., and TSA Caribe, Inc.*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Michael R. Nestor (No. 3526)
Andrew L. Magaziner (No. 5426)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the TSA Debtors*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: TSAWD Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); TSAWD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664) (collectively, the "TSA Debtors"). The headquarters for the above-captioned TSA Debtors is located at 2305 East Arapahoe Road, Suite 234, Centennial, CO 80122. The TSA Debtors were formerly known as: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................ 1

ARTICLE I        DEFINITIONS AND CONSTRUCTION OF TERMS ............................ 1

    A.        Definitions ................................................................................................ 1

        1.01        Adequate Protection Claim ................................................ 1

        1.02        Administrative Agent ......................................................... 1

        1.03        Administrative Expense Claim ........................................... 1

        1.04        Allowed ............................................................................... 1

        1.05        Assets ................................................................................... 2

        1.06        Avoidance Actions .............................................................. 2

        1.07        Ballot ................................................................................... 2

        1.08        Bankruptcy Code ............................................................... 2

        1.09        Bankruptcy Court ............................................................... 2

        1.10        Bankruptcy Rules ............................................................... 2

        1.11        Bar Date .............................................................................. 2

        1.12        Bar Date Order ................................................................... 3

        1.13        Business Day ....................................................................... 3

        1.14        Cash ..................................................................................... 3

        1.15        Causes of Action ................................................................. 3

        1.16        Chapter 11 Case .................................................................. 3

        1.17        Claim .................................................................................... 3

        1.18        Claims and Voting Agent .................................................... 3

        1.19        Class ..................................................................................... 3

        1.20        Collateral ............................................................................. 3

        1.21        Confirmation Date .............................................................. 3

        1.22        Confirmation Hearing ......................................................... 4

        1.23        Confirmation Order ............................................................ 4

        1.24        Creditors' Committee .......................................................... 4

        1.25        Debtor .................................................................................. 4

01:22326862.1

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| 1.26 | DIP Credit Agreement | 4 |
| 1.27 | DIP Facility Documents | 4 |
| 1.28 | DIP Financing Claim | 4 |
| 1.29 | DIP Lender | 4 |
| 1.30 | Disclosure Statement | 4 |
| 1.31 | Disclosure Statement Order | 4 |
| 1.32 | Disputed | 4 |
| 1.33 | Distribution | 5 |
| 1.34 | Distribution Date | 5 |
| 1.35 | Distribution Record Date | 5 |
| 1.36 | Effective Date | 5 |
| 1.37 | Equitably Subordinated Claim | 5 |
| 1.38 | Equity Interest | 5 |
| 1.39 | Estate | 5 |
| 1.40 | Fee Claim | 5 |
| 1.41 | Final DIP Order | 5 |
| 1.42 | Final Distribution Date | 6 |
| 1.43 | Final Order | 6 |
| 1.44 | General Unsecured Claim | 6 |
| 1.45 | Holdback Amount | 6 |
| 1.46 | Holdback Amount Reserve | 6 |
| 1.47 | Interdebtor Claim | 6 |
| 1.48 | Initial Distribution Date | 6 |
| 1.49 | Interim Distribution Date | 6 |
| 1.50 | Lender | 6 |
| 1.51 | Lien | 6 |
| 1.52 | Liquidation Trust | 7 |
| 1.53 | Liquidation Trust Agreement | 7 |
| 1.54 | Liquidation Trust Assets | 7 |
| 1.55 | Liquidation Trust Beneficiaries | 7 |

# TABLE OF CONTENTS

**Page**

1.56   Liquidation Trustee ........................................................................7

1.57   LT Reserve ....................................................................................7

1.58   Miscellaneous Secured Claim .......................................................7

1.59   Paid in Full, Payment in Full, or Pay in Full ................................7

1.60   Person ............................................................................................7

1.61   Petition Date .................................................................................7

1.62   Plan ................................................................................................7

1.63   Plan Documents .............................................................................7

1.64   Plan Supplement ............................................................................8

1.65   Priority Non-Tax Claim .................................................................8

1.66   Priority Tax Claim .........................................................................8

1.67   Professional(s) ...............................................................................8

1.68   Professional Fees ...........................................................................8

1.69   Pro Rata .........................................................................................9

1.70   Schedules .......................................................................................9

1.71   Secured Claim ................................................................................9

1.72   Securities Law Claim .....................................................................9

1.73   Subordinated Claim .......................................................................9

1.74   Term Lenders .................................................................................9

1.75   Term Loan Agreement ...................................................................9

1.76   Term Loan Settlement ..................................................................10

1.77   Term Loan Settlement Approval Order ........................................10

1.78   TSA Debtors .................................................................................10

1.79   Unimpaired ...................................................................................10

1.80   U.S. Trustee Fees .........................................................................10

1.81   Unsecured Claim Distribution .....................................................10

1.82   Voting Deadline ...........................................................................10

1.83   Wind-Down Expenses ..................................................................10

01:22326862.1

# TABLE OF CONTENTS

**Page**

B.      Interpretation; Application of Definitions and Rules of Construction ...................................................................................... 11

C.      Computation of Time ...................................................................... 11

D.      General Rule of Classification ....................................................... 11

E.      Appendices and Plan Documents ................................................. 11

ARTICLE II      TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ............................................... 12

2.01      Administrative Expense Claims ...................................... 12

2.02      Time for Filing Administrative Expense Claims ............. 12

2.03      Waiver of Administrative Expense Claim ...................... 12

2.04      Professional Compensation and Fee Claims ................... 13

2.05      Priority Tax Claims ......................................................... 13

ARTICLE III      CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............ 14

ARTICLE IV      TREATMENT OF CLAIMS AND EQUITY INTERESTS ................... 14

4.01      CLASS 1 - PRIORITY NON-TAX CLAIMS. ................................ 14

4.02      CLASS 2 – MISCELLANEOUS SECURED CLAIMS. ............... 15

4.03      CLASS 3 – GENERAL UNSECURED CLAIMS. .......................... 15

4.04      CLASS 4 – SUBORDINATED CLAIMS. ...................................... 15

4.05      CLASS 5 - EQUITY INTERESTS. ................................................ 15

ARTICLE V      IMPLEMENTATION OF THIS PLAN .................................... 16

5.01      Implementation of this Plan ............................................ 16

5.02      Plan Funding .................................................................... 16

5.03      Good Faith ....................................................................... 16

5.04      Compromise of Claims .................................................... 16

5.05      Liquidation Trust. ............................................................ 16

5.06      Approval of Plan Documents ........................................... 19

# TABLE OF CONTENTS

**Page**

ARTICLE VI    CORPORATE GOVERNANCE AND MANAGEMENT ..................... 19

    6.01    Post-Effective Date Corporate Existence ........................................ 19

    6.02    Corporate Action ............................................................................ 19

    6.03    Officers and Boards of Directors .................................................... 19

    6.04    Payment of Wind-Down Expenses .................................................. 19

    6.05    Cancellation of Existing Securities and Agreements....................... 19

ARTICLE VII    PROVISIONS REGARDING VOTING AND
    DISTRIBUTIONS UNDER THIS PLAN .................................................. 20

    7.01    Nonconsensual Confirmation .......................................................... 20

    7.02    Elimination of Vacant Classes ........................................................ 20

    7.03    Voting Classes ................................................................................ 20

    7.04    Distributions ................................................................................... 20

    7.05    Timing of Distributions .................................................................. 20

    7.06    Holders as of the Distribution Record Date.................................... 21

    7.07    Distributions to Address of Record ................................................ 21

    7.08    Minimum Distributions .................................................................. 21

    7.09    Unclaimed Distributions ................................................................. 21

    7.10    Setoffs and Recoupments ............................................................... 22

    7.11    Allocation of Plan Distributions Between Principal and
    Interest ............................................................................................ 22

    7.12    Estimation of Claims; Certain Reserves ......................................... 22

    7.13    No Recourse.................................................................................... 22

    7.14    Satisfaction of Claims and Equity Interests.................................... 23

    7.15    Withholding and Reporting Requirements ...................................... 23

ARTICLE VIII    PROCEDURES RELATING TO DISPUTED CLAIMS ........................ 23

    8.01    Objections to Administrative Expense Claims and Claims............. 23

    8.02    Late Filed Claims........................................................................... 24

    8.03    Amendments to Claims................................................................... 24

    8.04    Satisfied Claims ............................................................................. 24

01:22326862.1

# TABLE OF CONTENTS

**Page**

8.05    No Distributions Pending Allowance ...............................24

8.06    Resolution of Disputed Claims .......................................25

ARTICLE IX    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............25

9.01    Rejection or Assumption and Retention or Assignment..................25

9.02    Cure of Defaults...................................................26

9.03    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to this Plan .................................................................26

ARTICLE X    EFFECT OF CONFIRMATION ...........................................27

10.01    Binding Effect....................................................27

10.02    Vesting of Assets ................................................27

10.03    Term of Pre-Confirmation Injunctions or Stays .............................27

10.04    Injunction Against Interference with Plan .....................................27

10.05    Injunction .........................................................27

10.06    Exculpation and Limitation of Liability for Postpetition Conduct............................................................28

10.07    Injunction Related to Exculpation .................................28

10.08    Release of Liens and Encumbrances. .............................29

10.09    Preservation and Application of Insurance......................29

10.10    Indemnification...................................................30

10.11    Satisfaction of Subordination and/or Subrogation Rights ...............30

ARTICLE XI    CONDITIONS PRECEDENT....................................................30

11.01    Conditions to Confirmation .........................................30

11.02    Effectiveness......................................................30

11.03    Waiver of Conditions..............................................31

11.04    Withdrawal of Plan. ..............................................31

11.05    Waiver of Bankruptcy Rule 3020(e) Stay .......................31

ARTICLE XII    RETENTION OF JURISDICTION...........................................32

12.01    Scope of Bankruptcy Court Jurisdiction.........................32

01:22326862.1

# TABLE OF CONTENTS

**Page**

ARTICLE XIII  MISCELLANEOUS PROVISIONS ........................................................ 33

    13.01  Critical Vendor and Other Payments ............................................... 33

    13.02  Effectuating Documents and Further Transactions ........................ 33

    13.03  Exemption from Transfer Taxes ...................................................... 33

    13.04  Termination of Estate Professionals ................................................ 34

    13.05  Access 34

    13.06  Payment of Statutory Fees ............................................................... 34

    13.07  Post-Effective Date Fees and Expenses ........................................... 34

    13.08  Amendment or Modification of this Plan ........................................ 35

    13.09  Confirmation Order .......................................................................... 35

    13.10  Severability ...................................................................................... 35

    13.11  Expedited Tax Determination .......................................................... 35

    13.12  Governing Law ................................................................................. 35

    13.13  Binding Effect .................................................................................. 36

    13.14  Exhibits/Schedules ........................................................................... 36

    13.15  Dissolution of the Creditors' Committee ......................................... 36

    13.16  Notices ............................................................................................. 36

## INTRODUCTION

TSA Caribe, Inc. (the "Debtor") proposes this liquidating chapter 11 plan for, among other things, the resolution of the outstanding Claims against and Equity Interests in the Debtor pursuant to Section 1121 of the Bankruptcy Code. Reference is made to the Disclosure Statement for a summary and analysis of this Plan, and certain related matters including, among other things, a liquidating trust to be established for the benefit of certain creditors and certain tax matters related to the consideration to be issued and/or distributed under this Plan. The Debtor reserves the right to alter, amend, modify, revoke or withdraw this Plan before its substantial consummation. On or subsequent to the Effective Date, the Debtor will be dissolved.

