# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TSAWD HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-10527 (MFW)<br><br>(Jointly Administered) |

## DECLARATION OF DOUGLAS GARRETT IN SUPPORT OF CONFIRMATION OF CHAPTER 11 PLAN OF LIQUIDATION OF TSA CARIBE, INC.

I, Douglas Garrett, hereby declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code ("28 U.S.C. § 1746"), as follows:

1. I submit this declaration (this "Declaration") in support of confirmation of the *Chapter 11 Plan of Liquidation of TSA Caribe, Inc.* [Docket No. 3856] (as modified, amended, or supplemented from time to time in accordance with its terms, the "Plan").[2]

2. The statements in this Declaration are, except where specifically noted, based on my personal knowledge or opinion, on information that I have received from TSA Caribe, Inc.'s ("Caribe") employees or advisors working directly with me or under my supervision, direction, or control, or from Caribe's books and records maintained in the ordinary course of its business. If I were called upon to testify, I could and would competently testify to the facts set forth herein on that basis. I am authorized to submit this Declaration on behalf of Caribe.

### Background and Qualifications

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: TSAWD Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); TSAWD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664) (collectively, the "TSA Debtors"). The headquarters for the above-captioned TSA Debtors is located at 2305 East Arapahoe Road, Suite 234, Centennial, Colorado 80122.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

10379575.3 04

3. I am the Chairman of the Wind Down Committee and General Counsel of TSAWD Holdings, Inc. and each of its principal subsidiaries, all of which are affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"). I have served in the capacity of Chairman of the Wind Down Committee for over a year and in the capacity of General Counsel since 2011. In these capacities, I am responsible for and familiar with the TSA Debtors' day-to-day operations, business, and financial affairs.

4. I am intimately familiar with Caribe's history, finances, and operations. I am also familiar with the Plan and the negotiations regarding the terms thereof, as well as the Disclosure Statement and the Plan Supplement documents filed in connection with the Plan.

**Declaration**

5. This Declaration is organized into two parts. Part I addresses the Plan's compliance with applicable requirements of the Bankruptcy Code and Part II addresses whether certain of the discretionary elements of the Plan, including settlements, exculpations, and injunctions, are appropriate. My testimony below in support of confirmation of the Plan is informed by my discussions with Caribe's advisors and my own personal knowledge, including my participation in negotiations with the Creditors' Committee, the Term Loan Lenders, and other parties in interest.

**I.    The Plan Complies with Applicable Provisions of the Bankruptcy Code.**

6. I have reviewed the Plan and related materials and believe, upon consultation with Caribe's advisors, that the Plan satisfies all requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code, certain of which I discuss in detail below.

**A.    Classification of Claims and Equity Interests Under the Plan.**

7. I have been informed by Caribe's advisors that the Plan complies with section 1129(a)(1) of the Bankruptcy Code, which I understand requires the Plan to comply with sections 1122 and 1123 of the Bankruptcy Code. The Plan classifies Holders of Claims and Equity Interests into five separate Classes. These classifications reflect the differences in the legal nature, priority, and other distinguishing characteristics of such Claims or Equity Interests. I believe that each Class is comprised of substantially similar Claims or Equity Interests, and each instance of separate classification of similar Claims and Equity Interests is based on valid business, factual, and legal reasons.

### A. The Plan Contains Adequate Means for Implementation.

8. I believe that the Plan contains adequate means for its implementation, including, among other things: (a) cancellation of documents evidencing Claims and Equity Interests; (b) dissolution of Caribe on or after the Effective Date; (c) formation of the Liquidation Trust to administer the Liquidation Trust Assets and make distributions in accordance with the Plan; and (d) the closing of Caribe's Chapter 11 Case.

### B. Caribe Has Proposed the Plan in Good Faith.

9. I believe that the Plan is proposed in good faith. The Plan is the culmination of extensive, arm's-length, good faith negotiations between and among Caribe, the Creditors' Committee, the Term Loan Lenders, and other parties in interest. The Plan is proposed with the goal of maximizing the recovery to General Unsecured Creditors, while avoiding time consuming and expensive litigation with the Term Loan Lenders over their alleged administrative claims. The substantial compromises embodied in the Plan, along with the required support of the Plan by Caribe's Holders of Claims and Equity Interests, were reached through good faith negotiations and without any suggestion of bad faith or collusion. In short, the Plan satisfies the objectives of the Bankruptcy Code, and in no way

attempts to abuse the judicial process or delay or frustrate the legitimate efforts of creditors to enforce their rights.

