## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TSAWD HOLDINGS, INC., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 3795 & 3856** |

## NOTICE OF FILING OF PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING CHAPTER 11 PLAN OF LIQUIDATION OF TSA CARIBE, INC.

PLEASE TAKE NOTICE THAT Debtor TSA Caribe, Inc. ("Caribe") hereby submits the proposed *Findings of Fact, Conclusions of Law and Order Confirming Chapter 11 Plan of Liquidation of TSA Caribe, Inc.* (the "Proposed Confirmation Order"), which is attached hereto as Exhibit A. Caribe intends to present a form of order substantially similar to the Proposed Confirmation Order at the hearing scheduled for December 5, 2017 at 10:30 a.m. (ET).

*[Signature Page Follows]*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: TSAWD Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); TSAWD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664) (collectively, the "Debtors"). The headquarters for the above-captioned Debtors is located at 2305 East Arapahoe Road, Suite 234, Centennial, Colorado 80122.

Dated:  November 28, 2017
       Wilmington, Delaware

*/s/ Andrew L. Magaziner*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kenos@ycst.com
amagaziner@ycst.com

*Counsel to the Debtors and Debtors in Possession*

-and-

Jeffrey M. Reisner
Michael Strub
Kerri A. Lyman
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Special Counsel to Debtor TSA Caribe, Inc.*

# **EXHIBIT A**

## **Proposed Confirmation Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TSAWD HOLDINGS, INC., *et al.*,[1] | Case No. 16-10527 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. 3856** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING
CHAPTER 11 PLAN OF LIQUIDATION OF TSA CARIBE, INC.**

TSA Caribe Inc. ("Caribe"), one of the above-captioned debtors and debtors in possession, having filed (a) the *Chapter 11 Plan of Liquidation of TSA Caribe, Inc.* [Docket No. 3856] (as modified, amended, or supplemented from time to time in accordance with its terms, the "Plan"),[2] and (b) the documents comprising the Plan Supplement, as filed in substantially final form, and as may be modified, amended, or supplemented prior to the Effective Date [Docket No. 3882]; and this Court having entered that certain *Order: (A) Approving Disclosure Statement of TSA Caribe, Inc.; (B) Fixing Voting Record Date; (C) Approving Solicitation Materials and Procedures for Distribution Thereof; (D) Approving Forms of Ballots and Establishing Procedures for Voting on Plan; (E) Scheduling Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of the Plan; (F) Establishing an Administrative Expense Claim Bar Date; and (G) Granting Related Relief* [Docket No. 3853] (the "Solicitation Procedures Order") establishing, among other things, certain solicitation and voting tabulation procedures

---

[1]         The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  TSA WD Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); TSA WD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664) (collectively, the "TSA Debtors").  The headquarters for the above-captioned Debtors is located at 2305 East Arapahoe Road, Suite 234, Centennial, Colorado 80122.

[2]         Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan, which is attached hereto as Exhibit A.

associated with the Plan; and true and correct copies of the Plan (including the Plan Supplement) being attached hereto collectively as Exhibit A; and this Court having conducted an evidentiary hearing to consider confirmation of the Plan commencing on December 5, 2017 (the "Confirmation Hearing"); and this Court having considered: (a) the declarations (and attached exhibits) offered in support of confirmation, including (i) the *Declaration of Douglas Garrett In Support of Confirmation of Chapter 11 Plan of Liquidation of TSA Caribe, Inc.* [Docket No. 3908] (the "Garrett Declaration"), and (ii) the *Certification of Adam J. Gorman With Respect to the Tabulation of Votes on the Chapter 11 Plan of Liquidation of TSA Caribe, Inc.* [Docket No. 3907] (the "Voting Declaration," and together with the Garrett Declaration, the "Declarations"); (b) the arguments of counsel and all evidence proffered or adduced at the Confirmation Hearing; (c) the objections to confirmation of the Plan to the extent not resolved or withdrawn prior to or at the Confirmation Hearing (collectively, the "Objections"); and (d) the additional filings made by Caribe in support of the Plan, including (i) *TSA Caribe Inc.'s Memorandum of Law In Support of Confirmation of the Chapter 11 Plan of Liquidation of TSA Caribe, Inc.* [Docket No. ____] (the "Confirmation Memorandum"), and (ii) the Plan-related affidavits of service filed by Kurtzman Carson Consultants LLC ("KCC"), Caribe's claims, noticing, balloting, and solicitation agent in Caribe's Chapter 11 Case (collectively, the "KCC Service Affidavits"); and this Court being familiar with the Plan and the relevant facts and circumstances concerning Caribe's Chapter 11 Case; and this Court having taken judicial notice of the entire docket of the TSA Debtors' Chapter 11 Cases, including all pleadings and other documents filed and all orders entered in the Chapter 11 Cases; and this Court having found that due and proper notice has been given with respect to the Confirmation Hearing and the deadlines and procedures for voting on the Plan and asserting objections to

the Plan consistent with the Solicitation Procedures Order; and the appearance of all

interested parties having been duly noted in the record of the Confirmation Hearing; and this

Court having overruled all Objections that were not otherwise resolved or withdrawn; and

upon the record of the Confirmation Hearing, and after due deliberation thereon, and

sufficient cause appearing therefor;

IT IS HEREBY FOUND AND CONCLUDED, that

**A.      Jurisdiction and Venue**

   A.      This Court has jurisdiction over this matter and Caribe's Chapter 11

Case pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and

1409.

   B.      Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), and this Court has jurisdiction to enter a Final Order with respect thereto.

   C.      Caribe is a proper debtor under section 109 of the Bankruptcy Code,

and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

   D.      Each of the conditions precedent to the entry of this Order has been

satisfied or waived in accordance with Article XI of the Plan.

