**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TSAWD HOLDINGS, INC., et al.,[1] | Case No. 16-10527 (MFW) |
| Debtors. | (Jointly Administered) |

**TSA CARIBE INC.'S MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE CHAPTER 11 PLAN OF LIQUIDATION OF TSA CARIBE, INC.**

Dated: November 28, 2017
Wilmington, Delaware

IRELL & MANELLA LLP
Jeffrey M. Reisner (Pro Hac Vice)
Michael Strub, Jr. (Pro Hac Vice)
Kerri Lyman (Pro Hac Vice)
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200

*Special Counsel to Debtors TSAWD Holdings, Inc., TSA Ponce, Inc., and TSA Caribe, Inc.*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Michael R. Nestor (No. 3526)
Andrew L. Magaziner (No. 5426)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the TSA Debtors*

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: TSAWD Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); TSAWD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664) (collectively, the "TSA Debtors"). The headquarters for the above-captioned TSA Debtors is located at 2305 East Arapahoe Road, Suite 234, Centennial, CO 80122.

The TSA Debtors were formerly known as: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings, Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..... 1

II. PROCEDURAL HISTORY ..... 3

III. VOTING RESULTS ..... 5

IV. PLAN MODIFICATIONS ..... 7

V. ARGUMENT ..... 9

A. The Plan Satisfies Each Requirement for Confirmation. ..... 9

1. The Plan Complies with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1)). ..... 9

(a) The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code. ..... 10

(b) The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code. ..... 12

(i) The Plan Specifies Designation of Classes of Claims and Equity Interests (Section 1123(a)(1)). ..... 12

(ii) The Plan Specifies Classes That Are Not Impaired by the Plan (Section 1123(a)(2)). ..... 12

(iii) The Plan Specifies Treatment of Classes That Are Impaired by the Plan (Section 1123(a)(3)). ..... 13

(iv) The Plan Provides Equal Treatment Within Each Class (Section 1123(a)(4)). ..... 13

(v) The Plan Provides Adequate Means for Implementation (Section 1123(a)(5)). ..... 14

(vi) Section 1123(a)(6) is Inapplicable. ..... 14

(vii) Section 1123(a)(7) ..... 15

(viii) Section 1123(a)(8) is Inapplicable. ..... 15

(c) The Plan Satisfies Section 1123(b) of the Bankruptcy Code. 15

**Page**

(d) Section 1123(c) is Inapplicable. 16

(e) The Plan satisfies Section 1123(d) of the Bankruptcy Code. 16

2. Caribe has Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)). 17

(a) Caribe has Complied with the Disclosure and Solicitation Requirements of Section 1125. 17

(b) Caribe Has Satisfied the Plan Acceptance Requirements of Section 1126. 19

3. The Plan Has Been Proposed in Good Faith and Not By Any Means Forbidden by Law (Section 1129(a)(3)). 20

4. The Plan Provides for Court Approval of Certain Administrative Payments (Section 1129(a)(4)). 21

5. The Name of the Liquidation Trustee Was Disclosed Before the Effective Date and His Appointment is Consistent with Public Policy (Section 1129(a)(5)). 22

6. The Plan Does Not Require Governmental Approval of Rate Changes (Section 1129(a)(6)). 23

7. The Plan Is in the Best Interests of Creditors and Equity Interest Holders (Section 1129(a)(7)). 23

8. The Plan Can Be Confirmed Notwithstanding the Requirements of Section 1129(a)(8). 25

9. The Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Section 1129(a)(9)). 26

10. At Least One Impaired Class of Claims Has Accepted the Plan, Excluding the Acceptances of Insiders (Section 1129(a)(10)). 26

11. The Plan is Feasible (Section 1129(a)(11)). 27

12. The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)). 28

13. Section 1129(a)(13) is Inapplicable. 28

14. Sections 1129(a)(14)–(a)(16) are Inapplicable. 29

**Page**


15. The Plan Complies with the Other Provisions of Section 1129 of the Bankruptcy Code (Section 1129(c)-(e)). ..................................... 29

B. The Plan Satisfies the "Cramdown" Requirements of Section 1129(b) of the Bankruptcy Code. ..................................... 30

1. All Impaired Classes Have Accepted the Plan so Cramdown Is Unnecessary. ..................................... 30

2. All Impaired Classes Have Voted to Accept the Plan, so the Plan Does Not Unfairly Discriminate With Respect to Impaired Classes that Have Not Voted (Section 1129(b)(1)). ..................................... 30

3. No Classes Have Rejected the Plan, so the Plan Is Fair and Equitable (Section 1129(b)(2)). ..................................... 32

C. The Discretionary Contents of the Plan Are Appropriate and Should Be Approved under 1123(b). ..................................... 32

1. The Settlement with the Term Loan Lenders Is Fair and Equitable and Should Be Approved. ..................................... 33

2. The Exculpation Provisions Are Appropriate and Should Be Approved. ..................................... 34

3. The Plan Complies with Section 1123(d) of the Bankruptcy Code. ..................................... 36

4. Cause Exists to Waive the Stay of the Confirmation Order. ..................................... 37

VI. CONCLUSION ..................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999) .......... 23

*Bank of Am.*,
526 U.S. 434 (1999) .......... 30

*In re 203 N. LaSalle St. Ltd. P'ship.*,
190 B.R. 567 (Bankr. N.D. Ill. 1995), rev'd on other grounds .......... 30

*In re Am. Capital Equip., LLC*,
688 F.3d 145 (3d Cir. 2012) .......... 26

*In re Am. Family Enters.*,
256 B.R. 377 (D.N.J. 2000) .......... 20

*In re Amicus Wind Down Corp.* (*f/k/a Friendly Ice Cream Corp.*),
Case No. 11-13167 (KG) (Bankr. D. Del. June 4, 2012) [ECF No. 1110] .......... 37

*In re Appleseed's Intermediate Holdings LLC*,
Case No. 11-10160 (KG) (Bankr. D. Del. Apr. 14, 2011) [ECF No. 649] .......... 37

*In re Armstrong World Indus., Inc.*,
348 B.R. 111 (Bankr. D. Del. 2006) .......... 9

*In re Aztec Co.*,
107 B.R. 585 (Bankr. M.D. Tenn. 1989) .......... 30, 31

*In re Bowles*,
48 B.R. 502 (Bankr. E.D. Va. 1985) .......... 30

*In re Coram Healthcare Corp.*,
271 B.R. 228 (Bankr. D. Del. 2001) .......... 20, 32

*In re Dex One Corp.*,
Case No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013) [ECF No. 192] .......... 37

*In re Drexel Burnham Lambert Grp., Inc.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992) .......... 10

*In re Exaeris Inc.*,
380 B.R. 741 (Bankr. D. Del. 2008) .......... 33

01:22598105.2

**Page(s)**

*In re First Interregional Equity Corp.*,
218 B.R. 731 (Bankr. D.N.J. 1997) ........................................................................ 10

*In re Freymiller Trucking, Inc.*,
190 B.R. 913 (Bankr. W.D. Okla. 1996) ............................................................... 30

*In re Greate Bay Hotel & Casino, Inc.*,
251 B.R. 213 (Bankr. D.N.J. 2000) ........................................................................ 30

*In re Jersey City Med. Ctr.*,
817 F.2d 1055 (3d Cir. 1987)..................................................................................... 10

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988)................... 30

*In re Lapworth*,
No. 97-34529 (DWS), 1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998)................ 16

*In re Local Insight Media Holdings, Inc.*,
Case No. 10-13677 (KG) (Bankr. D. Del. Nov. 3, 2011) [ECF No. 1037] ............... 37

*In re Magnatrax Corp.*,
No. 03-11402 (PJW), 2003 WL 22807541 (Bankr. D. Del. Nov. 17, 2003)............. 10

*In re Majestic Star Casino, LLC*,
Case No. 09-14136 (KG) (Bankr. D. Del. Mar. 10, 2011) [ECF No. 1059] ............. 37

*In re Nutritional Sourcing Corp.*,
398 B.R. 816 (Bankr. D. Del. 2008) ........................................................................ 10

*In re PWS Holding*,
228 F.3d 224 (3d Cir. 2000)................................................................................. 19, 34

*In re S&W Enter.*,
37 B.R. 153 (Bankr. N.D. Ill. 1984) ........................................................................ 10

*In re Signal Int'l, Inc.*,
Case No. 15-11498 (MFW) (Bankr. D. Del. Nov. 24, 2015) [ECF No. 555] ........... 34

