**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TSAWD HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-10527 (MFW)<br><br>(Jointly Administered)<br><br>**Hearing Date: November 27, 2018 at 10:30 a.m. (ET)**<br>**Objection Deadline: October 30, 2018 at 4:00 p.m. (ET)** |

**DEBTORS' TENTH MOTION FOR ENTRY OF AN ORDER
EXTENDING THE PERIOD WITHIN WHICH THE DEBTORS
MAY REMOVE ACTIONS PURSUANT TO 28 U.S.C. § 1452**

TSAWD Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, extending the period within which the Debtors may remove causes of actions and related proceedings, pursuant to 28 U.S.C. § 1452 (the "Removal Deadline"), through and including February 21, 2019. In support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: TSAWD Holdings, Inc. (9008); Slap Shot Holdings Corp. (8209); TSAWD, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664). The headquarters for the above-captioned Debtors is located at 2305 East Arapahoe Road, Suite 234, Centennial, CO 80122.

The Debtors were formerly known as: Sports Authority Holdings, Inc. (9008); Slap Shot Holdings Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are 28 U.S.C. § 1452 and Rules 9006 and 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**A.  General Background**

3. On March 2, 2016 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession. No request for a trustee or examiner has been made in these chapter 11 cases (collectively, the "Chapter 11 Cases").

4. On March 10, 2016, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

5. Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Jeremy Aguilar in Support of the Debtors'*

01:23741791.1

2

*Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 22], which was filed on the Petition Date.

**B.      Prior Extension Requests**

6.      On April 28, 2016, the Debtors filed a motion [Docket No. 1482] (the "First Extension Motion") seeking entry of an order extending the initial Removal Deadline.  On May 23, 2016, the Court entered an order [Docket No. 2045] (the "First Extension Order") granting the First Extension Motion and extending the Removal Deadline through and including August 29, 2016.

7.      The Debtors subsequently sought to further extend the Removal Deadline and, on August 22, 2016, the Court entered that certain *Second Order Extending the Period Within Which the Debtors May Remove Actions Pursuant to 28 U.S.C. § 1452* [Docket No. 2801] (the "Second Extension Order"), pursuant to which the Removal Deadline was extended through and including November 28, 2016.

8.      The Debtors subsequently sought to further extend the Removal Deadline and, on December 1, 2016, the Court entered that certain *Third Order Extending the Period Within Which the Debtors May Remove Actions Pursuant to 28 U.S.C. § 1452* [Docket No. 3236] (the "Third Extension Order"), pursuant to which the Removal Deadline was extended through and including February 27, 2017.

9.      The Debtors subsequently sought to further extend the Removal Deadline and, on March 6, 2017, the Court entered that certain *Fourth Order Extending the Period Within Which the Debtors May Remove Actions Pursuant to 28 U.S.C. § 1452* [Docket No. 3465] (the "Fourth Extension Order"), pursuant to which the Removal Deadline was extended through and including May 29, 2017.

10. The Debtors subsequently sought to further extend the Removal Deadline and, on June 8, 2017, the Court entered that certain *Fifth Order Extending the Period Within Which the Debtors May Remove Actions Pursuant to 28 U.S.C. § 1452* [Docket No. 3663] (the "Fifth Extension Order"), pursuant to which the Removal Deadline was extended through and including August 28, 2017.

11. The Debtors subsequently sought to further extend the Removal Deadline and, on August 28, 2017, the Court entered that certain *Sixth Order Extending the Period Within Which the Debtors May Remove Actions Pursuant to 28 U.S.C. § 1452* [Docket No. 3785] (the "Sixth Extension Order"), pursuant to which the Removal Deadline was extended through and including November 27, 2017.

12. The Debtors subsequently sought to further extend the Removal Deadline and, on December 8, 2017, the Court entered that certain *Seventh Order Extending the Period Within Which the Debtors May Remove Actions Pursuant to 28 U.S.C. § 1452* [Docket No. 3929] (the "Seventh Extension Order"), pursuant to which the Removal Deadline was extended through and including February 26, 2018.