Parties are encouraged to read this Plan and the Disclosure Statement and their respective exhibits and schedules in their entirety before voting to accept or reject this Plan. No materials other than the Disclosure Statement and the respective schedules and exhibits attached thereto and referenced therein have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

A.    Definitions. As used herein, the following terms have the respective meanings specified below:

1.01    Adequate Protection Claim means any Administrative Expense Claim held by (i) a DIP Lender under the DIP Facility Documents, or (ii) the Administrative Agent or any of the Term Lenders under the Term Loan Agreement, the Final DIP Order, the Term Loan Settlement, or the Term Loan Settlement Approval Order.

1.02    Administrative Agent means Wilmington Savings Fund, FSB, as successor administrative agent under the Term Loan Agreement or such other successor agent as appointed in accordance with the Term Loan Agreement.

1.03    Administrative Expense Claim means any right to payment constituting a direct cost or expense of administration of this Chapter 11 Case under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estate of the Debtor and, any actual and necessary costs and expenses of operating the business of the Debtor, any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business, but not including Fee Claims or U.S. Trustee Fees. For the avoidance of doubt, costs and expenses incurred in connection with the administration of the chapter 11 cases of the TSA Debtors other than TSA Caribe, Inc. are not included within Administrative Expense Claims.

1.04    Allowed means, with reference to any Claim or Administrative Expense Claim against the Debtor: (i) any Claim that has been listed by the Debtor in the

- 1 -

Schedules, as such Schedules have been or may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed, undetermined or contingent and for which no contrary proof of claim has been filed; provided, however, that any such Claim listed in the Schedules that has been paid after the Petition Date pursuant to order of the Bankruptcy Court shall not be considered an Allowed Claim to the extent of such payment; (ii) any Claim or Administrative Expense Claim allowed pursuant to this Plan; (iii) any Claim or Administrative Expense Claim that is not Disputed; (iv) any Claim or Administrative Expense Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Liquidation Trustee pursuant to a Final Order of the Bankruptcy Court or under this Plan; or (v) any Claim or Administrative Expense Claim that has been allowed by Final Order.  Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under this Plan, include interest on such Administrative Expense Claim or Claim from and after the Petition Date.  An Allowed Claim shall be net of any setoff or recoupment amount of any Claim that may be asserted by the Debtor against the holder of such Claim, which amount shall be deemed setoff or recouped pursuant to the terms of this Plan.

1.05    Assets means all of the right, title and interest of the Debtor in and to property of whatever type and nature (real, personal, mixed, intellectual, tangible or intangible).

1.06    Avoidance Actions means any and all claims and Causes of Action of the Debtor arising under sections 105 or chapter 5 of the Bankruptcy Code.

1.07    Ballot means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject this Plan, on which is to be indicated acceptance or rejection of this Plan.

1.08    Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

1.09    Bankruptcy Court means the United States Bankruptcy Court for the District of Delaware, or any other court exercising jurisdiction over the Chapter 11 Case or any proceeding therein.

1.10    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

1.11    Bar Date means any deadline for filing proofs of Claim and Administrative Expense Claim request forms against the Debtor with respect to (i) Claims that arose on or prior to the Petition Date, including Claims entitled to priority under section

- 2 -

503(b)(9) of the Bankruptcy Code, or (ii) Administrative Expense Claims, as established by an order of the Bankruptcy Court.

1.12     Bar Date Order means the order entered by the Bankruptcy Court on April 22, 2016 [Docket No. 1351] approving certain Bar Dates and form and manner of notices thereof.

1.13     Business Day means any day other than a Saturday, Sunday, or any "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.14     Cash means legal tender of the United States of America and equivalents thereof.

1.15     Causes of Action means, without limitation, any and all of the Debtor's actions, causes of action, Avoidance Actions, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, whether assertable by the Debtor directly, indirectly, derivatively or in any representative or other capacity, now existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, failure to act, error, omission, transaction, occurrence or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date, other than those released, enjoined, exculpated, or otherwise limited or prohibited under this Plan.

1.16     Chapter 11 Case means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor, assigned Case No. 16-10533, which is being jointly administered under case caption TSAWD Holdings, Inc., *et al.*, Case No. 16-10527 (MFW) and is currently pending before the Bankruptcy Court.

1.17     Claim means "claim" as defined in section 101(5) of the Bankruptcy Code.

1.18     Claims and Voting Agent means Kurtzman Carson Consultants, LLC.

1.19     Class means a class of holders of Claims or Equity Interests as set forth in Article III of this Plan, pursuant to section 1122 of the Bankruptcy Code.

1.20     Collateral means any property or interest in property of the Estate of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.21     Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

- 3 -

1.22    Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.23    Confirmation Order means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.24    Creditors' Committee means the statutory committee of unsecured creditors appointed in the TSA Debtor's chapter 11 cases pursuant to section 1102 of the Bankruptcy Code, as constituted from time to time.

1.25    Debtor means TSA Caribe, Inc.

1.26    DIP Credit Agreement means that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement originally dated as of March 3, 2016 between the TSA Debtors, on the one hand, and Bank of America, N.A., as administrative agent and collateral agent, Wells Fargo Bank, National Association, as FILO agent, and each Revolving Lender and each FILO lender party on the other hand, as approved by the Final DIP Order, and as amended from time to time.

1.27    DIP Facility Documents means collectively, the DIP Credit Agreement, any interim orders concerning the DIP Credit Agreement, and the Final DIP Order.

1.28    DIP Financing Claim means any Claim or Administrative Expense Claim arising under the DIP Credit Agreement or DIP Facility Documents.

1.29    DIP Lender means, as applicable, any or all of the lenders under the DIP Credit Agreement.

1.30    Disclosure Statement means the disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.31    Disclosure Statement Order means the order of the Bankruptcy Court approving the Disclosure Statement.

1.32    Disputed means, with reference to any Claim or Administrative Expense Claim, (i) any Claim or Administrative Expense Claim proof of which was timely and properly filed, and which is disputed under this Plan or as to which the Debtor, the Liquidation Trustee or the Creditors' Committee have interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order; (ii) any Claim or Administrative Expense Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely and/or properly filed; (iii) any Claim that has been listed by the Debtor in its Schedules, as such Schedules have been or may be amended by the Debtor

01:22326862.1

from time to time in accordance with Bankruptcy Rule 1009, as unliquidated, disputed, undetermined or contingent; and (iv) any Claim for which an objection has been filed and/or an adversary proceeding has been commenced by the filing of a complaint seeking, among other things, entry of an order disallowing and/or re-characterizing such Claim from debt to equity.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection and shall be deemed Allowed as to the portion for which no objection is made.

1.33    <u>Distribution</u> means a distribution of Cash or other property pursuant to this Plan.

1.34    <u>Distribution Date</u> means any date that is (a) the Effective Date, (b) the Initial Distribution Date, (c) any Interim Distribution Date, or (d) the Final Distribution Date.

1.35    <u>Distribution Record Date</u> means the Confirmation Date, or such other date as shall be set forth in the Confirmation Order.

1.36    <u>Effective Date</u> means such day that is the Business Day as soon as reasonably practicable after all conditions to the occurrence of the effective date set forth in Section 11.02 of this Plan have been satisfied or waived.

1.37    <u>Equitably Subordinated Claim</u> means any Claim that has been equitably subordinated under section 510(c) of the Bankruptcy Code, pursuant to a Final Order.

1.38    <u>Equity Interest</u> means any share of common or preferred stock or other instrument evidencing a membership and/or ownership interest in the Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.39    <u>Estate</u> means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.40    <u>Fee Claim</u> means an Administrative Expense Claim under sections 328, 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional for services rendered or expenses incurred solely in this Chapter 11 Case on or prior to the Effective Date (including reasonable expenses of the members of the Creditors' Committee incurred as members of the Creditors' Committee in discharge of their duties as such with respect to this Chapter 11 Case alone).

1.41    <u>Final DIP Order</u> means that certain Final Order (I) Authorizing Debtors to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§  105, 362, 363, and 364; (II) Granting Liens and Superpriority Claims to Post-Petition Lenders Pursuant to 11 U.S.C §§  364 and 507; and (III) Authorizing the Use of Cash Collateral and Providing Adequate Protection to Prepetition Secured Lenders and Modifying the Automatic Stay

01:22326862.1

Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, as may be amended or supplemented from time to time [Docket No. 1699].

      1.42   <u>Final Distribution Date</u> means the date on which the Liquidation Trustee makes a final Distribution to holders of Allowed Claims and/or Equity Interests.

      1.43   <u>Final Order</u> means an order, ruling or judgment that (a) is in full force and effect, (b) is not stayed, and (c) is no longer subject to review, reversal and modification or amendment, by appeal or writ of certiorari; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, Rules 9023 or 9024 of the Bankruptcy Rules, or any similar rules, may be filed relating to such order, ruling or judgment shall not cause such order, ruling or judgment not to be a Final Order.

      1.44   <u>General Unsecured Claim</u> means an unsecured non-priority Claim against the Debtor, including, for the avoidance of doubt, any Interdebtor Claim, that is not an Administrative Expense Claim, Fee Claim, Miscellaneous Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, or Subordinated Claim.

      1.45   <u>Holdback Amount</u> means, with respect to Professional Fees, amounts held back pursuant to an order or orders of the Bankruptcy Court or in the discretion of the Liquidation Trustee.

      1.46   <u>Holdback Amount Reserve</u> means, with respect to Professional Fees, a reserve established by the Liquidation Trustee on the Effective Date for the benefit of the Professionals, and to be held in trust for the Professionals, for the payment of the Holdback Amount.