### C. The Plan Satisfies the Best Interests Test.

10. It is my understanding that section 1129(a)(7) of the Bankruptcy Code requires that a chapter 11 plan provide, with respect to each impaired class of claims and equity interests, that each holder of a claim or an equity interest in such class either: (a) has accepted the plan; or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. This requirement is known as the "best interests" test.

11. Based on all available information, I estimate a 100% recovery under the Plan for Holders of Allowed Administrative Expense Claims, Priority Tax Claims, and Priority Claims.

12. I believe that the Plan provides for a greater recovery to creditors than would be the case in a chapter 7 liquidation of Caribe. More specifically, my team and I prepared an analysis of the proceeds that would be available to various creditor groups in a hypothetical chapter 7 liquidation (the "Liquidation Analysis"), which is attached to the Disclosure Statement as Exhibit 2. The Liquidation Analysis includes a fair and reasonable "best estimate" of the cash proceeds, net of liquidation-related costs, available for distribution to the Holders of Allowed Claims and Equity Interests if Caribe were to be liquidated in a hypothetical chapter 7 case. As set forth in the Liquidation Analysis, the estimated recoveries for all creditor groups under the Plan are either the same or greater than the estimated recoveries for those creditor groups under a hypothetical chapter 7 liquidation.

13. The Liquidation Analysis assumes that in a hypothetical chapter 7 liquidation, there would be an increase in Administrative Claims due to chapter 7 trustee fees and commissions and increased litigation financing costs. Moreover, the Settlement (as defined below) with the Term Loan Lenders embodied in the Plan would be moot, and expensive and time-consuming litigation over their asserted administrative claims would certainly ensue. As a result, a conversion to a case under chapter 7 likely would result in all Holders of Impaired Claims realizing little or no recovery.

14. Indeed, I estimate that in a chapter 7 liquidation, Holders of Claims in Class 3 would realize a recovery of 9% of their Allowed Claims if the Term Loan Lenders' request for a super-priority administrative expense claim is denied, or 0% if such request is granted. Such recoveries are substantially lower than the recoveries provided by the Plan (*i.e.*, 11% to Holders of General Unsecured Claims).

15. In addition, in a chapter 7 liquidation, the Settlement embodied in the Plan would not exist, and expensive and time consuming litigation would likely be necessary to resolve those Claims that are being settled under the Plan, which would further delay distributions to Holders of Allowed Claims, decrease the present value of those distributions, and increase Administrative Claims. Put simply, no creditor group would be better off in a chapter 7 liquidation than under the Plan. Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**D.    The Plan is Feasible.**

16. I believe that the Plan is feasible because the assets being transferred to the Liquidation Trust will be sufficient to enable the Liquidation Trustee to make distributions to (or for the benefit of) the Holders of Allowed Claims as contemplated under the Plan and to satisfy all post-Effective Date obligations.

17. Moreover, I believe that Caribe has satisfied or will be able to satisfy or waive each of the conditions precedent to the Effective Date pursuant to the Plan, including, among other things:

- Establishing the Liquidation Trust;
- Transferring the Liquidation Trust Assets to the Liquidation Trust;
- The allowance of all General Unsecured Claims in Class 3, excluding the Interdebtor Claims, does not exceed $8,500,000; and
- The allowance of all Allowed Claims with priority above Class 3 does not exceed $730,000.

18. I believe that Caribe is able to and will pay all fees payable pursuant to 28 U.S.C. § 1930 (solely as such fees relate to Caribe's Chapter 11 Case) on the earlier of when due or the Effective Date, or as soon thereafter as practicable.

## II. The Discretionary Contents of the Plan are Appropriate.

### A. The Term Loan Lenders' Settlement Is Fair and Equitable.

19. The Plan contains a significant compromise with the Term Loan Lenders pursuant to which the Term Loan Lenders agreed to waive their asserted administrative expense claim, provided that certain Interdebtor Claims were allowed in an aggregate amount not less than $22,821,972, among other conditions (the "Settlement"). The Settlement resolves potentially expensive and time consuming litigation with the Term Loan Lenders regarding their asserted administrative claim, and allows the Plan to be confirmed in 2017, which is critically important for the reasons set forth below.

20. I believe the Settlement should be approved for, *inter alia*, the following reasons:

- *First*, the Settlement resolves and settles a legally complex issue regarding whether the Term Loan Lenders have an administrative claim against Caribe. This resolution puts to rest a claim potentially exceeding $71,000,000.