**B.      Standards for Confirmation Under Section 1129 of the Bankruptcy Code**

   E.      The evidentiary record at the Confirmation Hearing, the Declarations,

the contents of the Plan, the KCC Service Affidavits, the Confirmation Memorandum, and

this Court's judicial notice of the complete record of the TSA Debtors' Chapter 11 Cases

support the findings of fact and conclusions of law set forth in the following paragraphs.

   F.      <u>Section 1129(a)(1)</u>.  The Plan complies with each applicable

provision of the Bankruptcy Code.  In particular, the Plan complies with the requirements of

sections 1122 and 1123 of the Bankruptcy Code as follows:

1.      In accordance with section 1122(a) of the Bankruptcy Code,
        (a) Article III of the Plan classifies Claims and Equity Interests into
        five separate Classes reflecting the differing characteristics of those
        Claims and Equity Interests between Classes and the distinct legal
        rights of the Holders of those Claims and Equity Interests in the
        separate Classes; and (b) the Claims and Equity Interests within each
        Class are substantially similar to the other Claims or Equity Interests
        within the same Class.

2.      In accordance with section 1123(a)(1) of the Bankruptcy Code,
        Article III of the Plan properly designates all Claims and Equity
        Interests, if any, that require classification.

3.      In accordance with section 1123(a)(2) of the Bankruptcy Code,
        (a) Article III of the Plan properly identifies and describes that
        Classes 1 and 2 are unimpaired under the Plan, and (b) Article II of
        the Plan properly identifies and describes that any Administrative
        Expense Claim, Fee Claims, or Priority Tax Claims, which are not
        classified under the Plan, also are unimpaired under the Plan.

4.      In accordance with section 1123(a)(3) of the Bankruptcy Code,
        Article III of the Plan properly identifies and describes that Classes 3,
        4 and 5 are impaired under the Plan and specifies the proposed
        treatment for such Classes.

5.      In accordance with section 1123(a)(4) of the Bankruptcy Code,
        Article IV of the Plan provides the same treatment for each Claim or
        Equity Interest within a particular Class unless the Holder of a
        particular Claim or Equity Interest has agreed to a less favorable
        treatment with respect to such Claim or Equity Interest.

6.      In accordance with section 1123(a)(5) of the Bankruptcy Code, the
        Plan provides adequate means for its implementation, including,
        without limitation, (a) sources of consideration for distributions under
        the Plan for Class 3; (b) a source of funding to pay the Administrative
        Claims, Professional Claims, and Priority Tax Claims; (c) the
        formation of the Liquidating Trust to administer the Liquidating Trust
        Assets, resolve Disputed Claims in Class 3, and make distributions to
        Holders of Allowed Claims; (d) the creation of reserves for the
        payment of specified Claims; (e) the cancellation of Caribe's
        obligations under any certificate, share, note, bond, indenture,
        purchase right, or other instrument or document; (f) the wind-down
        and dissolution of Caribe's estate; and (i) the closing of Caribe's
        Chapter 11 Case (see generally Plan Articles V, VI, VII, VIII, IX and
        X).

7.      Section 1123(a)(6) of the Bankruptcy Code is not applicable in this
        case because, pursuant to Section 6.05 of the Plan, the only new share

01:22597777.2

or other ownership interests to be issued pursuant to the Plan is a single share of common stock to the Liquidation Trust.

8.      Section 1123(a)(7) of the Bankruptcy Code is satisfied because, as of the Effective Date, (a) the persons acting as officers and directors of the Caribe have no continuing obligations on or after the Effective Date; (b) the Liquidating Trustee shall have duties imposed under applicable law, in each case, solely with respect to the matters described in, and pursuant to the terms of, the Plan and the Liquidating Trust Agreement; (c) the selection and appointment of the Liquidation Trustee was made in accordance with the Plan and the Liquidation Trust Agreement.

9.      Section 1123(a)(8) of the Bankruptcy Code is not applicable in this case because Caribe is not an "individual."

10.     The following provisions of the Plan comply with the discretionary provisions of section 1123(b) of the Bankruptcy Code: (a) Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Equity Interests; (b) Article IX of the Plan provides that any remaining Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date; (c) Article VII of the Plan establishes procedures for distributions on account of Allowed Claims; (d) Article VIII of the Plan establishes procedures for resolving Disputed Claims; (e) Article X of the Plan contains provisions implementing certain exculpations and injunctions; and (f) Article XII of the Plan provides for the retention of jurisdiction by this Court over certain matters after the Effective Date.

11.     Section 1123(c) of the Bankruptcy Code is not applicable in these cases because Caribe is not an "individual."

12.     In accordance with section 1123(d) of the Bankruptcy Code, no executory contracts or unexpired leases will be assumed.

13.     The Plan is dated and identifies its proponent in accordance with Bankruptcy Rule 3016(a).

G.      Section 1129(a)(2). Caribe has complied with all applicable

provisions of the Bankruptcy Code with respect to the Plan and the solicitation of

acceptances or rejections thereof.  In particular, the Plan complies with the requirements of

sections 1125 and 1126 of the Bankruptcy Code as follows:

1.      In compliance with the Solicitation Procedures Order, on or before October 23, 2017, Caribe, through KCC, caused copies of the following materials to be transmitted to the known Holders of Claims or Equity Interests in Classes that were entitled to vote to accept or reject the Plan (*i.e.*, Classes 3 and 5):

- The notice of the Confirmation Hearing (the "<u>Confirmation Hearing Notice</u>");

- A CD-ROM containing the Disclosure Statement, with the Plan as an exhibit thereto, and the Solicitation Procedures Order; and

- A Ballot customized for each Holder entitled to vote and a postage-prepaid return envelope.

(*See* Affidavit of Service [Docket No. 3881]).