*In re Smith*,
357 B.R. 60 (Bankr. M.D.N.C. 2006), appeal dismissed, No. 1:07CV30, 2007 WL 1087575 (M.D.N.C. Apr. 4, 2007) ................................................................... 23

*In re Sound Radio, Inc.*,
93 B.R. 849 (Bankr. D.N.J. 1988) ........................................................................... 20

**Page(s)**

*In re W.R. Grace & Co.*,
475 B.R. 34 (D. Del. 2012) .......... 20, 26

*In re Washington Mut., Inc.*,
442 B.R. 314 (Bankr. D. Del. 2011) .......... 33, 34

*In re World Health Alts., Inc.*,
344 B.R. 291 (Bankr. D. Del. 2006). .......... 33

*In re Worldcom, Inc.*,
No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) .......... 16

*In re Zenith Elecs. Corp.*,
241 B.R. 92 (Bankr. D. Del. 1999) .......... 29

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
987 F.2d 154 (3d Cir. 1993) .......... 10

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship* (*In re Ambanc La Mesa Ltd. P'ship*),
115 F.3d 650 (9th Cir. 1997) .......... 30

*Mercury Capital Corp. v. Milford Conn. Assocs., L.P.*,
354 B.R. 1 (D. Conn. 2006) .......... 27

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*
25 F.3d 1132 (2d Cir. 1994) .......... 17

*Myers v. Martin* (*In re Martin*),
91 F.3d 389 (3d Cir. 1996) .......... 32

*NMSBPCSLDHB v. Integrated Telecom Express, Inc.* (*In re Integrated Telecom Express, Inc.*),
384 F.3d 108 (3d Cir. 2004) .......... 19

*Pizza of Haw., Inc. v. Shakey's, Inc.* (*In re Pizza of Haw., Inc.*),
761 F.2d 1374 (9th Cir. 1985) .......... 27

**Statutes**

11 U.S.C. § 1107 .......... 3

11 U.S.C. § 1108 .......... 3

11 U.S.C. § 1122 .......... 9

11 U.S.C. § 1123 .......... passim

**Page(s)**

11 U.S.C. § 1125 .......... 9, 16, 17, 18

11 U.S.C. § 1126 .......... 9, 16, 17, 18

11 U.S.C. § 1127 .......... 7

11 U.S.C. § 1129 .......... passim

**Rules**

Fed. R. Bankr. P. 3020 .......... 37

Fed. R. Bankr. P. 3019 .......... 8

Fed. R. Bankr. P. 3018 .......... 17

Fed. R. Bankr. P. 3017 .......... 17

Fed. R. Bankr. P. 3016 .......... 35

Fed. R. Bankr. P. 1015 .......... 3

**Legislative History**

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977) .......... 10, 17

S. Rep. No. 95-989, 95th Cong., 2d Sess. (1978) .......... 10, 17

TSA Caribe Inc. ("Caribe"), one of the above-captioned debtors and debtors in possession, respectfully submits this memorandum of law in support of confirmation of the *Chapter 11 Plan of Liquidation of TSA Caribe, Inc.* [Docket No. 3856] (as modified, amended, or supplemented from time to time in accordance with its terms, the "Plan").[1] In support of confirmation of the Plan, Caribe respectfully states as follows:[2]

## I. PRELIMINARY STATEMENT

1. In short, and as explained below, all Voting Classes have voted in favor of the Plan, and all informal comments received—of which there were very few—have been resolved through language incorporated into the proposed form of order confirming the Plan, filed contemporaneously herewith [Docket No. 3909] (the "Confirmation Order").

2. The Plan satisfies all applicable provisions of the Bankruptcy Code, including section 1129. The Plan is the product of months of intense arm's-length negotiations, represents the best available path forward to resolve the Caribe Chapter 11 Case,[3] and provides for the liquidation and expeditious distribution of Caribe's assets to Caribe's creditors. Most importantly, the Plan has received the required support from the creditors electing to vote in the two Voting Classes, with two of the three Holders of Class 3 Claims that cast ballots voting in

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2] The facts and circumstances supporting confirmation of the Plan are set forth in, among other things, the *Disclosure Statement With Respect to the Chapter 11 Plan of Liquidation of TSA Caribe, Inc.* [Docket No. 3856] (the "Disclosure Statement"), the *Declaration of Douglas Garrett in Support of Confirmation of Chapter 11 Plan of TSA Caribe Inc.* [Docket No. 3908] (the "Garrett Decl."), and the *Certification of Adam J. Gorman with Respect to the Tabulation of Votes on the Chapter 11 Plan of Liquidation of TSA Caribe, Inc.* [Docket No. 3907] (the "Voting Report") and are incorporated herein by reference.

[3] The Plan and Disclosure Statement relate only to TSA Caribe, Inc., and not the other TSA Debtors.

favor of the Plan, one of the three Holders of Class 3 Claims that cast ballots abstaining from voting,[4] and the only Holder of Class 5 Claims that cast a ballot voting in favor of the Plan.[5]

3. The Plan also incorporates an agreement with the Term Loan Lenders pursuant to which the Term Loan Lenders have agreed to waive their asserted administrative expense claim, provided that certain Interdebtor Claims are allowed in an aggregate amount not less than $22,821,972, among other conditions. This agreement resolves potentially expensive and time-consuming litigation with the Term Loan Lenders regarding their asserted administrative expense claim, and allows the Plan to be confirmed in 2017. If the Plan is confirmed and distributions are made in 2017, Caribe anticipates that distributions available to creditors will increase by $250,000 due to certain anticipated savings related to the timing of distributions. Further, as part of this agreement, the Term Loan Lenders have agreed that all Fee Claims of Professionals will continue to be paid through the Wind-Down Budget established in the Chapter 11 Cases of the TSA Debtors, which increases the amount available for distribution to general unsecured creditors in Caribe's case by reducing or eliminating the Fee Claims of Professionals being paid directly by Caribe.

---

4 Pursuant to the *Order: (A) Approving Disclosure Statement of TSA Caribe, Inc.; (B) Fixing Voting Record Date; (C) Approving Solicitation Materials and Procedures for Distribution Thereof; (D) Approving Forms of Ballots and Establishing Procedures for Voting on Plan; (E) Scheduling Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of the Plan; (F) Establishing an Administrative Expense Claim Bar Date; and (G) Granting Related Relief* [Docket No. 3853] (the "Disclosure Statement Order"), the ballot that abstained (i.e., failed to indicate an acceptance or rejection of the Plan) was not counted. *See* Disclosure Statement Order, ¶ 19(c).

5 *See* Voting Report, Ex. B. Although Class 4 was entitled to vote, there were no creditors in Class 4. Therefore, pursuant to Section 7.2 of the Plan, Class 4 is deemed to be eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

4. Moreover, the Plan enjoys the support of all major constituencies, including the Creditors' Committee, the Term Lenders, and the other TSA Debtors, and Caribe has resolved the two relatively minor concerns raised with respect to confirmation by the Office of the United States Trustee (the "U.S. Trustee") and Dick's Sporting Goods, Inc. ("DSG"), respectively. The U.S. Trustee has advised Caribe that it supports confirmation of the Plan, subject to a limited revision to the definition of Exculpated Parties set forth in Section 10.6 of the Plan, as described herein at paragraphs 19 and 20 and incorporated into the proposed Confirmation Order. DSG filed a simple reservation of rights that has also been addressed through a provision in the proposed Confirmation Order, as is described in paragraphs 19 and 20, below.

5. Accordingly, and for the reasons set forth herein, Caribe submits that the evidence demonstrates that the Plan satisfies each prerequisite to confirmation and, therefore, should be confirmed.

## II. PROCEDURAL HISTORY

6. On March 2, 2016 (the "Petition Date") the TSA Debtors commenced the Chapter 11 Cases. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the TSA Debtors are continuing to manage their financial affairs as debtors-in-possession.

7. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On March 10, 2016, the U.S. Trustee appointed the Creditors' Committee in the Chapter 11 Cases [Docket No. 262].

8. The TSA Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

9. Additional information about the TSA Debtors' history, business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases, can be found in the *Declaration of Jeremy Aguilar in*

*Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 22], filed on the Petition Date and incorporated by reference herein.

10. Caribe's Chapter 11 Case, assigned Case No. 16-10533, is referred to herein as the "Caribe Chapter 11 Case."

11. On September 5, 2017, Caribe filed the original version of the Plan [Docket No. 3795] and the Disclosure Statement [Docket No. 3796]. On September 5, 2017, Caribe also filed *Debtor TSA Caribe, Inc.'s Motion for an Order (A) Approving Disclosure Statement; (B) Fixing Voting Record Date; (C) Approving Solicitation Materials and Procedures for Distribution Thereof; (D) Approving Forms of Ballots and Establishing Procedures for Voting on Plan; (E) Scheduling Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of Plan; and (F) Granting Related Relief* [Docket No. 3798] (the "Solicitation Procedures Motion").