13. The Debtors subsequently sought to further extend the Removal Deadline and, on March 9, 2018, the Court entered that certain *Eighth Order Extending the Period Within Which the Debtors May Remove Actions Pursuant to 28 U.S.C. § 1452* [Docket No. 4044], pursuant to which the Removal Deadline was extended through and including June 26, 2018

14. Most recently, the Debtors sought to further extend the Removal Deadline and, on July 12, 2018, the Court entered that certain *Ninth Order Extending the Period Within Which the Debtors May Remove Actions Pursuant to 28 U.S.C. § 1452* [Docket No. 4186] (the "Ninth Extension Order"), pursuant to which the Removal Deadline was extended through and including

October 24, 2018 (the "Current Removal Deadline").  As provided in the Ninth Extension Order, the Current Removal Deadline was established without prejudice to the Debtors' rights to seek further extensions thereof.

## RELIEF REQUESTED

15.     By this Motion, the Debtors seek entry of the proposed form of order (the "Proposed Order"), a copy of which is attached hereto as Exhibit A, extending the period within which the Debtors may remove actions and related proceedings by approximately 120 days, through and including February 21, 2019, without prejudice to the rights of the Debtors and their estates to seek further extensions of time within which to remove actions and related proceedings.[2]

## BASIS FOR RELIEF

16.     Bankruptcy Rule 9027 and 28 U.S.C. § 1452 govern the removal of pending civil actions.  Specifically, section 1452(a) provides that:

> [a] party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). Bankruptcy Rule 9027(a)(2) further provides, in pertinent part that:

> [i]f the claim or cause of action in a civil action is pending when a case under the [Bankruptcy] Code is commenced, a notice of removal may be filed in the bankruptcy court only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

---

[2]  Pursuant to Local Rule 9006-2, the filing of this Motion before the expiration of the Current Removal Deadline shall automatically extend the Current Removal Deadline until the Court acts on this Motion without the necessity for entry of a bridge order.

01:23741791.1

5

Fed. R. Bankr. P. 9027(a)(2).

17. Bankruptcy Rule 9006(b) provides that the Court may extend unexpired time periods, such as the Debtors' removal period, without notice:

> [W]hen an act is required or allowed to be done at or within a specified period by [the Bankruptcy Rules] or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion … with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order.

*Id.* at 9006(b)(1). Accordingly, the Court is authorized to grant the relief requested herein. *See Raff v. Gordon*, 58 B.R. 988 (Bankr. E.D. Pa. 1986) (stating that period in which to file motion to remove may be expanded pursuant to Bankruptcy Rule 9006); *Jandous Elec. Constr. Corp. v. City of New York (In re Jandous Elec. Constr. Corp.)*, 106 B.R. 48 (Bankr. S.D.N.Y. 1989) (same); *see also, Doan v. Loomis (In re Fort Dodge Creamery Co.)*, 117 B.R. 438 (Bankr. N.D. Iowa 1990) (implying that time period in which removal motion may be filed may be extended pursuant to Bankruptcy Rule 9006); *In re Boyer*, 108 B.R. 19 (Bankr. N.D.N.Y. 1988) (same).

18. The Debtors are parties to actions currently pending in the courts of certain states and federal districts (each, an "Action" and, collectively, the "Actions"), and believe that it is prudent to seek an extension of the time established by Bankruptcy Rule 9027 to protect the rights of the Debtors and their estates to remove the Actions.

19. The Debtors submit that extending the Current Removal Deadline is in the best interests of the Debtors, their estates, and creditors. As detailed in the First Extension Motion, during the first several months of these Chapter 11 Cases, the Debtors' management and professional advisors devoted a significant amount of time and effort towards ensuring a smooth

01:23741791.1

transition of the Debtors' operations into chapter 11.  At the same time, both prior and subsequent to the Petition Date, the Debtors and their advisors devoted a substantial amount of time, energy, and resources marketing the Debtors' assets, including their significant lease portfolio, intellectual property and physical inventory, and exploring all value-maximizing alternatives for the estates.  At the time the First Extension Order was entered, the Debtors had recently conducted an auction for substantially all of their assets, and subsequent thereto gained entry of an order authorizing them to sell their physical inventory and commence an enterprise-wide liquidation at their then-remaining retail locations.