      1.47   <u>Interdebtor Claim</u> means any Claim held by one of the TSA Debtors against the Debtor.

      1.48   <u>Initial Distribution Date</u> means the first Business Day after the Effective Date, or such longer period as may be reasonably determined by the Liquidation Trustee on which the Liquidation Trustee makes an initial Distribution under this Plan of no less than 65% of the Debtor's cash on hand (absent an order of the Court pursuant to a request by the Liquidation Trustee), but in no event later than December 31, 2017.

      1.49   <u>Interim Distribution Date</u> means any date, other than the Final Distribution Date, after the Initial Distribution Date on which the Liquidation Trustee makes an interim Distribution to holders of Allowed Claims in light of, *inter alia*, resolutions of Disputed Claims and the administrative costs of such a Distribution.

      1.50   <u>Lender</u> means Bank of America, N.A., as administrative agent and collateral agent, Wells Fargo Bank, National Association, as FILO agent, and each Revolving Lender and each FILO lender party to the DIP Credit Agreement.

      1.51   <u>Lien</u> shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

1.52     Liquidation Trust means the uncertificated trust created pursuant to this Plan and Liquidation Trust Agreement.

1.53     Liquidation Trust Agreement means the agreement governing, among other things, the retention and duties of the Liquidation Trustee, as described in Article V of this Plan, which shall be in form and substance reasonably satisfactory to the Debtor and filed in the Plan Supplement.

1.54     Liquidation Trust Assets means all rights, title and interest in the Debtor's Assets as of the day prior to the Effective Date, including, without limitation, the Debtor's Cash and the Causes of Action, including any proceeds realized or received from the foregoing.  The Liquidation Trust Assets shall be transferred by the Debtor to the Liquidation Trust on the Effective Date, free and clear of all Liens, claims and encumbrances.

1.55     Liquidation Trust Beneficiaries means the holders of Allowed Claims that are entitled to a Distribution under this Plan, solely to the extent that such Claims have not been Paid in Full.

1.56     Liquidation Trustee means Douglas Garrett or a successor party designated in accordance with the Liquidation Trust Agreement.

1.57     LT Reserve means any reserve established by the Liquidation Trustee on account of Claims that are Disputed.

1.58     Miscellaneous Secured Claim means any Secured Claim asserted against the Debtor.

1.59     Paid in Full, Payment in Full, or Pay in Full means, with respect to an Allowed Claim, payment in Cash or other consideration in an aggregate amount equal to the Allowed amount thereof.

1.60     Person means an individual, a corporation, a partnership, a limited liability company, an association, a trust, a governmental authority, a labor union or other entity or organization. Unless otherwise specified herein, any reference to a Person as a Holder of a Claim or Interest includes such Person's successors, assigns and affiliates.

1.61     Petition Date means March 2, 2016, the date upon which the Debtor commenced the Chapter 11 Case.

1.62     Plan means this chapter 11 liquidating plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules hereto, either in its present form or as the same may be altered, amended, or modified from time to time.

1.63     Plan Documents means those documents necessary to effectuate this Plan following entry of the Confirmation Order, and to be contained in the Plan Supplement (which shall be subject to revision and modification prior to the Effective Date).

1.64    Plan Supplement means the supplemental appendix to this Plan, to be filed on or prior to the date that is ten (10) Business Days prior to the Voting Deadline, which will contain, as the case may be and to the extent applicable under this Plan as of the Confirmation Date, draft forms or signed copies, or the material terms, of the following, each in a form and substance reasonably satisfactory to the Debtor and the Creditors' Committee: the Liquidation Trust Agreement, and the list of agreements, if any, to be assumed.

1.65    Priority Non-Tax Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.66    Priority Tax Claim means any Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.67    Professional(s) means each Person retained by order of the Bankruptcy Court in connection with the Chapter 11 Case pursuant to sections 327, 328, 330, or 1103 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to an order of the Bankruptcy Court.

1.68    Professional Fees means all accrued and/or unpaid fees and expenses (including, without limitation, fees or expenses allowed or awarded by the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses related thereto that are awardable and allowable under sections 328, 330(a), 331, 503(b) or 1103(a) of the Bankruptcy Code or otherwise and that are rendered (a) prior to the Effective Date or (b) thereafter in connection with (i) applications filed pursuant to section 330, 331, 503(b) or 1103(a) of the Bankruptcy Code, and (ii) motions seeking the enforcement of the provisions of this Plan or Confirmation Order, by all Professionals retained in the Debtor's chapter 11 case, except to the extent (x) that the Bankruptcy Court has disallowed or denied authority to pay or reimburse such fees and expenses by a Final Order, (y) any such fees and expenses have previously been paid, regardless of whether a fee application has been filed for any such amount, or (z) such fees and expenses are not directly and exclusively attributable to the Debtor's Chapter 11 Case.[2] To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Professional Fees.

---

[2]    For the avoidance of doubt, fees incurred by Young Conaway Stargatt & Taylor, LLP ("YCST") and Gibson, Dunn & Crutcher LLP ("GDC"), as co-counsel to the TSA Debtors, shall not be considered "Professional Fees," as that term is defined in this Section 1.69 and used in this Plan, and, accordingly, are not subject to the process described in Section 2.04 of this Plan. GDC and YCST will continue to seek payment for fees incurred and reimbursement for applicable expenses in the TSA Debtors' chapter 11 cases consistent with that certain Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals [Docket No. 806].

- 8 -

1.69    <u>Pro Rata</u> means proportionate, so that, for example, the ratio of (a) the amount of all consideration distributed on account of an Allowed Claim to (b) the amount of such Allowed Claim is the same as the ratio of (x) the amount of all consideration distributed on account of all Allowed Claims in the Class in which such Claim is classified to (y) the amount of all Allowed Claims in such Class.

1.70    <u>Schedules</u> means the schedules of assets and liabilities, the lists of holders of Equity Interests, and the statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto filed with the Bankruptcy Court through and including the Confirmation Date.

1.71    <u>Secured Claim</u> means any Claim against the Debtor's Estate that is: (a) secured by a valid, perfected and enforceable Lien on property in which the Debtor's Estate has an interest and that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, to the extent of the value of the Claim holder's interest in such property as of the Confirmation Date; or (b) subject to setoff under section 553 of the Bankruptcy Code, or to the extent of the amount subject to setoff, each as determined pursuant to sections 506(a) and 1111(b) of the Bankruptcy Code.

1.72    <u>Securities Law Claim</u> means any Claim, whether or not the subject of an existing lawsuit (a) arising from rescission of a purchase or sale of any equity securities of the Debtor (or an affiliate of any of the TSA Debtors if asserted in this Chapter 11 Case), (b) for damages arising from the purchase or sale of any such equity security, (c) for violations of the securities laws, misrepresentations, or any similar Claims, including, to the extent related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, together with any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims, or (d) except as otherwise provided for in this Plan, for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of any such Claim, including, without limitation (i) any prepetition indemnification, reimbursement or contribution obligations, pursuant to the Debtor's corporate charters, by-laws, agreements entered into any time prior to the Petition Date, or otherwise, and relating to Claims otherwise included in the foregoing clauses (a) through (c), and (ii) Claims based upon allegations of false and misleading statements or other deceptive acts in connection with the sale of equity securities, or otherwise subject to section 510(b) of the Bankruptcy Code.

1.73    <u>Subordinated Claim</u> means any DIP Financing Claim, Adequate Protection Claim, Securities Law Claim or Equitably Subordinated Claim.

1.74    <u>Term Lenders</u> means the lender parties under the Term Loan Agreement.

1.75    <u>Term Loan Agreement</u> means that certain Amended and Restated Credit Agreement, dated as of November 16, 2010 (as amended, amended and restated, supplemented or otherwise modified from time to time), by and among The Sports Authority, Inc., as borrower, Slap Shot Holdings Corp., TSA Stores, Inc., and TSA Gift

- 9 -

Card, Inc., as guarantors, Bank of America, N.A., as administrative agent, and the lenders named therein.

1.76    Term Loan Settlement means that certain Amended Settlement Agreement dated as of July 28, 2016, by and among the TSA Debtors, the Creditors' Committee, and the Administrative Agent that was approved by the Bankruptcy Court pursuant to the Term Loan Settlement Approval Order.

1.77    Term Loan Settlement Approval Order means that certain Order Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 Approving the Settlement Agreement by and Among the [TSA] Debtors, the Official Committee of Unsecured Creditors and Wilmington Savings Fund Society, FSB, as the Term Loan Agent, which approved the Term Loan Settlement and was entered by the Bankruptcy Court as Docket No. 2702 in Case Number 16-10527 (MFW).

1.78    TSA Debtors means TSAWD Holdings, Inc.; Slap Shot Holdings, Corp.; TSAWD, Inc.; TSA Stores, Inc.; TSA Gift Card, Inc.; TSA Ponce, Inc.; and TSA Caribe, Inc.

1.79    Unimpaired means, with respect to a Class of Claims or Equity Interests, any Class that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.80    U.S. Trustee Fees means fees arising under 28 U.S.C. § 1930(a)(6) or accrued interest thereon arising under 31 U.S.C. § 3717, solely as they relate to the Chapter 11 Case.

1.81    Unsecured Claim Distribution means the aggregate amount of Cash or funds realizable from Assets of the Debtor's Estate, including Cash or proceeds from, among others, Causes of Action , available for Distribution Pro Rata to holders of the Allowed General Unsecured Claims after (i) the Payment in Full of Allowed Administrative Expense Claims, Allowed Fee Claims, U.S. Trustee Fees, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims and Wind-Down Expenses; (ii) the establishment of an LT Reserve on account of Disputed Claims; and (iii) the payment of and reserving for Wind-Down Expenses, which, when reasonably practicable after reaching or exceeding the amount of $500,000 (except for the Final Distribution), and otherwise in accordance with this Plan, shall be paid by the Liquidation Trustee pro rata to holders of Allowed General Unsecured Claims.

1.82    Voting Deadline means [November 20, 2017 at 5:00 p.m. PT], the date specified in the Disclosure Statement, the Disclosure Statement Order, the Ballots, or related solicitation documents approved by the Bankruptcy Court as the last date, as such date has been, and may be further, extended for holders of impaired Claims entitled to vote and to submit their Ballots with respect to this Plan.