- *Second*, as part of the Settlement, the Term Loan Lenders have agreed that all Fee Claims of Professionals will continue to be paid through the Wind-Down Budget established in the Chapter 11 Cases of the TSA Debtors, which increases the amount available for distribution to general unsecured creditors in Caribe's case by reducing or eliminating the Fee Claims of Professionals being paid directly from Caribe. In addition, if the Plan is confirmed and distributions are made in 2017, Caribe anticipates that distributions available to creditors will increase by $250,000 due to certain anticipated savings related to the timing of distributions. The foregoing will substantially increase the amount available for distribution to general unsecured creditors in Caribe's Chapter 11 Case.

- *Third*, in the absence of the Settlement, Caribe would be required to engage in costly and time consuming litigation regarding the Term Loan Lenders' alleged administrative claim. At a minimum, such litigation would be attended by expense, inconvenience, and delay.

- *Fourth*, if the administrative claim asserted by the Term Loan Lenders was allowed in its entirety (or even at a fraction of its stated amount), Holders of General Unsecured Claims would be unlikely to receive any recovery.

21.   The Settlement represents a sound exercise of Caribe's business judgment, as corroborated by the support of all other major constituencies. The certainty, swiftness, and consensual nature of the Settlement greatly outweigh the benefits of a protracted, expensive, and uncertain litigation with the Term Loan Lenders.

**B.   The Plan's Exculpation Provisions are Necessary and Appropriate.**

22.   The exculpation provisions of the Plan protect the Exculpated Parties[3] from actions taken in connection with the Chapter 11 Cases, including the formulation and

---

[3] Caribe and the Office of the United States Trustee (the "U.S. Trustee") have agreed to revise the definition of Exculpated Parties set forth in Section 10.6 of the Plan through a provision in the Confirmation Order as follows: "None of the Debtor, the TSA Debtors, the TSA Debtors' officers and directors that served during the pendency of the case, the Committee, the Committee's members, and all professionals retained in the TSA Debtors' bankruptcy cases, and all other estate fiduciaries who, for purposes of this section 10.6, shall include employees of the TSA Debtors who materially assisted during the Debtor's chapter 11 case, shall be deemed to be estate fiduciaries (the "Exculpated Parties") . . . ."

implementation of the Plan and the Disclosure Statement, but expressly exclude any liability arising out of gross negligence or willful misconduct of the Exculpated Parties.

23.  The circumstances of the Chapter 11 Case demonstrate that the exculpation is appropriate. The Plan was negotiated and implemented in good faith and with a high degree of transparency, including extensive negotiations between and among Caribe, the other TSA Debtors, the Creditors' Committee, and the U.S. Trustee. The exculpation is necessary to protect those parties that (a) played a critical role in formulating the Plan, the Disclosure Statement, and related documents in furtherance of the transactions contemplated by the Plan, (b) made substantial contributions to the Chapter 11 Case, (c) participated in good faith in the negotiation, formulation, and solicitation of the Plan, and (d) ultimately, will participate in the implementation of the Plan from future collateral attacks related to such actions. Furthermore, the Plan (and the exculpation provision it contains) is supported by the Voting Classes on a unanimous basis.[4]

### C. Assumption and Rejection of Executory Contracts and Unexpired Leases.

24.  I understand that Caribe has not identified any executory contracts or unexpired leases to be assumed under the Plan. I am informed and believe that all unexpired leases and executory contracts have already been rejected. To the extent that any executory contracts or unexpired leases continue to exist, they are no longer necessary to Caribe or its Estate.

### D. Good Cause Exists to Waive Any Stay of the Confirmation Order.

25.  I believe that good cause exists for waiving and eliminating any stay of the entry of the Confirmation Order so that the Confirmation Order will be effective

---

[4] *See Certification of Adam J. Gorman with Respect to the Tabulation of Votes on the Chapter 11 Plan of Liquidation of TSA Caribe, Inc.* at Ex. B.

immediately upon its entry. I believe that Caribe's Chapter 11 Case and the related transactions have been negotiated and implemented in good faith and with a high degree of transparency and cooperation between and among Caribe and its stakeholders. All of the conditions precedent to effectiveness of the Plan set forth in Article XI can be fulfilled or waived in short order after entry of the Confirmation Order, and each day Caribe remains in chapter 11 it incurs significant administrative and professional costs. If the Plan is confirmed and distributions are made in 2017, Caribe anticipates that distributions available to creditors will increase by $250,000 due to certain anticipated savings related to the timing of distributions. Accordingly, I believe that the sooner the Plan becomes effective, the less costs Caribe's Estate will be forced to incur, which is in the best interests of Caribe, its Estate, and Holders of Claims and Equity Interests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 28, 2017

_____
Douglas Garrett