2.      In compliance with the Solicitation Procedures Order, on or before October 23, 2017, Caribe, through KCC, caused copies of the following materials to be transmitted to the known Holders of Claims that were not entitled to vote to accept or reject the Plan (*i.e.*, unclassified Claims and Claims in Classes 1 and 2):

- The Confirmation Hearing Notice (which includes notice of the Confirmation Objection Deadline (as such term is defined in the Confirmation Hearing Notice ) and instructions for how to obtain a copy of the Plan and Disclosure Statement);

- The Notice of Non-Voting Status; and

- The Administrative Expense Claim Bar Date Notice [Docket No. 3858]

(*See* Affidavit of Service [Docket No. 3881]).

3.      In addition, in compliance with the Solicitation Procedures Order, copies of the Solicitation Procedures Order, the Plan, and the Disclosure Statement have been available upon request from Caribe's counsel and, free of charge, at http://www.kccllc.net/sportsauthority (the "<u>KCC Website</u>"), and the foregoing was set forth in the Confirmation Hearing Notice.

4.      On November 9, 2017, Caribe filed the Plan Supplement [Docket No. 3882] and, through KCC, served the Plan Supplement and made the Plan Supplement available on the KCC Website.  (*See* Affidavit of Service [Docket No. 3899]).

5.      The Confirmation Hearing Notice provided due and proper notice of the Confirmation Hearing and all relevant dates, deadlines, procedures and other information relating to the Plan and/or the solicitation of votes thereon, including, without limitation, the Voting Deadline and the Confirmation Objection Deadline (as such terms are defined in the Confirmation Hearing Notice), and the time, date and location of the Confirmation Hearing.

6.      Based on the foregoing and the Solicitation Procedures Order, all persons entitled to receive notice of the Disclosure Statement, the Plan, and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Solicitation Procedures Order, the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

7.      Based on the foregoing, Caribe solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order.

8.      Based upon the procedures approved in the Solicitation Procedures Order, KCC has made a determination regarding the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by Holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims or Equity Interests in Classes 3 and 5 under the Plan.  (*See* Voting Declaration at ¶¶ 13–20.)

9.      Exhibit B to the Voting Declaration sets forth the tabulation of votes and demonstrates that such tabulation was conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order.  (*See* Voting Declaration at Exhibit B.)

H.      <u>Section 1129(a)(3)</u>.  The Plan accomplishes the goals promoted by section 1129(a)(3) of the Bankruptcy Code because it has been proposed by Caribe in good faith and in the belief that the Plan allows creditors to realize the highest possible recoveries under the circumstances of Caribe's Chapter 11 Case.  The Plan is the culmination of extensive good faith, arms' length negotiations between and among Caribe and various case constituencies, including the Creditors' Committee, the United States Trustee and the Term Loan Lenders, and thereby reflects substantial input from the principal constituencies having an interest in Caribe's Chapter 11 Case.  Caribe proposed the Plan with the purpose of

establishing the Liquidation Trust and distributing value to creditors.  In crafting and

negotiating the terms of the Plan, and at all times during Caribe's Chapter 11 Case, Caribe

(a) conducted itself honestly, with good intentions, and (b) upheld its fiduciary duties to

stakeholders.  The Plan enjoys significant support by Caribe's stakeholders, as evidenced by

the result of the votes in Classes 3 and 5, both of which accepted the Plan.  In so finding, this

Court has considered the totality of the circumstances in Caribe's Chapter 11 Case.  In

addition, the support of Caribe's constituencies reflects the overall fairness of the Plan and

supports the finding that the Plan has been proposed in good faith and for proper purposes.

       I.       Finally, as described in greater detail below, the Plan's exculpation

provisions (as modified upon agreement with the United States Trustee) and injunction

provisions are warranted, necessary and appropriate, and are supported by sufficient consent

and consideration under the circumstances of Caribe's Chapter 11 Case as a whole and are

consistent with sections 105, 1123(b)(6), and 1129 of the Bankruptcy Code, as well as

applicable law in this Circuit.

       J.      Section 1129(a)(4).  Article II of the Plan satisfies the requirements of

section 1129(a)(4) of the Bankruptcy Code.  Payments made, or to be made, by Caribe for

services rendered or expenses incurred in connection with Caribe's Chapter 11 Case prior to

the Effective Date will be paid only after allowance of such Claims by this Court to the

extent not previously approved and paid in accordance with existing Orders from this Court.

This Court will retain jurisdiction after the Effective Date with respect to allowance of

Professional Claims and reimbursement of expenses incurred up to and through the

Effective Date in accordance with Article II of the Plan.[3]

K.      Section 1129(a)(5).  Caribe has disclosed the identity, qualifications, and affiliations of the Liquidation Trustee in accordance with section 1129(a)(5) of the Bankruptcy Code.  The governance of the Liquidation Trust is set forth in Article V of the Plan.  The appointment of the Liquidation Trustee is consistent with the interests of creditors and with public policy.

L.      Section 1129(a)(6).  The Plan does not provide for any rate changes by Caribe that would be subject to approval of any governmental regulatory commission.  Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable in Caribe's Chapter 11 Case.

M.      Section 1129(a)(7).  The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code, which is often known as the "best interests test." The Liquidation Analysis (attached to the Disclosure Statement as Exhibit 2), including the methodology used and assumptions made therein, (a) is persuasive and credible as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) is based upon reasonable and sound assumptions; and (d) provides a reasonable estimate of the liquidation value of Caribe's Estate upon a hypothetical conversion of Caribe's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.  Each holder of an impaired Claim or Equity Interest that has not accepted or is deemed not to have accepted the Plan will, on account of such Claim or Equity Interest, receive or retain property under the Plan having a value, as of the Effective

---

[3]          As set forth in the Plan, as part of the agreement reached with the Term Loan Lenders, all Professionals in Caribe's Chapter 11 Case will continue to seek payment for fees incurred and reimbursement for applicable expenses in the TSA Debtors' Chapter 11 Cases consistent with that certain *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 806].