12. On October 19, 2017, following a hearing to consider the Solicitation Procedures Motion, the Bankruptcy Court entered that certain *Order: (A) Approving Disclosure Statement of TSA Caribe, Inc.; (B) Fixing Voting Record Date; (C) Approving Solicitation Materials and Procedures for Distribution Thereof; (D) Approving Forms of Ballots and Establishing Procedures for Voting on Plan; (E) Scheduling Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of the Plan; (F) Establishing an Administrative Expense Claim Bar Date; and (G) Granting Related Relief* [Docket No. 3853] (the "Solicitation Procedures Order"). Solicitation versions of the Disclosure Statement and the Plan were filed on October 19, 2017 [Docket No. 3856] and served on October 23, 2017, as detailed below. The

*Notice of Filing of the Plan Supplement to the Chapter 11 Plan of Liquidation of TSA Caribe, Inc.* [Docket No. 3882] (the "Plan Supplement") was filed and served on November 9, 2017.[6]

13. On October 23, 2017, Kurtzman Carson Consultants LLC ("KCC"), Caribe's voting agent in connection with the solicitation of votes to accept or reject the Plan, transmitted the Solicitation Packages (as defined in the Solicitation Procedures Order) in accordance with the Solicitation Procedures Order.[7]

14. The deadline for Holders of Claims entitled to vote on the Plan to cast their ballots was November 20, 2017 at 4:00 p.m. (prevailing Pacific Time).[8] Caribe agreed to allow additional time for creditors in Puerto Rico to submit ballots due to Hurricane Maria, but no additional ballots were received as of November 28, 2017.[9] Subject to certain exceptions, the deadline to file objections to the Plan was November 20, 2017 at 4:00 p.m. (prevailing Eastern Time), and none were received except for two relatively minor concerns that have been consensually resolved, as described in paragraphs 19 and 20 below. The hearing to consider confirmation of the Plan (the "Confirmation Hearing") is scheduled to begin on December 5, 2017 at 10:30 a.m. (prevailing Eastern Time).

## III. VOTING RESULTS

15. In accordance with the Bankruptcy Code, only Holders of Claims and Equity Interests in Impaired Classes receiving or retaining property on account of such Claims or Equity Interests were entitled to vote on the Plan. Holders of Claims or Equity Interests were not entitled to vote if their rights were (or are) Unimpaired by the Plan (and they are thus presumed

[6] *See Affidavit of Service* [Docket No. 3899].

[7] *See* Voting Report, ¶¶ 6, 9, 10, 12.

[8] *See* Voting Report, ¶ 16.

[9] *See id.* at ¶ 18.

to accept the Plan). As a result, the following Classes of Claims were ***not*** entitled to vote on the Plan, and Caribe did not solicit votes from Holders of such Claims:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (conclusively deemed to accept) |
| Class 2 | Miscellaneous Secured Claims | Unimpaired | No (conclusively deemed to accept) |

16. The following Impaired Classes of Claims were entitled to vote on the Plan, and Caribe solicited votes from Holders of such Claims:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Subordinated Claims | Impaired | Yes |
| Class 5 | Equity Interests | Impaired | Yes |

17. The voting results, as reflected in the Voting Report, are summarized as follows:

| CLASSES | TOTAL BALLOTS RECEIVED | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Amount Voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Amount Voted) |
| Class 3 – General Unsecured Claims | 100% | 100% | 0% | 0% |
| Class 4 – Subordinated Claims[10] | N/A | N/A | N/A | N/A |
| Class 5 – Equity Interests | 100% | 100% | 0% | 0% |

10 Although Class 4 was entitled to vote, there were no creditors in Class 4. Therefore, pursuant to Section 7.2 of the Plan, Class 4 is deemed to be eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

18. As set forth above and in the Voting Report, both of the Impaired Classes entitled to vote on the Plan (Classes 3 and 5) (together, the "Voting Classes") voted to accept the Plan. One Holder of a Class 3 Claim submitted a ballot but abstained from voting. The holder of the largest Class 3 Claim (TSA Stores, Inc.) is an insider and voted to accept the Plan.

## IV. PLAN MODIFICATIONS

19. Contemporaneously herewith, Caribe has filed the proposed Confirmation Order, which addresses and resolves the informal comments and concerns raised by the U.S. Trustee and DSG, respectively, in accordance with section 1127(a) of the Bankruptcy Code.[11]

20. The Plan modifications, memorialized in the Confirmation Order, consist of the following:

- Caribe and the U.S. Trustee have agreed to revise the definition of Exculpated Parties set forth in Section 10.06 of the Plan through incorporation of a provision in the Confirmation Order as follows: "None of the Debtor, the TSA Debtors, the TSA Debtors' officers and directors that served during the pendency of the case, the Committee, the Committee's members, and all professionals retained in the TSA Debtors' bankruptcy cases, and all other estate fiduciaries who, for purposes of this section 10.6, shall include employees of the TSA Debtors who materially

[11] *See* 11 U.S.C. § 1127(a) ("The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.").

assisted during the Debtor's chapter 11 case, shall be deemed to be estate fiduciaries (the "Exculpated Parties") . . . ."[12]

- Caribe and DSG have agreed to include language in the Confirmation Order pertaining to a simple reservation of rights as follows: "Nothing in this Order or the Plan shall impair the obligations of Caribe to Dick's Sporting Goods, Inc. ("DSG") in respect of (i) that certain Asset Purchase Agreement, dated as of July 20, 2016, among DSG, Caribe and the other TSA Debtors (as amended, supplemented or otherwise modified from time to time) or (ii) that certain Intellectual Property Asset Purchase Agreement, dated as of July 20, 2016, among DSG, Caribe and the other TSA Debtors (as amended, supplemented or otherwise modified from time to time), the entry by Caribe into each of which and performance by Caribe under each of which was previously approved by this Court."[13]

21. None of the proposed Plan modifications will adversely affect the treatment of any Claim or Equity Interest of any Holder who has not accepted in writing such modifications. Therefore, Caribe submits that such modifications do not require Caribe to re-solicit acceptances for the Plan.[14]

---

12 *See* Confirmation Order, § 12. For the avoidance of doubt, the only revisions to Section 10.06 pertain to the definition of "Exculpated Parties", and insofar as Section 10.06 is implemented it remains otherwise unchanged.

13 *Id.* at ¶ 21.

14 *See* Fed. R. Bankr. P. 3019(a) ("If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.").

## V. ARGUMENT

22. This memorandum is organized into three parts. Part A establishes the Plan's compliance with each of the applicable requirements for confirmation under section 1129(a) of the Bankruptcy Code. Part B establishes the Plan's compliance with the "cramdown" provisions of section 1129(b) of the Bankruptcy Code and explains that cramdown is not necessary in this case. Part C establishes that certain of the discretionary elements of the Plan, including the claim settlements, exculpations (as modified by the Confirmation Order), and injunctions contained therein, are appropriate and should be approved.

### A. The Plan Satisfies Each Requirement for Confirmation.

23. To confirm the Plan, the Bankruptcy Court must find that Caribe has demonstrated by a preponderance of the evidence that the Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code.[15] As set forth herein, the Plan fully complies with all relevant sections of the Bankruptcy Code—including sections 1122, 1123, 1125, 1126, 1127, and 1129—as well as the Bankruptcy Rules and applicable non-bankruptcy law, and should be confirmed by the Bankruptcy Court.

#### 1. The Plan Complies with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1)).

24. Section 1129(a)(1) of the Bankruptcy Code requires that a chapter 11 plan comply with the Bankruptcy Code, including the applicable provisions governing the classification of claims and interests and the contents of a chapter 11 plan. Legislative history indicates that

---

[15] *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (Bankr. D. Del. 2006) ("[T]he debtor's standard of proof that the requirements of § 1129 are satisfied is preponderance of the evidence.").

section 1129(a)(1) contemplates a chapter 11 plan's satisfaction of the requirements contained in sections 1122 and 1123 of the Bankruptcy Code.[16]

**(a)** The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.

25. Although section 1122(a) of the Bankruptcy Code prohibits the inclusion of dissimilar claims in the same class, it does not require the placement of all similar claims in one class.[17] Courts in this Circuit have recognized that, under section 1122 of the Bankruptcy Code, plan proponents have significant flexibility in placing claims or interests into different classes provided there is a rational legal or factual basis to do so and all claims or interests within a particular class are substantially similar.[18] Fortunately, there was no need to separately classify general unsecured claims in the Plan, and all such claims were placed in Class 3.