20.     Subsequent to the entry of the First Extension Order, the Debtors successfully liquidated and monetized substantially all of their remaining assets, including, without limitation, certain leasehold interests, their intellectual property, valuable real property interests, their e-commerce inventory, and the estates' interest in certain class action claims.  In addition, the Debtors entered into value-maximizing settlements with their consignment vendors, their landlords, the Committee, and the Term Loan Agent, which, taken in the aggregate, paved the path for an orderly and efficient wind down of the Debtors' estates.

21.     While performing various tasks related to completing the necessary diligence attendant to implementing the multiple sale processes and seeking, and ultimately securing, the case-altering settlements with the largest creditor constituencies referenced above, the Debtors also defended against various objections to relief critical to their wind down and the bankruptcy process, including, among others, objections to (i) the Debtors' treatment of goods delivered on a consignment basis and putative consignment vendors, (ii) the Debtors' store closing process, and (iii) the Debtors' post-petition financing.  Collectively, these tasks necessarily required a

significant expenditure of time and effort on the part of the Debtors' management, now-depleted employee base, and professional advisors.

22. Subsequent to the entry of the Second Extension Order, the Debtors, their limited staff, and their professionals devoted significant time to, among other things, (a) addressing (and in many instances resolving) contested claims and motions related thereto, many of which implicated complex legal and factual disputes, (b) participating in extensive litigation with the purchaser of the Debtors' e-commerce inventory, (c) playing a pivotal role in the resolution reached by and between the Term Loan Agent and the Debtors' investment banker regarding the latter's transaction fee, and (d) negotiating the continued consensual use of cash collateral on a go-forward basis.

23. Subsequent to the entry of the Third Extension Order, the Debtors continued to address contested claims and motions related thereto. In addition, the Debtors devoted significant time to, among other things, (a) commencing four (4) separate adversary proceedings and (b) filing motions to reject a computer lease agreement and various contracts.

24. Subsequent to the entry of the Fourth Extension Order, the Debtors, among other things, continued to address contested claims and related motions, implemented an orderly, Court-authorized procedure for making distributions to holders of allowed claims arising under section 503(b)(9) of the Bankruptcy Code, marketed and sold certain remnant assets, and maintained compliance with their reporting requirements.

25. Subsequent to the entry of the Fifth Extension Order, the Debtors, among other things, (a) resolved contested claims and related motions, (b) pursued, together with the Term Loan Agent, settlement proceeds from certain pay-by-scan vendors, (c) actively participated in ongoing litigation and endeavored to resolve pending disputes on a consensual basis, and

(d) prepared, and conducted due diligence in connection with, claim objections on behalf of Debtor TSA Caribe, Inc.

26. Subsequent to the entry of the Sixth Extension Order, the Debtors, among other things, (i) successfully obtained approval of the disclosure statement for the liquidating plan proposed by Debtor TSA Caribe, Inc. (the "Caribe Plan"), (b) continued to prepare for confirmation of the Caribe Plan, and address issues related thereto, (c) participated in extensive mediation and negotiations related to a then-pending adversary, and sought and gained approval of a settlement reached at the conclusion thereof, (d) secured a further extension of their authority to use cash collateral on a consensual basis, and (e) sold certain additional remnant assets.

27. Subsequent to the entry of the Seventh Extension Order, the Debtors, among other things, (a) obtained confirmation of the Caribe Plan and substantially consummated such plan, (b) established and implemented a supplemental administrative claims bar date in connection with the Caribe Plan, and (c) prepared for, and participated in, multiple rounds of discovery arising in two pending adversary proceedings, including with respect to depositions related thereto.

28. Subsequent to seeking entry of the Eighth Extension Order, the Debtors, among other things, substantially consummated the Caribe Plan and continued to prepare for, and participate in, multiple rounds of discovery and motion practice arising in pending adversary proceedings. The Debtors further negotiated and finalized multiple settlement agreements with vendors, resulting in proceeds for the Debtors' estates.