1.83    Wind-Down Expenses means: (a) any costs and expenses of winding down the Estate and/or the Debtor after the Effective Date, including, without limitation,

- 10 -

payment of statutory fees and taxes required to be paid in connection with dissolving the former Debtor; and (b) any reasonable costs and expenses of the Liquidation Trust, including, without limitation, any reasonable compensation paid to the Liquidation Trustee, professionals and consultants retained by the Liquidation Trust, and any fees and expenses associated with maintaining the Liquidation Trust Assets, making Distributions in accordance with this Plan, and otherwise administering the Liquidation Trust.

B.      <u>Interpretation; Application of Definitions and Rules of Construction</u>. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.  Unless otherwise specified, all section, article, schedule, or exhibit references in this Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, this Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.  Except for the rule contained in section 102(5) of the Bankruptcy Code, which shall not apply, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan.  To the extent there is any inconsistency between any of the provisions of this Plan and any of the provisions contained in the Plan Documents to be entered into as of the Effective Date, the Plan Documents shall control.  In the event of inconsistency between any Plan Document and this Plan, this Plan shall control.

C.      <u>Computation of Time</u>.  In computing time prescribed or allowed by this Plan, unless otherwise expressly provided, Bankruptcy Rule 9006(a) shall apply.

D.      <u>General Rule of Classification</u>.  Generally, a Claim or Interest is classified in a particular Class for voting and distribution purposes only to the extent the Claim or Interest qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim or Interest qualifies within the description of such other Class or Classes. Unless otherwise provided, to the extent a Claim or Interest qualifies for inclusion in a more specifically defined Class and a more generally-defined Class, it shall be included in the more specifically defined Class.

E.      <u>Appendices and Plan Documents</u>.  All Plan Documents and appendices to this Plan are incorporated into this Plan by reference and are a part of this Plan as if set forth in full herein.  The documents contained in the exhibits and the Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Holders of Claims and Equity Interests may inspect a copy of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or at

- 11 -

www.kccllc.net/sportsauthority, or obtain a copy of the Plan Documents by sending a written request to the following address:

Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, California 90245
Telephone: (310) 823-9000

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.01    Administrative Expense Claims.  Except to the extent a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, on or as soon as practicable after the later of (i) the Effective Date or (ii) the first Business Day after the date that is thirty (30) days after the date an Administrative Expense Claim becomes an Allowed Claim, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Claim. Administrative Expense Claims are not classified in this Plan.

2.02    Time for Filing Administrative Expense Claims.  The holder of an Administrative Expense Claim accruing on or after (i) March 2, 2016, other than: (a) a Fee Claim; (b) an Administrative Expense Claim that has been Allowed against the Debtor on or before the Effective Date; or (c) a claim for U.S. Trustee Fees, must submit to the Claims and Voting Agent and serve on the Liquidation Trustee and counsel to the Liquidation Trust, a request for such Administrative Expense Claim so as to be received by 5:00 p.m. (prevailing Pacific Time) on the date that is thirty (30) days after occurrence of the Effective Date.  Such request must include at a minimum: (i) a statement that the Debtor (as opposed to the Debtor's affiliate(s)) is purported to be liable for the Administrative Expense Claim; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) all supporting documentation for the Administrative Expense Claim.  **FAILURE TO FILE AND SERVE SUCH REQUEST TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND DISALLOWED.**

2.03    Waiver of Administrative Expense Claim.  Any Administrative Expense Claim held by (i) a DIP Lender under the DIP Facility Documents, or (ii) the Administrative Agent or any of the Term Lenders under the Term Loan Agreement, the Final DIP Order, the Term Loan Settlement, or the Term Loan Settlement Approval Order shall be waived provided that (a) the aggregate amount of Administrative Expense Claims allowed by the Debtor do not exceed $1,150,000 and (b) the Interdebtor Claims asserted against the Debtor are not disallowed.

- 12 -

2.04    Professional Compensation and Fee Claims.

(a)    All Fee Claims must be filed with the Bankruptcy Court and served on (i) the Debtor and its counsel (if prior to the Effective Date), (ii) the Liquidation Trustee and its counsel, and (iii) the U.S. Trustee, no later than thirty (30) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Case, the Allowed amounts of such Fee Claims shall be determined by the Bankruptcy Court. **FAILURE TO FILE AND SERVE FINAL FEE APPLICATIONS TIMELY AND PROPERLY SHALL RESULT IN THE UNDERLYING FEE CLAIMS BEING FOREVER BARRED AND DISALLOWED.**

(b)    Objections to Fee Claims.  Objections to Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than twenty-one (21) days after the filing of the Fee Claim or such other date as may be established by the Bankruptcy Court.

(c)    Treatment of Fee Claims.  Fee Claims are not classified under this Plan.  A Fee Claim in respect of which a final fee application has been timely and properly filed and served pursuant to Section 2.03(a) of this Plan shall be payable to the extent approved by order of the Bankruptcy Court.  Subject to the Holdback Amount, on the Effective Date, or as soon thereafter as reasonably practicable, to the extent not otherwise paid, all Allowed Professional Fees (including estimated fees through the Effective Date) shall be Paid in Full in Cash.  To receive payment on the Effective Date for unbilled fees and expenses estimated to be incurred through the Effective Date, each Professional shall reasonably estimate fees and expenses due for unbilled fees and expenses for periods that will not have been billed as of the Effective Date and shall deliver such estimates to the Debtor, counsel to the Debtor and the U.S. Trustee prior to the Effective Date.  If the estimated payment received by such Professional exceeds the actual Allowed Professional Fees for the estimated period, such excess amount shall be deducted from the Holdback Amount for such Professional and if the Holdback Amount is insufficient, such Professional shall disgorge and return the difference to the Liquidation Trustee.  If the estimated payment received by the Professional is lower than the Allowed Professional Fees of such Professional, the difference shall be promptly paid to the Professional by the Liquidation Trustee.

(d)    Holdback Amount Reserve.  On the Effective Date, the Liquidation Trustee shall fund the Holdback Amount Reserve for payment of the Holdback Amount.  Upon final allowance by the Bankruptcy Court of the Professional Fees, or entry of an earlier order of the Bankruptcy Court granting the release of the Holdback Amount, such amount, *less* any excess paid in connection with estimated fees and expenses through the Effective Date, shall be paid promptly and directly to the Professionals.  Any amounts in the Holdback Amount Reserve that are not needed to pay the Allowed Professional Fees in full shall be returned to the Liquidation Trustee.

2.05    Priority Tax Claims.  Priority Tax Claims are not classified under this Plan.  Except to the extent a holder of an Allowed Priority Tax Claim agrees to less

favorable treatment, in the discretion of the Liquidation Trustee, such holder shall receive either (a) on or as soon as practicable after the later of (i) the Effective Date or (ii) the first Business Day after the date that is thirty (30) days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Claim, or (b) deferred Cash payments in a total amount equal to such Allowed Claim, over a period beginning on the Effective Date and not exceeding five years from the Petition Date.  Any Claim or demand for fines or penalties related to a Priority Tax Claim shall be disallowed and the holder of an Allowed Priority Tax Claim shall not assess or attempt to collect any such fine or penalty from the Debtor or the Liquidation Trustee.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims, other than Administrative Expense Claims, Fee Claims and Priority Tax Claims, are classified for all purposes, including voting, confirmation, and distribution pursuant to this Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Miscellaneous Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Subordinated Claims | Impaired | Yes |
| Class 5 | Equity Interests | Impaired | Yes |

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.01    CLASS 1 - PRIORITY NON-TAX CLAIMS.

(a)     Impairment and Voting.  Class 1 is Unimpaired by this Plan. Each holder of an Allowed Priority Non-Tax Claim is not entitled to vote to accept or reject this Plan because it is Unimpaired and conclusively deemed to have accepted this Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)     Distribution and Treatment.  Except to the extent a holder of an Allowed Priority Non-Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to less favorable treatment, on or as soon as practicable after the later of (i) the Effective Date or (ii) the first Business Day after the date that is thirty (30) days after the date a Priority Non-Tax Claim becomes an Allowed Claim, each holder of an Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Allowed Claim.

4.02    CLASS 2 – MISCELLANEOUS SECURED CLAIMS.

(a)    <u>Impairment and Voting</u>.  Class 2 is Unimpaired by this Plan. Each holder of a Miscellaneous Secured Claim is not entitled to vote to accept or reject this Plan because it is Unimpaired and conclusively deemed to have accepted this Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)    <u>Distribution and Treatment</u>.  Except to the extent that a holder of an Allowed Miscellaneous Secured Claim has been paid by the Debtor prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Miscellaneous Secured Claim shall be, at the option of the Liquidation Trustee: (i) reinstated in full, leaving unaffected the holder of such Claim's legal, equitable, and/or contractual rights, (ii) paid in Cash up to the Allowed amount of such Claim, (iii) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (iv) paid in deferred Cash payments having a present value on the Effective Date equal to the Allowed amount of the Claim, or (v) treated in a manner that would provide the "indubitable equivalent" of the Allowed Claim.

4.03    CLASS 3 – GENERAL UNSECURED CLAIMS.

(a)    <u>Impairment and Voting</u>.  Class 3 is impaired by this Plan. Each holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject this Plan.

(b)    <u>Distribution and Treatment</u>.  Except to the extent a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each holder of an Allowed General Unsecured Claim shall receive such holder's Pro Rata share of the Unsecured Claim Distribution.

4.04    CLASS 4 – SUBORDINATED CLAIMS.

(a)    <u>Impairment and Voting</u>.  Class 4 is impaired by this Plan. Each holder of a Subordinated Claim is entitled to vote to accept or reject this Plan.

(b)    <u>Distribution and Treatment</u>.  The holders of Subordinated Claims are not expected to receive any Distributions on account of such Claims; <u>provided, however</u>, in the event surplus funds remain in the Liquidation Trust after all holders of Allowed Claims in Classes 1, 2, and 3 receive Payment in Full, plus interest, on account of such Allowed Claims, holders of Subordinated Claims shall receive such holder's Pro Rata share of the surplus funds.

4.05    CLASS 5 - EQUITY INTERESTS.

(a)    <u>Impairment and Voting</u>.  Class 5 is impaired by this Plan.  The holder of the Equity Interest is entitled to vote to accept or reject this Plan.

- 15 -

(b)  <u>Distribution and Treatment</u>.  The holder of the Equity Interest is not expected to receive any Distributions on account of such interest; <u>provided</u>, <u>however</u>, in the event surplus funds remain in the Liquidation Trust after all holders of Allowed Claims in Classes 1, 2, 3, and 4 receive Payment in Full, plus interest, on account of such Allowed Claims, the holder of the Equity Interest shall receive the surplus funds.