Date, that is not less than the amount that such holder would receive or retain if Caribe was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.  Caribe has demonstrated that the Plan is in the best interests of its creditors.

        N.     <u>Section 1129(a)(8)</u>.  Classes 1 and 2 under Article III of the Plan are presumed to accept the Plan because such Classes are unimpaired.  Pursuant to Section 7.02 of the Plan, Class 4 was deemed to be eliminated for purposes of voting as there were no creditors in such class.  As reflected in the Voting Report, the Plan has been accepted by creditors holding in excess of two-thirds in amount and one-half in number of Claims or Equity Interests that voted in each of Classes 3 and 5.

        O.     <u>Section 1129(a)(9)</u>.  Article II of the Plan provides that, unless a particular Holder has agreed to different treatment of such claim, Holders of an Allowed Administrative Claims, Allowed Priority Tax Claims, and U.S. Trustees Fees will be paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not already paid in full prior to the Effective Date) in full satisfaction of their Claims, in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code.

        P.     <u>Section 1129(a)(10)</u>.  The Plan has been accepted by Classes 3 and 5, which are Impaired Classes.  With regard to Class 3, general unsecured claims, acceptance was obtained without including the acceptance of the Plan by any insider.  Accordingly, there is one impaired accepting Class of Claims, thus satisfying section 1129(a)(10) of the Bankruptcy Code.

        Q.     <u>Section 1129(a)(11)</u>.  The Plan is feasible and complies with section 1129(a)(11) of the Bankruptcy Code.  The evidence proffered or adduced at the Confirmation Hearing establishes that the assets to be transferred to the Liquidation Trust will be sufficient to enable the Liquidation Trustee to perform the duties and functions

outlined under the Plan and to satisfy post-Effective Date obligations.  Furthermore,

reasonable, persuasive, and credible evidence proffered or adduced at or prior to the

Confirmation Hearing establishes that the Plan is feasible.  Finally, because the Plan

contemplates a liquidation, confirmation of the Plan is not likely to be followed by the need

for further financial reorganization.

      R.    <u>Section 1129(a)(12)</u>.  The Plan satisfies the requirements of

section 1129(a)(12) of the Bankruptcy Code.  All U.S. Trustee Fees that are due prior to the

Effective Date shall be paid in full by Caribe or the Liquidation Trust, as applicable, on the

Effective Date or as soon as reasonably practicable thereafter.  From and after the Effective

Date, the Liquidation Trust shall pay all U.S. Trustee Fees in Cash for each quarter

(including any fraction thereof) until Caribe's Chapter 11 Case is closed.

      S.    <u>Section 1129(a)(13)</u>.  Caribe has no "retiree benefits" (as such term is

defined by section 1114(a) of the Bankruptcy Code) so this provision is not applicable in

Caribe's Chapter 11 Case.

      T.    <u>Sections 1129(a)(14), (15), and (16)</u>.  Sections 1129(a)(14),

1129(a)(15), and 1129(a)(16) of the Bankruptcy Code apply to individuals or nonprofit

entities and are inapplicable in Caribe's Chapter 11 Case.

      U.    <u>Section 1129(b)</u>.  All impaired classes have voted to accept the Plan

and Class 4 is deemed to be eliminated as there were no creditors in such class.  However,

even if Class 4 was determined to reject the Plan, the plan is "fair and equitable" under

section 1129(b) of the Bankruptcy Code because (a) no class of Claims or Equity Interests of

similar legal rights is receiving different treatment under the Plan, and (b) there are no

Holders of Claims or Equity Interests that are junior to Class 4 that will receive any recovery

under the Plan on account of such junior Claims or Equity Interests.  Accordingly, the Plan

does not violate the absolute priority rule, does not unfairly discriminate, and is fair and equitable with respect to Class 4.  The Plan satisfies section 1129(b) of the Bankruptcy Code and may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied.  Upon entry of this Order and the occurrence of the Effective Date, the Plan shall be binding upon all Holders of Claims and Equity Interests, regardless of whether they accepted or rejected the Plan, or whether they are presumed to accept or deemed to reject the Plan.

V.    Section 1129(c).  The Plan is the only plan on file in Caribe's Chapter 11 Case, and it is the only plan that has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

W.    Section 1129(d).  No party in interest, including, but not limited to, any Governmental Unit, has requested that this Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is "the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933," and the principal purpose of the Plan is not such avoidance.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

X.    Section 1129(e).  Section 1129(e) of the Bankruptcy Code is not applicable because Caribe's Chapter 11 Case is not a "small business case".

C.    **Additional Findings of Fact**

Y.    Implementation Activities.  The various means for implementation of the Plan (collectively, the "Implementation Activities") have been designed and proposed in good faith.  The Implementation Activities are adequate and will promote the maximization of the value of the ultimate recoveries under the Plan in a fair and equitable manner in

accordance with the priorities established by the Bankruptcy Code.  The Implementation Activities are not intended to hinder, delay or defraud any entity to which Caribe is indebted on the Effective Date.

Z.    Executory Contracts and Unexpired Leases.  Caribe has exercised reasonable business judgment in determining to reject each of its Executory Contracts and Unexpired Leases as set forth in Article IX of the Plan or otherwise, and in this Order.  The assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases pursuant to this Order and in accordance with Article IX of the Plan is in the best interests of Caribe, its Estate, Holders of Claims and Equity Interests, and other parties in interest.  Caribe satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases under the Plan.  Caribe has established that no Executory Contracts or Unexpired Leases would be assumed under the Plan in compliance with Article IX of the Plan.