26. The Plan separately classifies Claims and Equity Interests into the following Classes based upon differences in the legal nature, priority, and other distinguishing characteristics of such Claims and Equity Interests:

---

[16] *See* S. Rep. No. 95-989, 95th Cong., 2d Sess. 125-26 (1978); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); *see also In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008); *In re S&W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was more directly aimed at were Sections 1122 and 1123.").

[17] *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) ("[W]e agree with the general view which permits the grouping of similar claims in different classes."); *In re First Interregional Equity Corp.*, 218 B.R. 731, 738–39 (Bankr. D.N.J. 1997) (same); *see also In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) ("Courts have found that the Bankruptcy Code only prohibits the identical classification of dissimilar claims. It does not require that similar classes be grouped together . . . .").

[18] *See, e.g., John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 159 (3d Cir. 1993) (instructing that classification is proper where a class is "sufficiently distinct and weighty to merit a separate voice in the decision whether the [chapter 11 process] should proceed"); *In re Magnatrax Corp.*, No. 03-11402 (PJW), 2003 WL 22807541, at *4 (Bankr. D. Del. Nov. 17, 2003) (finding that a plan that classified claims and interests pursuant to valid business, factual, and legal reasons satisfied section 1122 of the Bankruptcy Code).

| Class | Designation | Description |
|---|---|---|
| 1 | Priority Non-Tax Claims | A Priority Non-Tax Claim is any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code. |
| 2 | Miscellaneous Secured Claims | A Miscellaneous Secured Claim is any Secured Claim asserted against Caribe. |
| 3 | General Unsecured Claims | A General Unsecured Claim is an unsecured non-priority Claim against Caribe, including, for the avoidance of doubt, any Interdebtor Claim, that is not an Administrative Expense Claim, Fee Claim, Miscellaneous Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, or Subordinated Claim. |
| 4 | Subordinated Claims[19] | A Subordinated Claim is any DIP Financing Claim, Adequate Protection Claim, Securities Law Claim or Equitably Subordinated Claim. |
| 5 | Equity Interests | An Equity Interest is any share of common or preferred stock or other instrument evidencing a membership and/or ownership interest in the Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest. |

27. The Plan's classification of Claims and Equity Interests satisfies section 1122 of the Bankruptcy Code because each Class is comprised of substantially similar Claims or Equity Interests, respectively, and each instance of separate classification of similar Claims and Equity Interests reflects differences in the legal nature, priority, and other distinguishing characteristics of such Claims or Equity Interests.[20]

[19] Although Class 4 was entitled to vote, there were no creditors in Class 4. Therefore, pursuant to Section 7.2 of the Plan, Class 4 is deemed to be eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

[20] *See* Garrett Decl. ¶ 7.

28. In short, Claims or Equity Interests assigned to each particular Class described above are substantially similar to the other Claims or Equity Interests in each such Class and the distinctions among Classes are based on legal rights, priority, or other characteristics. Accordingly, Caribe submits that the Plan fully complies with and satisfies section 1122 of the Bankruptcy Code.

**(b)** The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code.

29. The Plan satisfies the seven mandatory requirements set forth in section 1123(a) of the Bankruptcy Code.[21] As shown below, the Plan complies fully with each of these requirements.

**(i)** The Plan Specifies Designation of Classes of Claims and Equity Interests (Section 1123(a)(1)).

30. Section 1123(a)(1) of the Bankruptcy Code requires that a chapter 11 plan designate classes of claims and equity interests, subject to section 1122 of the Bankruptcy Code.[22] Articles III and IV of the Plan properly designates four (4) Classes of Claims and one (1) Class of Equity Interests, as required by section 1123(a)(1) of the Bankruptcy Code.[23] Accordingly, the Plan satisfies the requirements of section 1123(a)(1) of the Bankruptcy Code.

**(ii)** The Plan Specifies Classes That Are Not Impaired by the Plan (Section 1123(a)(2)).

31. Section 1123(a)(2) of the Bankruptcy Code requires that a chapter 11 plan specify which classes of claims or equity interests are unimpaired under the plan.[24] Article IV of the

---

[21] *See* 11 U.S.C. § 1123(a).

[22] *See* 11 U.S.C. § 1123(a)(1).

[23] *See* Plan § 4.1.

[24] *See* 11 U.S.C. § 1123(a)(2).

Plan specifies that Class 1 (Priority Non-Tax Claims) and Class 2 (Miscellaneous Secured Claims) are Unimpaired under the Plan, as required by section 1123(a)(2) of the Bankruptcy Code.[25] Article IV of the Plan specifies that Allowed Administrative Expense Claims, Priority Tax Claims, and Fee Claims, which are not classified under the Plan, are also Unimpaired.[26] Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

**(iii)** The Plan Specifies Treatment of Classes That Are Impaired by the Plan (Section 1123(a)(3)).

32. Section 1123(a)(3) of the Bankruptcy Code requires that a chapter 11 plan specify how the classes of claims or equity interests that are impaired under the Plan will be treated.[27] The Plan specifies the treatment of Classes 3 and 5, which are Impaired under the Plan, as required by section 1123(a)(3).[28] Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

**(iv)** The Plan Provides Equal Treatment Within Each Class (Section 1123(a)(4)).

33. Section 1123(a)(4) of the Bankruptcy Code requires that a chapter 11 plan provide the same treatment for each claim or interest within a particular class, unless the holder of a claim or interest agrees to receive less favorable treatment than other class members.[29] Pursuant to the Plan, the treatment of each Claim against or Equity Interest in Caribe, in each respective class, is the same as the treatment of each other Claim or Equity Interest in such class, unless the holder of a Claim or Equity Interest, as applicable, has agreed to receive less favorable treatment

---

[25] *See* Plan § 4.1; §§ 4.8-4.9.

[26] *See* Plan § 4.2, §§ 4.5-4.6.

[27] *See* 11 U.S.C. § 1123(a)(3).

[28] *See* Plan §§ 4.1, 4.10, 4.12.

[29] *See* 11 U.S.C. § 1123(a)(4).

than other class members in such class.[30] Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

**(v)** The Plan Provides Adequate Means for Implementation (Section 1123(a)(5)).

34. Section 1123(a)(5) requires that a chapter 11 plan provide "adequate means for the plan's implementation."[31] Articles V and VI and other provisions of the Plan provide adequate means for the Plan's implementation, as required by section 1123(a)(5) of the Bankruptcy Code, including by providing for, among other things, dissolution of Caribe after the Effective Date and formation of the Liquidation Trust to administer the Liquidation Trust Assets.[32] Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

**(vi)** Section 1123(a)(6) is Inapplicable.

35. Section 1123(a)(6) of the Bankruptcy Code requires that a chapter 11 plan provide for the inclusion in the charter of (i) the debtor, (ii) certain entities to which property of the estate is transferred, and/or (iii) certain entities with which the debtor is merged or consolidated, a provision prohibiting the issuance of non-voting equity securities and providing an appropriate distribution of voting power among voting classes of equity securities.[33] Section 1123(a)(6) of the Bankruptcy Code is inapplicable because the Plan provides that all Equity Interests in Caribe shall be cancelled as of the Effective Date, and the only new share or other ownership interests to

**30** Caribe expects that Holders of Allowed Class 3 Claims will receive a distribution of approximately 11%, a favorable treatment in comparison to the expected 0 to 9% recovery under Chapter 7. *See* Disclosure Statement, Ex. 2.

**31** 11 U.S.C. § 1123(a)(5).

**32** *See* Plan, Arts. V and VI; Garrett Decl. ¶ 17.

**33** *See* 11 U.S.C. § 1123(a)(6).

be issued pursuant to the Plan is a single share of common stock to the Liquidation Trust.[34] Accordingly, Caribe submits that the requirements of sections 1123(a)(6) of the Bankruptcy Code are inapplicable in the Caribe Chapter 11 Case.

**(vii)** Section 1123(a)(7)

36. Section 1123(a)(7) of the Bankruptcy Code requires that the Plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee."[35] Article 7 of the Liquidation Trust Agreement (incorporated into the Plan by reference) satisfies 1123(a)(7) because the procedures for selection, removal and compensation of the Liquidation Trustee are consistent with the interests of Holders of Claims and Equity Interests and with public policy.[36] Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

**(viii)** Section 1123(a)(8) is Inapplicable.

37. Section 1123(a)(8) applies to cases where the Debtor is an individual, and, accordingly, is inapplicable to Caribe and the Plan.[37]

**(c)** The Plan Satisfies Section 1123(b) of the Bankruptcy Code.

38. Section 1123(b) of the Bankruptcy Code sets forth certain permissive provisions that may be incorporated into a chapter 11 plan.[38] The following provisions of the Plan comply with the discretionary provisions of section 1123(b) of the Bankruptcy Code: (a) Article III of

---

[34] *See* Plan, § 6.5.