29. Subsequent to the seeking entry of the Ninth Extension Order, the Debtors have, among other things, closed the Caribe case, negotiated for and obtained authority to consensually

01:23741791.1

use cash collateral on a go forward basis, entered into and obtained Court authority for a settlement agreement by and between the Debtors and a vendor counterparty, and continued to meet their reporting obligations in all respects.

30. Given these tasks, and the other administrative obligations placed on the Debtors, their limited staff and their advisors during the wind down process, the Debtors have not had sufficient time to review the Actions to determine if any should be removed pursuant to Bankruptcy Rule 9027(a). Accordingly, the Debtors submit that extending the Current Removal Deadline is in the best interest of the Debtors, their estates and creditors, and will allow the Debtors to further pursue an orderly wind down of their estates without unnecessary distraction. The extension sought will afford the Debtors an opportunity to make more fully-informed decisions concerning the removal of any Actions, and will assure that the Debtors and their estates do not forfeit the valuable rights afforded to them under 28 U.S.C. § 1452. Furthermore, the Debtors submit that granting the extension requested herein and establishing the extended Removal Deadline will not prejudice the rights of their adversaries in the Actions because, in many (if not all) circumstances, such parties may not prosecute these Actions absent relief from the automatic stay. In addition, nothing herein will prejudice any party to an Action that the Debtors may ultimately attempt to remove from seeking the remand of such Action under 28 U.S.C. § 1452(b) at the appropriate time.

31. For the reasons set forth above, the Debtors submit that extending the Current Removal Deadline through and including February 21, 2019, and setting this date as the Removal Deadline, is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors.

## NOTICE

32. The Debtors have provided notice of this Motion to: (a) the U.S. Trustee; (b) Pachulski Stang Ziehl & Jones LLP (attn.: Robert J. Feinstein) as counsel for the Committee; (c) Riemer & Braunstein LLP (attn.: Donald Rothman) as counsel for (i) Bank of America, N.A., in its capacity as Administrative Agent and Collateral Agent under the Second Amended and Restated Credit Agreement, dated as of May 17, 2012, and (ii) certain DIP Lenders under the Debtors' postpetition financing facility; (d) Brown Rudnick LLP (attn.: Robert Stark and Bennett Silverberg) as counsel for (i) Wilmington Savings Fund Society, FSB as Administrative Agent and Collateral Agent under the Amended and Restated Credit Agreement, dated as of May 3, 2006, and amended and restated as of November 16, 2010, and (ii) certain Term Lenders under the Amended and Restated Credit Agreement, dated as of May 3, 2006, and amended and restated as of November 16, 2010; (e) Choate, Hall & Stewart LLP (attn.: Kevin Simard) as counsel for (i) Wells Fargo Bank, National Association, in its capacity as FILO Agent under the Second Amendment to Second Amended and Restated Credit Agreement, dated as of November 3, 2015, and (ii) certain DIP Lenders under the Debtors' postpetition financing facility; (f) O'Melveny & Meyers LLP (attn.: John Rapisardi) as counsel for certain holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (g) all holders of 11.5% Senior Subordinated Notes Due February 19, 2018 under the Securities Purchase Agreement, dated as of May 3, 2006; (h) counterparties to the Actions; and (i) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief as is just and proper.

Dated:  October 16, 2018
       Wilmington, Delaware

*/s/ Andrew L. Magaziner*
Michael R. Nestor (No. 3526)
Kenneth J. Enos (No. 4544)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mnestor@ycst.com
kenos@ycst.com
amagaziner@ycst.com

-and-

Robert A. Klyman (CA No. 142723)
Matthew J. Williams (NY No. 3019106)
Sabina Jacobs (CA No. 274829)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
rklyman@gibsondunn.com
mjwilliams@gibsondunn.com
jgraves@gibsondunn.com
sjacobs@gibsondunn.com

*Counsel to the Debtors and Debtors in Possession*