## ARTICLE V

## <u>IMPLEMENTATION OF THIS PLAN</u>

5.01  <u>Implementation of this Plan</u>.  This Plan will be implemented by the Debtor and Liquidation Trustee in a manner consistent with the terms and conditions set forth in this Plan and the Confirmation Order.

5.02  <u>Plan Funding</u>.  The funds utilized to make Cash payments under this Plan have been and/or will be generated from, among other things, Cash on hand, and the proceeds of sale, liquidation or other disposition of the Assets.

5.03  <u>Good Faith</u>.  Confirmation of this Plan shall constitute a finding that: (i) this Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) the solicitation of acceptances or rejections of this Plan by all Persons has been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

5.04  <u>Compromise of Claims</u>.  Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor and its Estate, and is fair, equitable and reasonable.

5.05  <u>Liquidation Trust</u>.

(a)  <u>Creation of the Liquidation Trust</u>.  On or before the Effective Date, the Liquidation Trust shall be formed pursuant to the Liquidation Trust Agreement and the filing of a certificate of trust with the Delaware Secretary of State.  The Liquidation Trustee shall administer the Liquidation Trust, and shall have the powers and duties set forth in the Liquidation Trust Agreement.  The Liquidation Trustee will have authority to retain, on behalf of the Liquidation Trust, any counsel, financial advisors, claims agent, auditors, or other such professionals as the Liquidation Trustee deems appropriate at all times.  The Liquidation Trust may select any of the foregoing professionals in its sole discretion, and prior employment in any capacity in the Chapter 11 Case on behalf of the Debtor, its Estate,

01:22326862.1

or the Creditors' Committee shall not preclude the Liquidation Trust's retention of such professionals. The Liquidation Trust Beneficiaries' interests in the Liquidation Trust shall be uncertificated and, subject to applicable law, shall only be transferable upon the death of or dissolution of the applicable Liquidation Trust Beneficiary or pursuant to applicable law.

(b)    Purpose of the Liquidation Trust. On the Effective Date, the Debtor shall transfer, on behalf of the Liquidation Trust Beneficiaries, the Liquidation Trust Assets to the Liquidation Trust. The Liquidation Trust shall be established as a liquidating trust for the primary purpose of monetizing and distributing the Liquidation Trust Assets to the Liquidation Trust Beneficiaries. In connection with the vesting and transfer of the Liquidation Trust Assets, including the Causes of Action, any attorney-client privilege, work-product protection or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidation Trust shall vest in the Liquidation Trust. The Debtor and the Liquidation Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, protections and immunities.

(c)    Liability of Liquidation Trustee. Neither the Liquidation Trustee nor any of his/her/its members or designees, agents, professionals or representatives, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent, or representative of any other such person nor shall any member be liable for any act or omission to be taken or not taken in such capacity, other than acts resulting from such Person's willful misconduct or gross negligence.

(d)    Management of the Liquidation Trust Assets. After the Effective Date, all property of the Liquidation Trust shall be managed and administered by the Liquidation Trustee in a manner reasonably designed to maximize values. The Liquidation Trust is authorized to prosecute, compromise, settle or abandon the Causes of Action for the benefit of any holders of Allowed Claims, who shall be entitled to receive a Distribution pursuant to the terms of this Plan without further order of the Bankruptcy Court. If the Liquidation Trustee decides not to sell any non-Cash Asset or property or if such Asset or property cannot, in the Liquidation Trustee's judgment, be sold or liquidated in a commercially reasonable manner prior to the Final Distribution Date, the Liquidation Trustee shall have the right to abandon or otherwise dispose of such property without the prior approval of the Bankruptcy Court. Absent willful misconduct, intentional misconduct, gross negligence or fraud in connection therewith, no party in interest shall have a cause of action against either the Liquidation Trustee, the Liquidation Trust, the Debtor, or their respective directors, officers, employees, consultants, trustees or professionals arising from or related to the disposition of non-Cash property in accordance with this subparagraph.

(e)    Transfer Taxes. Any transfer of the Liquidation Trust Assets to the Liquidation Trust shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax to the extent permitted under section 1146(a) of the Bankruptcy Code.

(f)    Federal Income Tax Treatment of the Liquidation Trust. The Liquidation Trust will be established for the sole purpose of distributing the Liquidation Trust Assets, and any proceeds therefrom, in accordance with Treasury Regulation section

- 17 -

301.7701-4(d) and Revenue Procedure 94-45, with no objective to continue or engage in the conduct of a trade or business.  The Liquidation Trust is intended to qualify as a liquidating trust for U.S. federal income tax purposes.  In general, a liquidating trust is not a separate taxable entity for U.S. federal income tax purposes, but is instead treated as a grantor trust, i.e., pass-through entity for U.S. federal income tax purposes.  Since it is treated as a grantor trust for U.S. federal income tax purposes, the trust will be treated as a grantor trust pursuant to the provisions of Section 1083.06 of the Puerto Rico Internal Revenue Code of 2011, as amended, for Puerto Rico income tax purposes.  All parties must treat the transfer of the portion of the Liquidation Trust Assets attributable to the Liquidation Trust Beneficiaries as a transfer of such assets directly to the Liquidation Trust Beneficiaries.  Consistent therewith, all parties must treat the Liquidation Trust as a grantor trust of which the Liquidation Trust Beneficiaries are the owners and grantors.  Subject to the terms of the Liquidation Trust Agreement, the value of a Liquidation Trust Beneficiary's Allowed Claim shall be the value of such Liquidation Trust Beneficiary's interest in the Liquidation Trust, and the Liquidation Trust Beneficiaries and the Liquidation Trustee must consistently use this valuation for all U.S. federal income tax purposes and Puerto Rico income tax purposes, including for determining gain, loss or tax basis.

(g)    Reserve.  The Liquidation Trust shall establish an LT Reserve on account of Disputed Claims.  The Liquidation Trust may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state, Puerto Rico, and local income tax purposes), (i) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the LT Reserve as a "disputed ownership fund" within the meaning of that section, (ii) allocate taxable income or loss to the LT Reserve, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed), and (iii) distribute assets from the LT Reserve as, when, and to the extent, such Disputed Claims cease to be Disputed, whether by virtue of becoming Allowed or otherwise resolved.  The Liquidation Trust Beneficiaries shall be bound by such election, if made by the Liquidation Trustee, and as such shall, for U.S. federal income tax purposes (and, to the extent permitted by law, for state, Puerto Rico, and local income tax purposes), report consistently therewith.

(h)    Dissolution.  The Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date, unless the Bankruptcy Court, upon motion made prior to such fifth (5th) anniversary, determines that a fixed period extension, not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes, is necessary to facilitate or complete the recovery on and liquidation of the Liquidation Trust Assets.  Upon the filing of any motion for an extension of the date of dissolution of the Liquidation Trust, such date shall be deemed automatically extended until an order of the Bankruptcy Court is entered with respect to such motion or the motion is withdrawn.

(i)    Securities Law Matters.  To the extent the interests in the Liquidation Trust are deemed to be "securities," the issuance of such interests under this Plan are exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under

01:22326862.1

the Securities Act of 1933, as amended, and any applicable state and local laws requiring registration of securities.

5.06    Approval of Plan Documents.  The solicitation of votes on this Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder.  Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions.  On the Effective Date, the Debtor shall be authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further corporate, board or shareholder action.

## ARTICLE VI

## CORPORATE GOVERNANCE AND MANAGEMENT

6.01    Post-Effective Date Corporate Existence.  The Liquidation Trustee and any successor thereto is authorized and empowered to affect the dissolution of the Debtor as soon as practicable after the Effective Date.  On the Effective Date, upon cancellation of the Equity Interests as contemplated by Section 6.05 of this Plan, the Debtor shall issue a single share of common stock to the Liquidation Trust, in accordance with the by-laws of the Debtor and applicable Puerto Rico law.

6.02    Corporate Action.  On the Effective Date, or as soon thereafter as is practicable, the Debtor shall, if required, file its amended certificates of incorporation with the Secretary of State of the state or Territory in which each such entity is (or will be) incorporated, in accordance with the applicable general corporation law of each such state.

6.03    Officers and Boards of Directors.  Effective as of the Effective Date, members of the board of directors of the Debtor serving in such capacities prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Debtor on or after the Effective Date.  All rights and responsibilities shall be vested in the Liquidation Trustee.

6.04    Payment of Wind-Down Expenses.  Wind-Down Expenses shall be paid by the Liquidation Trustee from the Liquidation Trust Assets prior to the final distribution to Holders of Allowed Claims or Interests.

6.05    Cancellation of Existing Securities and Agreements.  On the Effective Date, the Debtor shall take appropriate action under the bylaws of the Debtor and applicable Puerto Rico law to cancel any document, agreement or instrument evidencing any Claim against or Equity Interests in the Debtor and the obligations of the Debtor under such documents, agreements, or instruments evidencing such Claims and Equity Interests, as the case may be, shall be discharged.

# ARTICLE VII

## PROVISIONS REGARDING VOTING
## AND DISTRIBUTIONS UNDER THIS PLAN

7.01    <u>Nonconsensual Confirmation</u>.  If any impaired Class of Claims entitled to vote shall not accept this Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtor shall have the right to amend this Plan in accordance with Section 13.08 of this Plan or to ask the Bankruptcy Court to confirm this Plan under section 1129(b) of the Bankruptcy Code, or both.  With respect to impaired Classes of Claims and Equity Interests that are deemed to reject this Plan, the Debtor shall request that the Bankruptcy Court confirm this Plan pursuant to section 1129(b) of the Bankruptcy Code.

7.02    <u>Elimination of Vacant Classes</u>.  Any Class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

7.03    <u>Voting Classes</u>.  If a Class contains Claims or Equity Interests eligible to vote and no holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject this Plan, this Plan shall be deemed accepted by the holders of such Claims or Equity Interests in such Class.  In the event the Bankruptcy Court determines that a Claim entitled to vote to accept or reject this Plan was classified and voted in an improper Class, the Debtor may request that the Bankruptcy Court deem such Claim to have been voted and counted for purposes of determining acceptance or rejection of this Plan in the Class deemed proper by the Bankruptcy Court without having to resolicit the vote of the holder of such Claim.

7.04    <u>Distributions</u>.  Pursuant to the terms and provisions of this Plan and the Confirmation Order the Liquidation Trustee shall make the required Distributions specified under this Plan, on the Initial Distribution Date, an Interim Distribution Date, or the Final Distribution Date, as the case may be, under this Plan.  Any payment of Cash made by the Liquidation Trustee pursuant to this Plan shall, at the Liquidation Trustee's option, be made by check or wire transfer.