AA.    Exculpation and Injunction Provisions Generally.  This Court finds that, pursuant to section 1123(b) of the Bankruptcy Code, Bankruptcy Rule 3016, and applicable authority, the exculpation provisions of the Plan, as modified by this Order in agreement with the United States Trustee, and injunction provisions of the Plan are warranted, necessary and appropriate and are supported by sufficient consent and consideration under the circumstances of the Plan and Caribe's Chapter 11 Case as a whole. Proper, timely, adequate, and sufficient notice of the exculpation and injunction provisions, including those contained in Article X of the Plan, has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the orders of this Court, and due process. Interested parties have had a sufficient and adequate opportunity to object to such provisions

and to be heard as to their objections, and no further notice of such provisions is required for

entry of this Order.  The exculpation provisions of the Plan, as modified herein, and

injunction provisions set forth in the Plan and this Order: (a) are within the jurisdiction of

this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) comprise an integral

element of the Plan; (c) confer material benefit on, and are in the best interests of, Caribe, its

Estate, and Holders of Claims and Equity Interests; (d) are important to the objective of the

Plan to resolve all Claims and Equity Interests; and (e) are consistent with sections 105,

1123, and 1129 and other applicable provisions of the Bankruptcy Code and any other

applicable laws.

BB.    Settlements Contained in Plan.  This Court finds that the settlement

with the Term Loan Lenders contained in the Plan, set forth in Sections 2.03 and 11.06

thereof, is reasonable and appropriate under the circumstances and satisfies sections 363 and

1123 of the Bankruptcy Code, as well as Bankruptcy Rule 9019, as outlined by the U.S.

Court of Appeals for the Third Circuit in *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d

Cir. 1996).

CC.    Stay Waiver.  This Court finds that, in order to permit Caribe and the

Liquidation Trustee to commence their duties as quickly as practicable, to promote prompt

distributions under the Plan for the benefit of creditors, and because a significant number of

Implementation Activities are capable of being undertaken in short order, good cause exists

to support the waiver of the stay imposed by Bankruptcy Rule 3020(e).

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND

DECREED, AS FOLLOWS:

**A.      Resolution of the Objections**

1.      Any and all objections or responses to final approval of the Plan,

including the Objections, that have not been withdrawn, waived or resolved by the terms of

this Order, agreement of the parties, or otherwise are hereby OVERRULED in their entirety

and on their merits, and all withdrawn, waived or resolved objections or other objections or

responses are hereby deemed withdrawn with prejudice.

**B.      Confirmation of the Plan**

2.      The Plan and each of its provisions, all documents and agreements

necessary for its implementation, including, without limitation, those contained in the Plan

Supplement, which are hereby collectively incorporated into this Order in all respects, are

hereby APPROVED and CONFIRMED pursuant to section 1129 of the Bankruptcy Code.

3.      The Effective Date of the Plan shall occur on the date determined by

Caribe when the conditions set forth in Article XI of the Plan have been satisfied or, if

applicable, waived in accordance with the Plan.

**C.      Plan and Confirmation Order Controls**

4.      Without intending to modify any prior Order of this Court (or any

agreement, instrument or document addressed by any prior Order), in the event of an

inconsistency between the Plan, on the one hand, and any other agreement, instrument, or

document intended to implement the provisions of the Plan, on the other, the provisions of

the Plan shall govern (unless otherwise expressly provided for in the Plan or such

agreement, instrument, or document).

5.      The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each other; provided, however, that if there is any direct conflict between the Plan, the Plan Supplement, the exhibits and addenda thereto (including the terms of the Plan, the Plan Supplement, and the exhibits and addenda therein) and the terms of this Order, the terms of this Order shall control.

**D.      Findings of Fact and Conclusions of Law**

6.      The findings of fact and conclusions of law stated in this Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to Caribe's Chapter 11 Case by Bankruptcy Rule 9014.  Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.  Further, any findings of fact and conclusions of law announced on the record in open court at the Confirmation Hearing are incorporated by reference herein.

**E.      Record Closed**

7.      The record of the Confirmation Hearing is now closed.

**F.      Notice**

8.      Good and sufficient notice has been provided of (a) the Confirmation Hearing; (b) the deadline for filing and serving objections to the confirmation of the Plan; and (c) the settlements, exculpations, injunctions, and related provisions of the Plan.  No other or further notice is required.

**G.      Plan Modifications**

9.      The modifications to the Plan described in the Confirmation Memorandum, including those memorialized in this Order, meet the requirements of

section 1127 of the Bankruptcy Code.  Such modifications do not result in a material

adverse change in the treatment of any Claim or Equity Interest within the meaning of

Bankruptcy Rule 3019 and, accordingly, no further solicitation of votes or voting is

required.

**H.      Plan Classification Controlling**

10.      The terms of the Plan alone shall govern the classification of Claims

and Equity Interests for purposes of distributions to be made thereunder.  The classifications

set forth on the Ballots tendered to or returned by Caribe's creditors in connection with

voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or

reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify

or otherwise affect, the actual classification of such Claims or Equity Interests under the

Plan for distribution purposes; (c) should not be relied upon by any Holder of Claims or

Equity Interests as representing the actual classification of such Claims or Equity Interests

under the Plan for distribution purposes; and (d) shall not bind Caribe or the Liquidation

Trust.

**I.      Approval of Settlement**

11.      Pursuant to sections 363 and 1123 of the Bankruptcy Code and

Bankruptcy Rule 9019, the compromise and settlement of all claims or controversies relating

to the rights that a Holder of a Claim or Equity Interest may have with respect to any such

Claim or Equity Interest, or any distribution to be made pursuant to the Plan on account of

any Claim, if Allowed, including, without limitation, as set forth in Sections 2.03 and 11.06

of the Plan, are approved in all respects.