[35] 11 U.S.C. § 1123(a)(7).

[36] *See* Liquidation Trust Agreement, Art. VII.

[37] *See* 11 U.S.C. § 1123(a)(8).

[38] *See* 11 U.S.C. § 1123(b).

the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Equity Interests; (b) Article IX of the Plan provides that any remaining Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date; (c) Article VII of the Plan establishes procedures for distributions on account of Allowed Claims; (d) Article VIII of the Plan establishes procedures for resolving Disputed Claims; (e) Article X of the Plan contains provisions implementing certain exculpations and injunctions; and (f) Article XII of the Plan provides for the retention of jurisdiction by the Bankruptcy Court over certain matters after the Effective Date. The Plan satisfies section 1123(b) of the Bankruptcy Code, as described above and discussed in paragraphs 74-78, below.

**(d)** Section 1123(c) is Inapplicable.

39. Section 1123(c) of the Bankruptcy Code applies only in a case concerning an individual and therefore does not apply to the Caribe Chapter 11 Case.[39]

**(e)** The Plan satisfies Section 1123(d) of the Bankruptcy Code.

40. Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law."[40] The Plan satisfies section 1123(d) of the Bankruptcy Code, as discussed in paragraphs 88 and 89, below.

41. Based upon all of the foregoing, the Plan fully complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code, as well as with all other provisions of the Bankruptcy Code, and thus satisfies section 1129(a)(1) of the Bankruptcy Code.

---

**39** *See* 11 U.S.C. § 1123(c).

**40** 11 U.S.C. § 1123(d).

**2. Caribe has Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)).**

42. Caribe has satisfied section 1129(a)(2) of the Bankruptcy Code, which requires a plan proponent to comply with the applicable provisions of the Bankruptcy Code.[41] The legislative history to section 1129(a)(2) provides that section 1129(a)(2) is intended to encompass the disclosure and solicitation requirements set forth in section 1125 and the plan acceptance requirements set forth in section 1126 of the Bankruptcy Code.[42] As set forth below, Caribe has complied with these provisions, including sections 1125 and 1126 of the Bankruptcy Code, as well as Bankruptcy Rules 3017 and 3018, by distributing the Disclosure Statement and soliciting acceptances of the Plan through KCC in accordance with the Solicitation Procedures Order.

**(a)** Caribe has Complied with the Disclosure and Solicitation Requirements of Section 1125.

43. Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a chapter 11 plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[43] Section

---

[41] *See* 11 U.S.C. § 1129(a)(2).

[42] *See In re Lapworth*, No. 97-34529 (DWS), 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable provisions of the Bankruptcy Code, including "disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code"); S. Rep. No. 95-989, 95th Cong., 2d Sess., at 126 (1978); H.R. Rep. No. 95-595, , 95th Cong., 1st Sess., at 412 (1977).

[43] *See* 11 U.S.C. § 1125(b).

1125 ensures that parties in interest are fully informed regarding the debtor's condition so that they may make an informed decision whether to accept or reject the plan.[44]

44. Section 1125 is satisfied here. Before Caribe solicited votes on the Plan, the Bankruptcy Court approved the Disclosure Statement in accordance with section 1125(a)(1).[45] The Bankruptcy Court also approved the contents of the Solicitation Packages provided to Voting Classes and the relevant deadlines for voting on and objecting to the Plan.[46] As stated in the Voting Report, Caribe, through KCC, complied with the content and delivery requirements of the Solicitation Procedures Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code.[47] Caribe also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular Class. Here, Caribe caused the Disclosure Statement to be transmitted to the Voting Classes with the voting materials.[48]

45. Based on the foregoing, Caribe submits that it has complied in all respects with the solicitation requirements of section 1125 of the Bankruptcy Code and the Solicitation Procedures Order.

---

[44] *See Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

[45] *See generally* Solicitation Procedures Order.

[46] *See id.*

[47] *See* Voting Report, ¶ 6.

[48] *See id.*

**(b)** Caribe Has Satisfied the Plan Acceptance Requirements of Section 1126.

46. Section 1126 of the Bankruptcy Code provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan.[49] As noted above, Caribe did not solicit votes on the Plan from the following unimpaired Classes:

- Class 1 (Priority Non-Tax Claims) and Class 2 (Miscellaneous Secured Claims), which are Unimpaired under the Plan (together, the "Unimpaired Classes").[50] Pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims in the Unimpaired Classes are conclusively presumed to have accepted the Plan and, therefore, were not entitled to vote on the Plan.

47. The Voting Report, summarized above, reflects the results of the voting process in accordance with section 1126 of the Bankruptcy Code.[51] As set forth in the Voting Report, both Class 3 and Class 5 voted to accept the Plan.[52] Holders of Class 3 Claims representing one hundred percent (100%) by number of voted Claims and one hundred percent (100%) by amount of voted Claims voted to accept the Plan.[53] The only Holder of Class 5 Claims that submitted a ballot voted to accept the Plan.[54] Based on the foregoing, Caribe submits that it has satisfied the requirements of section 1129(a)(2).

48. Each Voting Class has accepted the Plan and Caribe therefore submits that it has satisfied the requirements of section 1126(d) of the Bankruptcy Code.

---

[49] *See* 11 U.S.C. § 1126.

[50] *See* Plan, Art. IV.

[51] *See generally* Voting Report.

[52] *Id*. at Ex. B.

[53] *Id*.

[54] *See id.*

### 3. The Plan Has Been Proposed in Good Faith and Not By Any Means Forbidden by Law (Section 1129(a)(3)).

49. Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."[55] The Bankruptcy Code does not define "good faith" for purposes of section 1129(a)(3). The good faith standard requires that a plan be proposed with good intentions to obtain a result that is consistent with the objectives and the purposes of the Bankruptcy Code.[56] Whether the good faith requirement is met is a fact intensive inquiry based on the totality of the facts and circumstances that affords considerable discretion to the Bankruptcy Court.[57]

50. Here, the Plan is proposed in good faith. The Plan is the culmination of extensive, arm's-length, good faith negotiations between and among Caribe, the Creditors' Committee, and the Term Loan Lenders.[58] The Plan was proposed with the goal of maximizing the value of Caribe's assets, while avoiding time consuming and expensive allocation fights with the Term Loan Lenders.[59] The substantial compromises embodied in the Plan, along with the demonstrated support of the Plan by Caribe's major stakeholders, dispel any suggestion of bad

---

[55] 11 U.S.C. § 1129(a)(3).

[56] *See In re PWS Holding*, 228 F.3d 224, 242 (3d Cir. 2000) ("'For purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'") (quoting *In re Abbotts Dairies of Pa., Inc*., 788 F.2d 143, 150 n.5 (3d Cir. 1986))); *see also NMSBPCSLDHB v. Integrated Telecom Express, Inc.* (*In re Integrated Telecom Express, Inc*.), 384 F.3d 108, 119 (3d Cir. 2004) ("At its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy . . . .").

[57] *See In re W.R. Grace & Co.*, 475 B.R. 34, 88 (D. Del. 2012); *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001); *accord In re Am. Family Enters.*, 256 B.R. 377, 401 (D.N.J. 2000).

[58] *See* Garrett Decl. ¶ 9.

[59] *See id*.

faith or collusion.[60] In short, the Plan satisfies the objectives of the Bankruptcy Code, and in no way attempts to abuse the judicial process or delay or frustrate the legitimate efforts of creditors to enforce their rights.[61]

51. For these reasons, the Plan is proposed in good faith to promote the objectives and purpose of the Bankruptcy Code, and therefore satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

**4. The Plan Provides for Court Approval of Certain Administrative Payments (Section 1129(a)(4)).**

52. Section 1129(a)(4) of the Bankruptcy Code requires that any payments by a debtor for post-petition professional fees remain subject to the Bankruptcy Court's review and approval for reasonableness.[62] In accordance with section 1129(a)(4) of the Bankruptcy Code, all payments made or to be made by Caribe for services rendered or expenses incurred in connection with the Caribe Chapter 11 Case prior to the Effective Date, including requests for payment of Fee Claims, will be paid only after allowance of such Claims by the Bankruptcy Court, to the extent not previously approved and paid in accordance with existing orders of the Bankruptcy Court.[63] Thus, the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

---

[60] *See id.*

[61] *See In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988).