7.05    <u>Timing of Distributions</u>.  In the event that any payment, Distribution, or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, and if so completed, shall be deemed to have been completed as of the required date. Any requirement under this Plan that the Liquidation Trustee make a payment or Distribution on a date shall mean that such party is required to commence the process of making a payment or Distribution on such date or as soon as reasonably practicable thereafter.

01:22326862.1

7.06    <u>Holders as of the Distribution Record Date.</u>  As of the close of business on the Distribution Record Date, the claims register maintained for the Chapter 11 Case shall be closed (as it is relates to the Debtor).  The Debtor, the Liquidation Trustee and the Liquidation Trust shall not have any obligation to recognize any transfer of any Claim or interest therein occurring after 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date, and instead may, in their sole discretion, recognize and deal for all purposes under this Plan with only those holders of record as of 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date.  Notwithstanding the foregoing, however, any Liquidation Trust Beneficiary may transfer its right to payment from the Liquidation Trust, but not its beneficial interest in the Liquidation Trust, after the Distribution Record Date.  Subject to the foregoing, any transfer of a Liquidation Trust Beneficiary's right to payment, including both transfers for consideration and transfers by will or under the laws of descent and distribution, shall not be effective until and unless the Liquidation Trustee receives written notice of such transfer.

7.07    <u>Distributions to Address of Record.</u>  Subject to Bankruptcy Rule 9010, and except as set forth in this Section 7.07 of this Plan, all distributions under this Plan to holders of Allowed Claims shall be made to the holder of each Allowed Claim at the address of such holder as listed on the Schedules as of the Distribution Record Date, unless the Debtor or the Liquidation Trustee have been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such holder different from the address reflected on the Schedules.  In the event that any Distribution to any such holder is returned as undeliverable, no Distribution to such holder shall be made unless and until the Liquidation Trustee has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such Distribution shall be made to such holder without interest; provided, however, that, at the later of the expiration of one (1) year from the Effective Date and the date a Claim becomes an Allowed Claim, such Distributions shall be deemed unclaimed property and shall revest in the Liquidation Trust and be distributed to other holders of Allowed Claims, in accordance with this Plan or as otherwise ordered by the Bankruptcy Court.

7.08    <u>Minimum Distributions</u>.  The Liquidation Trustee shall not be obligated to make any payment of Cash of less than fifty ($50) dollars to any holder of an Allowed Claim, unless such holder sends a timely written request to the Liquidation Trustee requesting that such payment be made on the next Distribution Date.  All such distributions shall be distributed to other holders of Allowed Claims in accordance with this Plan or as otherwise ordered by the Bankruptcy Court.  Notwithstanding anything contained herein to the contrary, if, on any Distribution Date there remains $10,000 or less available for distribution to holders of Allowed Claims in Classes 3 or 4, or to the holder of the Equity Interest in Class 5, in lieu of making any further distributions to the holders of such Claims or Equity Interest, the Liquidation Trust may distribute such Cash to the charity of its choice.

7.09    <u>Unclaimed Distributions</u>.  All Distributions to holders of Allowed Claims under this Plan that are unclaimed for a period of one (1) year after distribution

- 21 -

thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code, and any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred. All such unclaimed property shall revest in the Liquidation Trust and be distributed to other holders of Allowed Claims or donated in accordance with this Plan or otherwise ordered by the Bankruptcy Court.

7.10    <u>Setoffs and Recoupments</u>. The Liquidation Trust may, but shall not be required to, set off or recoup against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any Causes of Action of any nature whatsoever that the Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidation Trustee of any such Causes of Action that the Liquidation Trust or the Debtor may have against the holder of such Claim.

7.11    <u>Allocation of Plan Distributions Between Principal and Interest</u>. To the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes or Puerto Rico income tax purposes, as applicable) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

7.12    <u>Estimation of Claims; Certain Reserves</u>. For purposes of calculating and making distributions under this Plan, the Liquidation Trustee shall be entitled (but not required) to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed Claims and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular class, provided, however, that no interim distributions shall be made under this Plan unless all Disputed Claims alleging a liquidated amount in a timely filed proof of claim or timely filed request for payment of an Administrative Expense Claim are estimated at the full liquidated amount set forth therein, absent entry of an order of the Bankruptcy Court estimating the maximum Allowed amount of any such Disputed Claim at a lower amount. The Liquidation Trustee shall be entitled to seek one or more estimation orders from the Bankruptcy Court for purposes of calculating and making distributions under this Plan, which requests may be joined with objections to the Claims that are subject to any such request. Appropriate Disputed Claims reserves shall be established for each category of Claims as to which estimates are utilized or sought. Notwithstanding the foregoing or anything else in this Plan or the Confirmation Order: (i) neither the Liquidation Trust nor the Liquidation Trustee shall be obligated to physically segregate and maintain separate accounts for LT Reserves; and (ii) unless otherwise ordered by the Bankruptcy Court, no LT Reserves shall be required to be established or maintained with respect to Claims or Administrative Expense Claims filed after the applicable Bar Date. LT Reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time and evergreen in nature, as appropriate.

7.13    <u>No Recourse</u>. Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the

- 22 -

payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Liquidation Trust, the Liquidation Trustee, the Debtor, the Creditors' Committee, the Administrative Agent, the Lender or any of their respective professionals, consultants, officers, directors, employees or their successors or assigns, or any of their respective property.  However, nothing in this Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code, nor shall it modify or limit the ability of claimants (if any) to seek disgorgement to remedy any unequal distribution from parties other than those released under this section.  THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THIS PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

7.14    Satisfaction of Claims and Equity Interests.  Unless otherwise provided in this Plan or the Confirmation Order, any distributions and deliveries to be made on account of Allowed Claims under this Plan shall be in complete satisfaction of such Allowed Claims.

7.15    Withholding and Reporting Requirements.  In connection with this Plan and all distributions thereunder, the Liquidation Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Liquidation Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of any Distribution to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Liquidation Trustee believes are reasonable and appropriate, including requiring a holder of a Claim to submit appropriate tax and withholding certifications.  Notwithstanding any other provision of this Plan, (i) each holder of an Allowed Claim or Allowed Equity Interest that is to receive a Distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations on account of such distribution, and (ii) no Distributions shall be required to be made to or on behalf of such holder pursuant to this Plan unless and until such holder has made arrangements satisfactory to the Liquidation Trustee for the payment and satisfaction of such tax obligations or has, to the Liquidation Trustee's satisfaction, established an exemption therefrom.

## ARTICLE VIII

## PROCEDURES RELATING TO DISPUTED CLAIMS

8.01    Objections to Administrative Expense Claims and Claims.  Following the Effective Date and excluding Fee Claims, the Liquidation Trust, through the Liquidation Trustee, shall be entitled to object to Administrative Expense Claims and Claims.  Any objections to Administrative Expense Claims and Claims shall be filed and served on or

before the later of (i) one hundred and eighty (180) days after the Effective Date, and (ii) such later date as may be fixed by the Bankruptcy Court upon the filing of a motion by the Debtor or the Liquidation Trustee seeking to extend such deadline.

8.02    Late Filed Claims.  On the Effective Date, except as otherwise agreed by the Debtor prior to the Effective Date, and thereafter the Liquidation Trustee, or unless otherwise ordered by the Bankruptcy Court, any and all Administrative Expense Claims and Claims filed twenty (20) days or more after the applicable Bar Date shall be automatically deemed disallowed in full and expunged from the claims register maintained in connection with this Chapter 11 Case (as it relates to the Debtor) for purposes of distribution or any other treatment under this Plan as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court and holders of such Claims may not receive any Distribution on account of such Claims.  To the extent a party-in-interest wishes to file a late filed Administrative Expense Claim or Claim after the Effective Date, such party in interest shall either obtain written consent from the Liquidation Trustee to file such Administrative Expense Claim or Claim late or obtain an order of the Bankruptcy Court permitting the Administrative Expense Claim or Claim to be late-filed.  In the event an Administrative Expense Claim or Claim is permitted to be late-filed, the Liquidation Trustee shall have one hundred and twenty (120) days from the date the holder is permitted to file the Claim late to object to such Claim.

8.03    Amendments to Claims.  After the Effective Date, a proof of Claim may not be amended without the authorization of the Bankruptcy Court.  On the Effective Date, except as otherwise agreed by the Debtor, and thereafter the Liquidation Trustee, or unless otherwise ordered by the Bankruptcy Court, any Administrative Expense Claim or Claim that amends or supersedes an Administrative Expense Claim or Claim shall be automatically deemed disallowed in full and expunged from the claims register maintained in this Chapter 11 Case for purposes of distribution or any other treatment under this Plan as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court and holders of such Claims may not receive any Distribution on account of such Claims.

8.04    Satisfied Claims.  Any Administrative Expense Claim or Claim that has been paid, amended, settled, superseded or satisfied in full or in part may be adjusted or expunged on the claims register by the Debtor or the Liquidation Trustee without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

8.05    No Distributions Pending Allowance.  Notwithstanding any other provision hereof, if any portion of a Claim or Administrative Expense Claim is Disputed, no payment or Distribution provided hereunder shall be required to be made on account of such Claim or Administrative Expense Claim unless and until such Disputed Claim or Disputed Administrative Expense Claim becomes Allowed in its entirety; provided, however, that the holder of a Disputed Claim in one Class shall be entitled to payment or Distribution on account of a separate Allowed Claim in a separate Class or a separate Allowed Administrative Expense Claim in a separate Class in accordance with the provisions of this Plan.

- 24 -

8.06    Resolution of Disputed Claims.  On and after the Effective Date, the Liquidation Trust, through the Liquidation Trustee, shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Disputed Claims without approval of the Bankruptcy Court.  The reasonable fees and expenses (including reasonable attorneys' fees and costs) that are incurred by the Liquidation Trust and the Liquidation Trustee when providing assistance at the request of the Liquidation Trustee, associated with the claims resolution process shall be borne by the Liquidation Trust.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.01    Rejection or Assumption and Retention or Assignment.

(a)    Assumption or Rejection of Executory Contracts and Unexpired Leases.  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code:

(i)    all executory contracts and unexpired leases of the Debtor shall be deemed to be rejected as of the Confirmation Date, subject to the occurrence of the Effective Date, except for any executory contract or unexpired lease: (a) that previously has been assumed and/or assigned pursuant to an order of the Bankruptcy Court entered prior to the Effective Date; (b) as to which a motion for approval of the assumption and/or assignment of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date; or (c) that is specifically designated as a contract or lease to be assumed and/or assigned or retained on Schedule 9.01(a), which schedule shall be contained in the Plan Supplement and shall list corresponding Cure Amounts;

(ii)    notwithstanding anything otherwise herein to the contrary, the Debtor reserves the right, on or prior to the Confirmation Date, to amend Schedule 9.01(a) to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be, as applicable, rejected, assumed and/or assigned or retained.  The Debtor shall provide notice of any amendments to Schedule 9.01(a) to the parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on Schedule 9.01(a) shall not constitute an admission by the Debtor that such document is an executory contract or an unexpired lease or that the Debtor has any liability thereunder.