**J.      Modification of Exculpation Provisions**

12.      Upon agreement with the United States Trustee, Section 10.06 of the Plan is replaced in its entirety with the following provision: "None of the Debtor, the TSA Debtors, and the TSA Debtors' officers and directors that served during the pendency of the case, the Committee, the Committee's members, and all professionals retained in the TSA Debtors' bankruptcy cases, and all other estate fiduciaries who, for purposes of this section 10.06, shall include employees of the TSA Debtors who materially assisted during the Debtor's chapter 11 case, shall be deemed to be estate fiduciaries (collectively, the "Exculpated Parties") shall have or incur any liability to any holder of any Claim against or Equity Interest in the Debtor for any act or omission on or after the Petition Date and on or before the Effective Date in connection with, related to, or arising out of the Chapter 11 Case, the transfer of the Debtor's Assets to the Liquidation Trust, the negotiation and execution of this Plan, the Disclosure Statement, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan, and the property to be distributed under this Plan on or before the Effective Date, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all postpetition activities leading to the promulgation and confirmation of this Plan except in case of fraud, willful misconduct, intentional misconduct or gross negligence by such Exculpated Party as determined by a Final Order.  Nothing in this Section 10.06 shall: (i) be construed as a release of any Claims against the Debtor's officers or directors for events occurring prior to the Petition Date; (ii) be construed as a release of any entity's fraud, gross negligence, intentional misconduct or willful misconduct with respect to matters set forth in this Section 10.06; (iii) limit the liability of attorneys for the Debtor or the Creditors' Committee to their respective clients

pursuant to DR 6-102 of the Code of Professional Responsibility; or (iv) be construed as a release or waiver of the Exculpated Parties' right or ability to assert or raise certain claims against any party as defense to a claim or suit brought against them by such party."

**K.      Approval of Modified Exculpation Provisions and Injunctions**

13.      The exculpation provisions, as modified above, injunctions, and reservations set forth in Article X of the Plan are approved and authorized in all respects, are incorporated herein in their entirety, are so ordered, and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of this Court, any of the parties to covenants not to sue, exculpation provisions, injunctions, or any other party.

14.      All injunctions or stays in effect in Caribe's Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any Order of this Court then existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Order) shall remain in full force and effect to the maximum extent permitted by law.  All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

**L.      Binding Effect; Successors and Assigns**

15.      Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and this Order shall be immediately effective and enforceable and deemed binding upon Caribe, its Estate, the Liquidation Trustee, and any and all Holders of Claims or Equity Interests (regardless of whether such Claims or Equity Interests are deemed to have accepted or rejected the Plan), all Persons or Entities that are parties to or are subject to the settlements, compromises, and injunctions described in the Plan, each Person or Entity acquiring property under the Plan or this Order, and any and all

non-Debtor parties to Executory Contracts and Unexpired Leases with Caribe. The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan or this Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Person or Entity.

**M.      Exemption From Taxation**

16.      To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with, the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in Caribe; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**N.      Exemption from Registration**

17.      The beneficial interests in the Liquidating Trust (Plan Article VII) under the Plan are not intended to be 'securities' under applicable law, but if such rights

constitute securities, such securities shall be exempt from registration pursuant to section

1145 of the Bankruptcy Code, as amended, and by other applicable state and local laws

requiring registration of securities.

**O.      Matters Concerning Contracts and Leases**

18.      The Executory Contract and Unexpired Lease provisions of Article IX

of the Plan, including, without limitation, the deemed rejection of Executory Contracts and

Unexpired Leases pursuant to Article IX of the Plan, are specifically approved in all

respects, are incorporated herein in their entirety, and are so ordered.

19.      This Order shall constitute an order of this Court, pursuant to

section 365 of the Bankruptcy Code, as of and conditioned on the occurrence of the

Effective Date, approving the rejection of any remaining Executory Contracts and

Unexpired Leases in accordance with Article IX of the Plan.  All Allowed Claims arising

from the rejection of Caribe's prepetition Executory Contracts or prepetition Unexpired

Leases shall be classified as General Unsecured Claims in Class 3 against Caribe except as

otherwise provided by an Order of this Court.  Unless otherwise provided by an Order of

this Court, any Proofs of Claim based on the rejection of Caribe's Executory Contracts or

Unexpired Leases pursuant to the Plan (as opposed to a prior order in which such event the

Bar Date applicable to such rejection shall apply) must be Filed with the Claims and

Noticing Agent and served on Caribe or the Liquidating Trust, as applicable, no later than

December 15, 2017.

20.      Subject to 11 U.S.C. § 502, any Holders of Claims arising from the

rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims are not

timely Filed as set forth herein shall not (a) be treated as a creditor with respect to such

Claim or (b) participate in any distribution in Caribe's Chapter 11 Case on account of such Claim.

21.     Nothing in this Order or the Plan shall impair the obligations of Caribe to Dick's Sporting Goods, Inc. ("DSG") in respect of (i) that certain Asset Purchase Agreement, dated as of July 20, 2016, among DSG, Caribe and the other TSA Debtors (as amended, supplemented or otherwise modified from time to time) or (ii) that certain Intellectual Property Asset Purchase Agreement, dated as of July 20, 2016, among DSG, Caribe and the other TSA Debtors (as amended, supplemented or otherwise modified from time to time), the entry by Caribe into each of which and performance by Caribe under each of which was previously approved by this Court.

**P.     Resolution of Disputed Claims**

22.     The provisions of Article VIII of the Plan regarding the procedures for resolving Disputed Claims and Equity Interests shall govern and are fair and reasonable, specifically approved in all respects, are incorporated herein in their entirety, and are so ordered.

23.     Except as expressly provided in the Plan or in any order entered in Caribe's Chapter 11 Case prior to the Effective Date (including this Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or this Court has entered a Final Order, including this Order, in Caribe's Chapter 11 Case allowing such Claim or Equity Interest.

24.     Prior to the Effective Date, Caribe, and on or after the Effective Date, the Liquidation Trust, will have (i) the authority to File, withdraw, or litigate to judgment, objections to Claims or Equity Interests; and (ii) the exclusive authority to settle or

compromise (or decline to do any of the foregoing) any Disputed Claim or Cause of Action without any further notice to or action, order, or approval by this Court; and (iii) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by this Court.