[62] 11 U.S.C. § 1129(a)(4).

[63] As set forth in the Plan, as part of the agreement reached with the Term Loan Lenders, all Professionals in the Caribe Chapter 11 Case will continue to seek payment for fees incurred and reimbursement for applicable expenses in the TSA Debtors' chapter 11 cases consistent with that certain *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 806]. *See* Plan, § 4.5.

**5. The Name of the Liquidation Trustee Was Disclosed Before the Effective Date and His Appointment is Consistent with Public Policy (Section 1129(a)(5)).**

53. Section 1129(a)(5)(A) requires the proponent of any plan to disclose prior to confirmation the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan," along with a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy."[64]

54. Here, Caribe satisfied the requirements of section 1129(a)(5)(A) because the name of the Liquidation Trustee, Douglas Garrett ("Mr. Garrett"), was disclosed in the Plan (by virtue of the Plan Supplement), which was accepted by the Voting Classes, and appointed in a manner consistent with public policy and applicable law.[65] Moreover, Caribe submits that Mr. Garrett's proposed flat fee of $10,000 per month is very manageable and appropriate under the circumstances.

55. Section 1129(a)(5)(B) of the Bankruptcy Code requires that a plan proponent disclose the "identity of any insider that will be employed or retained" by the debtor (or any successor thereto) after the effective date, and "the nature of any compensation for such insider."[66] Here, Caribe has satisfied section 1129(a)(5)(B) because the name of the Liquidation Trustee, as well as Mr. Garrett's proposed compensation, is disclosed in the Liquidation Trust Agreement filed in the Plan Supplement. Moreover, Mr. Garrett is a highly respected

---

[64] 11 U.S.C. § 1129(a)(5)(A)(i)-(iii).

[65] *See* Plan, § 1.57.

[66] 11 U.S.C. § 1129(a)(5)(B).

professional, with broad support from Caribe, the Creditors' Committee, the Term Loan Lenders, and, having served as the Chairman of the Wind Down Committee for over a year and General Counsel since 2011 of TSAWD Holdings, Inc. and each of its principal subsidiaries, he has the background to hit the ground running.

56. Accordingly, Caribe submits that the Plan fully complies with, and satisfies the requirements of, section 1129(a)(5) of the Bankruptcy Code.

### 6. The Plan Does Not Require Governmental Approval of Rate Changes (Section 1129(a)(6)).

57. Section 1129(a)(6) of the Bankruptcy Code requires that any governmental regulatory commission having jurisdiction over the debtor post-confirmation approve any rate change provided for in the debtor's plan.[67] Section 1129(a)(6) is inapplicable to the Caribe Chapter 11 Case because Caribe's business does not involve the establishment of rates subject to approval of any governmental regulatory commission and, in any event, Caribe will not be engaged in a trade or business after the Effective Date.

### 7. The Plan Is in the Best Interests of Creditors and Equity Interest Holders (Section 1129(a)(7)).

58. Section 1129(a)(7) of the Bankruptcy Code—the "best interests test"—requires that, with respect to each impaired class of claims or interests, either: (a) each holder of a claim or an equity interest of such class has accepted the plan; or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.[68] The best interests test applies if a class of claims or interests

---

[67] 11 U.S.C. § 1129(a)(6).

[68] 11 U.S.C. § 1129(a)(7).

entitled to vote does not vote unanimously to accept a plan, even if the class as a whole votes to accept the plan.[69] The best interests test is generally satisfied by a liquidation analysis demonstrating that an impaired class will receive no less under the plan than under a chapter 7 liquidation.[70]

59. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. Caribe prepared a liquidation analysis estimating and comparing the range of recoveries generated under the Plan with the estimated potential recoveries under a hypothetical chapter 7 liquidation (the "Liquidation Analysis").[71] Caribe believes that the Liquidation Analysis includes a fair and reasonable "best estimate" of the cash proceeds, net of liquidation-related costs, available for distribution to the Holders of Allowed Claims and Equity Interests if Caribe were to be liquidated under chapter 7 of the Bankruptcy Code.[72]

60. The Liquidation Analysis examines the effects that a conversion of the Caribe Chapter 11 Case to a case under chapter 7 could have on the assets available for distribution to Holders of Allowed Claims. As set forth in the Liquidation Analysis, a chapter 7 liquidation likely would result in an increase in Administrative Expense Claims due to chapter 7 trustee fees and litigation costs.[73] Moreover, the settlement embodied in the Plan would be moot, and

---

[69] *See Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").

[70] *See In re Smith*, 357 B.R. 60, 67 (Bankr. M.D.N.C. 2006), appeal dismissed, No. 1:07CV30, 2007 WL 1087575 (M.D.N.C. Apr. 4, 2007) ("In order to show that a payment under a plan is equal to the value that the creditor would receive if the debtor were liquidated, there must be a liquidation analysis of some type that is based on evidence and not mere assumptions or assertions.") (citations omitted).

[71] *See* Disclosure Statement, Ex. 2; Garrett Decl. ¶ 12.

[72] *See* Garrett Decl., ¶ 12.

[73] *See id.* at ¶ 13.

expensive and time-consuming (and potentially very damaging to unsecured creditors) litigation would certainly ensue. As a result, a conversion to a case under chapter 7 likely would result in all Holders of Impaired Claims receiving little or no recovery.[74]

61. Based on all available information, Caribe currently estimates a 100% recovery under the Plan for Holders of Allowed Administrative Expense Claims, Priority Tax Claims, and Priority Claims.[75] The Holders of Allowed General Unsecured Claims in Class 3 are estimated to receive a recovery of 11% on account of their Allowed Claims under the Plan.[76]

62. Accordingly, each Holder of an Impaired Claim or Equity Interest will receive at least as much under the Plan as they would receive in a liquidation under chapter 7. The proposed administration of Caribe's Estate under the Plan is more efficient, less expensive, and more likely to result in maximum distributions to Holders of Allowed Claims.[77] Accordingly, the "best interests test" is satisfied as to each Holder of an Impaired Claim or Equity Interest, and the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**8. The Plan Can Be Confirmed Notwithstanding the Requirements of Section 1129(a)(8).**

63. Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept a plan or be unimpaired under a plan.[78] As discussed above, both Class 3

[74] *See id.*

[75] *See id.* at ¶ 11.

[76] *See id.* at ¶ 14.

[77] *See* Garrett Decl., ¶¶ 12-15

[78] 11 U.S.C. § 1129(a)(8).

and Class 5 voted to accept the Plan.[79] Therefore, Caribe has satisfied the requirements for cramdown under section 1129(b) of the Bankruptcy Code.

**9. The Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Section 1129(a)(9)).**

64. Section 1129(a)(9) of the Bankruptcy Code requires that holders of allowed claims entitled to priority under section 507(a) of the Bankruptcy Code receive payment in full absent agreement to a less favorable treatment.[80] As required by section 1129(a)(9) of the Bankruptcy Code, pursuant to Article II of the Plan, Holders of Allowed (a) Administrative Expense Claims, (b) Fee Claims, and (c) Priority Tax Claims (if any) will be paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not already paid in full prior to the Effective Date).[81] Accordingly, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**10. At Least One Impaired Class of Claims Has Accepted the Plan, Excluding the Acceptances of Insiders (Section 1129(a)(10)).**

65. Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of at least one impaired class of claims, excluding the votes of any insider.[82] Both Voting Classes have accepted the Plan.[83] Excluding the acceptances of insiders (including the

---

**79** *See* Voting Report at Ex. A. Although Class 4 was entitled to vote, there were no creditors in Class 4. Therefore, pursuant to Section 7.2 of the Plan, Class 4 is deemed to be eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**80** *See* 11 U.S.C. § 1129(a)(9).

**81** *See* Plan, Art. II.

**82** *See* 11 U.S.C. § 1129(a)(10).

**83** *See* Voting Report, Ex. B.

Interdebtor Claim), all Holders of Class 3 Claims that cast ballots voted in favor of the Plan.[84] Section 1129(a)(10) of the Bankruptcy Code is therefore satisfied.

**11. The Plan is Feasible (Section 1129(a)(11)).**

66. Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition precedent to confirmation, the Bankruptcy Court find that the Plan is feasible.[85] The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan can be performed.[86] Courts have found that a relatively low threshold of proof will satisfy the feasibility requirement.[87] The purpose of the feasibility test is to protect against visionary or speculative plans.[88]

67. The Plan is feasible because the assets being transferred to the Liquidation Trust will be sufficient to enable the Liquidation Trustee to make distributions to (or for the benefit of) the Holders of Allowed Claims contemplated under the Plan and to satisfy all post-Effective Date obligations.[89] This is especially true where, as here, the property transferred is cash.