(b)    Approval of Assumptions, Retentions and Rejections by Confirmation Order.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections, retentions, assumptions and/or assignments contemplated by this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed pursuant to Section 9.01(a) of this Plan shall vest in and be fully enforceable by the Debtor or the Liquidation Trustee, as the case may be, in accordance with its terms, except as modified by the provisions of this Plan, or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law.  The Debtor reserves the right to file a motion on or before the Confirmation

- 25 -

Date to assume, assume and assign, or reject any executory contract or unexpired lease (not including non-residential real property leases).

9.02    Cure of Defaults.

(a)    Generally.  Except as may otherwise be agreed to by the Debtor or the Liquidation Trustee, as the case may be, and the non-Debtor party to the contract or lease, within thirty (30) days after the Effective Date, the Debtor or the Liquidation Trustee shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Debtor pursuant to this Plan, in accordance with section 365(b) of the Bankruptcy Code.  Subject to the last sentence of Section 9.02(b) of this Plan, all disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

(b)    Notice of Proposed Cure.  No later than 21 days prior to the Confirmation Hearing, the Debtor shall file and serve on parties to executory contracts and unexpired leases designated on Schedule 9.01(a) a notice (the "Cure Notice") listing the proposed Cure Amount to be paid in connection with the executory contracts and unexpired leases that may be Assumed, retained, assumed and/or assigned pursuant to Section 9.01(a) of this Plan.  To the extent that the Debtor on or prior to the Confirmation Date amends Schedule 9.01(a) to add any executory contract or unexpired lease thereto the Debtor shall file and serve on the parties to such executory contract or unexpired lease the Cure Notice listing the proposed Cure Amount to be paid in connection with such executory contract or unexpired pursuant to Section 9.01(a) of this Plan.  The non-Debtor parties to such contracts and leases shall have until fifteen (15) days following service of the Cure Notice to object in writing to the proposed cure and to propose an alternative cure.  In the event that no objection is timely filed, the applicable party shall be deemed to have consented to the cure proposed by the Debtor (including amounts of compensation for actual pecuniary loss) and shall be forever enjoined and barred from seeking from the Debtor and the Liquidation Trustee any additional amount on account of the Debtor's cure obligations under section 365 of the Bankruptcy Code.  If an objection is timely filed with respect to the Cure Amount proposed by the Debtor for an executory contract or unexpired lease, the Bankruptcy Court shall hold a hearing to determine the amount of any disputed cure amount not settled by the parties.  Notwithstanding anything otherwise to the contrary, at all times through the date that is thirty (30) days after the entry of a Final Order resolving and fixing the amount of a disputed cure amount, whether such date is before or after the Effective Date, the Debtor and the Liquidation Trust shall be authorized to reject such executory contract or unexpired lease by notice to the non-debtor party to such executory contract or unexpired lease.

9.03    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to this Plan.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 9.01 of this Plan must be filed with the Bankruptcy Court and served upon the Debtor in accordance with the Bar Date Order.  All such Claims not filed within such time will be forever barred from assertion against the Debtor and its Estate.

## ARTICLE X

## EFFECT OF CONFIRMATION

10.01   Binding Effect.  From and after the Confirmation Date, but subject to the occurrence of the Effective Date, this Plan shall be binding and inure to the benefit of the Debtor, all present and former holders of Claims and Equity Interests, and their respective assigns.

10.02   Vesting of Assets.  Upon the Effective Date, and upon satisfaction of the conditions precedent set forth below, and the transfer of the Liquidation Trust Assets to the Liquidation Trust, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, any Assets of the Debtor and Estate shall vest in the Liquidation Trust, in each case free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise provided herein or in the Confirmation Order.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and the terms of this Plan, the Liquidation Trust shall retain and shall have the exclusive right, in its discretion to enforce against any Person any and all Causes of Action.

10.03   Term of Pre-Confirmation Injunctions or Stays.  Unless otherwise provided in this Plan, the Confirmation Order, or a separate order from the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

10.04   Injunction Against Interference with Plan.  Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

10.05   **Injunction.  Except as otherwise expressly provided in this Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Liens, Claims, liabilities or encumbrances against or Equity Interests in, the Debtor, along with its respective present or former employees, agents, officers, directors, or principals, attorneys or other professionals, or the Debtor's Assets are permanently enjoined, with respect to any such Liens, Claims, liabilities or encumbrances or Equity Interests, as of the Confirmation Date, but subject to the occurrence of the Effective Date, from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Liquidation Trust, Liquidation Trustee, or any of their property; (b) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Liquidation Trust, the Liquidation**

- 27 -

Trustee, or any of their property (including, without limitation, the Liquidation Trust Assets); (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Liquidation Trust, the Liquidation Trustee, or any of their property (including, without limitation, the Liquidation Trust Assets); (d) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; (e) taking any actions to interfere with the implementation or consummation of this Plan; and (f) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan, such as commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims against the Debtor, the Liquidation Trust, or the Liquidation Trustee and/or causes of action against the Debtor, the Liquidation Trust, or the Liquidation Trustee which are extinguished or released pursuant to this Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights arising under and consistent with the terms of this Plan.

        10.06   **Exculpation and Limitation of Liability for Postpetition Conduct.** None of the Debtor, the Creditors' Committee, or any of their respective current or former members, partners, officers, directors, employees, advisors, professionals, or agents and advisors of any of the foregoing (including any attorneys, financial advisors, investment bankers and other professionals retained by such Persons) but solely in their capacities as such (collectively, the "Exculpated Parties") shall have or incur any liability to any holder of any Claim against or Equity Interest in the Debtor for any act or omission on or after the Petition Date and on or before the Effective Date in connection with, related to, or arising out of the Chapter 11 Case, the transfer of the Debtor's Assets to the Liquidation Trust, the negotiation and execution of this Plan, the Disclosure Statement, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan, and the property to be distributed under this Plan on or before the Effective Date, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all postpetition activities leading to the promulgation and confirmation of this Plan except in case of fraud, willful misconduct, intentional misconduct or gross negligence by such Exculpated Party as determined by a Final Order. Nothing in this Section 10.06 shall: (i) be construed as a release of any Claims against the Debtor's officers or directors for events occurring prior to the Petition Date; (ii) be construed as a release of any entity's fraud, gross negligence, intentional misconduct or willful misconduct with respect to matters set forth in this Section 10.06; (iii) limit the liability of attorneys for the Debtor or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility; or (iv) be construed as a release or waiver of the Exculpated Parties' right or ability to assert or raise certain claims against any party as defense to a claim or suit brought against them by such party.

        10.07   **Injunction Related to Exculpation.** The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether

- 28 -

**directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities enjoined, exculpated, or otherwise limited or prohibited pursuant to this Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities against the Debtor, the Liquidation Trust, or the Liquidation Trustee that are described in Section 10.06 of this Plan.**

10.08    Release of Liens and Encumbrances.

(a)    Each Lien or encumbrance on the Debtor's Assets, including Liens or encumbrances securing:  (w) any Miscellaneous Secured Claim or obligation arising under or related to the Debtor's DIP Facility Documents; (x) any Claim that is purportedly secured or (y) any judgment, personal property or ad valorem tax, or other tax of any kind or character, mechanic's or similar lien Claim, in each case regardless of whether such Claim is an Allowed Claim, shall, regardless of whether such Claim has been scheduled or proof of such Claim has been filed, be deemed released as set forth in this Section 10.08;

(b)    if such Lien or encumbrance secures a Miscellaneous Secured Claim, such Lien or encumbrance shall upon payment of the consideration set forth in Article IV of this Plan, automatically, and without further action by the Debtor or Liquidation Trustee, be deemed released;

(c)    in all other cases, such Lien or encumbrance shall automatically, and without further action by the Debtor or the Liquidation Trust, be deemed released immediately upon the occurrence of the Effective Date;

(d)    the holder of any such Lien or encumbrance shall execute such documents and instruments as the Debtor or the Liquidation Trustee, as the case may be, require to evidence such Claim holder's release of such property or Lien or encumbrance, and if such holder refuses to execute appropriate documents or instruments, the Debtor, or the Liquidation Trustee (as applicable) may, in their discretion, file a copy of the Confirmation Order in the appropriate recording office, which shall serve to release any Claim holder's rights in such property; and

(e)    on the Effective Date, except as expressly provided in this Plan, all right, title and interest in Estate property subject to a Lien or an encumbrance immediately prior to the Effective Date shall be transferred as a Liquidation Trust Asset to the Liquidation Trust.

10.09    Preservation and Application of Insurance.  The provisions of this Plan shall not diminish or impair in any manner the enforceability and/or coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims (including personal injury/workers' compensation or directors/officers Claims) against the Debtor, any directors, trustees or officers of the Debtor, or any other Person other than as expressly as set forth herein.  For the avoidance of doubt, and as set forth in this Plan, all of the Debtor's insurance policies, or third party policies naming the Debtor as an

- 29 -

additional insured party, and the proceeds thereof shall be available to satisfy any Claims to the extent such insurance policies cover such Claims.  In addition, such insurance policies and proceeds thereof shall be available to satisfy Claims estimated pursuant to section 502(c) of the Bankruptcy Code or in accordance with this Plan.

   10.10 <u>Indemnification</u>.  The Liquidation Trustee shall be indemnified and receive reimbursement against and from all loss, liability, expense (including counsel fees) or damage which the Liquidation Trustee may incur or sustain in the exercise and performance of any of their respective powers and duties under this Plan, to the fullest extent permitted by law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result solely from such party's willful misconduct, fraud, intentional misconduct or gross negligence.  The amounts necessary for such indemnification and reimbursement shall be paid by the Liquidation Trust out of the available Cash.  The Liquidation Trustee shall not be personally liable for this indemnification obligation or the payment of any expense of administering this Plan or any other liability incurred in connection with this Plan, and no Person shall look to the Liquidation Trustee personally for the payment of any such expense or liability.  This indemnification shall survive the death, resignation or removal, as may be applicable, of the Liquidation Trustee and shall inure to the benefit of the Liquidation Trustee's successors, heirs and assigns, as applicable.