25.     All objections to Administrative Expense Claims and Claims shall be filed within 180 days after the Effective Date (the "Claims Objection Deadline").  The Claims Objection Deadline may be extended upon a motion filed with this Court by the Liquidating Trustee.

26.     On and after the Effective Date, the Liquidation Trust may, at any time, estimate any Disputed Claim pursuant to applicable law, in accordance with Section 7.12 of the Plan.

**Q.     Liquidating Trust Distributions**

27.     The provisions of Article VII of the Plan regarding distributions from the Liquidation Trust, which are fair and reasonable, shall govern, are specifically approved in all respects, are incorporated herein, and are so ordered.

**R.     Certain Additional Matters Concerning Claims**

28.     Supplemental Administrative Claims Bar Date.  Holders of Administrative Claims (other than Holders of Administrative Claims paid in the ordinary course of business, Holders of Claims arising under 28 U.S.C. § 1930, and Holders of Claims arising under section 503(b)(1)(D) of the Bankruptcy Code) that first arose (or, only in the case of unexpired leases of real and personal property, accrued) as to or against Caribe on or after November 1, 2017, but prior to December 5, 2017, must File and serve on Caribe or the Liquidating Trust, as applicable, requests for the payment of such Administrative Claims not already Allowed by Final Order no later than December 15, 2017, or the Holders

of such Administrative Claims will not be permitted to receive payment or participate in any distribution under the Plan on account of such Administrative Claims.  Caribe shall serve a notice of the Supplemental Administrative Claims Bar Date within two (2) days after the conclusion of the Confirmation Hearing.  Objections to requests for payment of such Administrative Claims must be Filed and served on Caribe or the Liquidating Trust, as applicable, and the requesting party within twenty (20) days after the Filing of the applicable request.

29.     <u>Professional Compensation</u>.  All Fee Claims of Professionals will continue to be paid through the Wind-Down Budget established in the Chapter 11 Cases of the TSA Debtors.

30.     <u>Post-Effective Date Fees and Expenses</u>.  Except as otherwise specifically provided in the Plan, the Liquidation Trust shall pay in Cash the legal, professional, or other fees and expenses incurred by its respective professionals from and after the Effective Date, in the ordinary course of business and without any further notice to or action, order or approval of this Court.  Upon the Effective Date, professionals may be employed by, or remain employed by, the Liquidation Trust and fees incurred by such professionals shall be paid in the ordinary course of business without any further notice to or action, order, or approval of this Court from the Liquidating Trust Assets.

31.     <u>28 U.S.C. § 1930 Fees</u>.  On the Effective Date or as soon as practicable thereafter, the Liquidation Trust shall pay all U.S. Trustee Fees that are due and owing as of the Effective Date.  Nothing in the Plan shall release the Liquidating Trust from its obligation to pay all U.S. Trustee Fees arising from and after the Effective Date before a Final Order is entered by this Court concluding or closing Caribe's Chapter 11 Case.

32.     <u>Distribution Reserve</u>.  The provisions of Section 5.05(g) of the Plan regarding the establishment and maintenance of the LT Reserve, which are fair and reasonable, shall govern, are specifically approved in all respects, are incorporated herein, and are so ordered.

**S.     Matters Concerning Plan Implementation**

33.     <u>Transfer of Assets to Liquidating Trust Free And Clear</u>.  Pursuant to Section 10.02 of the Plan and the terms of this Order, as of the Effective Date Caribe is deemed to transfer, grant, assign, convey, set over, and deliver to the Liquidation Trust all of Caribe's and the Estate's right, title and interest in and to all of the Caribe's assets, which transfer shall be free and clear of any and all Liens, Claims, encumbrances and interests (legal, beneficial or otherwise) of all other Persons and Entities, other than any defenses and other rights of potential defendants (including any rights to set off) with respect to Causes of Action.

34.     All state and local property, recording, or similar offices shall accept this Order as valid and sufficient proof of any transfer, grant, assignment, conveyance, set over, or delivery described in the preceding paragraphs.

35.     <u>Appointment of Liquidation Trustee</u>.  Douglas Garrett is hereby appointed to serve as the initial Liquidation Trustee, on the terms set forth in this Order, Section 1.57 of the Plan, and the Liquidation Trust Agreement, respectively.

36.     <u>Termination of Officers; Directors; Employees</u>.  On the Effective Date, the persons acting as directors, managers, officers, and employees of Caribe shall be deemed to have resigned.  From and after the Effective Date, the Liquidation Trustee shall have the duties imposed under the Liquidating Trust Agreement, solely with respect to the matters described in, and pursuant to the terms of, the Plan and the Liquidation Trust

Agreement (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).

37.   <u>Privileges</u>.  The provisions of Section 5.05(b) of the Plan governing any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity with respect to the Liquidation Trust Assets, are specifically approved in all respects, are incorporated herein, and are so ordered.

38.   <u>Post-Effective Date Reports</u>.  After the Effective Date and until Caribe's Chapter 11 Case is closed, the filing of the final monthly report(s) and any subsequent quarterly reports required under the U.S. Trustee guidelines shall be the responsibility of the Liquidation Trust.

39.   <u>Wind Down</u>.  The Liquidation Trust shall have the duty, power, and authority to take any action necessary to wind down and dissolve Caribe.  Any expenses and costs incurred by the Liquidation Trust in connection with the wind down and dissolution activities described in the preceding sentence shall be paid solely from the Liquidation Trust Assets.