68. Moreover, Caribe has satisfied or will be able to satisfy or waive each of the conditions precedent to the Effective Date pursuant to the Plan, including, among other things:

---

**84** *See* Voting Report, Ex. B-1.

**85** *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) ("Even a planned liquidation 'must be feasible.'" (citing *In re Calvanese*, 169 B.R. 104, 107 (Bankr. E.D. Pa. 1994))).

**86** *See W.R. Grace*, 475 B.R. at 115 ("[T]he test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.").

**87** *Mercury Capital Corp. v. Milford Conn. Assocs., L.P.*, 354 B.R. 1, 9 (D. Conn. 2006) (quoting *Comput. Task Grp., Inc. v. Brotby* (*In re Brotby*), 303 B.R. 177, 191 (9th Cir. B.A.P. 2003)).

**88** *See Pizza of Haw., Inc. v. Shakey's, Inc.* (*In re Pizza of Haw., Inc.*), 761 F.2d 1374, 1382 (9th Cir. 1985).

**89** *See* Garrett Decl. ¶ 16.

- Transferring the Liquidation Trust Assets to the Liquidation Trust; and
- The satisfaction of the conditions precedent set forth in Article XI of the Plan.[90]

69. Based on the foregoing, the Plan is feasible and has a reasonable likelihood of success, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

### 12. The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)).

70. Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.[91] The Plan provides that all such fees that are due prior to the Effective Date shall be paid in full by the Liquidation Trustee on the Effective Date or as soon as practicable thereafter. From and after the Effective Date, the Liquidation Trust Agreement provides that the Liquidation Trust shall pay all such fees until a Final Order is entered concluding, dismissing, or closing the Caribe Chapter 11 Case.[92] Accordingly, the Plan satisfies the requirements of section 1129(a)(12).

### 13. Section 1129(a)(13) is Inapplicable.

71. Section 1129(a)(13) of the Bankruptcy Code requires that a chapter 11 plan provide for the continuation, after the plan's effective date, of all "retiree benefits" (as such term is defined by section 1114(a) of the Bankruptcy Code) at the level established by agreement or by court order prior to confirmation pursuant to subsections (e)(1)(B) or (g), respectively, of section 1114 of the Bankruptcy Code for the duration of the period that the debtor has obligated

---

[90] *See* Garrett Decl. ¶ 17.

[91] 11 U.S.C. § 1129(a)(12).

[92] *See* Liquidation Trust Agreement § 4.5.

itself to provide such benefits.[93] Caribe has no such obligations and this provision is therefore inapplicable.

**14. Sections 1129(a)(14)–(a)(16) are Inapplicable.**

72. Sections 1129(a)(14) and (15) of the Bankruptcy Code apply only to individual debtors.[94] Additionally, Caribe is a "moneyed, business, or commercial corporation" and, therefore, section 1129(a)(16) does not apply.[95] Accordingly, Caribe submits that the requirements of sections 1129(a)(14)-(16) of the Bankruptcy Code are inapplicable in the Caribe Chapter 11 Case.

**15. The Plan Complies with the Other Provisions of Section 1129 of the Bankruptcy Code (Section 1129(c)-(e)).**

73. The Plan is the only plan on file presented for confirmation in the Caribe Chapter 11 Case and, as such, section 1129(c) of the Bankruptcy Code does not apply. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of Section 5 of the Securities Act of 1933, and no party in interest has alleged otherwise. The principal purpose of the Plan is to effectuate Caribe's orderly liquidation through a distribution mechanism that will maximize creditor recoveries. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. Finally, the Caribe Chapter 11 Case is not a "small business case" as such term defined in the Bankruptcy Code and, accordingly, section 1129(e) of the Bankruptcy Code does not apply.[96]

---

[93] 11 U.S.C. § 1129(a)(13).

[94] *See* 11 U.S.C. § 1129(a)(14) (relating to the payment of domestic support obligations); 1129(a)(15) (expressly relating only to individuals).

[95] *See* 11 U.S.C. § 1129(a)(16) (relating to transfers of property by non-profit debtor).

[96] *See* 11 U.S.C. § 1129(e).

**B. The Plan Satisfies the "Cramdown" Requirements of Section 1129(b) of the Bankruptcy Code.**

**1. All Impaired Classes Have Accepted the Plan so Cramdown Is Unnecessary.**

74. Section 1129(b)(1) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.[97] To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[98] Cramdown is not necessary here. Both Class 3 and Class 5 have voted in favor of the Plan.[99] There are no creditors in Class 4, which is deemed to be eliminated for purposes of voting. Therefore, the Plan satisfies the "cramdown" requirements under section 1129(b) of the Bankruptcy Code and therefore may be confirmed by the Bankruptcy Court.

**2. All Impaired Classes Have Voted to Accept the Plan, so the Plan Does Not Unfairly Discriminate With Respect to Impaired Classes that Have Not Voted (Section 1129(b)(1)).**

75. Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the

---

[97] *See* 11 U.S.C. § 1129(b).

[98] *See* 11 U.S.C. § 1129(b)(1); *see also In re Zenith Elecs. Corp.*, 241 B.R. 92, 105 (Bankr. D. Del. 1999) ("Where a class of creditors or shareholders has not accepted a [chapter 11 plan], the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable.'").

[99] *See* Voting Report at Ex. B.

particular case to make the determination.[100] Generally, courts have held that a plan unfairly discriminates in violation of section 1129(b) only if similarly situated claims receive materially different treatment without a reasonable basis for the disparate treatment.[101] A plan does not unfairly discriminate where it provides different treatment to two or more classes that are comprised of dissimilar claims or interests.[102] Likewise, there is no unfair discrimination if, taking into account the particular facts and circumstances of the case, there is a reasonable basis for the disparate treatment.[103]

76. Here both Voting Classes have accepted the Plan. Accordingly, the Plan satisfies the requirements of section 1129(b)(1).

---

[100] *See In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), rev'd on other grounds; *Bank of Am.*, 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."); *see also In re Bowles*, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly] discriminate is to be determined on a case-by-case basis."); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances").

[101] *See In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 228 (Bankr. D.N.J. 2000) (noting that one of the "the hallmarks of the various tests" is "whether there is a reasonable basis for the discrimination").

[102] *See Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship* (*In re Ambanc La Mesa Ltd. P'ship*), 115 F.3d 650, 656 (9th Cir. 1997) (finding that discrimination between classes is permissible where four criteria are met); *see also In re Aztec Co.*, 107 B.R. 585, 588–89 (Bankr. M.D. Tenn. 1989) ("Section 1129(b)(1) prohibits only unfair discrimination, not all discrimination."); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987) ("a plan proponent may not segregate two similar claims or groups of claims into separate classes and provide disparate treatment for those classes"), *aff'd sub nom., Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

[103] *See Aztec Co.*, 107 B.R. at 589 ("recogniz[ing] the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination.").

**3. No Classes Have Rejected the Plan, so the Plan Is Fair and Equitable (Section 1129(b)(2)).**

77. Section 1129(b)(2)(B) of the Bankruptcy Code provides that a plan is "fair and equitable" with respect to a class of unsecured claims if the holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or interest.[104] Likewise, section 1129(b)(2)(C) of the Bankruptcy Code provides that a plan is "fair and equitable" with respect to a class of interests if the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.[105]

78. Here, both Voting Classes have voted to accept the Plan. No junior creditor is receiving any distribution without the agreement of any senior class (or at all in this case). Therefore, the Plan satisfies the requirements of section 1129(b).

**C. The Discretionary Contents of the Plan Are Appropriate and Should Be Approved under 1123(b).**

79. Section 1123(b) of the Bankruptcy Code contains various discretionary provisions that may be included in a chapter 11 plan. In addition, section 1123(b)(6) of the Bankruptcy Code provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[106] The Plan contains a number of standard discretionary provisions, including: (a) the settlement with the Term Loan Lenders; (b) the exculpation of Estate fiduciaries and parties who were critical to negotiating the Plan, on terms agreed to with the U.S. Trustee; (c) the assumption or rejection of certain executory contracts and unexpired leases; (d) the waiver of Bankruptcy Rule 3020(e); and (e) retention of jurisdiction

---

[104] *See* 11 U.S.C. § 1129(b)(2)(B).

[105] *See* 11 U.S.C. § 1129(b)(2)(C).