   10.11 <u>Satisfaction of Subordination and/or Subrogation Rights</u>.  All Claims against the Debtor and all rights and Claims between or among claimholders relating in any manner whatsoever to Claims against the Debtor, based upon any claimed subordination and/or subrogation rights (if any), shall be deemed satisfied by the distributions under this Plan, and such subordination and/or subrogation rights shall be deemed waived, released, and terminated as of the Effective Date.

**ARTICLE XI**

**<u>CONDITIONS PRECEDENT</u>**

   11.01 <u>Conditions to Confirmation</u>.  The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Section 11.03 of this Plan:

     (a) the Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan in an order in form and substance reasonably acceptable to the Debtor; and

     (b) the Confirmation Order and Plan Documents shall be in form and substance reasonably acceptable to the Debtor.

   11.02 <u>Effectiveness</u>.  Subject to the Debtor's rights to waive conditions as provided in Section 11.03 of this Plan, this Plan shall not become effective unless and until: (i) the Confirmation Order shall have become a Final Order; and (ii) the Plan Documents, including the Liquidation Trust Agreement, to be entered into by the Debtor, shall have been

- 30 -

entered and delivered, all actions, documents, and agreements necessary to implement this Plan shall have been effected or executed and the Debtor shall have received all material authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are reasonably necessary to implement this Plan and that are required by law, regulation, or order.

11.03   Waiver of Conditions.  The Debtor, to the extent not prohibited by applicable law, may waive one or more of the conditions precedent: (i) to effectiveness of this Plan set forth in Section 11.02 of this Plan in whole or part, upon five (5) Business Days' notice to the Bankruptcy Court without a hearing; or (ii) to confirmation of this Plan set forth in Section 11.01 of this Plan prior to the Confirmation Date without any hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such conditions to be satisfied (including any action or inaction by the Debtor in its sole discretion).  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

11.04   Withdrawal of Plan.

(a)   Right to Revoke or Withdraw.  The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Effective Date.

(b)   Effect of Withdrawal, Revocation or Non-Consummation.  If the Debtor revokes or withdraws this Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, this Plan, any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), the assumption or rejection of executory contracts, unexpired leases, any release, exculpation or indemnification provided for in this Plan, and any document or agreement executed pursuant to this Plan shall be null and void; provided, however, any settlements or compromises embodied in this Plan that have been otherwise approved by separate order of the Bankruptcy Court shall remain in full force in effect notwithstanding withdrawal or revocation of this Plan or the failure of the Confirmation Date or Effective Date to occur.  In such event, nothing contained herein, and no acts taken in preparation for consummation of this Plan shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interest in the Debtor or any other Person, to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or to constitute an admission of any sort by the Debtor or any other Person.

11.05   Waiver of Bankruptcy Rule 3020(e) Stay.  Pursuant to Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective upon its entry and shall not be subject to the stay provided in Bankruptcy Rule 3020(e).

# ARTICLE XII

# RETENTION OF JURISDICTION

12.01  <u>Scope of Bankruptcy Court Jurisdiction</u>.  The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine pending applications for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of cure amounts and Claims resulting therefrom or from the assumption, assumption and assignment or rejection of executory contracts or unexpired leases pursuant to this Plan;

(b)    To hear and determine any and all adversary proceedings, applications, and contested matters, and to order appropriate relief in connection therewith (including issuance and/or enforcement of releases);

(c)    To hear and determine any objection to Administrative Expense Claims, Claims or Equity Interests;

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)    To issue such orders in aid of execution and consummation of this Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(f)    To consider any amendments to, or modifications of, this Plan and the Plan Supplement, and any dispute or controversy relating to execution, delivery or compliance with any document included in the Plan Supplement, and to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(g)    To hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(h)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

(i)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, any transaction to be consummated in accordance herewith, the Liquidation Trust Agreement, the Confirmation Order, or any other order of the Bankruptcy Court;

- 32 -

(j)       To recover all Assets of the Debtor and property of the Debtor and Liquidation Trust, wherever located;

(k)       To hear and determine matters concerning state, local, and federal taxes, including as provided by sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)       To resolve any Disputed Claims or Equity Interests;

(m)      To hear any other matter consistent with the Bankruptcy Code; and

(n)       To enter a final decree closing the Chapter 11 Case; provided, however, with respect to a governmental unit's exercise of its police or regulatory powers other than the enforcement of a money judgment, the jurisdiction of any other tribunal shall not be reduced or impaired from that as set forth in any applicable, valid statutory grant of jurisdiction.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.01   Critical Vendor and Other Payments.  Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid pursuant to an order of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules are hereby amended and reduced to reflect that such payments were made.  Nothing in this Plan shall preclude the Debtor or the Liquidation Trustee from paying Claims that the Debtor or the TSA Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

13.02   Effectuating Documents and Further Transactions.  Each of the Debtor and the Liquidation Trustee is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any securities issued pursuant to this Plan.

13.03   Exemption from Transfer Taxes.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under this Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under this Plan, shall constitute a "transfer under a plan" and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.  All sale transactions consummated by the Debtor and approved by the Bankruptcy Court on and after the Petition Date through and including

the Effective Date, including the transfers effectuated under this Plan and the assumption, assignment, and sale by the Debtor of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with this Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

13.04    Termination of Estate Professionals.  On the Effective Date, the engagement of each Professional retained by the Estate shall be terminated (solely as to the Estate of the Debtor) without further order of the Bankruptcy Court or act of the parties. Notwithstanding the foregoing, the Liquidation Trust shall be entitled to engage Estate Professionals and representatives of the Debtor as provided in the Liquidation Trust Agreement.

13.05    Access.  From and after the Effective Date, the Liquidation Trust shall cooperate with any Person that served as a director or officer of a Debtor at any time prior to the Effective Date, and make available to any such party such documents, books, records or information relating to the Debtor's activities prior to the Effective Date that such party may reasonably require relating to any action taken in connection with such party's role as a director or officer of the Debtor, any action taken in connection with the negotiation, execution and implementation of this Plan, and the Chapter 11 Case, provided, however that the Liquidation Trustee may require, in its sole and absolute discretion, that any given documents, books, records or information sought for the purposes of prosecuting or defending pending, threatened or asserted litigation must be requested and provided in accordance with the Bankruptcy Rules and the Federal Rules of Civil Procedure.

13.06    Payment of Statutory Fees.  All fees payable pursuant to section 1930 of title 28 of the United States Code (solely as such fees relate to this Chapter 11 Case) shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable. From and after the Effective Date, the Debtor and the Liquidation Trustee shall be jointly liable for and shall pay the fees under 28 U.S.C. § 1930 assessed against the Debtor's Estates under 28 U.S.C. § 1930 until entry of a final decree closing the Debtor's Chapter 11 Case.  In addition, the Debtor and/or the Liquidation Trustee shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines (as may be modified through agreement with the Office of the United States Trustee), until entry of an order closing or converting the Chapter 11 Case.  The U.S. Trustee shall not be required to file a request for payment of the U.S. Trustee Fees, which shall be deemed an Administrative Expense Claim against the Debtor and its Estate.

13.07    Post-Effective Date Fees and Expenses.  From and after the Effective Date, the Liquidation Trust shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional Persons thereafter incurred by the Liquidation Trust, including those fees and expenses incurred in connection with the implementation and consummation of this Plan, which fees and expenses shall constitute Wind-Down Expenses.

- 34 -

13.08   <u>Amendment or Modification of this Plan</u>.  Alterations, amendments, or modifications of or to this Plan (including to provide for treatment different than that set forth herein with respect to any class of Claim or Equity Interest, including establishment of subclasses of Classes of Claims or Equity Interests to the extent required if so elected by the Debtor, the unimpairment of Classes that are impaired hereunder, and the impairment of Classes that are unimpaired hereunder) may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that this Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, provided that this Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms this Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications.  A holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

13.09   <u>Confirmation Order</u>.  The Confirmation Order shall, and is hereby deemed to, ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date, except for any acts constituting willful misconduct, intentional misconduct, gross negligence or fraud.

13.10   <u>Severability</u>.  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.11   <u>Expedited Tax Determination</u>.  The Liquidation Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtor for all taxable periods beginning on or before the Effective Date.

13.12   <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit or schedule hereto or in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State

of Delaware, without giving effect to any contrary result otherwise required under applicable choice or conflict of law rules.

13.13   Binding Effect.  This Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns.

13.14   Exhibits/Schedules.  All exhibits and schedules to this Plan and the Confirmation Order, including the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein.

13.15   Dissolution of the Creditors' Committee.  The functions of the Creditors' Committee, as to the Debtor's case alone, shall terminate on the Effective Date; *provided, however*, that following the Effective Date, the attorneys to the Creditors' Committee shall be entitled to assert any claims for compensation for services rendered or reimbursement for expenses incurred after the Effective Date directly and exclusively related to the Debtor and the Chapter 11 Case, which fees and expenses shall be paid in the ordinary course of business upon submission to the Liquidation Trustee of appropriate documentation.  Notwithstanding anything in this Plan to the contrary, the Liquidation Trustee is authorized to prosecute any objection, action or proceeding filed by the Creditors' Committee that is not resolved prior to the dissolution of the Creditors' Committee.

13.16   Notices.  All notices, requests, and demands to or upon the Debtor, the Liquidation Trust, or the Creditors' Committee to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| | |
|---|---|
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | IRELL & MANELLA LLP |
| Michael R. Nestor | Jeffrey M. Reisner |
| Andrew L. Magaziner | Michael Strub |
| | Kerri A. Lyman |
| Rodney Square | |
| 1000 North King Street | 840 Newport Center Drive, Suite 400 |
| Wilmington, Delaware 19801 | Newport Beach, CA  92660 |
| Telephone: (302) 571-6600 | Telephone: (949) 760-0991 |
| Facsimile: (302) 576-3312 | |
| | Facsimile: (949) 760-5200 |
| *Counsel for the TSA Debtors* | *Special Counsel to Debtors TSAWD Holdings, Inc., TSA Ponce, Inc., and TSA Caribe, Inc.* |

- 36 -

TSA Caribe, Inc.,
c/o Douglas Garrett
TSAWD, Inc.
2305 East Arapahoe Road
Suite 234
Centennial, Colorado 80122

*Debtor*


Dated: Wilmington, Delaware
September 5, 2017

LIQUIDATION TRUST
c/o _____
_____

Respectfully submitted,

**TSA CARIBE, INC.**

*/s/ Douglas Garrett*
Douglas Garrett
President of TSA Caribe, Inc.
Chairman of Wind Down Committee for TSA Debtors

01:22326862.1