**T.   Corporate Action**

40.   Except as otherwise provided in the Plan, the corporate or related actions to be taken by or required of Caribe in connection with each matter provided for by the Plan shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan, and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Equity Interests, directors of Caribe, or any other Entity.  On or prior to the Effective Date, the appropriate officers of Caribe shall be authorized and directed to issue, execute, and deliver the agreements, securities, instruments, or other documents

contemplated by the Plan, or necessary or desirable to effect the transactions contemplated by the Plan, in the name of and on behalf of Caribe.  Notwithstanding any requirements under non-bankruptcy law, the authorizations and approvals contemplated by this provision shall be effective.

41.     On the Effective Date, upon the appointment of the Liquidation Trustee, the persons acting as directors, officers and employees of Caribe prior to the Effective Date, as the case may be, shall have no further authority, duties, responsibilities, and obligations relating to or arising from (a) operating Caribe or (b) Caribe's Chapter 11 Case, except as set forth in the Plan.

**U.     Cancellation and Surrender of Instruments, Securities and Other Documentation**

42.     Except for purposes of evidencing a right to distributions under the Plan, on the Effective Date, all documents, agreements or instruments evidencing a Claim against or Equity Interest in Caribe and the obligations of Caribe under such documents, agreements, or instruments evidencing such Claims and Equity Interests, shall be discharged and neither Caribe nor the Liquidation Trustee shall have any liability with respect thereto except as set forth in the Plan.

**V.     Immediately Effective Order**

43.     The stay of this Order imposed by Bankruptcy Rule 3020(e) is hereby waived in accordance with Bankruptcy Rule 3020(e), and this Order shall be effective and enforceable immediately upon entry.

**W.     Final Order**

44.     This Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

## X.    Reference to Plan Provisions

45.    The failure to include or reference specific evidence or particular sections or provisions of the Plan or any related agreement in this Order shall not diminish or impair the effectiveness of, or otherwise affect the validity, binding effect and enforceability of, such sections or provisions, it being the intent of this Court that the Plan be confirmed and such related agreements be approved in their entirety.

## Y.    Headings

46.    Headings utilized herein are for convenience and reference only, and shall not constitute a part of the Plan or this Order for any other purpose.

## Z.    Reversal

47.    If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent Order of this Court or any other court, such reversal, modification or *vacatur* shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Liquidation Trustee's receipt of written notice of such order.  Notwithstanding any such reversal, modification or *vacatur* of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or *vacatur* shall be governed in all respects by the provisions of this Order and the Plan and all related documents or any amendments or modifications thereto.

## AA.    Authorization to Consummate

48.    Caribe is authorized to consummate the Plan on any Business Day on or after the Confirmation Date on which (a) no stay of this Order is in effect, and (b) the conditions to the effectiveness of the Plan specified in Article XI of the Plan have been satisfied, or, if capable of being waived, waived in accordance with the terms of the Plan.

**BB.**    **Automatic Stay**

49.    The automatic stay imposed under section 362 of the Bankruptcy

Code is hereby modified solely to the extent necessary to implement the Plan.

**CC.**    **Notice of Confirmation of the Plan and Effective Date**

50.    Promptly following the occurrence of the Effective Date, pursuant to

Bankruptcy Rules 2002(f)(7) and 3020(c)(2), Caribe or the Liquidating Trust, as applicable,

shall serve a notice of the entry of this Order, the establishment hereunder of bar dates for

certain Claims, and the occurrence of the Effective Date on all parties that received notice of

the Confirmation Hearing.  Caribe or the Liquidating Trust, as applicable, are also directed

to make copies of this Order and any notice of the Effective Date available on the KCC

Website.  Compliance with this provision of this Order shall constitute good and sufficient

notice under the particular circumstances and in accordance with the requirements of

Bankruptcy Rules 2002 and 3020 and no other or further notice of Confirmation or the

occurrence of the Effective Date is necessary.

**DD.**    **Effect of Non-Occurrence of Conditions to Effective Date**

51.    If the Effective Date does not occur, the Plan shall be null and void in

all respects and nothing contained in the Plan or the Disclosure Statement shall:

(a) constitute a waiver or release of any claims by or Claims against or Equity Interests in

Caribe; (b) prejudice in any manner the rights of Caribe, the Estate, any Holders, or any

other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by

Caribe, the Estate, any Holders, or any other Entity in any respect.

**EE.**    **Modifications or Amendments to the Plan, Plan Supplement, and Ancillary Documents**

52.    Notwithstanding anything to the contrary in the Plan or this Order,

subject to the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy

Rule 3019 and those restrictions on modifications set forth in the Plan, Caribe is authorized

to alter, amend, or modify the Plan one or more times, after Confirmation in accordance

with Section 13.08 of the Plan, provided, however, that such alterations, amendments or

modifications are filed with this Court.  A Holder of a Claim or Equity Interest that has

accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified,

or supplemented, if the proposed alteration, amendment, modification, or supplement does

not materially and adversely change the treatment of the Claim or Equity Interest of such

Holder.

**FF.      Retention of Jurisdiction**

53.      Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and

notwithstanding entry of this Order and the occurrence of the Effective Date, as provided in

Article XII of the Plan, this Court shall retain jurisdiction as provided in the Plan over all

matters arising out of, or related to, Caribe's Chapter 11 Case, Caribe, the Liquidation Trust,

and the Plan, to the fullest extent permitted by applicable laws.

**GG.    Closing Caribe's Chapter 11 Case**

54.      The Liquidation Trustee shall seek authority from this Court to close

Caribe's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy

Rules.  For the avoidance of doubt, Caribe's Chapter 11 Case may be closed prior to

termination of the Liquidation Trust or the resolution of any Disputed Claims.

**HH.     Miscellaneous**

      55.    NOTWITHSTANDING anything to the contrary in the Plan or this Order, nothing set forth herein shall grant or be deemed to grant Caribe with a discharge pursuant to 11 U.S.C. § 1141(d).

Dated:    December \_\_\_, 2017
           Wilmington, Delaware

                                        _____
                                        MARY F. WALRATH
                                        UNITED STATES BANKRUPTCY JUDGE