[106] 11 U.S.C. § 1123(b)(6).

by the Bankruptcy Court. As discussed in further detail below, each of these discretionary provisions is consistent with the Bankruptcy Code and applicable law.

**1. The Settlement with the Term Loan Lenders Is Fair and Equitable and Should Be Approved.**

80. Settlements under a plan are generally subject to the same standard applied to settlements under Bankruptcy Rule 9019.[107] In particular, the Third Circuit applies the four-factor *Martin* test for considering motions to approve settlements under Bankruptcy Rule 9019, weighing: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interests of the creditors.[108] Under Bankruptcy Rule 9019, a settlement generally should be approved if it falls above the lowest point in the range of reasonableness.[109]

81. The *Martin* test strongly favors approving the settlement with the Term Loan Lenders embodied in the Plan for numerous reasons:

- ***First***, the agreement with the Term Loan Lenders resolves and settles a legally complex issue regarding whether the Term Loan Lenders have an administrative claim against Caribe. This resolution puts to rest a claim potentially exceeding $71,000,000.
- ***Second***, as part of this agreement, the Term Loan Lenders have agreed that all Fee Claims of Professionals will continue to be paid through the Wind-Down Budget established in the Chapter 11 Cases of the TSA Debtors. In addition, if the Plan is confirmed and distributions are made in 2017, Caribe anticipates that distributions available to creditors will increase by $250,000 due to certain anticipated savings related to the timing of distributions. The foregoing will substantially increase the

**107** *See In re Coram Healthcare Corp.*, 315 B.R. 321, 334–35 (Bankr. D. Del. 2004).

**108** *See Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996).

**109** *See, e.g., In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011); *In re Exaeris Inc.*, 380 B.R. 741, 746–47 (Bankr. D. Del. 2008); *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).

amount available for distribution to general unsecured creditors in the Caribe Chapter 11 Case.

- ***Third***, in the absence of the agreement with the Term Loan Lenders, Caribe would be required to engage in years of costly and time consuming litigation regarding the Term Loan Lenders' alleged administrative claim. At a minimum, such litigation would be attended by expense, inconvenience, and delay.

- ***Fourth***, if the administrative claim asserted by the Term Loan Lenders were Allowed in their entirety (or even at a fraction of their stated amounts), Holders of General Unsecured Claims would be unlikely to receive any recovery.[110]

82. The settlement with the Term Loan Lenders represents a sound exercise of Caribe's business judgment, as corroborated by the support of all other major constituencies. The certainty, swiftness, and consensual nature of the settlement greatly outweigh the benefits of a protracted, expensive, and uncertain litigation.[111] Accordingly, Caribe submits that the Plan and the settlement therein satisfy all four *Martin* factors and should be approved.

### 2. The Exculpation Provisions Are Appropriate and Should Be Approved.

83. The Plan contains no releases. However, it is well established in the Third Circuit that exculpation is appropriate for certain individuals and entities acting on behalf of a debtor's estate.[112] The underlying rationale for approval of an exculpation provision is that the covered individuals are acting in a fiduciary capacity on behalf of the debtor's estate.[113] Here, the exculpation provisions of the Plan, as modified by the proposed Confirmation upon agreement with the U.S. Trustee, protect the Exculpated Parties[114] from actions taken in connection with the

---

[110] *See* Garrett Decl. ¶ 20.

[111] *See id.* at ¶ 21.

[112] *See In re PWS Holding*, 228 F.3d at 246; *Washington Mut.*, 442 B.R. at 350; *In re Signal Int'l, Inc.*, Case No. 15-11498 (MFW) (Bankr. D. Del. Nov. 24, 2015) [ECF No. 555].

[113] *See Washington Mut.*, 442 B.R. at 350–51.

[114] *See supra* paragraph 20 for definition of Exculpated Parties as modified by the proposed Confirmation Order.

Caribe Chapter 11 Case, including the formulation and implementation of the Plan and the Disclosure Statement, but expressly exclude any liability arising out of gross negligence or willful misconduct of the Exculpated Parties.[115]

84. Furthermore, the circumstances of the Caribe Chapter 11 Case demonstrate that the exculpation is appropriate. The Plan was negotiated and implemented in good faith and with a high degree of transparency, including extensive negotiations between and among Caribe, the other TSA Debtors, the Creditors' Committee, and the Term Loan Lenders.[116] The exculpation is necessary to protect those parties that (a) played a critical role in formulating the Plan, the Disclosure Statement, and related documents in furtherance of the transactions contemplated by the Plan, (b) made substantial contributions to the Caribe Chapter 11 Case, (c) participated in good faith in the negotiation, formulation, and solicitation of the Plan, and (d) ultimately, will participate in the implementation of the Plan from future collateral attacks related to such actions.[117]

85. The Plan also contains an injunction prohibiting perfection, collection, or enforcement of claims against Caribe, the Liquidated Trust, the Liquidated Trustee, or any of their property, or interfering with the Plan. As noted above, the Plan (and the exculpation and injunction provisions it contains) is supported by the Voting Classes on a unanimous basis. Additionally, the U.S. Trustee supports the Plan subject to the revised definition of Exculpated Parties, as set forth in the proposed Confirmation Order.[118]

---

[115] *See* Plan, Section 10.6; Garrett Decl. ¶ 22.

[116] *See id.* at ¶ 23.

[117] *See id.* The exculpation provision is supported by a limited injunction in section 10.7 of the Plan.

[118] *See supra* paragraph 20.

86. Further, the Plan complies with the requirements of Bankruptcy Rule 3016(c), which provides that "the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and entities that would be subject to the injunction."[119] The injunction provision is clearly identified in the Plan and Disclosure Statement, is displayed in bold font, and specifically identifies all acts to be enjoined and all entities that would be subject to the injunction.[120] For the foregoing reasons, Caribe submits that the injunction set forth in Section 13.3 of the Plan should be approved.

87. For these reasons, among others, Caribe submits that the exculpation and injunction provisions are appropriate under the facts and circumstances of the Caribe Chapter 11 Case.

**3. The Plan Complies with Section 1123(d) of the Bankruptcy Code.**

88. Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and nonbankruptcy law."[121]

89. Caribe, in accordance with the Disclosure Statement and the Plan, filed a notice with the Plan Supplement stating that no Executory Contracts or Unexpired Leases would be assumed.[122] In fact, Caribe believes that it has no executory contracts or unassumed leases to assume or reject. Accordingly, Caribe submits that the Plan complies with section 1123(d) of the Bankruptcy Code.

---

[119] Fed. R. Bankr. P. 3016(c).

[120] *See* Plan, § 10.5.

[121] *See* 11 U.S.C. § 1123(d).

[122] *See* Plan Supplement, Ex. B.

**4. Cause Exists to Waive the Stay of the Confirmation Order.**

90. Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."[123] Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code. Each rule also permits modification of the imposed stay upon court order.

91. Caribe respectfully submits that cause exists for waiving the stay of the entry of the Confirmation Order such that the Confirmation Order will be effective immediately upon its entry.[124] All the conditions precedent to the Effective Date can be promptly fulfilled (or waived, as applicable), and each day Caribe remains in chapter 11 it incurs additional administrative and professional costs. Caribe believes that an expeditious effectuation of the Plan will reduce such costs and facilitate the maximization of value of the Estate.[125] Based on the foregoing, Caribe respectfully requests a waiver of any stay imposed by the Bankruptcy Rules so that the Confirmation Order may be effective immediately upon its entry.

---

[123] *See* Fed. R. Bankr. P. 3020(e).

[124] *See, e.g., In re Dex One Corp.*, Case No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013) [ECF No. 192] (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *In re Amicus Wind Down Corp.* (*f/k/a Friendly Ice Cream Corp.*), Case No. 11-13167 (KG) (Bankr. D. Del. June 4, 2012) [ECF No. 1110] (same); *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (KG) (Bankr. D. Del. Nov. 3, 2011) [ECF No. 1037] (same); *In re Majestic Star Casino, LLC*, Case No. 09-14136 (KG) (Bankr. D. Del. Mar. 10, 2011) [ECF No. 1059] (same); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Apr. 14, 2011) [ECF No. 649] (same).

[125] *See* Garrett Decl. ¶ 25.

## VI. Conclusion

For all of the reasons set forth herein and in the Garrett Declaration, Caribe respectfully requests that the Bankruptcy Court confirm the Plan as fully satisfying all of the applicable requirements of the Bankruptcy Code by entering the Confirmation Order, waiving the stay imposed by Bankruptcy Rule 3020(e), and granting such other and further relief as may be appropriate under the circumstances.